ORIGINAL

1   HOWARD M. GARFIELD, State Bar #43369
    LONG & LEVIT LLP
2   465 California Street, Suite 500
    San Francisco, California 94104
3   Telephone:    (415) 397-2222
    Facsimile:    (415) 397-6392
4   Email:        hgarfield@longlevit.com

5   Attorney for Defendants
    ALLIED PROPERTY AND CASUALTY
6   INSURANCE COMPANY, AMCO INSURANCE
    COMPANY, and NATIONWIDE MUTUAL
7   INSURANCE COMPANY

FILED

OCT 1 9 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          cr          DEPUTY

8                    UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10                      SAN DIEGO DIVISION

BY FAX

11

12   1800 SOUTH MAPLE STREET, LLC, a          CASE No. 07 CV 2030 JM MLS
     California Limited Liability Company;
13   RALPH J. GIANNELLA, an individual;       NOTICE OF AND PETITION FOR
     GIANNELLA PROPERTIES, INC., a            REMOVAL OF ACTION UNDER 28 U.S.C.
14   California Corporation; WILLIAM G.       SECTION 1441(B) (DIVERSITY)
     AYYAD, an individual; WILLIAM G.
15   AYYAD, INC., a California Corporation;
     an PREMIER COMMUNITIES, LLC, a
16   California Limited Liability Company,     Action Filed:    September 10, 2007

17                        Plaintiff,

18            vs.

19   ALLIED PROPERTY AND
     CASUALTY INSURANCE COMPANY,
20   an Iowa Corporation; AMCO
     INSURANCE COMPANY, an Iowa
21   Corporation; NATIONWIDE MUTUAL
     INSURANCE COMPANY, an Ohio
22   Corporation, and DOES 1 to 100,
     inclusive,
23
                         Defendants.
24

25   TO THE CLERK OF THE ABOVE-ENTITLED COURT:

26       PLEASE TAKE NOTICE that Defendants ALLIED PROPERTY AND CASUALTY

27   INSURANCE COMPANY, an Iowa Corporation; AMCO INSURANCE COMPANY, an Iowa

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

NOTICE OF AND PETITION FOR REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)

1   Corporation; and NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation

2   ("Defendants") hereby remove to this Court the state court action described below.

3         1.    This action is a civil action over which this Court has original jurisdiction

4   under 28 U.S.C. §1332, and is one which Defendants may remove to this Court pursuant to the

5   provisions of 28 U.S.C. §1441(b). Removal to the San Diego Division of this Court is

6   appropriate because Plaintiffs 1800 SOUTH MAPLE STREET, LLC, a California Limited

7   Liability Company; RALPH J. GIANNELLA, an individual; GIANNELLA PROPERTIES, INC.,

8   a California Corporation; WILLIAM G. AYYAD, an individual; WILLIAM G. AYYAD, INC., a

9   California Corporation; an PREMIER COMMUNITIES, LLC, a California Limited Liability

10   Company, ("Plaintiffs") originally filed this action in San Diego Superior Court.

11         2.    On September 10, 2007, Plaintiffs commenced an action captioned *1800*

12   *South Maple Street, LLC, et al. v. Allied Property and Casualty Insurance Company, et al.*, San

13   Diego, Central Division Superior Court No. 37-2007-00074662-CU-NP-CTL. Plaintiffs served

14   Defendants with the complaint in that action on September 20, 2007. Defendants attach a copy of

15   the summons and complaint hereto as Exhibit 1. Defendants had not received a copy of the

16   complaint prior to this date.

17         3.    In the complaint, Plaintiffs allege that Defendants had a duty to defend and

18   indemnify them in an underlying action captioned *Hidden Glen Maintenance Corporation v. 1800*

19   *South Maple Street, LLC,* San Diego Superior Court, Central Division Case No. GIC 852647,

20   pursuant to a claims-made, liability insurance policy Defendants issued. Plaintiffs further

21   contend that Defendants breached their duty to defend and indemnify them in the underlying

22   action.

23         4.    On October 17, 2007, Defendants filed an answer to Plaintiff's complaint

24   in San Diego Superior Court. Defendants attach a copy of the answer as Exhibit 2.

**JURISDICTION**

26         5.    This court has original jurisdiction over this action pursuant to 28 U.S.C. §

27   1332, and Defendants may remove this action pursuant to 28 U.S.C. § 1441(b) because it is a civil

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

NOTICE OF AND PETITION FOR REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)

1   action between citizens of different states and the amount in controversy exceeds the sum of

2   $75,000, exclusive of interest and costs.

3        6.     Although Plaintiffs do not specifically allege damages in excess of

4   $75,000, it appears from the face of the Complaint that they seeks more than $75,000 based on

5   the lengthy list of damages set forth in the prayer of the Complaint. *See White v. FCI USA, Inc.*

6   (5th Cir. 2003) 319 F.3d 672, 674. The complaint also states the Plaintiffs faced a multi-million

7   dollar lawsuit that they settled for approximately $1,478,003.57, which they seek from

8   Defendants. In addition, Plaintiffs seek special damages and punitive damages against

9   Defendants based on three separate causes of action.

10       7.     Defendants are informed and believe and thereon allege that Plaintiff 1800

11  South Maple Street, LLC is a California Limited Liability Company with its principal place of

12  business in California; Plaintiff RALPH J. GIANNELLA is a citizen of the State of California;

13  Plaintiff GIANNELLA PROPERTIES, INC. is a California Corporation with its principal place

14  of business in California; Plaintiff WILLIAM G. AYYAD is a citizen of the State of California;

15  Plaintiff WILLIAM G. AYYAD, INC. is a California Corporation with its principal place of

16  business in California; and Plaintiff PREMIER COMMUNITIES, LLC is a California Limited

17  Liability Company with its principal place of business in California.

18       8.     Defendant ALLIED PROPERTY AND CASUALTY INSURANCE

19  COMPANY is an Iowan corporation with its principal place of business in Iowa. Defendant

20  AMCO INSURANCE COMPANY is an Iowan corporation with its principal place of business in

21  Iowa. Defendant NATIONWIDE MUTUAL INSURANCE COMPANY is an Ohioan

22  corporation with its principal place of business in Ohio.

23       9.     The Complaint purports to state claims against unnamed, fictitious

24  defendants identified as "DOES 1-100". For purposes of this removal, "the citizenship of

25  defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441(a).

26       10.     The parties have complete diversity. No defendant is a citizen of

27  California pursuant to 28 U.S.C. §1441(b).

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

3

NOTICE OF AND PETITION FOR REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)

1    11. Pursuant to 28 U.S.C. §84(c)(3), the United States District Court for the

2 Southern District of California embraces the Superior Court of the State of California, County of

3 San Diego, where the action is currently pending, and thus this Court is a proper venue for the

4 action.

5    12. Defendants will give written notice of the filing of this Petition to

6 Plaintiffs' counsel pursuant to 28 U.S.C. §1446(d).

7    13. Defendants will file a copy of this Petition with the Clerk of the Superior

8 Court of the State of California, County of San Diego, Central Division, pursuant to 28 U.S.C.

9 §1446(d).

10    WHEREFORE, Defendants pray that this action be removed to this Court, and that

11 this Court accept jurisdiction over this action, and that henceforth this action be placed on the

12 docket of this Court for further proceedings, the same as though this action had originally been

13 instituted in this Court.

14

Dated:  October 18, 2007     LONG & LEVIT LLP

15

16

17       By _____

18         HOWARD M. GARFIELD
          Attorney for Defendants

19         ALLIED PROPERTY AND
          CASUALTY INSURANCE

20         COMPANY, AMCO INSURANCE
          COMPANY, and NATIONWIDE

21         MUTUAL INSURANCE COMPANY

22

23 DOCS\S5240-336\540332.V1

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

4

# EXHIBIT 1

1 | ROCKWOOD & NOZISKA, L.L.P.
NEAL H. ROCKWOOD, ESQ. SB# 106197
2 | C. BRANT NOZISKA, ESQ. SB#106117
CHARLES L. FANNING IV, ESQ. SB#248704
3 | 5060 North Harbor Drive, Suite 255
San Diego, California 92106
4 | Phone: (619) 224-7778 Fax (619) 224-7779

5

Attorneys for Plaintiffs
6

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

10

11 | 1800 SOUTH MAPLE STREET, LLC, a          )   CASE NO. 37-2007-00074662-CU-NP-CTL
California Limited Liability Company;      )
12 | RALPH J. GIANNELLA, an individual;       )
GIANNELLA PROPERTIES, INC., a            )
13 | California Corporation; WILLIAM G.        )   COMPLAINT FOR:
AYYAD, an individual; WILLIAM G.         )
14 | AYYAD, INC., a California Corporation; and )  BREACH OF THE IMPLIED
PREMIER COMMUNITIES, LLC, a             )   COVENANT OF GOOD FAITH AND
15 | California Limited Liability Company.      )   FAIR DEALING; DECLARATORY
                                          )   RELIEF; FRAUD; AND CONSPIRACY
16 |            Plaintiffs,                   )   TO COMMIT FRAUD
                                          )
17 |       v.                               )   JURY REQUESTED
                                          )
18 | ALLIED PROPERTY AND CASUALTY            )   [UNLIMITED CIVIL]
INSURANCE COMPANY, an Iowa              )
19 | Corporation; AMCO INSURANCE             )
COMPANY, an Iowa Corporation;           )
20 | NATIONWIDE MUTUAL INSURANCE             )
COMPANY, an Ohio Corporation, and DOES  )
21 | 1 through 100, inclusive,                )
                                          )
22 |            Defendants.                  )
                                          )

23        1800 SOUTH MAPLE STREET, LLC, a California limited liability company; RALPH

24   J. GIANNELLA, an individual; GIANNELLA PROPERTIES, INC., a California corporation;

25   WILLIAM G. AYYAD, an individual; WILLIAM G. AYYAD, INC., a California corporation;

26   and PREMIER COMMUNITIES, LLC, a California Limited Liability Company, ("Plaintiffs")

27   hereby allege as follows:

28

---

COMPLAINT FOR: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;
DECLARATORY RELIEF; FRAUD; AND CONSPIRACY TO COMMIT FRAUD

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

FILED
CIVIL BUSINESS OFFICE 5
CENTRAL DIVISION

2007 SEP 10  P 4: 02

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA,

"VIA FAX"

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IDENTIFICATION OF PARTIES

1.      Plaintiff, 1800 SOUTH MAPLE STREET, LLC, its members, officers, directors, employees, and partners, hereinafter "SOUTH MAPLE," is and at all times herein mentioned, was a limited liability company operating and existing under the laws of the State of California.

2.      Plaintiff, RALPH J. GIANELLA, hereinafter "GIANNELLA," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California.

3.      Plaintiff, GIANNELLA PROPERTIES, hereinafter "GIANNELLA, PROPERTIES," is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California.

4.      Plaintiff, WILLIAM G. AYYAD, hereinafter "AYYAD," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California and was an officer of AYYAD, INC.

5.      Plaintiff, WILLIAM G. AYYAD, INC., hereinafter "AYYAD INC.," is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California and a member of SOUTH MAPLE.

6.      Plaintiff, PREMIER COMMUNITIES, LLC, its members, officers, directors, employees, and partners, hereinafter "PREMIER," is and at all times herein mentioned, was a limited liability company operating and existing under the laws of the State of California.

7.      Plaintiffs allege on information and belief that at all times herein mentioned Defendant ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY ("ALLIED") of Iowa, a wholly owned subsidiary of Defendant NATIONWIDE, was and is a corporation doing business within the State of California, County of San Diego. Plaintiffs further allege on information and belief that ALLIED, is, and at all times mentioned herein, was duly organized and existing under the laws of the State of Iowa.

8.      Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendant AMCO INSURANCE COMPANY ("AMCO"), a wholly owned subsidiary of

-2-

1   Defendant ALLIED, was and is a corporation doing business within the State of California,

2   County of San Diego. Plaintiffs further allege on information and belief that AMCO is, and at

3   all times mentioned herein, was duly organized and existing under the laws of the State of Iowa.

4       9.      Plaintiffs allege on information and belief that at all times herein mentioned

5   Defendant NATIONWIDE MUTUAL INSURANCE COMPANY ("NATIONWIDE") of Ohio

6   was and is a corporation doing business within the State of California, County of San Diego.

7   Plaintiffs further allege on information and belief that NATIONWIDE, is, and at all times

8   mentioned herein, was duly organized and existing under the laws of the State of Ohio.

9       10.     Plaintiffs are informed and believe and thereon allege that throughout the

10  issuance of the AMCO Insurance Policy and the claims adjustment period, Defendant AMCO

11  was the insurance carrier under the AMCO Policy; defendants ALLIED, NATIONWIDE, and

12  AMCO conducted the claims adjustment and made the decision to deny coverage; defendants

13  NATIONWIDE and ALLIED managed, controlled, and ratified all conduct of defendant

14  AMCO; and defendants NATIONWIDE, ALLIED, and AMCO all share the same adjustors.

15  Hereinafter NATIONWIDE, ALLIED, and AMCO will be collectively referred to as

16  "INSURERS."

17      11.     Plaintiffs are presently unaware of the true names and capacities of those

18  defendants sued herein as Does 1 through 100 inclusive. Plaintiffs will amend this complaint to

19  state their true names and capacities when they are ascertained. Plaintiffs are informed and

20  believe, and thereon allege, that each of the fictitiously-named defendants are responsible in

21  some manner for the occurrences alleged herein, and that Plaintiffs' damages were proximately

22  caused by such defendants.

23      12.     Plaintiffs are informed and believe, and thereon allege, that INSURERS,

24  including the fictitious defendants named as Does herein, were the agents and/or employees of

25  the defendants and in doing the things herein mentioned were acting within the scope of such

26  agency and/or employment.

27

28

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-3-

1    13.    Plaintiffs are informed and believe that venue is proper within the County of San

2    Diego and Defendants are subject to personal jurisdiction in this County at the time the action is

3    commenced.

4    14.    The insured property in question, previously known as SOUTH MAPLE and

5    presently known as HIDDEN GLEN CONDOMINIUMS, is located at 1800 South Maple

6    Street, Escondido, California, 92025, and will be commonly referred to as the "SUBJECT

7    PROPERTY." The SUBJECT PROPERTY consists of thirty residential condominiums and

8    related common areas.

9    15.    Plaintiffs request a jury in this matter.

10

11                      **JURISDICTION & VENUE**

12    16.    The causes of action in this complaint arise out of an agreement entered into in

13    the County of San Diego, and some or all of the Defendants are conducting business in the

14    County of San Diego. Accordingly, venue is proper in San Diego County Superior Court

15    pursuant to Code of Civil Procedure §§ 393 and 395.5.

16

17                      **GENERAL ALLEGATIONS**

18    17.    Plaintiffs incorporate by reference Paragraphs 1 - 16 of this Complaint and repeat

19    those Paragraphs as though fully set forth herein.

20    18.    Plaintiff SOUTH MAPLE purchased the SUBJECT PROPERTY on or about

21    April 4, 2002.

22    19.    Plaintiffs are informed and believe, and thereon allege the SUBJECT

23    PROPERTY was converted to condominiums on or about April 16, 1986; however, the units

24    continued to be rented by the previous owner.

25    20.    After SOUTH MAPLE purchased SUBJECT PROPERTY, SOUTH MAPLE

26    performed renovations to some of the units in preparation for sale.

27

28

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-4-

21. Beginning in or about August 2002, Plaintiff SOUTH MAPLE sold units at the SUBJECT PROPERTY. Escrows for all of the condominiums closed between August 2002 and November 2002.

22. Michael Ehrenfeld Company-Insurance Agents and Brokers was an appointed agent of INSURERS and Robyn Kettering was an employee of Ehrenfeld during this time period (Ehrenfeld and Kettering collectively referred to as "AMCO Agents").

23. Each year, AMCO Agents designed and administered a comprehensive "insurance program" for Plaintiffs' insurance needs.

24. By and through AMCO Agents, Plaintiffs were issued by INSURERS, Insurance Policy No. ACP BPH 7801069841, hereinafter referred to as the "AMCO Policy," for the policy period April 4, 2002 to April 4, 2003. The AMCO Policy insured 1800 SOUTH MAPLE, LLC, among other insureds. (Attached as Exhibit "A" is a copy of the AMCO Policy and its terms are incorporated herein by this reference).

25. Under the terms of AMCO Policy, INSURERS undertook to and did agree: 1) to "pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies"; 2) that INSURERS would have "the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy"; and 3) that INSURERS may, at its sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

26. The terms of the AMCO Policy also offered coverage for the completed operations of a developer/renovator. The Completed-Operations portion of the AMCO Policy "includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: 1) Products that are still in your physical possession; or 2) Work that has not yet been completed or abandoned." As listed in the property declarations portion of the AMCO Policy, the Products-Completed Operations aggregate limit of insurance for all occurrences is $4 million.

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-5-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

27. At all times mentioned herein Plaintiffs have performed all the terms and conditions of the AMCO Policy to be performed on their part.

28. Under the AMCO Policy, SOUTH MAPLE is an additional insured as the prior owner of the insured premise during the renovation and subsequent sales and an additional insured by virtue of endorsements. The remaining Plaintiffs are also insureds by virtue of their positions as members, officers and/or employees of SOUTH MAPLE and/or its members.

29. Plaintiffs are informed and believe, and thereon allege, that occurrences took place during the AMCO Policy period.

30. On or about August 18, 2005, The Hidden Glen Maintenance Corporation commenced action against Plaintiffs herein in the San Diego Superior Court entitled *The Hidden Glen Maintenance Corporation v. 1800 South Maple Street, LLC,* case number GIC 852647, hereinafter referred to as the "Third Party Action." Plaintiffs in the Third Party Action sought damages based upon negligence, civil conspiracy, breach of the Conditions, Covenants and Restrictions, breach of fiduciary duty, alter ego, negligence per se, violation of Business and Professions Code section 17200. (Attached as Exhibit B).

31. Plaintiffs timely tendered a copy of the summons and complaint in the Third Party Action to INSURERS with the request that INSURERS, as required by the AMCO Policy, undertake the defense of this action.

32. Plaintiffs are informed and believe, and thereon allege, that on or about September 29, 2005, a Notice of Commencement of Legal Proceedings pursuant to former Civil Code section 1375 ("Calderon Notice") was sent to SOUTH MAPLE by attorneys representing Hidden Glen Maintenance Corporation claiming property damage as a result of certain defects at The Maple Street Condominiums.

33. Plaintiffs timely tendered the Calderon Notice to INSURERS under the AMCO Policy.

34. Notwithstanding Plaintiffs' requests for coverage, on or about November 10, 2005, INSURERS, without full and proper investigation of the claim, denied all liability under

-6-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1  the AMCO Policy and refused to undertake the defense of the Third Party Action.  (Attached as

2  Exhibit C).

3       35.    Notwithstanding Plaintiffs' requests for coverage, on or about March 3, 2006,

4  INSURERS, again without full and proper investigation of the claim, denied all liability under

5  the AMCO Policy and refused to undertake the defense of the Third Party Action.  (Attached as

6  Exhibit D).

7       36.    In addition, in its March 3, 2006 denial letter, without any offer of evidence and

8  without attaching the AMCO Policy application, INSURERS accused its insureds of fraud in the

9  application and threatened an action for rescission of the AMCO Policy insurance contract.

10      37.    Plaintiffs are informed and believe, and thereon allege, that in violation of Cal.

11  Ins. Code § 790.03(h), including but not limited to subsection (3), INSURERS used a similar

12  tactic of accusing its insureds of fraud in the application without investigation against some of

13  the same insureds in the case titled *Avocado Crest Condominiums, LLC, et al. v. Allied Mutual*

14  *Insurance et. al.* (GIC 857918)  (hereinafter "ACC LAWSUIT").  INSURERS did not accept

15  defense obligations in the ACC LAWSUIT until a year and a half after the underlying lawsuit

16  was filed and the insureds had sued INSURERS for bad faith.

17      38.    In the ACC LAWSUIT, INSURERS and their appointed agent knew the insureds

18  were in the business of renovating and selling condominiums, yet INSURERS still accused

19  them of fraud in the application.  (See Exhibit E - AMCO E-mail from Dave Everett).

20      39.    Plaintiffs are informed and believe, and thereon allege, that INSURERS and their

21  appointed agent, Michael Ehrenfeld Insurance, knew Plaintiffs were in the business of

22  renovating and selling condominiums.

23      40.    Plaintiffs are informed and believe, and thereon allege, that INSURERS have a

24  pattern and practice of utilizing this tactic of accusing its insureds of fraud in the application so

25  as to discourage claimants and minimize INSURERS' obligations to their insureds.   No

26  rescission action was ever filed by INSURERS.

27      41.    In the March 3, 2006 denial letter INSURERS stated: "On the facts known to

28  INSURERS, the complaint filed by The Hidden Glen Maintenance Corporation does not allege

-7-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1  any covered claims" (Exhibit D, p. 3). INSURERS had a duty to fully and thoroughly

2  investigate the claim and resolve any doubts in favor of coverage. However, Plaintiffs are

3  informed and believe, and thereon allege, that INSURERS had done no investigation beyond

4  reviewing the Third Party Action complaint and wrongfully concluding there was no duty to

5  defend or potential for coverage alleged. A cursory reading of the Third Party Action complaint

6  reveals allegations of property damage arising from termite damage, mold, water intrusion,

7  drywall damage, inadequate plumbing supply, plumbing waste, and defective stairs,

8  porches/patios, flashing, stucco, asphalt, pool equipment, accessory buildings and landscape in

9  condominiums purchased, renovated, and sold by SOUTH MAPLE, all giving rise to potentially

10  covered claims under the completed operations portion of the AMCO Policy.

11        42.  Plaintiffs are informed and believe, and thereon allege, that INSURERS

12  conducted no investigation into the nature and scope of the renovations performed by Plaintiffs

13  and, thus, could not conclude the allegations in the Third Party Action complaint were not

14  covered occurrences. INSURERS had a duty to defend Plaintiffs if any language of the Third

15  Party Action complaint gave rise to the potential for coverage. *Delgado v. Interinsurance*

16  *Exchange of Auto. Club of S. Ca*, (2007) 152 Cal.App.4th 671, 680; *Waller v. Truck Ins*

17  *Exchange, Inc*, (1995) 11 Cal.4th 1, 19. INSURERS' complete lack of investigation and

18  subsequent uninformed denial of coverage was wanton and malicious conduct.

19        43.  Plaintiffs are informed and believe, and thereon allege, that as part of a pattern

20  and practice of rushing to deny insureds assistance as evidenced in the ACC LAWSUIT,

21  INSURERS did not address the potential for coverage under the completed operations provision

22  of the AMCO Policy. Instead, INSURERS immediately denied the claim and did not attempt to

23  find coverage for the insureds nor give equal consideration to its insureds' interest.

24        44.  Plaintiffs are informed and believe, and thereon allege, that as part of a pattern

25  and practice, in violation of Cal. Ins. Code § 790.03(h), including but not limited to subsection

26  (3), INSURERS have a practice of not considering coverage under other insurance policies

27  issued by INSURERS, unless specifically tendered by the insureds, in order to avoid coverage

28  obligations.

-8-

45.   Plaintiffs persisted in advising INSURERS they had a duty to defend Plaintiffs, to no avail.  In the meantime, Plaintiffs were faced with a multi-million dollar lawsuit, which they had to defend.  Plaintiffs retained counsel to defend themselves in the Third Party Action, and continued attempts to convince INSURERS to defend.

46.   Because of INSURERS' continued denial of the claim, Plaintiffs were each required to retain separate and multiple law firms to advise Plaintiffs of the separate defenses, claims, and interests relating to the Third Party Action.

47.   The Third Party Action settled in three phases for approximately $1,478,003.57 total.

48.   On or about May 7, 2007, Plaintiffs served INSURERS with a demand for reimbursement for investigation and defense costs associated with the Third Party Action in the amount of $1,529,328.87 as required pursuant to the AMCO Policy.  This amount included the settlement fees, attorney's fees, litigation costs, mediation expenses, expert/consultant fees and costs incurred to investigate and mitigate alleged damages.  Excluded from that amount were costs associated with counsel's efforts to secure insurance coverage for Plaintiffs.  .

49.   On or about May 21, 2007, INSURERS again denied coverage for this claim and refused to reimburse Plaintiffs for fees and costs incurred in defense and settlement of the claim under the AMCO Policy.

50.   Plaintiffs purchased insurance from INSURERS for the peace of mind and security that their renovations would be insured and Plaintiffs would be protected from liability arising from their completed operations.  However, INSURERS did not honor their end of the bargain, and have not yet offered to reimburse plaintiffs for defense and indemnity expenses incurred in the underlying third party action.

///

///

///

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

COMPLAINT FOR: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;
DECLARATORY RELIEF; FRAUD; AND CONSPIRACY TO COMMIT FRAUD

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

# FIRST CAUSE OF ACTION

## (Breach of The Implied Covenant of Good Faith & Fair Dealing Against INSURERS and DOES 1-100)

51.     Plaintiffs incorporate by reference Paragraphs 1 - 50 of this Complaint and repeat those Paragraphs as though fully set forth herein.

52.     Implied in the AMCO Policy is a covenant by INSURERS, and each of them, to act in good faith and deal fairly with Plaintiffs, and to do nothing to impair or interfere with the rights and benefits of Plaintiffs under the AMCO Policy.

53.     Plaintiffs are informed and believe and thereon allege that INSURERS, and each of them, breached the implied covenant of good faith and fair dealing arising out of the AMCO Policy in the following respects:

a.     INSURERS, and each of them, unreasonably and without proper cause, failed and refused to conduct a competent and timely investigation into the facts which gave rise to the claims asserted in the Third Party Action;

b.     INSURERS, and each of them, unreasonably refused to defend, and without cause, denied coverage to Plaintiffs in the Third Party Action;

c.     INSURERS, and each of them, unreasonably refused to indemnify Plaintiffs, and each of them, from the claims asserted in the Third Party Action;

a.     INSURERS, and each of them, unreasonably refused to promptly and fully reimburse Plaintiffs for defense costs, fees and expenses incurred in defending against claims asserted in the Third Party Action;

d.     INSURERS, and each of them, unreasonably failed to adjust the claim giving equal consideration to the insureds' interest as to their own.

e.     INSURERS have wrongfully denied coverage under the AMCO Policy by failing to conduct a reasonable investigation and failing to give equal consideration to their insureds' interest as they gave to their own in refusing to defend and indemnify Plaintiffs' against the alleged claims in the Third Party Action.

-10-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

54.    Plaintiffs are informed and believe, and thereon allege, that INSURERS have breached their duty of good faith and fair dealing owed to Plaintiffs by other acts or omissions of which Plaintiffs are presently unaware. Plaintiffs will seek leave of court to amend this complaint at such time as they discover the other acts or omissions of INSURERS constituting such breach.

55.    The denial of benefits claimed by Plaintiffs under the AMCO Policy was done by INSURERS without reasonable cause. INSURERS knew that a duty to defend was owed to Plaintiffs, yet refused to provide such a defense. As a direct and proximate result of the unreasonable conduct of INSURERS, and each of them, Plaintiffs have been required to retain attorneys to obtain benefits due to them under the AMCO Policy. As a direct and proximate result of the tortious conduct of the INSURERS and each of them, Plaintiffs were damaged and injured. Plaintiffs are therefore entitled to recover:

    a.    Reasonable attorney fees incurred by Plaintiffs in obtaining policy benefits in an amount to be proved at time of trial;

    b.    Reasonable attorney fees, expert fees, investigative fees, and costs incurred by Plaintiffs in defending the Third Party Action;

    c.    Compensation for lost opportunities; and

    d.    Out of pocket payments by Plaintiffs, assuming any, to settle claims made against them in the Third Party Action.

56.    The refusal of INSURERS and each of them to carry out their obligations under the AMCO Policy to investigate, defend, indemnify and to promptly communicate their coverage position to Plaintiffs, and the acts of their agents were all done willfully and maliciously and in conscious disregard of the rights of Plaintiffs to receive the benefits due them under the AMCO Policy. These acts were done with the knowledge and approval and ratification of INSURERS and each of them. These acts continued even after Plaintiffs protested to INSURERS and Plaintiffs were powerless to obtain from INSURERS compliance with their obligations.

-11-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

57.     Plaintiffs are informed and believe, and thereon allege, that INSURERS' conduct toward Plaintiffs is part and parcel of a pattern and practice against these same insureds as well as similarly situated insureds.  The bad faith is prevalent throughout these facts and Plaintiffs are therefore entitled to recover punitive damages.

## SECOND CAUSE OF ACTION

### (Declaratory Relief As Against INSURERS and DOES 1 - 100)

58.     Plaintiffs incorporate by reference Paragraphs 1 – 57 of this Complaint and repeat those Paragraphs as though fully set forth herein.

59.     INSURERS had full knowledge that the Third Party Action had commenced against Plaintiffs.  Plaintiffs timely tendered a copy of the summons and complaint in the Third Party Action to INSURERS with the request that INSURERS undertake the defense of this action.  INSURERS subsequently acknowledged the receipt of the tender of defense.

60.     INSURERS wrongfully denied all liability under the AMCO Policy and refused to undertake the defense of the Third Party Action against Plaintiffs.

61.     INSURERS intended and had reason to foresee that Plaintiffs would rely upon INSURERS' wrongful denial of defense.  Plaintiffs had a right to believe that after INSURERS denied tender, Plaintiffs would be required to engage their own counsel and defend the Third Party Action.

62.     Plaintiffs were ignorant of the true state of facts in that Plaintiffs were told that no coverage existed under the AMCO Policy when in fact the duty to defend and indemnify did exist under the AMCO Policy.

63.     Plaintiffs reasonably relied on INSURERS' denial of coverage to their detriment, and were compelled to engage counsel on their own.  In doing so, Plaintiffs were injured and incurred substantial costs, fees, and expenses that should have been covered under the AMCO Policy

-12-

64.    By virtue of the conduct described above and otherwise, Plaintiffs respectfully request the Court rule INSURERS owed Plaintiffs a duty to defend Plaintiffs in the Third Party Action.

65.    By virtue of the conduct described above and otherwise, Plaintiffs respectfully request the Court rule INSURERS owed Plaintiffs a duty to indemnify them in the Third Party Action.

## THIRD CAUSE OF ACTION

### (Fraud As Against INSURERS and DOES 1 - 100)

66.    Plaintiffs incorporate by reference Paragraphs 1 – 65 of this Complaint and repeat those Paragraphs as though fully set forth herein.

67.    Plaintiffs are informed and believe, and thereon allege, that at the time Plaintiffs paid the premium to INSURERS for the AMCO Policy, INSURERS had no intention to perform under the insurance contract. Nevertheless INSURERS suppressed their intention to refuse performance under the contract and instead accepted the premium with knowledge that the Plaintiffs believed they were insured for the type claims settled as described above. At no time prior to the submission of the claims did INSURERS disclose their intent to deny performance under the policy.

68.    Plaintiffs are informed and believe, and thereon allege, that INSURERS and its attorneys, Miller Johnson Law, had specific knowledge of a potential for coverage for the SOUTH MAPLE claim because of the identical policies and similar nature of insureds involved in both matters.

69.    Plaintiffs are informed and believe, and thereon allege, that, as part of the pattern and practice evidenced in the ACC LAWSUIT, INSURERS had knowledge the claims submitted by Plaintiffs were insured claims and INSURERS has intentionally misrepresented a lack of coverage in order to minimize its obligations and suppressed their intent to deny performance under the policy.

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-13-

70.    The refusal of INSURERS and each of them to carry out their obligations under the AMCO Policy to investigate, defend, indemnify and to promptly communicate their coverage position to Plaintiffs, and the acts of their agents were all done fraudulently, willfully and maliciously and in conscious disregard of the rights of Plaintiffs to receive the benefits due them under the AMCO Policy.  These acts were done with the knowledge and approval and ratification of INSURERS and each of them.  Plaintiffs are therefore entitled to recover punitive damages.

## FOURTH CAUSE OF ACTION

### (Conspiracy to Commit Fraud As Against INSURERS and DOES 1 - 100)

71.    Plaintiffs incorporate by reference Paragraphs 1 – 70 of this Complaint and repeat those Paragraphs as though fully set forth herein.

72.    Plaintiffs are informed and believe, and thereon allege, that there was a conspiracy between NATIONWIDE, ALLIED, AND AMCO to commit fraud upon Plaintiffs in order to deny Plaintiffs of the benefits under the AMCO Policy.

73.    Plaintiffs are informed and believe, and thereon allege, that after INSURERS initially denied Plaintiffs' claim under the AMCO Policy on November 10, 2005, INSURERS then extended the conspiracy to include their attorneys at the Miller Johnson Law Firm who further perpetuated the fraud as evidenced by the March 3, 2006 denial letter and the May 21, 2007 denial letter.

74.    The conspiracy of INSURERS and their lawyers to refuse to carry out their obligations under the AMCO Policy to investigate, defend, indemnify and to promptly communicate their coverage position to Plaintiffs, and the acts of their agents were all done willfully and maliciously and in conscious disregard of the rights of Plaintiffs to receive the benefits due them under the AMCO Policy and in furtherance of the conspiracy described above.  These acts were done with the knowledge and approval and ratification of INSURERS and each of them.

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-14-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

**FIRST CAUSE OF ACTION (Breach of The Implied Covenant of Good Faith & Fair Dealing):**

1. For special damages in an amount to be proven at the time of trial;

2. For punitive damages in an amount to punish and deter defendants' wrongful conduct;

3. For interest at a maximum legal rate;

4. For attorneys fees and costs of suit herein incurred in obtaining policy benefits; and

5. For such other and further relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION (Declaratory Relief):**

1. For such relief as the court may deem just and proper.

2. For the Court to declare that the defendants' have a duty to defend Plaintiffs in the Third Party Action;

3. For the Court to declare that the defendants' owe Plaintiffs a duty to indemnify them in the Third Party Action; and

2. For such other and further relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION (Fraud):**

1. For special damages as to each cause of action, according to proof at trial;

2. For punitive damages in an amount to punish and deter Defendants' wrongful conduct;

3. For interest, attorneys fees, and costs of suit herein incurred as to each cause of action;

4. For Plaintiff's expenses incurred in investigating these construction defects as to

-15-

each cause of action, including, but not limited to, Plaintiff's expert investigation expenses; and

5.    For such other and further relief as this Court deems just and proper.


### FOURTH CAUSE OF ACTION (Conspiracy to Commit Fraud):

1.    For special damages as to each cause of action, according to proof at trial;

2.    For punitive damages in an amount to punish and deter Defendants' wrongful conduct;

3.    For interest, attorneys fees, and costs of suit herein incurred as to each cause of action;

4.    For Plaintiff's expenses incurred in investigating these construction defects as to each cause of action, including, but not limited to, Plaintiff's expert investigation expenses; and

5.    For such other and further relief as this Court deems just and proper.


Dated:  September 10, 2007              ROCKWOOD & NOZISKA, LLP

                                        By: _____
                                            NEAL H. ROCKWOOD, ESQ.
                                            C. BRANT NOZISKA, ESQ.
                                            CHARLES L. FANNING IV
                                            Attorneys for Plaintiffs

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-16-

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, an
Iowa Corporation; AMCO INSURANCE COMPANY, an Iowa
Corporation; NATIONWIDE MUTUAL INSURANCE COMPANY, an
Ohio Corporation, and DOES 1 through 100, inclusive,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
CIVIL BUSINESS OFFICE 5
CENTRAL DIVISION

2007 SEP 10 P 4:02

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
1800 SOUTH MAPLE STREET, LLC, a California Limited Liability Company;
RALPH J. GIANELLA, an individual; GIANNELLA PROPERTIES, INC., a
California Corporation; WILLIAM G. AYYAD, an individual; WILLIAM G. AYYAD,
INC., a California Corporation; and PREMIER COMMUNITIES, LLC, a California
Limited Liability Company.

**"VIA FAX"**

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a
copy served on the plaintiff.    A letter or phone call will not protect you. Your written response must be in proper legal form if you want the
court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more
information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse
nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may
lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an
attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services
program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California
Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito
en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por
escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted
pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de
California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no
puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta
su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un
servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios
legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de
California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California,
(www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: (El nombre y dirección de la corte es): | CASE NUMBER: (Número del Caso): 37-2007-00074662-CU-NP-CTL |
|---|---|

Superior Court of California, County of San Diego
330 West Broadway

San Diego, CA 92101
Central Division
The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
NEAL H. ROCKWOOD, ESQ. / SB#106197
ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, #255
San Diego, CA 92106

| DATE: September 10, 2007    SEP 10 2007 (Fecha) | Clerk, by  R. Vela (Secretario) | , Deputy (Adjunto) |
|---|---|---|

For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): *Allied Property and Casualty Insurance Company*
   under: ☑ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

# EXHIBIT A



**Allied**
Insurance
a Nationwide® company
On Your Side™

AGENCY - 84 - 51252
MICHAEL EHRENFELD COMPANY INS
SAN DIEGO CA    92108-1633
619-683-9990

POLICY NUMBER
ACP    BPH    78    0    1069841

ACDW PROPERTIES/GIANNELLA PROPERTIES
4-WAY FARMS, A CALIFORNIA CORPORATION
419 19TH STREET
SAN DIEGO, CA    92102

We are pleased to serve your business insurance needs. Our company is committed to providing you high quality insurance protection and superior service.

Allied is a growing organization with more than sixty years of experience in providing insurance services. We are rated "A+" (Superior) for our financial soundness by the A.M. Best Company, an independent insurance rating organization. We provide protection for a full range of personal and commercial insurance needs.

If you should have any questions about your insurance plan or if you wish to make a change to your policy, please contact your Allied agent.

## IMPORTANT INFORMATION ABOUT YOUR POLICY . . . .

Please spend a few minutes to read and understand your policy. Some items to which you should pay special attention are as follows:

■ **Special Required State Notices.** These notices, when included, point out specific items concerning your policy. We urge you to read them.

■ **Declarations Page.** This shows such information as your name, address, the coverages provided, the policy term, policy limits, list of coverage forms, premium amounts, and other individualized information.

■ **Coverage and Endorsement Forms.** This is the section of your policy which provides policy and coverage information. Please read it carefully.

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL
### STATEMENT OF VALUES

Policy Number: **ACP BPH 7801069841**

Policy Period:
From **04-04-02** To **04-04-03**

The values shown on this Statement of Values reflect the values you have requested or agreed to for each individual item that was included in the Blanket Limit of Insurance shown in the Declarations of your policy.

By your acceptance of this policy in the payment of the premium due, you are acknowledging that the values shown below are correct to the best of your knowledge and belief.

**BLANKET BUILDINGS**

| Loc. Bldg. | Description/Coverage Type | Value | Valuation of Property |
|------------|---------------------------|-------|-----------------------|
| **01 01** | **BUILDING** | **2,000,000** | **Replacement cost** |

**PB 81 S1 (01-01)**

DIRECT BILL  LKTA  SS  INSURED COPY  UID  99  R  78 03137

# PREMIER BUSINESSOWNERS POLICY

## STATEMENT OF VALUES

Policy Number:

| | | From | Policy Period: To |

| Loc. Bldg. | Description/Coverage Type | Value | Valuation of Property |
|---|---|---|---|

PB 81 S1 (01-01)

INSURED COPY

03138

**Allied**
Insurance
a Nationwide® company
*On Your Side™*

AGENCY - 84 - 51252
MICHAEL EHRENFELD COMPANY INS
SAN DIEGO CA     92108-1633
619-683-9990

POLICY NUMBER
ACP   BPH   78   0   1069841

ACDW PROPERTIES/GIANNELLA PROPERTIES
4-WAY FARMS, A CALIFORNIA CORPORATION
419 19TH STREET
SAN DIEGO, CA      92102

We are pleased to serve your business insurance needs.  Our company is committed to providing you high quality insurance protection and superior service.

Allied is a growing organization with more than sixty years of experience in providing insurance services.  We are rated "A+" (Superior) for our financial soundness by the A.M.  Best Company, an independent insurance rating organization.  We provide protection for a full range of personal and commercial insurance needs.

If you should have any questions about your insurance plan or if you wish to make a change to your policy, please contact your Allied agent.

## IMPORTANT INFORMATION ABOUT YOUR POLICY . . . .

Please spend a few minutes to read and understand your policy.  Some items to which you should pay special attention are as follows:

- **Special Required State Notices.**  These notices, when included, point out specific items concerning your policy. We urge you to read them.

- **Declarations Page.**  This shows such information as your name, address, the coverages provided, the policy term, policy limits, list of coverage forms, premium amounts, and other individualized information.

- **Coverage and Endorsement Forms.**  This is the section of your policy which provides policy and coverage information.  Please read it carefully.

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL
### STATEMENT OF VALUES

Policy Number:  ACP  BPH  7801069841

Policy Period:
From 04-04-02  To  04-04-03

The values shown on this Statement of Values reflect the values you have requested or agreed to for each individual item that was included in the Blanket Limit of Insurance shown in the Declarations of your policy.

By your acceptance of this policy in the payment of the premium due, you are acknowledging that the values shown below are correct to the best of your knowledge and belief.

**BLANKET BUILDINGS**

| Loc. Bldg. | Description/Coverage Type | Value | Valuation of Property |
|---|---|---|---|
| 01 01 | BUILDING | 2,000,000 | Replacement cost |

# PREMIER BUSINESSOWNERS POLICY

### STATEMENT OF VALUES

Policy Number:

| | | Policy Period: |
|---|---|---|
| | From | To |

| Loc. Bldg. | Description/Coverage Type | Value | Valuation of Property |
|---|---|---|---|

PB 81 S1 (01-01)

INSURED COPY

03051

**Allied Insurance**
a Nationwide® company
On Your Side℠

AMCO INSURANCE COMPANY
701 5TH AVE          DES MOINES IA  50391-2000

84  51252
RENEWAL

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL
### COMMON DECLARATIONS

Policy Number:  **ACP  BPH  7801069841**

Named Insured:  **ACDW PROPERTIES/GIANNELLA PROPERTIES
4-WAY FARMS, A CALIFORNIA CORPORATION**
Mailing Address:  **419 19TH STREET
SAN DIEGO, CA    92102**
Agency:  **MICHAEL EHRENFELD COMPANY INS**
Address:  **SAN DIEGO CA    92108-1633**
Agency Phone Number:  **(619)683-9990**

Policy Period:  Effective From **04-04-02**   To **04-04-03**
12:01 AM Standard Time at your principal place of business.

Form of your business entity: **CORPORATION**

Description of your business: *

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

**CONTINUATION PROVISION:  If we offer to continue your coverage and you or your representative do not accept, this policy will automatically terminate on the expiration date of the current policy period stated above. Failure to pay the required premium when due shall mean that you have not accepted our offer to continue your coverage. This policy will terminate sooner if any portion of the current policy period premium is not paid when due.**

**IMPORTANT INFORMATION FOR CALIFORNIA POLICYHOLDERS:  Companies writing property and casualty insurance in California are required to participate in the California Insurance Guarantee Association. If a company becomes insolvent, the California Insurance Guarantee Association settles unpaid claims and assesses each insurance company for its fair share. California law requires all companies to surcharge policies to recover these assessments. If your policy is surcharged, "CA Surcharge" with an amount will appear on your premium notice.**

**If you should have any questions or problems with this policy, please first contact your agent or a Company representative. If after doing so, we have failed to produce a satisfactory solution to your problem, you may contact the CALIFORNIA DEPARTMENT OF INSURANCE at 1-800-927-4357 (for TDD, 1-800-482-4833) or write them at:  California Department of Insurance, Consumer Communication Bureau, 300 South Spring Street, South Tower, Los Angeles, CA  90013.**

RECEIVED
OCT 2 4 2005

PREMIUM FOR CERTIFIED ACTS OF TERRORISM     $          0.00

TOTAL POLICY PREMIUM $     3,576.00

| Previous Policy Number | | | |
|---|---|---|---|
| NONE | ENTRY DATE  05-08-02 | Countersignature | Date |

These Common Policy Declarations, together with the Common Policy Conditions, Coverage Form Declarations, Coverage Forms and any endorsements issued to form a part thereof, complete the Policy numbered above.

PB 81 00 (01-01)                                                      Page 1 of 2

DIRECT BILL    LKTA        6S        INSURED COPY        UID    69    REPRINT    78  03052

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL
### SCHEDULE OF NAMED INSUREDS

Policy Number: ACP  BPH  7801069841

From 04-04-02

Policy Period:
To 04-04-03

Named Insured:

**ACDW PROPERTIES/GIANNELLA PROPERTIES
4-WAY FARMS, A CALIFORNIA CORPORATION**

**AMCO INSURANCE COMPANY**

**IN WITNESS WHEREOF** the Company has caused this policy to be signed by its president and secretary and countersigned on the declarations page by a duly authorized representative of the company.

SECRETARY

PRESIDENT

SP0002 (01-01)

ACP BPH 7801069841

INSURED COPY

78    03054

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL
### PROPERTY DECLARATIONS

Policy Number:  ACP BPH 7801069841

Policy Period:
From 04-04-02 To 04-04-03

Description of Premises Number: 001    Building Number: 001    Construction: FRAME
Premises Address  1800 SOUTH MAPLE                ESCONDIDO        CA
Occupancy  OO    Classification: APT - MULTIPLE 5+ UNIT BLDGS
Described as:  5 BLDGS/6 UNITS PER BLDG/30 UNITS TOTAL/$400,000 PER BLDG.

---

**WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".**

The Property Coverage provided at this premises is subject to a **$ 1,000** Deductible, unless otherwise stated.

| COVERAGES | | LIMITS OF INSURANCE |
|---|---|---|
| Building - Blanket Limit - Replacement cost | | $2,000,000 |
| Business Personal Property - | | |

**ADDITIONAL COVERAGES - the Coverage Form includes other Additional Coverages not shown.**

| | |
|---|---|
| Business Income - Actual Loss Sustained - 12 Months - No Deductible - 60 Day Ordinary Payroll Limit | INCLUDED |
| Extra Expense - Actual Loss Sustained - 12 Months - No Deductible | INCLUDED |
| Equipment Breakdown | INCLUDED |
| Automatic Increase in Insurance - Building | 4% |
| Automatic Increase in Insurance - Business Personal Property | 2.9% |
| Back Up of Sewer and Drain Water (limit shown per Building, subject to $25,000 policy aggregate) | $5,000 |
| Appurtenant Structures - 10% of Building Limit of Insurance - maximum $50,000 any one structure | INCLUDED |
| Increased Cost of Construction | $10,000 |

| OPTIONAL INCREASED LIMITS | Included Limit | Additional Limit | |
|---|---|---|---|
| Account Receivable | $10,000 | | $10,000 |
| Valuable Papers and Records (At the Described Premises) | $10,000 | | $10,000 |
| Forgery and Alteration | $2,500 | | $2,500 |
| Money and Securities - Inside the Premises | $10,000 | | $10,000 |
| Outside the Premises (Limited) | $10,000 | | $10,000 |
| Outdoor Signs | $2,500 | | $2,500 |
| Outdoor Trees, Shrubs, Trees and Lawns | $10,000 | | $10,000 |
| Equipment Breakdown - sub limit for Computers | $50,000 | | $50,000 |
| Tenant Glass - The deductible for this coverage is $250 | $1,000 | | $1,000 |
| Business Personal Property Away From Premises | $15,000 | | $15,000 |
| Business Personal Property Away From Premises - Transit | $15,000 | | $15,000 |

**OPTIONAL COVERAGES - Other frequently purchased coverage options.**

| | |
|---|---|
| Employee Dishonesty | NOT PROVIDED |
| Ordinance or Law - 1 - Loss to Undamaged Portion | NOT PROVIDED |
| 2 - Demolition Cost and Broadened Increased Cost of Construction | NOT PROVIDED |

**PROTECTIVE SAFEGUARDS**
This premise has one or more PROTECTIVE SAFEGUARDS Identified by symbols herein. Insurance at this premise will be suspended if you do not notify us immediately if any of these safeguards are Impaired.
See PB 04 30 for a description of each symbol. APPLICABLE SYMBOLS:  NOT APPLICABLE

**PB 81 01 (01-01)**

DIRECT BILL    LKTA          89        INSURED COPY          UID    89    REPRINT    78  03055

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL
### LIABILITY DECLARATIONS

Policy Number: ACP  BPH  7801069841

Policy Period:
From 04-04-02   To 04-04-03

---

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

---

**COVERAGES**

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| Liability and Medical Payments | Per Occurrence | $2,000,000 |
| Medical Payments Coverage Sub Limit | Per Person | $5,000 |
| Tenants Property Damage Legal Liability Sub Limit | Per Covered Loss | $300,000 |
| Personal and Advertising Injury | Per Person Or Organization | $2,000,000 |
| Products - Completed Operations Aggregate | All Occurrences | $4,000,000 |
| General Aggregate | All Occurrences | $4,000,000 |
| (Other than Products - Completed Operations) | | |

**AUTOMATIC ADDITIONAL INSUREDS STATUS**

The following persons or organizations are automatically insureds when you and they have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy.

| | |
|---|---|
| Co-Owners of Insured Premises | Included in Liability & Medical Payments Limit |
| Controlling Interest | Included in Liability & Medical Payments Limit |
| Grantor of Franchise or License | Included in Liability & Medical Payments Limit |
| Lessors of Leased Equipment | Included in Liability & Medical Payments Limit |
| Managers or Lessors of Leased Premises | Included in Liability & Medical Payments Limit |
| Mortgagee, Assignee or Receiver | Included in Liability & Medical Payments Limit |
| Owners or Other Interest from Whom Land has been Leased | Included in Liability & Medical Payments Limit |
| State or Political Subdivisions - Permits Relating to Premises | Included in Liability & Medical Payments Limit |

**PROPERTY DAMAGE DEDUCTIBLE**

NONE

**OPTIONAL COVERAGES**

NONE PROVIDED

PB 81 03 (01-01)

DIRECT BILL    LKTA          SS          INSURED COPY              UID    89    REPRINT    7B  03058

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

BUSINESSOWNERS
PB AI 09 (01-01)

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS MORTGAGEE, ASSIGNEE OR RECEIVER

**Person or Organization Designated as an Additional Insured:**

**SOUTH MAPLE STREET, LLC, A CA LTD. LIAB. CO.
419 19TH ST, SAN DIEGO, CA 92102**

**Designated Premises:**

**1800 SOUTH MAPLE
ESCONDIDO        CA 920250000**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II, WHO IS AN INSURED provides as follows:

> Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

> <u>Mortgagee, Assignee or Receiver</u>

> Any person or organization who has status as mortgagee, assignee or receiver of your property is an additional insured, but only with respect to their liability as mortgagee, assignee or receiver arising out of your ownership, maintenance, or use of such premises, subject to the following additional exclusion:

> This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

> HOWEVER, their status as additional insured under this policy ends when their status as mortgagee, assignee or receiver ends.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured        **ACDW PROPERTIES/GIANNELLA PROPERTIES**

Issuing Company:    **AMCO INSURANCE COMPANY**

Policy Number:      **ACP BPH 7801069841**

Policy Term:        **04-04-02 To 04-04-03**

Limits of Insurance:  **Per Occurrence        $2,000,000
All Occurrences       $4,000,000**

**PB AI 09 (01-01)**

ACP BPH 7801069841                    INSURED COPY                        78    03125

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS
PB AI 02 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS MANAGERS OR LESSORS OF LEASED PREMISES

**Person or Organization Designated as an Additional Insured:**

**Designated Premises (Part Leased to the Named Insured):**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

> Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

**Managers or Lessors of Leased Premises**

> Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of that part of the premises leased to you, subject to the following additional exclusion:

> This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

> HOWEVER, their status as additional insured under this policy ends when you cease to be a tenant of such premises.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

| | |
|---|---|
| **Named Insured** | **ACDW PROPERTIES/GIANNELLA PROPERTIES** |

| | | |
|---|---|---|
| **Issuing Company:** | **AMCO INSURANCE COMPANY** | |
| **Policy Number:** | **ACP BPH 7801069841** | |
| **Policy Term:** | **04-04-02 To 04-04-03** | |
| **Limits of Insurance:** | **Per Occurrence** | **$2,000,000** |
| | **All Occurrences** | **$4,000,000** |

**PB AI 02 (01-01)**

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL

FORMS AND ENDORSEMENTS SUMMARY

Policy Number: ACP  BPH  7801069841                    From 04-04-02

Policy Period:
To 04-04-03

| FORM NUMBER | | TITLE |
|---|---|---|
| LI0021 | 0101 | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PB0002 | 0101 | PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM |
| PB0006 | 0101 | PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM |
| PB0009 | 0101 | PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS |
| PB2999 | 0102 | EXCLUSION - FUNGI OR BACTERIA    † FORM IN 71 BG |
| PB9004 | 0101 | CALIFORNIA AMENDATORY ENDORSEMENT |

PB 81 03 (01-01)

INSURED COPY

78  03057

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL
### SCHEDULE OF MORTGAGEES AND LOSS PAYEES

Policy Number:  ACP BPH 7801059841

Policy Period:
From  04-04-02 To  04-04-03

WELLS FARGO BANK,
ITS SUCCESSORS AND/OR ASSIGNS                                    MORTGAGEE
P.O. BOX 7674
SAN FRANCISCO, CA    94391

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

BUSINESSOWNERS
PB 00 02 (01-01)

# PREMIER BUSINESSOWNERS
# PROPERTY COVERAGE FORM

## TABLE OF CONTENTS

A.  COVERAGES ........................................................................... 2
  1.  COVERED PROPERTY .......................................................... 2
  2.  PROPERTY NOT COVERED .................................................... 3
  3.  COVERED CAUSES OF LOSS .................................................. 3
  4.  LIMITATIONS ................................................................... 3
  5.  ADDITIONAL COVERAGES ..................................................... 3
    a.  Debris Removal ............................................................. 4
    b.  Preservation of Property .................................................. 4
    c.  Fire Department Service Charge ......................................... 5
    d.  Fire Extinguisher Recharge .............................................. 5
    e.  Collapse ..................................................................... 5
    f.  Water Damage, Other Liquids, Powder or Molten Material Damage ... 5
    g.  Business Income ............................................................ 6
    h.  Extra Expense .............................................................. 7
    i.  Pollutant Clean Up and Removal ........................................ 8
    j.  Civil Authority .............................................................. 8
    k.  Money Orders and Counterfeit Paper Currency ....................... 8
    l.  Forgery and Alteration .................................................... 9
    m.  Increased Cost of Construction ......................................... 9
    n.  Exterior Building Glass .................................................... 10
    o.  Equipment Breakdown .................................................... 11
    p.  Arson Reward for Conviction ............................................ 13
    q.  Money and Securities ..................................................... 13
    r.  Appurtenant Structures ................................................... 14
    s.  Back Up of Sewer or Drain Water Damage ............................ 14
    t.  Dependent Properties - Business Income ............................... 15
  6.  COVERAGE EXTENSIONS ..................................................... 15
    a.  Newly Acquired Or Constructed Property ............................. 15
    b.  Newly Acquired Locations - Business Income ......................... 15
    c.  Personal Property Off Premises ......................................... 16
    d.  Outdoor Trees, Shrubs, Plants, and Lawns ........................... 16
    e.  Outdoor Signs .............................................................. 16
    f.  Personal Effects ........................................................... 17
    g.  Valuable Papers and Records ............................................ 17
    h.  Accounts Receivable ...................................................... 17
    i.  Salespersons Samples .................................................... 18
    j.  Business Income and Extra Expense - Increased Period of Restoration
        Due to Ordinance or Law ................................................ 18
    k.  Removal Permit ............................................................ 19
B.  EXCLUSIONS ...................................................................... 19
C.  LIMIT OF INSURANCE ........................................................... 23
D.  DEDUCTIBLES ..................................................................... 24
E.  PROPERTY LOSS CONDITIONS ................................................ 24
F.  PROPERTY GENERAL CONDITIONS ........................................... 29
G.  OPTIONAL COVERAGES ........................................................ 30
  1.  Employee Dishonesty Optional Coverage ................................. 30
  2.  Ordinance or Law Optional Coverage ..................................... 31
  3.  Optional Amendment of Coverage - Exclude Theft ...................... 33
H.  PROPERTY DEFINITIONS ....................................................... 34

PB 00 02 (01-01)

Page 1 of 38

PB 00 02 (01-01)

# PREMIER BUSINESSOWNERS
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section H. PROPERTY DEFINITIONS.

## A. COVERAGES

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. COVERED PROPERTY

Covered Property, as used in this policy, means Buildings and Business Personal Property as described in paragraphs a. and b. In this section A.1., if a Limit of Insurance is shown in the Declarations for that type of property.

HOWEVER, there is no coverage for property described under A.2. PROPERTY NOT COVERED, unless an exception is stated for that property.

a. **Buildings,** meaning the buildings and structures at the premises described in the Declarations, including:

1) Completed additions;

2) Fixtures, including outdoor fixtures;

3) Permanently installed:

a) Machinery;

b) Equipment; and

c) Tanks, including pumps;

4) Your personal property in apartments or rooms furnished by you as landlord;

5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

a) Fire extinguishing equipment;

b) Outdoor furniture;

c) Floor coverings;

d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and

e) Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, mast and towers;

6) If not covered by other insurance:

a) Additions under construction, alterations and repairs to the buildings or structures;

b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures; and

7) Garages, storage buildings, spas, swimming pools, fences, retaining walls or other appurtenant structures usual to your business, but only if:

a) Coverage is not provided for such structures under the Appurtenant Structures Additional Coverage; and

b) Such structures are then described in the Declarations.

b. **Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following:

1) Personal property you own that is used in your business, including but not limited to furniture, fixtures, machinery, equipment and "stock";

---

PB 00 02 (01-01)

ACP BPH 7801068841

INSURED COPY

Page 2 of 38

78    03060

PB 00 02 (01-01)

2) Personal property of others that is in your care, custody or control, except as otherwise provided in Condition 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS.

3) Tenant improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

a) Made a part of the building or structure you occupy but do not own; and

b) You acquired or made at your expense but cannot legally remove; and

4) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under paragraph 2) personal property of others above.

2. **PROPERTY NOT COVERED**

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in:

1) Money and Securities Additional Coverage; or

2) Employee Dishonesty under Section G. OPTIONAL COVERAGES;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops;

e. Outdoor signs (other than signs attached to the buildings), trees, shrubs, plants or lawns (other than "stock" of trees, shrubs or plants), all except as provided in the:

1) Outdoor Trees, Shrubs, Plants and Lawns Coverage Extension; or

2) Outdoor Signs Coverage Extension;

f. Watercraft (including motors, equipment and accessories) while afloat;

g. Gasoline or diesel fuel contained in above ground or underground storage tanks;

h. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect it or not) from that other insurance;

i. The cost to research, replace or restore the information on "valuable papers and records", including those which exist on "electronic media or records", except as provided in the Valuable Papers Coverage Extension;

j. Grain, hay, straw or other crops while outside of buildings; or

k. Exterior building glass, except as provided in the Exterior Building Glass Additional Coverage.

3. **COVERED CAUSES OF LOSS**

This Coverage Form insures against Risks Of Direct Physical Loss unless the loss is:

a. Excluded in Section B. EXCLUSIONS;

b. Limited in Paragraph A.4. LIMITATIONS in this section; or

c. Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section G. PROPERTY GENERAL CONDITIONS;

that follow.

4. **LIMITATIONS**

a. We will not pay for loss of or damage to:

1) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to Money and Securities Additional Coverage.

2) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

3) Fences, spas, outdoor swimming pools and related equipment, re-

ACP BPH 7801059841                    INSURED COPY

PB 00 02 (01-01)

taining walls, pavements, bulkheads, pillars, wharves or docks caused by freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by wind or not.

4) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

b. We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by one of the "specified causes of loss" or building glass breakage. This limitation does not apply to:

1) Glass that is part of the interior of a building or structure;

2) Containers of property held for sale; or

3) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown:

1) $2,500 for furs, fur garments and garments trimmed with fur.

2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $250 or less per item.

3) $2,500 for patterns, dies, molds and forms.

5. **ADDITIONAL COVERAGES**

  a. **Debris Removal**

    1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    2) The most we will pay under this Debris Removal Additional Coverage is:

      a) 25% of the amount we pay for the direct physical loss of or damage to Covered Property; plus

      b) The deductible in this policy applicable to that loss or damage.

    This Debris Removal Additional Coverage will not increase the Limits of Insurance provided by this policy.

    HOWEVER, this limitation does not apply to any additional debris removal limit provided in paragraph 4) below.

    3) This Debris Removal Additional Coverage does not apply to costs to:

      a) Extract "pollutants" from land or water;

      b) Remove, restore or replace polluted land or water; or

      c) Extract "pollutants" from Covered Property.

    4) If:

      a) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

      b) The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph 2) above;

PB 00 02 (01-01)

we will pay up to an additional $25,000 for each premises in any one occurrence under this Debris Removal Additional Coverage.

b. **Preservation of Property**

1) If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

    a) While it is being moved or while temporarily stored at another premises; and

    b) Only if the loss or damage occurs within 45 days after the property is first moved.

2) This Preservation of Property Additional Coverage will not increase the Limits of Insurance provided by this policy.

c. **Fire Department Service Charge**

1) When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for your liability for fire department service charges:

    a) Assumed by contract or agreement prior to loss; or

    b) Required by local ordinance.

2) The limit for this Fire Department Service Charge Additional Coverage is in addition to the Limits of Insurance.

3) No deductible applies to this Fire Department Service Charge Additional Coverage.

d. **Fire Extinguisher Recharge**

1) We will pay the expense you incur to recharge portable fire extinguishers when used to combat a covered fire.

2) This Fire Extinguisher Recharge Additional Coverage is not subject to the Limits of Insurance.

3) No deductible applies to this Fire Extinguisher Recharge Additional Coverage.

e. **Collapse**

1) With respect to buildings:

    a) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of a building cannot be occupied for its intended purpose;

    b) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

    c) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of a building; and

    d) A building that is standing, or any part of a building that is standing, is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2) We will pay for direct physical loss of or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if the collapse is caused by one or more of the following:

    a) The "specified causes of loss" or breakage of building glass, all only as insured against in this policy;

    b) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

    c) Insect or vermin damage that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

ACP BPH 7801089841                    INSURED COPY

78    03083

d)  Weight of people or personal property;

e)  Weight of rain, ice, hail or snow that collects on a roof;

f)  Use of defective material or methods in construction, re-modeling or renovation if the collapse occurs during the course of the construction, re-modeling or renovation.

    HOWEVER, if the collapse oc-curs after construction, re-modeling, or renovation is complete and is caused at least in part by a cause of loss listed in 2)a) through 2)e) above, we will pay for the loss or damage even if use of de-fective material or methods, in construction, remodeling, or renovation, contributes to the collapse.

3)  With respect to the following prop-erty:

    a)  Outdoor radio or television antennas (including satellite dishes) and their lead-in wir-ing, mast or towers;

    b)  Awnings, gutters and downspouts;

    c)  Yard fixtures;

    d)  Outdoor swimming pools;

    e)  Fences;

    f)  Bulkheads, pilings, piers, wharves and docks;

    g)  Beach or diving platforms or appurtenances;

    h)  Retaining walls; and

    i)  Walks, roadways and other paved surfaces;

    If the collapse is caused by a cause of loss listed in 2)b) through 2)f) above, we will pay for loss or damage to that property in a) through i) above only if:

    i)  Such loss or damage is a di-rect result of the collapse of a building insured under this policy; and

ii)  The property is Covered Property under this policy.

4)  If personal property abruptly falls down or caves in and such col-lapse is not the result of collapse of a building or any part of a building, we will pay for loss of or damage to Covered Property caused by such collapse of per-sonal property only if:

    a)  The collapse was caused by a Cause of Loss listed in 2)a) through 2)f) above;

    b)  The personal property which collapses is inside a building; and

    c)  The property which collapses is not of a kind listed in 3) above, regardless of whether that kind of property is con-sidered to be personal prop-erty or real property.

    The coverage stated in this para-graph 4) does not apply to per-sonal property if marring and/or scratching is the only damage to that personal property caused by collapse.

    Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5)  This Collapse Additional Coverage will not increase the Limits of In-surance provided in this policy.

f.  **Water Damage, Other Liquids, Powder Or Molten Material Damage**

1)  If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the build-ing or structure to repair damage to the system or appliance from which the water or other sub-stance escapes.

2)  We will not pay the cost to repair any defect that caused the loss or damage except as provided in the Equipment Breakdown Additional Coverage; but we will pay the cost

to repair or replace damaged parts of fire extinguishing equipment if the damage:

    a) Results in discharge of any substance from an automatic fire protection system; or

    b) Is directly caused by freezing.

3) This Water Damage Additional Coverage will not increase the Limits of Insurance provided in this policy.

g. **Business Income**

1) **Business Income with Ordinary Payroll Limitation**

    a) We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

    b) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

        i) The portion of the building which you rent, leases or occupy; and

        ii) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to the described premises.

    c) We will only pay for loss of "business income" that you

sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for "ordinary payroll expenses" for 60 days following the date of direct physical loss or damage.

2) **Extended Business Income**

    a) If the necessary suspension of your "operations" produces a "business income" loss payable under this policy, we will pay for the actual loss of "business income" you incur during the period that:

        i) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

        ii) Ends on the earlier of:

            i. The date you could restore your "operations" with reasonable speed, to the level which would generate the "business income" amount that would have existed if no direct physical loss or damage had occurred; or

            ii. Sixty (60) consecutive days after the date determined in 2)a)i) above.

    HOWEVER, Extended Business Income does not apply to loss of "business income" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

    b) Loss of "business income" must be caused by direct physical loss or damage at the described premises

PB 00 02 (01-01)

caused by or resulting from any Covered Cause of Loss.

3) This Business Income Additional Coverage is not subject to the Limits of Insurance.

h. **Extra Expense**

1) We will pay necessary "extra expense" you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

a) The portion of the building which you rent, lease or occupy; and

b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

3) We will only pay for "extra expense" that occurs within 12 consecutive months after the date of direct physical loss or damage.

4) This Extra Expense Additional Coverage is not subject to the Limits of Insurance.

i. **Pollutant Clean Up And Removal**

1) We will pay your expense to extract "pollutants" from land, water or Covered Property at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

2) This Pollutant Clean Up And Removal Additional Coverage does not apply to:

a) Costs to test for, monitor or assess the existence, concentration or effects of "pollutants"; or

b) Any penalties or assessments that may be charged against you due to any statute, regulation or ordinance.

But we will pay for testing which is performed in the course of extracting the "pollutants" from land or water.

3) The most we will pay for each location under this Pollutant Clean Up And Removal Additional Coverage is $25,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

4) The limit for this Pollutant Clean Up And Removal Additional Coverage is in addition to the Limits of Insurance.

j. **Civil Authority**

1) We will pay for the actual loss of "business income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

2) The coverage for "business income" will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

3) The coverage for necessary "extra expense" will begin immediately after the time of that action and ends:

    a)   3 consecutive weeks after the time of that action; or

    b)   When your "business income" coverage ends;

whichever is later.

4)   This Civil Authority Additional Coverage is not subject to the Limits of Insurance.

k.   **Money Orders And Counterfeit Paper Currency**

1)   We will pay for loss due to the good faith acceptance of:

    a)   Any U.S. or Canadian post-office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

    b)   Counterfeit United States or Canadian paper currency;

    In exchange for merchandise, "money" or services or as part of a normal business transaction.

2)   The most we will pay for any loss under this Money Orders And Counterfeit Paper Currency Additional Coverage is $1,000.

3)   The limit for this Money Orders And Counterfeit Paper Currency Additional Coverage is in addition to the Limits of Insurance.

l.   **Forgery And Alteration**

1)   We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

2)   If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

3)   The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

4)   The limit for this Forgery And Alteration Additional Coverage is in addition to the Limits of Insurance.

m.   **Increased Cost Of Construction**

1)   This Additional Coverage applies only to buildings insured on a replacement cost basis.

2)   In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement or damaged parts of that property, subject to the limitations stated in paragraphs 3) through 9) of this Increased Cost Of Construction Additional Coverage.

3)   The ordinance or law referred to in paragraph 2) of this Increased Cost Of Construction Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

4)   Under this Increased Cost Of Construction Additional Coverage, we will not pay any costs due to an ordinance or law that:

    a)   You were required to comply with before the loss, even when the building was undamaged; and

    b)   You failed to comply with.

5)   Under this Increased Cost Of Construction Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

ACP BPH 7801069841                INSURED COPY

PB 00 02 (01-01)

6) The most we will pay under this Increased Cost Of Construction Additional Coverage, for each described building insured under this Coverage Form, is $10,000.

The limit for this Increased Cost Of Construction Additional Coverage is in addition to the Limits of Insurance.

7) With respect to this Increased Cost Of Construction Additional Coverage:

a) We will not pay any costs:

i) Until the property is actually repaired or replaced, at the same or another premises; and

ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises for a building of like, kind and quality and of the same size and use.

8) This Increased Cost Of Construction Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Increased Cost Of Construction Additional Coverage.

9) The costs addressed in Condition 5. Loss Payment of Section E. PROPERTY LOSS CONDITIONS do

not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Increased Cost Of Construction Additional Coverage, as stated in paragraph 6) above, is not subject to such limitation.

n. **Exterior Building Glass**

1) We will pay for direct physical loss of or damage to glass, including lettering or ornamentation, that is part of the exterior of a covered building or structure at the described premises. The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

a) Expenses incurred to put up temporary plates or board up openings;

b) Repair or replacement of encasing frames; and

c) Expenses incurred to remove or replace obstructions.

2) Paragraph A.3., COVERED CAUSES OF LOSS and Section B., EXCLUSIONS do not apply to this Exterior Building Glass Additional Coverage, except for:

a) Paragraph B.1.b., Earth Movement;

b) Paragraph B.1.c., Governmental Action;

c) Paragraph B.1.d., Nuclear Hazard;

d) Paragraph B.1.f., War And Military Action; and

e) Paragraph B.1.g., Water.

3) Exclusions. We will not pay for loss or damage caused by or resulting from:

a) Wear and tear;

b) Hidden or latent defect;

c) Corrosion; or

d) Rust.

ACP BPH 7801068841                    INSURED COPY

78   03088

PB 00 02 (01-01)

4) The most we pay under this Exterior Building Glass Additional Coverage is the Building Limit of Insurance shown in the Declarations.

HOWEVER, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property, the most we will pay under this Exterior Building Glass Additional Coverage is the Tenant's Exterior Building Glass Limit of Insurance shown in the Declarations.

o. **Equipment Breakdown**

1) We will pay for loss caused by or resulting from an "accident" to "covered equipment".

If an initial "accident" causes other "accidents", all will be considered one "accident". All "accidents" that are the result of the same event will be considered one "accident".

2) The following coverages also apply to loss caused by or resulting from an "accident" to "covered equipment". These coverages do not provide additional amounts of insurance.

a) **Expediting Expenses**

With respect to your damaged Covered Property, we will pay, up to $50,000, the reasonable extra cost to:

i) Make temporary repairs; and

ii) Expedite permanent repairs or replacement.

b) **Hazardous Substances**

We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

Additional costs mean those beyond what would have been

required had no "hazardous substance" been involved.

The most we will pay for loss or damage under this coverage, including actual loss of "business income" you sustain, necessary "extra expense" you incur and loss under Perishable Goods coverage, is $50,000.

c) **Perishable Goods**

i) We will pay for your loss of "perishable goods" due to spoilage.

ii) We will also pay for your loss of "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

iii) We will also pay necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

iv) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with Condition 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS.

The most we will pay for loss or damage under this coverage is $50,000.

PB 00 02 (01-01)

ACP BPH 7801069841                          INSURED COPY

Page 11 of 38

78    03069

PB 00 02 (01-01)

d) **Computer Equipment**

We will pay for loss or damage caused by or resulting from an "accident" to "computer equipment".

"Computer equipment" used primarily to control or operate "covered equipment" is not subject to the following provision.

The most we will pay for loss or damage under this coverage is $50,000, including actual loss of "business income" you sustain and necessary "extra expense" you incur, unless a higher Limit of Insurance for "computer equipment" breakdown is shown in the Declarations.

e) **CFC Refrigerants**

We will pay for the additional cost to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances. This means the additional expense to do the least expensive of the following:

i) Repair the damaged property and replace any lost CFC refrigerant;

ii) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

iii) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

The most we will pay for loss or damage under this coverage, including actual loss of "business income" you sus-

tain, necessary "extra expense" you incur and loss under Perishable Goods coverage, is $50,000.

f) **Service Interruption**

The insurance provided under the Business Income Additional Coverage, the Extra Expense Additional Coverage and for c) Perishable Goods in this Equipment Breakdown Additional Coverage, is extended to apply to loss caused by or resulting from an "accident" to equipment that is owned by a utility, landlord, or other supplier with whom you have a contract to provide you with any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

g) **Data Restoration**

We will pay for your cost to research, replace and restore data, including programs and operating systems, that is lost or corrupted due to an "accident" to "computer equipment".

The most we will pay for such costs under this data restoration coverage, including actual loss of "business income" you sustain and necessary "extra expenses" you incur, is $50,000.

h) **Environmental, Safety and Efficiency Improvements**

The following provision does not apply to property insured on an "actual cash value" basis.

If "covered equipment" requires replacement due to loss or damage caused by or resulting from an "accident", we will pay your additional cost to replace with equipment that is better for the environment, more efficient or

PB 00 02 (01-01)

safer than the equipment being replaced.

HOWEVER, we will not pay more under this additional coverage than 125% of what it would have cost to repair or replace damaged "covered equipment" with like kind and quality.

3) **Additional Exclusions**

a) We will not pay under this Equipment Breakdown Additional Coverage for loss or damage caused by or resulting from:

i) Your failure to use all reasonable means to protect the "perishable goods" from damage following an "accident";

ii) Any defect, virus, loss of data or other situation within "electronic media and records". But if loss or damage from an "accident" results, we will pay for that resulting loss or damage; or

iii) Any of the following tests:

I. A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

II. An insulation breakdown test of any type of electrical equipment.

b) With resp    (to c) Perishable Goods cc    age and f) Service Interr    on coverage, we will not p    or loss or damage caus    by or resulting from:    ; lightning; windstorm    hail; explosion (except    steam or centrifugal    plosion); smoke; aircraft o    ehicles; riot or civil com    ion; vandalism; sprinkler    age; falling objects; wei    of snow, ice or sleet; free    or collapse.

4) **Additional Conditions**

a) **Suspension**

When any "covered equipment" is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment". We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us.

b) **Jurisdictional Inspections**

If any property that is "covered equipment" under this Equipment Breakdown Additional Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

5) The most we will pay for loss or damage under this Equipment Breakdown Additional Coverage is the applicable Limit of Insurance shown in the Declarations.

This Equipment Breakdown Additional Coverage will not increase the Limits of Insurance provided by this policy.

p. **Arson Reward for Conviction**

1) In the event that a covered fire loss was the result of an act of arson, we will pay a reward to anyone, other than paid investigators, who gives legal authorities information that leads to the conviction of anyone who committed such arson.

2) We will pay up to 10 percent of the amount of the insured fire loss or $10,000, whichever is less. This payment is the most we will pay in any one occurrence, regardless of

PB 00 02 (01-01)

the number of persons providing information or convicted of arson.

3) The limit for this Arson Reward for Conviction Additional Coverage is in addition to the Limits of Insurance.

4) No deductible applies to this Arson Reward for Conviction Additional Coverage.

q. **Money and Securities**

1) We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit by direct route between any of these places, resulting directly from:

a) Theft, meaning any act of stealing;

b) Disappearance; or

c) Destruction.

2) In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

a) Resulting from accounting or arithmetical errors or omissions;

b) Due to the giving or surrendering of property in any exchange or purchase;

c) Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device; or

d) From an unattended motor vehicle.

3) The most we will pay under this Money and Securities Additional Coverage for loss in any one occurrence is:

a) Inside the Premises, $10,000 for "money" and "securities" while:

i) In or on the described premises; or

ii) Within a bank or savings institution;

unless a higher Limit of Insurance for "money" and "securities" inside the premises is shown in the Declarations; and

b) **Outside the Premises** (Limited - loss from an unattended motor vehicle is excluded), $10,000 for "money" and "securities" while anywhere else, unless a higher Limit of Insurance for "money" and "securities" outside the premises is shown in the Declarations.

4) All loss:

a) Caused by one or more persons; or

b) Involving a single act or series of related acts;

is considered one occurrence.

5) You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

6) The limit for this Money and Securities Additional Coverage is in addition to the Limits of Insurance.

r. **Appurtenant Structures**

1) We will pay for direct physical loss of or damage to any separate garages, storage buildings, swimming pools, spas, fences, retaining walls and other appurtenant structures usual to your business at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

2) The most we will pay for loss or damage under this Appurtenant Structures Additional Coverage in any one occurrence is 10% of the Building Limit of Insurance shown in the Declarations for that described premises.

HOWEVER, if the value of any one garage, storage building, swim-

PB 00 02 (01-01)

ming pool, spa, fence, retaining wall or other appurtenant structure exceeds $50,000, this Appurtenant Structures Additional Coverage does not apply to that structure.

3) The limit for this Appurtenant Structures Additional Coverage is in addition to the Limits of Insurance.

s. **Back Up Of Sewer Or Drain Water Damage**

1) For the purpose of the Back Up Of Sewer Or Drain Water Damage Additional Coverage the following definition is added;

"Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas from:

a) The unusual and rapid accumulation or runoff of surface waters from any source;

b) The overflow of inland or tidal waters; or

c) Waves, tides or tidal waves.

2) We will pay for loss of or damage to Covered Property caused by water that backs up from a sewer or drain, sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water.

HOWEVER, we will not pay for loss or damage that results from sewer backup or sump pump overflow that occurs during the period beginning 10 days before and ending 10 days after a "flood" on the insured premises.

3) The most we will pay for loss or damage under this coverage is:

a) $5,000 per building; or

b) $25,000 in any one policy period, regardless of the number of losses.

4) The limit of of insurance that applies to coverage under this Back Up Of Sewer Or Drain Water Damage Additional Coverage includes

any loss arising from Business Income Additional Coverage and Extra Expense Additional Coverage.

5) The limit for this Back Up Of Sewer Or Drain Water Damage Additional Coverage is in addition to the Limits of Insurance.

t. **Dependent Properties - Business Income**

1) We will pay for the actual loss of "business income" you sustain due to necessary and unavoidable suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to "dependent property" caused by or resulting from any Covered Cause of Loss.

2) We will only pay for loss of "business income" that occurs within 12 consecutive months after the date of direct physical loss or damage.

3) This Dependent Properties - Business Income Additional Coverage is not subject to the Limits of Insurance.

6. **COVERAGE EXTENSIONS**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows.

a. **Newly Acquired or Constructed Property**

1) You may extend the insurance that applies to:

a) Buildings to apply to:

i) Your new buildings while being built on the described premises; and

ii) Buildings you acquire at locations, other than the described premises, intended for:

i.  Similar use as the building described in the Declarations; or

ii.  Use as a warehouse.

b)  The most we will pay for loss or damage under this Coverage Extension for buildings is $500,000 for each building.

2)  You may extend the insurance that applies to Business Personal Property to apply to that property at any location you acquire, other than at fairs or exhibitions.

The most we will pay for loss or damage under this Coverage Extension for Business Personal Property is $250,000 at each premises.

3)  Insurance under this Newly Acquired or Constructed Property Coverage Extension for each newly acquired or constructed premises will end when any of the following first occurs:

a)  This Policy expires;

b)  90 days after you acquire or begin to construct the property; or

c)  You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

b.  **Newly Acquired Locations - Business Income**

1)  You may extend the insurance that applies to Business Income Additional Coverages to apply to property at any location you newly acquire, other than temporary locations such as fairs or exhibitions, whether attended regularly or not.

2)  The most we will pay for loss under this Newly Acquired Locations - Business Income Coverage Extension is the lesser of:

a)  The actual loss of "business income" you sustain, as provided for and described under

the Business Income Additional Coverage; or

b)  $100,000.

3)  This insurance will end the earlier of:

a)  The policy expiration date;

b)  90 days after you acquire the property; or

c)  You report the property to us.

We will charge you any additional premium from the date you acquire the property.

c.  **Personal Property Off Premises**

You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than "money", "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or temporarily at a premises you do not own, lease or operate.

The most we will pay for loss or damage under this Personal Property Off Premises Coverage Extension is $15,000.

d.  **Outdoor Trees, Shrubs, Plants, and Lawns**

1)  You may extend the insurance provided by this policy to apply to your outdoor trees, shrubs, plants, and lawns (other than "stock"), including debris removal expense, caused by or resulting from any of the following Causes of Loss:

Fire; Lightning; Explosion; Aircraft or vehicles; Riot or civil commotion; Vandalism; or Theft.

2)  The most we will pay for loss or damage under this Outdoor Trees, Shrubs, Plants, and Lawns Coverage Extension is $10,000 in any one occurrence, unless a higher limit for outdoor trees, shrubs, plants, and lawns is shown in the Declarations.

3)  The Debris Removal Additional Coverage does not apply to this

Outdoor Trees, Shrubs, Plants, and Lawns Coverage Extension.

e. **Outdoor Signs**

1) You may extend the insurance provided by this policy to apply to your outdoor signs, including debris removal expense, caused by or resulting from risks of direct physical loss or damage.

HOWEVER, we will not pay for loss or damage caused by or resulting from any of the following causes of loss:

a) Wear and tear;

b) Hidden or latent defect;

c) Rust; or

d) Corrosion.

2) The most we will pay for loss or damage under this Outdoor Signs Coverage Extension is $2,500 in any one occurrence, unless a higher limit for outdoor signs is shown in the Declarations.

3) The Debris Removal Additional Coverage does not apply to this Outdoor Signs Coverage Extension.

f. **Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or your employees.

HOWEVER, personal effects does not include:

1) Tools or equipment used in your business; or

2) "Money", "securities" or jewelry.

The most we will pay for loss or damage under this Personal Effects Coverage Extension is $10,000 in any one occurrence, but not more than $500 for the personal effects of any one individual.

g. **Valuable Papers and Records**

1) You may extend the insurance that applies to Business Personal

Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Valuable Papers And Records Coverage Extension includes the cost to research lost information on "valuable papers and records", including those which exist on "electronic media and records", for which duplicates do not exist.

2) This Valuable Papers And Records Coverage Extension does not apply to:

a) Property held as samples or for delivery after sale;

b) Property in storage away from the premises shown in the Declarations.

3) The most we will pay under this Valuable Papers And Records Coverage Extension for loss of or damage to "valuable papers and records", including those which exist on "electronic media and records", in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

HOWEVER, for "valuable papers and records", including those which exist on "electronic media and records", not at the described premises, the most we will pay is:

a) $2,500; or

b) 25% of the "valuable papers and records" limit;

whichever is higher.

4) Section B. EXCLUSIONS of this Coverage Form does not apply to this Valuable Papers And Records Coverage Extension except for:

a) Paragraph B.1.c., Governmental Action;

b) Paragraph B.1.d., Nuclear Hazard;

c) Paragraph B.1.f., War And Military Action;

ACP BPH 7801068841                    INSURED COPY

d) Paragraph B.2.e., Dishonesty;

e) Paragraph B.2.f., False Pretense;

f) Paragraph B.3.; and

g) The Accounts Receivable and "Valuable Papers And Records" Exclusions.

h. **Accounts Receivable**

1) You may extend the insurance that applies to Business Personal Property (or that applies to your Buildings, if Business Personal Property is not covered) to apply to your records of accounts receivable. We will pay:

a) All amounts due from your customers that your are unable to collect;

b) Interest charges on any loan required to offset amounts you unable to collect pending our payment of these amounts;

c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

d) Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause or Loss to your records of accounts receivable.

2) The most we will pay under this Accounts Receivable Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For records of accounts receivable not at the described premises, the most we will pay is $2,500.

3) Section B. EXCLUSIONS of this Coverage Form does not apply to this Accounts Receivable Coverage Extension except for:

a) Paragraph B.1.c., Governmental Action;

b) Paragraph B.1.d., Nuclear Hazard;

c) Paragraph B.1.f., War And Military Action;

d) Paragraph B.2.f., Dishonesty;

e) Paragraph B.2.g., False Pretense;

f) Paragraph B.3.; and

g) The Accounts Receivable and "Valuable Papers And Records" Exclusions.

i. **Salespersons Samples**

1) You may extend the insurance that applies to Business Personal Property to apply to salespersons samples while away from the described premises.

2) The most we will pay under this Salespersons Samples Coverage Extension for loss or damage in any one occurrence is $2,000.

j. **Business Income and Extra Expense - Increased Period of Restoration Due to Ordinance or Law**

If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the "period of restoration" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

1) Regulates the construction or repair of any property;

2) Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

3) Is in force at the time of loss.

k. **Removal Permit**

If Covered Personal Property is removed to a new premise that is described in the Declarations, you may extend this insurance to include that Covered Personal Property at each premises during the removal. Cover-

ACP BPH 7801069841                    INSURED COPY                    7B    03078

PB 00 02 (01-01)

age at each premises will apply in the proportion that the value at each premises bears to the value of all Covered Personal Property being removed. This permit applies up to 30 days after the date Covered Personal Property is first removed at the previous premises; after that, this Removal Permit Coverage Extension does not apply at the previous premises.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence to the loss.

   a. **Ordinance Or Law**

      The enforcement of any ordinance or law:

      1) Regulating the construction, use or repair of any property; or

      2) Requiring the tearing down of any property, including the cost of removing its debris; or

      3) Requiring the removal or disposal of "pollutants".

      This Ordinance Or Law exclusion applies whether the loss results from:

      1) An ordinance or law that is enforced even if the property has not been damaged; or

      2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

   b. **Earth Movement**

      1) Earthquake, including any earth sinking, rising or shifting related to such event;

      2) Landslide, including any earth sinking, rising or shifting related to such event;

      3) Mine subsidence, meaning subsidence of a man-made mine,

whether or not mining activity has ceased.

4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

HOWEVER, if electrical "covered equipment" requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

But if Earth Movement, as described in 1) through 4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   a) Airborne volcanic blast or airborne shock waves;

   b) Ash, dust, or particulate matter; or

   c) Lava flow.

   All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, including but not limited to radon gas, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Off-Premises Services**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

f. **War And Military Action**

1) War, including undeclared or civil war;

2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

2) Mudslide or mudflow;

3) Water that backs up or overflows from a sewer, drain or sump, except as provided under the Back Up Of Sewer Or Drain Water Damage Additional Coverage; or

4) Water under the ground surface pressing on, or flowing or seeping through:

   a) Foundations, walls, floors or paved surfaces;

   b) Basements, whether paved or not; or

   c) Doors, windows or other openings.

But if Water, as described in B.1.g.1) through B.1.g.4), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. **Consequential Losses**

Delay, loss of use or loss of market.

b. **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

c. **Leakage or Seepage**

Constant or repeated seepage or leakage of water or steam, whether continuous or intermittent from any:

1) Heating, air conditioning or refrigerating system;

2) Domestic appliance; or

3) Plumbing system, including from or around any shower stall or other shower bath installation, bathtub or other plumbing fixture.

d. **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

ACP BPH 7801069841                              INSURED COPY

1) You do your best to maintain heat in the building or structure; or

2) You drain the equipment and shut off the supply if the heat is not maintained.

e. **Dishonesty**

1) Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose.

2) This exclusion applies whether or not:

a) Such persons are acting alone or in collusion with others; or

b) Such acts occur during the hours of employment.

3) This exclusion does not apply to:

a) Acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered; or

b) Covered Property, including records of accounts receivable and "valuable papers and records", that is entrusted to others who are carriers for hire.

f. **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g. **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

h. **Collapse**

Collapse, except as provided in the Collapse Additional Coverage. But if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

i. **Pollutants**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified cause of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

j. **Other Types Of Loss**

1) Wear and tear;

2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

3) Smog;

4) Settling, cracking, shrinking, bulging or expansion;

5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

6) Soil Conditions including, but not limited to:

a) Corrosive action;

b) Chemicals, compounds, elements, suspensions or gels in the soil; or

c) The formation of crystals in the soil;

7) The following causes of loss to personal property:

a) Dampness or dryness of atmosphere;

ACP BPH 7891069941

INSURED COPY

b)   Changes in or extremes of temperature; or

c)   Marring or scratching; or

But if an excluded cause of loss that is listed in paragraphs 1) through 7) above results in a "specified cause of loss", "accident" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

3.   We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.d.  But if an excluded cause of loss that is listed in B.3.a. through B.3.d. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a.   **Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b.   **Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c.   **Negligent Work**

Faulty, inadequate or defective:

1)   Planning, zoning, development, surveying, siting;

2)   Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect the property;

3)   Materials used in repair, construction, renovation or remodeling; or

4)   Maintenance;

of part or all of any property on or off the described premises.

d.   **Errors In Data Processing:** Human errors or omissions in installing, testing, processing, recording or storing information on "electronic media and records" and electronic data processing equipment, including programming errors or faulty machine instructions.

4.   **Business Income And Extra Expense Exclusions**

We will not pay for:

a.   Any "extra expense", or increase of "business income" loss, caused by or resulting from:

1)   Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

2)   Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

b.   Any other consequential loss.

5.   **Accounts Receivable And "Valuable Papers And Records" Exclusions**

The following additional exclusions apply to the Accounts Receivable and "Valuable Papers And Records" Coverage Extensions:

a.   We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

1)   Programming errors or faulty machine instructions;

2)   Faulty installation or maintenance of data processing equipment or component parts;

But we will pay for direct loss or damage caused by lightning.

b.   Applicable to "Valuable Papers and Records" only:

We will not pay for loss or damage caused by or resulting from any errors

PB 00 02 (01-01)

or omissions in processing or copying. But if errors or omissions in processing or copying results in fire or explosion, we will pay for the direct loss or damage caused by the fire or explosion.

c. Applicable to Accounts Receivable only:

We will not pay for:

1) Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

2) Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

3) Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

## C. LIMITS OF INSURANCE

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as otherwise provided in this Section.

2. The limits applicable to Additional Coverages are in addition to the Limit of Insurance only if so indicated in that Section of this Coverage Form.

3. The limits applicable to the Coverage Extensions are in addition to the Limits of Insurance.

4. **Inflation Guard - Building**

   a. The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

   1) The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

   2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

   3) The number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

   Example:

   If The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last Policy change) is 146.

   The amount of increase is

   $100,000 x .08 x (146 / 365) = $3,200.

   c. The Inflation Guard percentage for Buildings will be the percentage selected by you at the inception date or the most recent renewal date of this policy.

5. **Inflation Guard - Business Personal Property**

   a. The Limit of Insurance for Business Personal Property will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

   1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy renewal date, or any other policy change amending the Limit of Insurance, times

   2) The percentage of increase shown in the Declarations, expressed as a decimal (example: 2% is .02), times

   3) The number of days since the beginning of the current policy year, or since the effective date of the most recent policy change amending the Business Personal Property limit, divided by 365.

ACP BPH 7801088841                    INSURED COPY                    7B    03081



Example:

If: The applicable limit is $150,000; and

The annual percentage increase is 3%; and

The number of days since the beginning of the policy year (or last policy change) is 146;

Then the amount of increase is $150,000 x .03 x (146 / 365) = $1,800.

c. The Inflation Guard percentage for Business Personal Property will be the average annual index shown in the Declarations. This percentage may change at each renewal date.

In no event will the Limit of Insurance be reduced unless you specifically request us to do so.

6. **Business Personal Property Limit - Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

1) The 12 months immediately preceding the date the loss or damage occurs; or

2) The period of time you have been in business as of the date the loss or damage occurs.

D. **DEDUCTIBLES**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under the Exterior Building Glass Additional Coverage in any one occurrence is $250.

But this $250 Deductible will not increase the Deductible shown in the Declarations. This $250 Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

a. Fire Department Service Charge;

b. Fire Extinguisher Recharge;

c. Business Income;

d. Extra Expense;

e. Civil Authority; and

f. Arson Reward for Conviction.

E. **PROPERTY LOSS CONDITIONS**

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser after receiving a written request from the other, and will advise the other party of the name of such appraiser within 20 days. The two appraisers will select an umpire. If appraisers cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss of or damage to Covered Property:

1) Notify the police if a law may have been broken.

PB 00 02 (01-01)

2) Give us prompt notice of the loss or damage. Include a description of the property involved.

3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

HOWEVER, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, amount of loss claimed and a detailed description of each item.

6) As often as may be reasonably required, permit us to inspect the damaged property and examine your books and records, including financial records and tax returns.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

8) Cooperate with us in the investigation or settlement of the claim.

9) Resume all or part of your "operations" as quickly as possible.

b. We may examine any insured or their employee under oath, while not in the presence of any other insured or employee, at such times as may be rea-

sonably required, about any matter relating to this insurance or the claim, including an insured's books and records. At our option and expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. If a written transcript is prepared of the testimony, then at our request your answers under oath must be signed under penalty of perjury.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

5. **Loss Payment**

In the event of loss or damage covered by this policy:

a. At our option, we will either:

1) Pay the value of lost or damaged property as described in e. below;

2) Pay the cost of repairing or replacing the lost or damaged property;

3) Take all or any part of the property at an agreed or appraised value; or

4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss, provided you have complied with all of the conditions set forth in paragraph 3. above.

d. We will not pay you more than your financial interest in the Covered Property.

e.  Except as provided in (2) through (10) below, we will determine the value of Covered Property as follows:

1)  At replacement cost without deduction for depreciation, subject to the following:

a)  If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts, subject to E.5.b. above:

i)  The Limit of Insurance under this policy that applies to the lost or damaged property;

ii)  The cost to replace, on the same premises, the lost or damaged property with other property:

I.  Of comparable material and quality; and

ii.  Used for the same purpose; or

iii)  The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

b)  If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance under this policy that applies to the property:

i)  The "actual cash value" of the lost or damaged property; or

ii)  A proportion of the cost to repair or replace the lost or damaged property,

after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

c)  You may make a claim for loss or damage covered by this insurance on an "actual cash value" basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an "actual cash value" basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

d)  We will not pay on a replacement cost basis for any loss or damage:

i)  Until the lost or damaged property is actually repaired or replaced; and

ii)  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

2)  If the "Actual Cash Value - Buildings" option applies, as shown in the Declarations, Paragraph 1) above does not apply to Buildings. Instead, we will determine the value of Buildings at "actual cash value".

3)  The following property at "actual cash value":

a)  Used or second-hand merchandise held in storage or for sale;

b)  Property of others, other than leased personal propety you have a contractual responsibility to insure, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

PB 00 02 (01-01)

c)   Household contents, except personal property in apartments or rooms furnished by you as landlord;

d)   Manuscripts;

e)   Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

4)   Glass at the cost of replacement with safety glazing material if required by law.

5)   Tenants' Improvements and Betterments at:

a)   Replacement cost if you make repairs promptly.

b)   A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

i)   Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

ii)   Divide the amount determined in i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

c)   Nothing if others pay for repairs or replacement.

6)   "Valuable papers and records", including those which exist on "electronic media or records" (other than prepackaged software programs), at the cost of:

a)   Blank materials for reproducing the records; and

b)   Labor to transcribe or copy the records.

This condition does not apply to "valuable papers and records" that are actually replaced or restored.

7)   Applicable only to Money and Securities Additional Coverage:

a)   "Money" at its face value; and

b)   "Securities" at their value at the close of business on the day the loss is discovered.

8)   Applicable only to Accounts Receivable:

a)   If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage, the following method will be used:

i)   Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

ii)   Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

b)   The following will be deducted from the total amount of accounts receivable, however that amount is established:

i)   The amount of the accounts for which there is no loss or damage;

ii)   The amount of the accounts that you are able to re-establish or collect;

iii)   An amount to allow for probable bad debts that you are normally unable to collect; and

iv)   All unearned interest and service charges.

ACP BPH 7801069841                    INSURED COPY

PB 00 02 (01-01)

9) "Stock" you have sold but not delivered at the selling price less expenses you otherwise would have had.

10) Business Income and Extra Expense:

a) We will determine the amount of a "business income" loss based on:

i) the net income of your business before the direct physical loss or damage occurred;

ii) the likely net income of your business if no physical loss or damage occurred, but not including any likely increase in net income attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

iii) the operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

iv) other relevant sources of information, including:

I. financial records and accounting procedures;

II. bills, invoices and other vouchers; and

III. deeds, liens and contracts.

b) We will determine the amount of "extra expense" based on:

i) all expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct

physical loss or damage occurred. The following will be deducted from the total of such expenses:

I. the remaining salvage value of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

II. any "extra expense" that is paid for by other insurance,

ii) all necessary expenses that reduce the "business income" loss that otherwise would have been incurred.

f. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

g. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

h. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if

1) You have complied with all of the terms of this policy, and

2) a) We have reached agreement with you on the amount of loss; or

b) An appraisal award has been made.

6. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery ex-

PB 00 02 (01-01)

penses and the expenses to repair the re-covered property, subject to the Limit of Insurance.

HOWEVER if, at the time of loss, the amount of loss or damage to your property exceeded our Limit of Insurance and your property in excess of the Limit of Insurance was turned over to us, you retain your rights to recovery on such uninsured property. We will return to you a portion of any recovery on that property based upon the proportion of the loss in excess of our Limit of Insurance bears to the total loss.

7.  **Resumption Of Operations**

    We will reduce the amount of your:

    a.  Loss payable under Business Income Additional Coverage, other than "extra expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

    b.  Loss payable under Extra Expense Additional Coverage to the extent you can return "operations" to normal and discontinue such "extra expense".

8.  **Vacancy**

    a.  **Description Of Terms**

        1)  As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in 1)a) and 1)b) below:

            a)  When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

            b)  When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

                i)   is not rented; or

                ii)  is not used to conduct customary operations.

        2)  Buildings under construction or renovation are not considered vacant.

    b.  **Vacancy Provisions**

        If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs, we will:

        1)  Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

            a)  Vandalism;

            b)  Sprinkler leakage, unless you have protected the system against freezing;

            c)  Building glass breakage;

            d)  Water damage;

            e)  Theft; or

            f)  Attempted theft.

        2)  Reduce by 15% the amount we would otherwise pay for the loss or damage caused by a Covered Causes of Loss not listed in 1) above.

F.  **PROPERTY GENERAL CONDITIONS**

    The following conditions apply in addition to the COMMON POLICY CONDITIONS.

    1.  **Control Of Property**

        Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

        The breach of any condition of this Coverage Form, other than the Concealment, Misrepresentation or Fraud Common Policy Condition, at any one or more locations will not affect coverage at any locations where, at the time of loss or damage, the breach of condition did not exist.

PB 00 02 (01-01)

ACP BPH 7801069841                    INSURED COPY                    78   03087

2.   **Mortgageholders**

a.  The term "mortgageholder" includes trustee.

b.  We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c.  The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

1)  Pays any premium due under this policy at our request if you have failed to do so;

2)  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

3)  Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e.  If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

1)  The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

2)  The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will give written notice to the mortgageholder at least:

1)  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

2)  30 days before the effective date of cancellation if we cancel for any other reason.

g.  If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

3.   **No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

4.   **Policy Period, Coverage Territory**

Under this form:

a.  We cover loss or damage commencing:

1)  During the policy period shown in the Declarations; and

2)  Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b.  The coverage territory is:

1)  The United States of America (including its territories and possessions);

2)  Puerto Rico; and

3)  Canada.

G.  **OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These Optional Coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

1.   **Employee Dishonesty Optional Coverage**

a.  We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting

PB 00 02 (01-01)

from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you, your partner or an officer of a closely held corporation) with the manifest intent to:

1) Cause you to sustain loss or damage; and also

2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

   a) Any employee; or

   b) Any other person or organization.

b. We will not pay for loss or damage:

1) Resulting from any dishonest or criminal act that you, any of your partners or any officer of a closely held corporation commit whether acting alone or in collusion with other persons; or

2) The only proof of which as to its existence or amount is:

   a) An inventory computation; or

   b) A profit and loss computation.

c. This Employee Dishonesty Optional Coverage does not apply to any employee immediately upon discovery by:

1) You; or

2) Any of your partners, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

d. We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period.

e. All loss or damage:

1) Caused by one or more persons; or

2) Involving a single act or series of related acts;

is considered one occurrence.

f. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

g. We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid or regardless that previous policies were in effect, whether issued by us, any affiliated company or any other company, this coverage shall not be cumulative from year to year or period to period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under Paragraph h. above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

1) This Optional Coverage as of its effective date; or

2) The prior insurance had it remained in effect.

2. **Ordinance or Law Optional Coverages**

a. **Coverage 1 – Loss to the Undamaged Portion of Building**

When the Declarations show that Ordinance or Law – Coverage 1 applies at a premises described in the Declarations and if a Covered Cause of Loss occurs to covered Building property, we will pay for the loss in value of the

PB 00 02 (01-01)

PB 00 02 (01-01)

undamaged portion of the building as a consequence of enforcement of any ordinance or law that:

1) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

2) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the premises where the loss occurred; and

3) Is in force at the time of loss.

This Coverage 1 of Ordinance or Law Optional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the covered Building property. This portion of the Ordinance or Law Optional Coverage does not increase the Limit of Insurance.

b. **Coverage 2 - Demolition Cost and Broadened Increased Cost of Construction**

When the Declarations show that Ordinance or Law - Coverage 2 applies at a premises described in the Declarations and if a Covered Cause of Loss occurs to covered Building property.

1) We will pay the cost to demolish and remove debris of undamaged parts of the property caused by enforcement of building, zoning, or land use ordinance or law; and

2) In addition to the coverage provided for damaged portions of property under the Increased Cost of Construction Additional Coverage, we will also pay for the increased costs to reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required when the increased cost is a consequence of the enforcement of building, zoning or land use ordinance or law.

HOWEVER:

1) This Coverage 2 applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by

zoning or land use ordinance or law.

2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Paragraph e. of 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS does not apply.

The most we will pay for the total of all covered losses under this Coverage 2 of Ordinance or-Law Optional Coverage in any occurrence is the Limit of Insurance shown in the Declarations.

The $10,000 Limit of Insurance that applies to Increased Cost of Construction Additional Coverage is also increased to the Limit of Insurance shown in the Declarations.

This portion of the Ordinance or Law Optional Coverage is in addition to the Limits of Insurance.

c. **Additional Terms and Conditions of Ordinance or Law**

1) The terms of this Ordinance or Law Optional Coverage apply separately to each building to which this Optional Coverage applies.

2) With respect to this Ordinance or Law Optional Coverage, we will not pay for any costs associated with the enforcement of any ordinance, law, rule, or regulation which requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to or assess the effects of "pollutants".

3) Under this Ordinance or Law Optional Coverage, we will not pay for loss due to any ordinance or law that:

a) You were required to comply with before the loss, even if the building was undamaged; and

b) You failed to comply with.

4) Loss Payment

PB 00 02 (01-01)

ACP BPH 7801069841

INSURED COPY

Page 32 of 38

7B    03090

PB 00 02 (01-01)

a) When Coverage 1 applies, loss or damage to the building, including loss in value of the undamaged portion of the building due to enforcement of an ordinance or law, will be determined as follows:

   i) If the property is repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

      I. The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

      II. The Limit of Insurance applicable to the covered Building property.

   II) If the property is not repaired or replaced, we will not pay more than the lesser of:

      I. The "actual cash value" of the building at the time of loss; or

      II. The Limit of Insurance applicable to the covered Building property.

b) When Coverage 2 applies, the most we will pay, for the total of all covered losses for Demolition Cost and Broadened Increased Cost of Construction, is the Limit of Insurance for Coverage 2.

   Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

i) For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

II) With respect to the Broadened Increased Cost of Construction:

   i. We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same or another premises; and

   ii. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

iii) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage 2 is the increased cost of construction at the same premises.

iv) If the ordinance or law requires relocation to another premises, the most we will pay under Coverage 2 is the increased cost of construction at the new premises.

d. This Ordinance or Law Optional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Optional Coverage.

3. **Optional Amendment of Coverage - Exclude Theft**

When "- Excluding Theft" is stated in the Declarations after Business Personal Property coverage, then under:

PB 00 02 (01-01)

ACP BPH 7901069841                    INSURED COPY

Page 33 of 38

78    03691