a. Paragraph 3. of Section B. EXCLUSIONS, the following exclusion is added:

**Theft:** Theft or attempted theft resulting in loss of or damage to Business Personal Property.

b. The Money and Securities Additional Coverage, paragraph 1)a) is deleted.

H. **PROPERTY DEFINITIONS**

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

1. **"Accident"** means direct physical loss as follows:

   a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   b. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

   c. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   d. Loss of or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. **"Actual Cash Value"** means the cost to repair or replace Covered Property, at the time of loss or damage, whether that property has sustained partial or total loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.

3. **"Business Income"** means the:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; plus

   b. Necessary continuing normal operating expenses incurred, while "operations" are suspended, including payroll.

4. **"Computer equipment"** means Covered Property that is electronic computer or other data processing-equipment, including peripherals used in conjunction with such equipment, and "electronic media and records".

5. **"Covered equipment"** means Covered Property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.

   None of the following is "covered equipment":

   a. Structure, foundation, cabinet, compartment or air supported structure or building;

   b. Insulating or refractory material;

   c. Sewer piping, underground vessels or piping, piping forming a part of a sprinkler system or water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

   d. Dragline, excavation or construction equipment; or

   e. Equipment manufactured by you for sale.

   f. Vehicle, aircraft or floating vessel or any equipment mounted on such vehicle, aircraft or floating vessel. However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power supplier will not be considered a vehicle, aircraft or floating vessel.

6. **"Dependent property"** means property owned or operated by others, not including any described premises, on whom you depend on to:

a. Deliver materials or services to you, or to others for your account. Services does not include water, steam, fuel, communication, or power supply services.

b. Purchase your products or services.

c. Manufacture products for delivery to your customers under contract of sale.

d. Attract customers to your business. But this does not include firms in the business of promoting or advertising your business.

7. **"Electronic Media and Records"** means:

a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b. Data stored on such media; or

c. Programming records used for electronic data processing or electronically controlled equipment.

8. **"Extra Expense"** means expense incurred:

a. To avoid or minimize the suspension of business and to continue "operations":

1) At the described premises; or

2) At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations.

b. To minimize the suspension of business if you cannot continue "operations".

c. (1) To repair or replace any property; or

(2) To research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under the Extra Expense Additional Coverage or the Business Income Additional Coverage.

9. **"Hazardous substance"** means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

10. **"Money"** means:

a. Currency, coins and bank notes whether or not in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

11. **"Operations"** mean your business activities occurring at the described premises.

12. **"Ordinary payroll expenses"** mean payroll expenses for all your employees except:

a. Officers;

b. Executives;

c. Department Managers;

d. Employees under contract; and

e. Additional Exemptions shown in the Declarations as:

1) Job Classifications; or

2) Employees.

Ordinary payroll expenses include:

a. Payroll;

b. Employee benefits, if directly related to payroll;

c. FICA payments you pay;

d. Union dues you pay; and

e. Workers' compensation premiums.

13. **"Period of restoration"** means:

a. For other than the Dependent Properties Additional Coverage and Business Income and Extra Expense - Increased Period of Restoration Due to Ordinance or Law Additional Coverage:

1) The period of time that:

a) Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b) Ends on the earlier of:

i) The date when the property at the described premises should be re-

paired, rebuilt or replaced with reasonable speed and similar quality; or

ii) The date when business is resumed at a new permanent location.

2) "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

a) Regulates the construction, use or repair, or requires the tearing down of any property; or

b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

3) The expiration date of this policy will not cut short the "period of restoration".

b. For Business Income and Extra Expense - Increased Period of Restoration Due to Ordinance or Law Additional Coverage:

1) The period of time that:

a) Begins:

i) At the time of direct physical loss or damage for Business Income Additional Coverage;

ii) or immediately after the time of direct physical loss or damage for Extra Expense Additional Coverage:

Caused by or resulting from any Covered Cause of Loss at the described premises; and

b) Ends on the earlier of:

i) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

ii) The date when business is resumed at a new permanent location.

2) "Period of restoration" includes any increased period required to repair or reconstruct the property to conform with the minimum standards or any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of any property.

3) The expiration date of this policy will not cut short the "period of restoration".

c. For Dependent Properties Additional Coverage:

1) The period of time that:

a) Begins:

i) 24 hours after the time of direct physical loss or damage for Business Income Additional Coverage; or

ii) Immediately after the time of direct physical loss or damage for Extra Expense;

Caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

b) Ends on the earlier of:

i) The date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

ii) The date when your business is resumed at a permanent new location.

2) "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

a) Regulates the construction, use or repair, or requires the

tearing down of any property; or

b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

3) The expiration date of this policy will not cut short the "period of restoration".

14. **"Perishable goods"** mean personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

15. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

16. **"Securities"** mean negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) whether or not in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

It does not include "money" or lottery tickets held for sale.

17. **"Specified Causes of Loss"** means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

1) The cost of filling sinkholes; or

2) Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss of or damage to:

1) Personal property in the open; or

2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

HOWEVER, damage from constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from any part of a system or appliance containing water or steam is not water damage.

18. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

19. **"Valuable papers and records"** mean inscribed, printed, or written:

a. Documents;

b. Manuscripts; and

c. Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

HOWEVER, "valuable papers and records" does not mean:

d. "Money" or "Securities";

e. Converted Data;

f. Programs or instructions used in your data processing operations, including the materials on which the data is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

BUSINESSOWNERS
PB 00 06 (01-01)

# PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

## TABLE OF CONTENTS

I. COVERAGES .... 2
COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY .... 2
INSURING AGREEMENT .... 2
EXCLUSIONS .... 3
TENANTS PROPERTY DAMAGE LEGAL LIABILITY .... 9
COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY .... 10
INSURING AGREEMENT .... 10
EXCLUSIONS .... 10
COVERAGE C - MEDICAL PAYMENTS .... 13
INSURING AGREEMENT .... 13
EXCLUSIONS .... 13
SUPPLEMENTARY PAYMENTS - COVERAGES A AND B .... 13
II. WHO IS AN INSURED .... 15
Automatic Additional Insureds .... 16
Co-Owners of Insured Premises .... 16
Controlling Interest .... 16
Grantor of Franchise or License .... 16
Lessors of Leased Equipment .... 16
Managers or Lessors of Leased Premises .... 17
Mortgagee, Assignee or Receiver .... 17
Owners or Other Interest from Whom Land has been Leased .... 17
State or Political Subdivisions - Permits Relating to Premises .... 17
III. LIMITS OF INSURANCE AND DEDUCTIBLE .... 18
General Aggregate Limit of Insurance (Other than Products-Completed Operations) .... 18
Products-Completed Operations Aggregate Limit of Insurance .... 18
Personal and Advertising Injury Limit of Insurance .... 18
Each Occurrence Limit of Insurance .... 18
Tenants Property Damage Legal Liability Limit of Insurance .... 18
Medical Payments Limit of Insurance .... 18
Property Damage Deductible .... 18
IV. LIABILITY CONDITIONS .... 19
Bankruptcy .... 19
Duties in the Event of Occurrence, Offense, Claim or Suit .... 19
Financial Responsibility Laws .... 20
Legal Action Against Us .... 20
Separation of Insureds .... 20
V. DEFINITIONS .... 21

# PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under Section II. WHO IS AN INSURED. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section V. DEFINITIONS.

I. **COVERAGES**

A. **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **INSURING AGREEMENT**

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

1) The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

2) The "bodily injury" or "property damage" occurs during the policy period; and

3) Prior to the policy period, no insured listed under Paragraph 1. of Section II. WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized

by you to give or receive notice of an "occurrence" or claim:

1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **EXCLUSIONS**

This insurance, including any duty we have to defend "suits", does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by the insured.

This exclusion applies even if the resulting "bodily injury" or "property damage":

1) Is of a different kind, quality or degree than initially expected or intended; or

2) Is sustained by a different person, entity, real property, or personal property than that initially expected or intended.

HOWEVER, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1) That the insured would have in the absence of the contract or agreement; or

2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1) Causing or contributing to the intoxication of any person;

2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

1) Manufacture, sell or distribute alcoholic beverages;

2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

a) Requires a license; or

b) Is for the purpose of financial gain or livelihood; or

3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

d. **Laws**

Any liability or legal obligation of any insured with respect to "bodily injury" or "property damage" arising out of any of the following:

1) Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including but not limited to those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, religion or religious belief, age, economic status, income, medical condition, pregnancy, parenthood or mental or physical disability;

2) Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

3) The Migrant and Seasonal Agricultural Worker Protection Act;

4) Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

5) The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974; or

6) Any other similar statutes, ordinances, orders, directives or regulations.

e. **Employer's Liability**

"Bodily injury" to:

1) An "employee" of the insured arising out of and in the course of:

a) Employment by the insured; or

b) Performing duties related to the conduct of the insured's business; or

2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1) above.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

HOWEVER, this subparagraph does not apply to:

i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is

not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

HOWEVER, this subparagraph does not apply to:

i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2) Any loss, cost or expense arising out of any:

a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

b) Claim or "suit" by or on behalf of a governmental authority for damages because of test-

ing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

HOWEVER, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

HOWEVER, this exclusion does not apply to:

1) A watercraft while ashore on premises you own or rent;

2) A watercraft you do not own that is:

   a) Less than 26 feet long; and

   b) Not being used to carry persons or property for a charge;

3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.2) or f.3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

1) Property you own, rent, or occupy;

2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3) Property loaned to you;

4) Personal property in the care, custody or control of the insured;

5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Other than damage by the Covered Causes of Loss provided under Tenants Property Damage Legal Liability, paragraph 1), 3) and 4) of this exclusion do not apply to "property damage" to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A

separate limit of insurance applies to Damage To Premises Rented To You as described in Section III. LIMITS OF INSURANCE.

Paragraph 2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3), 4), 5) and 6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product", arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

HOWEVER, this exclusion does not apply if the damaged work, or the work out of which the damage arises, was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1) "Your product";

2) "Your work"; or

3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Bodily Injury To Any Insured** "Bodily injury" to:

1) Any insured; or

2) Any insured whenever the ultimate benefits of any indemnification will accrue directly or indirectly to any insured or the heirs of any insured.

q. **Damage To Named Insured's Property**

Any claim or "suit" for "property damage" by you or on your behalf against any other person or organization that is also a Named Insured under this policy.

r. **Abuse or Molestation**

"Bodily injury" or "property damage" arising out of:

1) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2) The negligent:

a) Employment;

b) Investigation;

c) Supervision;

d) Reporting to the proper authorities, or failure to so report; or

e) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1) above.

s. **Asbestos, Electromagnetic Emissions, Lead or Radon**

"Bodily injury" or "property damage" arising out of:

1) Asbestos including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

2) Electromagnetic emissions or radiation including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

3) Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

4) Radon or any other radioactive emissions, manmade or natural, including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other radioactive emissions or any other duty involving radon or other radioactive emissions.

t. **Employment Practices**

"Bodily injury" to:

1) A person arising out of any:

a) Refusal to employ that person;

b) Termination of that person's employment; or

c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs a), b), or c) above is directed.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

u. **Fiduciary Responsibility**

"Bodily injury" or "property damage" arising out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity.

v. **Professional Services**

"Bodily injury" or "property damage" that arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to, any:

1) Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

3) Supervisory, inspection, engineering, or architectural service, advice or instruction;

4) Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

5) Any psychological therapy or any other counseling or mental health service, treatment, advice or instruction;

6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including but not limited to cosmetology, tonsorial, tattooing, tanning or massage;

7) Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

8) Ear or other body piercing service, treatment, advice or instruction; or

9) Service, treatment, advice or instruction in the practice of pharmacy.

w. **Testing, Evaluating or Consulting**

"Bodily injury" or "property damage" arising out of:

1) An error, omission, defect or deficiency:

a) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

b) In experimental data or the insured's interpretation of that data.

2) The reporting of or reliance upon any such test, evaluation, consultation or advice.

3. **TENANTS PROPERTY DAMAGE LEGAL LIABILITY**

**Certain Exclusions Not Applicable**

Exclusions c. through n., p., q., r., t., u., v. and w. do not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, if such "property damage" arises out of a Covered Cause Of Loss provided under the BUSINESSOWNERS PROPERTY COVERAGE FORM. A separate limit of insurance, called Tenants Property Damage Legal Liability Limit, applies to this coverage as described in Section III. LIMITS OF INSURANCE.

B. COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

1. INSURING AGREEMENT

a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

We may, at our sole discretion, investigate any offense and settle any claim or "suit" that may result. But:

1) The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. EXCLUSIONS

This insurance, including any duty we have to defend "suits", does not apply to:

a. "Personal and advertising injury":

1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

4) Arising out of a criminal act committed by or at the direction of any insured;

5) For which the insured has assumed liability in a contract or agreement.

HOWEVER, this exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

HOWEVER, this exclusion does not apply to Paragraphs a., b. and c. of the definition of "personal and advertising injury" under Section V. DEFINITIONS;

10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

11) Any liability or legal obligation of any insured arising out of any of the following:

a) Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including but not limited to those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, parenthood, religion or religious belief, age, economic status, income, medical condition, pregnancy, or mental or physical disability;

b) Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

c) The Migrant and Seasonal Agricultural Worker Protection Act;

d) Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

e) The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974; or

f) Any other similar statutes, ordinances, orders, directives or regulations;

12) Arising out of:

a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

b) The negligent:

i) Employment;

ii) Investigation;

iii) Supervision;

iv) Reporting to the proper authorities, or failure to so report; or

v) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph a) above;

13) To:

a) A person arising out of any:

i) Refusal to employ that person;

ii) Termination of that person's employment; or

iii) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs i), ii), or iii) above is directed.

This exclusion applies:

a) Whether the insured may be liable as an employer or in any other capacity; and

b) To any obligation to share damages with or repay someone else who must pay damages because of the injury;

14) Arising out of:

a) Asbestos including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

b) Electromagnetic emissions or radiation including but not

limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

c) Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

d) Radon or any other radioactive emissions, manmade or natural, including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other radioactive emissions or any other duty involving radon or other radioactive emissions;

15) That arises out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity;

16) That arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to any:

a) Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

b) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

c) Supervisory, inspection, engineering, or architectural service, advice or instruction;

d) Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

e) Any psychological therapy or any other counseling or mental health service, treatment, advice or instruction;

f) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including but not limited to cosmetology, tonsorial, tattooing, tanning or massage.

g) Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

h) Ear or other body piercing service, treatment, advice or instruction; or

i) Service, treatment, advice or instruction in the practice of pharmacy; or

17) Arising out of:

a) An error, omission, defect or deficiency:

i) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

ii) In experimental data or the insured's interpretation of that data.

b) The reporting of or reliance upon any such test, evaluation, consultation or advice.

b. Any loss, cost or expense arising out of any:

1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any responding to, or assessing the effects of, "pollutants".

C. COVERAGE C - MEDICAL PAYMENTS

1. INSURING AGREEMENT

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

1) On premises you own or rent;

2) On ways next to premises you own or rent; or

3) Because of your operations;

provided that:

1) The accident takes place in the "coverage territory" and during the policy period;

2) The expenses are incurred and reported to us within one year of the date of the accident; and

3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

1) First aid administered at the time of an accident;

2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

3) Necessary ambulance, hospital, professional nursing and funeral services.

2. EXCLUSIONS

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under COVERAGE A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

D. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

1) Agrees in writing to:

a) Cooperate with us in the investigation, settlement or defense of the "suit";

b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

c) Notify any other insurer whose coverage is available to the indemnitee; and

d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

2) Provides us with written authorization to:

a) Obtain records and other information related to the "suit"; and

b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.2) of Section I. COVERAGE, A. COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## II. WHO IS AN INSURED

1. If you are:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. A trust, you are an insured. Your trustee or co-trustees are also insureds, but only with respect to their duties as a trustee in connection with your property, operations and activities.

   e. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

      HOWEVER, none of these "employees" is an insured for:

      1) "Bodily injury" or "personal and advertising injury":

         a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph 1)a) above;

         c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs 1)a) or b) above; or

         d) Arising out of his or her providing or failing to provide professional health care services.

      2) "Property damage" to property:

         a) Owned, occupied or used by; or

         b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

         you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      1) With respect to liability arising out of the maintenance or use of that property; and

      2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the

conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

HOWEVER, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

HOWEVER:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. COVERAGE A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. COVERAGE B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

5. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

6. **Automatic Additional Insureds**

Any of the following persons or organizations are automatically insureds when you and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

a. **Co-Owners of Insured Premises**

Any person or organization with whom you co-own a premises insured under this policy is an additional insured, but only with respect to their liability as the co-owner of such premises.

HOWEVER, their status as additional insured under this policy ends when you cease to co-own such premises with that person or organization.

b. **Controlling Interest**

Any person or organization that has a controlling interest in you is an additional insured, but only with respect to liability arising out of:

1) Their financial control of you; or

2) Their ownership, maintenance or control of premises you lease or occupy;

subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when they cease to have such controlling interest in you.

c. **Grantor of Franchise or License**

Any person or organization that has granted you a franchise or license by written contract or agreement is an additional insured, but only with respect to their liability as the grantor of a franchise or license to you.

HOWEVER, their status as additional insured under this policy ends when their contract or agreement with you granting the franchise or license ends.

d. **Lessors of Leased Equipment**

Any person or organization from whom you lease equipment by written contract or agreement is an additional insured, but only with respect to their liability arising out of the maintenance,

operation or use by you of the equipment leased to you by that person or organization, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to "bodily injury" or "property damage" arising out of, in whole or in part, or results from, in whole of in part, the active negligence of such person or organization.

HOWEVER, their status as additional insured under this policy ends when their contract or agreement with you for such leased equipment ends.

e. **Managers or Lessors of Leased Premises**

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to be a tenant of such premises.

f. **Mortgagee, Assignee or Receiver**

Any person or organization who has status as mortgagee, assignee or receiver of your property is an additional insured, but only with respect to their liability as mortgagee, assignee or receiver arising out of your ownership, maintenance, or use of such premises, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when their status as mortgagee, assignee or receiver ends.

g. **Owners or Other Interest from Whom Land has been Leased**

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your maintenance or use of that part of the land leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to lease that land.

h. **State or Political Subdivisions - Permits Relating to Premises**

Any state or political subdivision which has issued a permit in connection with premises insured by this policy which you own, rent, or control is an additional insured, but only with respect to the following hazards:

1) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decoration and similar exposures;

2) The construction, erection, or removal of elevators; or

3) The ownership, maintenance, or use of any elevators covered by this insurance.

HOWEVER, such state or political subdivision's status as additional insured under this policy ends when the permit ends.

**III. LIMITS OF INSURANCE AND DEDUCTIBLE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. **General Aggregate Limit of Insurance** (Other than Products-Completed Operations)

   The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under COVERAGE C;

   b. Damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under COVERAGE B.

   The General Aggregate Limit applies separately to each of your described premises. For the purposes of this provision, premises means involving the same or connecting lots, or premises whose connection is interrupted only by a public street, roadway or waterway, or railroad right-of-way.

3. **Products-Completed Operations Aggregate Limit of Insurance**

   The Products-Completed Operations Aggregate Limit is the most we will pay under COVERAGE A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. **Personal and Advertising Injury Limit of Insurance**

   Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under COVERAGE B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. **Each Occurrence Limit of Insurance**

   Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under COVERAGE A; and

   b. Medical expenses under COVERAGE C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. **Tenants Property Damage Legal Liability Limit of Insurance**

   Subject to 5. above, the Tenants Property Damage Legal Liability Limit is the most we will pay under COVERAGE A for damages because of all "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one "occurrence".

7. **Medical Payments Limit of Insurance**

   Subject to 5. above, the Medical Payments Limit is the most we will pay under COVERAGE C for all medical expenses because of "bodily injury" sustained by any one person.

8. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

9. **Property Damage Deductible**

   If a deductible amount is shown in the Liability Declarations, the following provisions apply:

   a. If a deductible amount for Property Damage is shown in the Liability Declarations, any obligation by us under this policy to pay sums on your behalf because of "property damage", applies only to sums in excess of the deductible amount shown in the Declarations for any one "occurrence".

b. If a deductible amount for Car Wash Property Damage is shown in the Liability Declarations, any obligation by us under this policy to pay sums on your behalf because of "property damage", applies only to sums in excess of the deductible amount shown in the Declarations for any one "claim".

c. If we pay all or any part of a deductible to settle any claim or "suit", upon notification of such payment by us, you shall promptly reimburse us for the amount of the deductible that has been paid by us.

IV. **LIABILITY CONDITIONS**

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You and any insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense that may result in a claim. To the extent possible, notice should include:

      1) How, when and where the "occurrence" or offense took place;

      2) The names and addresses of any injured persons and witnesses; and

      3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      1) Immediately record the specifics of the claim or "suit" and the date received; and

      2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      2) Authorize us to obtain records and other information;

      3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

      4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to

which this insurance may also apply; and

5) Agree to be examined under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim or "suit". At our option and expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. In the event of an examination, an insured's answers must be signed.

d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Financial Responsibility Laws**

a. When this policy is certified as proof of financial responsibility for the future under the provision of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by law.

b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

4. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

5. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

V. **DEFINITIONS**

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

1. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. **"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **"Coverage territory"** means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      1) The injury or damage arises out of:

         a) Goods or products made or sold by you in the territory described in a. above; or

         b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. **"Employee"** includes a "leased worker". "Employee" does not include a "temporary worker".

6. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. **"Hostile fire"** means one which becomes uncontrollable or breaks out from where it was intended to be.

8. **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   If such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. **"Insured contract"** means:

   a. A contract for a lease of premises.

      HOWEVER, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury"

or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in 2) above and supervisory, inspection, architectural or engineering activities.

10. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. **"Loading or unloading"** means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, forklifts, farm machinery, farm implements and other vehicles designed for use or used principally off public roads. This includes motorized golf carts, snowmobiles, and other land vehicles designed for recreational use;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles, other than snowmobiles, that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       1) Power cranes, shovels, loaders, diggers or drills; or

       2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in paragraphs a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in paragraphs a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    HOWEVER, self-propelled vehicles with the following types of permanently attached equipment are not "mobile

equipment" but will be considered "autos":

1) Equipment designed primarily for:

a) Snow removal;

b) Road maintenance, but not construction or resurfacing; or

c) Street cleaning;

2) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; and

3) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers.

13. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. **"Personal and advertising injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

16. **"Products-completed operations hazard":**

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

1) Products that are still in your physical possession; or

2) Work that has not yet been completed or abandoned.

HOWEVER, "your work" will be deemed completed at the earliest of the following times:

a) When all of the work called for in your contract has been completed.

b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

HOWEVER, the "bodily injury" or "property damage" must occur away from premises you own or rent unless your business includes the selling, handling or distribution of "your prod-

uct" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. **"Property damage"** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. **"Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. **"Your product"** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

1) You;

2) Others trading under your name; or

3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. **"Your work"** means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1997

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

INTERLINE
LI 00 21 (01-01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (BROAD FORM)

All Coverage Parts included in this policy that provide Liability Coverage are subject to the following exclusion.

A. This insurance does not apply:

1. Under any Liability Coverage, to "bodily injury" or "property damage":

   a. With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

      1) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

      2) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

3. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   a. The "nuclear material":

      1) Is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured"; or

      2) Has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

   c. The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to "property damage" to such "nuclear facility" and any property thereat.

B. As used in this endorsement:

1. **"Hazardous properties"** includes radioactive, toxic or explosive properties.

2. **"Nuclear material"** means "source material", "special nuclear material" or "by-product material".

3. **"Source material"**, **"special nuclear material"**, and **"by-product material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

4. **"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

5. **"Waste"** means any waste material:

   a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of

uranium or thorium from any ore processed primarily for its "source material" content; and

b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. **"Nuclear facility"** means:

a. Any "nuclear reactor";

b. Any equipment or device designed or used for:

1) Separating the isotopes of uranium or plutonium;

2) Processing or utilizing "spent fuel"; or

3) Handling, processing or packaging "waste";

c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

7. **"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

8. **"Property damage"** includes all forms of radioactive contamination of property.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

BUSINESSOWNERS
PB 00 09 (01-01)

# PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

All coverages of this policy are subject to the following conditions.

A. **CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. Five (5) days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy.

      1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         a) Seasonal unoccupancy; or

         b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      2) After damage by a covered cause of loss, permanent repairs to the building:

         a) Have not started, and

         b) Have not been contracted for,

         within 30 days of initial payment of loss.

      3) The building has:

         a) An outstanding order to vacate;

         b) An outstanding demolition order; or

         c) Been declared unsafe by governmental authority.

      4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      5) Failure to:

         a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. Ten (10) days before the effective date of cancellation if we cancel for non-payment of premium.

   c. Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro

rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **CHANGES**

1. This policy contains all the agreements between you and us concerning the insurance afforded.

2. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.

3. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **CONCEALMENT, MISREPRESENTATION OR FRAUD**

1. This policy is void in its entirety in any case of fraud, at any time, by you or your representative as it relates to this policy.

2. This policy is also void if you, your authorized representative or any other insured, at any time, conceal or misrepresent any material fact, or violate any material warranty, concerning:

   a. This policy, including your application for this policy;

   b. The Covered Property;

   c. Your interest in the Covered Property; or

   d. A claim under this policy.

3. We also have the right to rescind this policy based upon any other grounds provided by law.

D. **EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy or to any claim arising under this policy at any time during the policy period and up to three years afterward.

E. **INSPECTIONS AND SURVEYS**

1. We have the right but are not obligated to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

F. **INSURANCE UNDER TWO OR MORE COVERAGES OF THIS POLICY**

If two or more of this policy's coverages apply to the same injury, loss or damage, we will not pay more than the actual amount of the injury, loss or damage, up to the highest applicable Limit of Insurance under any one coverage.

G. **LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

H. **OTHER INSURANCE**

1. Under any property coverage provided by this policy, if there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

2. Under any liability coverage provided by this policy,

   a. If, for injury or loss we cover, there is other valid and collectible insurance available to any insured under another policy:

      1) Issued by another insurer, or if there is self insurance or similar

risk retention that applies to a loss covered by this policy, then this insurance provided by us shall be excess over such other insurance; or

2) Issued by us that applies to a loss covered by this policy, then only the highest applicable Limit of Insurance shall apply to such loss. This condition does not apply to any policy issued by us which is designed to provide Excess or Umbrella liability insurance.

b. This insurance, if applicable, is also excess, whether that other insurance is primary, excess, contingent or provided on any other basis:

1) Over any applicable property insurance or other insurance that insures for direct physical loss or damage;

2) Over any valid and collectible insurance available to you as an additional insured under a policy issued to a tenant renting or leasing land or premises from you; or

3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. under Section I. COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Premier Businessowners Liability Coverage Form.

c. When this insurance is excess, we will have no duty under the liability coverage provided by this policy to defend any insured against any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to any insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

d. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

I. **PREMIUMS**

1. The first Named Insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. Undeclared exposures or change in your business operation and acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules in effect at the inception of such policy.

J. **PREMIUM AUDIT**

1. We have the right but are not obligated to audit this policy. The first Named Insured must keep records of the information we

need for premium computation, and send us copies of those records at such times as we may request.

2. If we do audit your policy, at the close of that audit period, we will compute the earned premium for that period and the final premium due based upon your actual exposures.

3. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

K. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

1. **Applicable to Businessowners Property Coverage:**

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   a. Prior to a loss to your Covered Property.

   b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

      1) Someone insured by this insurance;

      2) A business firm:

         a) Owned or controlled by you; or

         b) That owns or controls you; or

      3) Your tenant, but only with our written consent.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

   This will not restrict your insurance.

2. **Applicable to Businessowners Liability Coverage:**

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Payments Coverage.

L. **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

1. Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

2. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

BUSINESSOWNERS
PB 29 99 (01-02)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - FUNGI OR BACTERIA (WITH LIMITED PROPERTY COVERAGE)

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM
PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

A. **AMENDMENT TO THE PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM**

1. In Section A. COVERAGES, under paragraph 5. ADDITIONAL COVERAGES, the following additional coverage is added:

u. **Additional Coverage - Limited Coverage For Fungi, Wet Rot, Dry Rot And Bacteria**

1) The coverage described in paragraphs 2) through 6) below applies:

a) Only when the "fungi", wet or dry rot or bacteria is the result of a "specified cause of loss", other than fire or lightning, that occurs during the policy period; and

b) Only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

2) We will pay for loss or damage by "fungi", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a) Direct physical loss or damage to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

3) The coverage described under paragraph 2) of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all such loss or damage arising out of all occurrences of "specified causes of loss", other than fire or lightning, which take place in a 12-month period, starting with the beginning of the present annual policy period. With respect to a particular occurrence of loss which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5) The terms of this Limited Coverage do not increase or reduce the coverage provided under either Additional Coverage e. Collapse or f. Water Damage, Other Liquids, Powder Or Molten Material Damage.

6) Under Additional Coverages g. Business Income and/or h. Extra Expense:

a) If the loss which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungi", wet or dry rot or bacteria, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

b) If a covered "suspension" of "operations" was caused by loss or damage damage other than "fungi", wet or dry rot or bacteria but remediation of of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay, regardless of when such a delay occurs during the "period of restoration", but such coverage is limited to 30 days. The days need not be consecutive.

2. In Section B. EXCLUSIONS, under paragraph 1., the following exclusion is added:

h. **Fungi, Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria.

But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

1) When "fungi", wet or dry rot or bacteria results from fire or lightning; or

2) To the extent that coverage is provided in the Additional Coverage - Limited Coverage For Fungi, Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a "specified cause of loss" other than fire or lightning.

3. In Section B. EXCLUSIONS, under paragraph 2., exclusion c. Leakage or Seepage is replaced by the following:

c. **Leakage or Seepage**

Constant or repeated discharge, seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, whether continuous or intermittent from any:

1) Heating, air conditioning or refrigerating system;

2) Appliance; or

3) Fire protection or plumbing system, including from or around any shower bath installation, bathtub or other plumbing fixture.

4. In Section B. EXCLUSIONS, under paragraph 2., exclusion j. Other Types Of Loss, paragraph (2) is replaced by the following:

j. **Other Types Of Loss**

2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

B. **AMENDMENTS TO THE PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM**

1. In Section I. COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, under paragraph 2. EXCLUSIONS, the following exclusions are added:

   This insurance, including any duty we have to defend "suits", does not apply to:

   **Fungi or Bacteria**

   a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for:

      1) The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents; or

      2) The failure to warn or to disclose the presence of "fungi" or bacteria;

      regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   b. Any loss, cost or expenses arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   HOWEVER, this exclusion does not apply to any "fungi" or bacteria that are, are on or are contained in, "your product" intended for human or animal consumption.

2. In Section I. COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY, under paragraph 2. EXCLUSIONS, the following exclusions are added:

   This insurance, including any duty we have to defend "suits", does not apply to:

   **Fungi or Bacteria**

   a. "Personal and advertising injury" which would not have occurred, in whole or in part, but for:

      1) The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents; or

      2) The failure to warn or to disclose the presence of "fungi" or bacteria;

      regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   b. Any loss, cost or expenses arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. **ADDITIONAL DEFINITION**

The following definition is added to:

1. The PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM, under Section H. DEFINITIONS; and

2. The PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM, under Section V. DEFINITIONS.

   **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

********* **IMPORTANT INSURANCE INFORMATION** *********

Please read this Notice carefully. No coverage is provided by this notice nor can it be construed to replace any provision of your policy. You should read your policy and review your declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail.

## Exclusion - Fungi or Bacteria
## (With Limited Property Coverage)

**Fungi or Bacteria.** This Notice communicates our coverage intent on an emerging issue confronting the insurance industry - loss or damage from fungi or mold claims. Claims for mold or fungi damage have been increasing markedly in frequency and severity in recent months, to a point where the insurance industry has become concerned with the large financial impact threatened by this increasing problem not yet reflected in our premium.

Under property, we have responded by adding an additional coverage, limitations and exclusions that will offset damages in whole or in part, but will also limit the fungi loss in a 12 month period to $15,000 for certain covered specified causes of loss, other than fire and lightning. For liability, the mold exposure would be excluded.

**Rates.** Our rates have not reflected the exposure to the emerging mold claims, thus this change to your coverage is viewed as a mitigation of future rate increases rather than a change that would lead to a reduction in your current rates.

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

BUSINESSOWNERS
PB 90 04 (01-01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ THIS CAREFULLY.**

# CALIFORNIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS
PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

A. **CANCELLATION**

In the COMMON POLICY CONDITIONS, Condition A. CANCELLATION is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy at any time by giving us advance written notice of the date cancellation is to take effect.

2. **By Us-Policies In Effect 60 Days or Less**

   a. If this policy has been in effect for 60 days or less, and is not a renewal of a policy we issued, we may cancel this policy for any reason by mailing or delivering to the first Named Insured and the producer of record written notice of cancellation stating the reason for cancellation at least:

      1) Ten (10) days before the effective date of cancellation if we cancel for:

         a) Nonpayment of premium;

         b) Discovery of fraud or material misrepresentation by:

            i) Any insured, or insured person, or his or her representative in obtaining this Policy; or

            ii) You or your representative in pursuing a claim under this Policy.

      2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

3. **By Us - Policies in Effect More Than 60 Days**

   a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

      1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

      2) Discovery of fraud or material misrepresentation by:

         a) Any insured or his or her representative in obtaining this insurance; or

         b) You or your representative in pursuing a claim under this policy.

      3) A judgment by a court or an administrative tribunal that you have violated any state law or any federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

      4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

      5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

6) A determination by the Commissioner of Insurance that the:

a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

b) Continuation of the policy coverage would:

i) Place us in violation of the laws of this state or the state of our domicile; or

ii) Threaten our solvency.

7) A change by you or your representative in the activities or property of your commercial or industrial enterprise that results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

b. If we cancel, we will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured and to the producer of record, at least:

1) Ten (10) days before the effective date of cancellation if we cancel for a reason listed in 3.a.(1) or (2).

2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason listed in 3.a.

4. We will mail or deliver our notice to the first Named Insured at the address shown on the policy Declarations.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. However, our failure to make or offer a refund does not make the cancellation ineffective nor reinstate the policy.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

8. Instead of canceling your policy for any of the reasons stated in Paragraph 3.a.(4), (5), (6)(a), and (7) above, we may, at our sole option, revise your policy by:

a. Increasing your premium in accordance with our current rates and rules;

b. Reducing your policy Limits of Insurance; or

c. Changing the conditions of your coverage.

If we exercise these rights, we will give the first Named Insured shown in the Declarations and the producer of record at least 30 days advance written notice of the effective date and the reasons for such increase, reduction or change.

9. **Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units.

a. If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in b. and c. below.

b. We may not cancel this policy solely because the first Named Insured has accepted an offer of earthquake coverage.

c. We may not cancel such coverage solely because corrosive soil conditions exist on the premises.

B. **NONRENEWAL/CONDITIONAL RENEWAL**

The following is added to the COMMON POLICY CONDITIONS and supercedes any provisions to the contrary:

1. **NONRENEWAL**

a. We may nonrenew your policy for any reason not prohibited by applicable law.

b. If we decide not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least sixty (60) days, but not

more than 120 days, before the expiration date.

2. **CONDITIONAL RENEWAL**

Instead of nonrenewing your policy, we may, at our sole option, offer you a conditional renewal of your policy based upon a reduction of your policy Limits of Insurance, an elimination of coverages, an increase in deductibles and/or an increase of more than 25% in the rate upon which the premium is based. If we decide to offer a conditional renewal of this policy, we will mail or deliver written notice stating the reason for such conditional renewal to the first Named Insured shown in the Declarations and to the producer of record within the time periods specified in paragraph 1. above.

3. We will mail or deliver our notice of nonrenewal or conditional renewal to the first Named Insured at the address shown on the policy Declarations. Proof of mailing shall be sufficient proof of notice.

4. We are not required to send notice of nonrenewal in the following situations:

   a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

   b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph B.1.

   c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

   d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

   e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period. If we have made a written offer to you, in accordance with the time periods shown in paragraph 1. above to conditionally renew the policy under changed terms or conditions or at an increased premium rate as specified in paragraph 2. above.

5. **Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units.

   a. We may elect not to renew such coverage for any reason, except as provided in b. and c. below:

   b. We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

   c. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises.

C. **ADDITIONAL LIABILITY EXCLUSION**

In the LIABILITY COVERAGE FORM, under Section I. COVERAGES, the following exclusion is added to COVERAGES A and B:

This insurance, including any duty we have to defend "suits", does not apply to:

**Breach of Contract**

"Bodily injury", "property damage" or "personal and advertising injury" that arises out of or is a result of any breach of a written or oral contract, any breach of any other written or oral agreement, or any breach of an express or implied warranty.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

# EXHIBIT B

OFFICE 12
DIVISION
2005 AUG 18 P 3: 33
SUPERIOR COURT
COUNTY, CA

Brian C. Dawson (SBN 183251)
Brendan K. Ozanne (SBN 185806)
DAWSON & OZANNE
614 Fifth Avenue, Suite B
San Diego, CA 92101
Telephone: (619) 237-5161
Facsimile: (619) 237-5151

Attorneys for Plaintiff THE HIDDEN GLEN MAINTENANCE CORPORATION

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO -- CENTRAL BRANCH**

THE HIDDEN GLEN MAINTENANCE CORPORATION, a California Corporation;

Plaintiff,

v.

1800 SOUTH MAPLE STREET, LLC, a California Limited Liability Company; RALPH GIANNELLA individually and as co-trustee of the RALPH GIANNELLA AND KEITHA GIANNELLA REVOCABLE TRUST; WILLIAM AYYAD; WILLIAM G. AYYAD, INC., a California Corporation; KEITHA GIANNELLA, individually and as co-trustee of the RALPH GIANNELLA AND KEITHA GIANNELLA REVOCABLE TRUST; PREMIER COMMUNITIES LLC, a California Limited Liability Company; DAN TOMASI; MARK HOLMES CONSTRUCTION, a business entity form currently unknown; and DOES 1 through 150, inclusive,

Defendants.

CASE NO: GIC 852647

**COMPLAINT FOR DAMAGES BASED UPON:**

1. **NEGLIGENCE**
2. **CIVIL CONSPIRACY**
3. **BREACH OF CCRS**
4. **BREACH OF FIDUCIARY DUTY**
5. **ALTER EGO**
6. **NEGLIGENCE PER SE–CIVIL CODE SECTION 1134**
7. **VIOLATION OF B&P CODE SECTION 17200**

Plaintiff demands a jury trial and against each of the defendants alleges as follows:

I.

INTRODUCTION AND PARTIES

1. This case involves a plan by the defendants to develop and sell depleted and run down condominiums to a majority of first time purchasers. The condominiums contain water intrusion, mold and in many instances Code violations with regard to all major systems of the development, among other significant problems.

2. Plaintiff, THE HIDDEN GLEN MAINTENANCE CORPORATION (hereinafter referred to as "ASSOCIATION"), is a California nonprofit mutual benefit corporation organized and existing under the laws of the State of California with its principal place of business within the County of San Diego, State of California. ASSOCIATION is the governing board for the Maple Street Condominiums located at 1800 S. Maple Street, Escondido, California, within the State of California, County of San Diego and hereinafter referred to as the "subject property." The subject property contains five buildings and a total of thirty (30) one and two bedroom condominiums as well as a pool, spa, car ports, parking lots and a laundry and office building. ASSOCIATION is the proper party in interest and has standing to sue as it was given the authority to prosecute actions on behalf of the unit owners at the development for damages to common areas and the resulting damages to private units therefrom, pursuant to the terms of the governing documents, including the Conditions, Covenants and Restrictions ("CCRs") and by-laws. These documents are attached hereto as Exhibit "A."

3. ASSOCIATION alleges, upon information and belief, that Defendant 1800 SOUTH MAPLE STREET, LLC, (hereinafter "MAPLE"), is and was at all times relevant, a California Limited Liability Company, organized and existing under the laws of the State of California and, at all times herein mentioned, was authorized to do and was, doing business in the County of San Diego.

////

////

////

4. ASSOCIATION alleges, upon information and belief, that Defendant PREMIER COMMUNITIES, LLC, (hereinafter "PREMIER"), is and was at all times relevant, a California Limited Liability Company, organized and existing under the laws of the State of California and, at all times herein mentioned, was authorized to do and was, doing business in the County of San Diego.

5. ASSOCIATION alleges, upon information and belief, that Defendant WILLIAM AYYAD, (hereinafter "AYYAD"), is and was at all times relevant, an individual residing in the County of San Diego, State of California and was a principal partner in the Limited Liability Companies identified herein as MAPLE and PREMIER.

6. ASSOCIATION alleges, upon information and belief, that Defendant RALPH GIANNELLA, (hereinafter "RALPH"), is and was at all times relevant, an individual residing in the County of San Diego, State of California and was a principal partner in the Limited Liability Companies identified above and a co-trustee of the RALPH GIANNELLA AND KEITHA GIANNELLA REVOCABLE TRUST.

7. ASSOCIATION alleges, upon information and belief, that Defendant KEITHA GIANNELLA, (hereinafter "KEITHA"), is and was at all times relevant, an individual residing in the County of San Diego, State of California and was a principal partner in the Limited Liability Companies identified above and a co-trustee of the RALPH GIANNELLA AND KEITHA GIANNELLA REVOCABLE TRUST.

8. ASSOCIATION alleges, upon information and belief, that WILLIAM G. AYYAD, INC. (hereinafter "AYYAD, INC."), was and is a California Corporation organized and existing under the laws of the State of California and, at all times relevant, was doing business in the County of San Diego, State of California.

9. ASSOCIATION alleges, upon information and belief, that Defendant DAN TOMASI, (hereinafter "TOMASI"), is and was at all times relevant, an individual residing in the County of San Diego, State of California and was a principal partner and/or managing agent of or in the Limited Liability Companies identified above.

////

10. ASSOCIATION alleges, upon information and belief, that MARK HOLMES CONSTRUCTION (hereinafter "HOLMES") was and is a business entity, form currently unknown, doing business and with its principal place of business in San Diego County, State of California and was engaged in the business of construction. HOLMES performed construction on the subject property.

11. The above-referenced defendants were and are developers, designers, marketers, sellers, and otherwise responsible for the construction of condominium projects throughout San Diego County, State of California and were principal developers, marketers, sellers, designers, or otherwise involved in the development and sale of the subject property identified above.

12. The true names and capacities of additional defendants is currently unknown by ASSOCIATION. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1-150 are unknown to ASSOCIATION, who therefore sues these defendants by such fictitious names. ASSOCIATION is informed and believes and thereon alleges that each of the defendants designated as DOE is a resident of and did business in the State of California, and is responsible in the same manner for the events and happenings herein referred to, and proximately caused injury and damages to ASSOCIATION as herein alleged. ASSOCIATION is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants and DOES herein was the successor, predecessor, alter-ego, partner, parent company, subsidiary, joint venturer, agent, servant and employee of each of the remaining developer defendants and/or DOE defendants, and was acting within the scope and purpose of such relationship in the conversion, repair, construction, sale, marketing, development and design of the subject property and creation of the subject property's operating budget.

## II.

## BACKGROUND AND COMMON FACTUAL ALLEGATIONS

13. Defendants purchased the subject property in or about 2001. At that time the property was a single parcel. The improvements were an apartment complex comprised of five buildings. At the time of purchase by these defendants, the lot had not been subdivided and no separate interest had ever been sold. Soon after purchase, the defendants began a process to

acquire an amended final "Subdivision Public Report" (hereinafter "Public Report") from the Department of Real Estate.

14. In order to acquire the Public Report defendants made numerous representations to the Department of Real Estate indicating that the project and all of its common areas would be in an "as new" condition at the time of sale and/or fully repaired or replaced. Further, material changes to the master management documents used in the application and other portions of the previously submitted application documents were not disclosed to the Department of Real Estate. These representations were made to persuade the Department of Real Estate to issue the Public Report and included in the Department of Real Estate Form 639 ("DRE 639"), Public Report and RE Form 623 Budget Worksheet (DRE "623"). Some of these false representations include:

a. The flat roof will be replaced/repaired prior to the first conveyance;

b. The pool, pool heaters, pool filter, pool heaters, club house and restrooms will be replaced/repaired prior to the first conveyance;

c. There are no known defects in the foundations, frame, wood structures, plumbing, heating, air condition, etc.;

d. The spa, spa heater, spa filter, and pumps will be replaced prior to first conveyance;

e. Fencing around the complex will be replaced prior to first conveyance;

f. Streets and drives shall be new concrete prior to first conveyance;

g. The asphalt parking area will be re-surfaced and stripped prior to first conveyance;

h. The landscaping shall be enhanced/installed prior to first conveyance;

i. The hot water heaters and air conditioners will be replaced/repaired prior to first conveyance;

j. Developer is aware of absolutely no defects in the common areas and major systems at the subject property.

////

15. In anticipation of the eventual sale of individual condominium units, in or about March of 2002, these defendants sought segregation of the lot into individual units by the County of San Diego Assessor's office, including the issuance of individual assessor parcel numbers. In or about September 4, 2002, these defendants received a Final Public Report from the Department of Real Estate, and sold the first individual unit in or about November of 2002.

16. Between 2001 and 2002, defendants ignored the significant grading, water intrusion, structural, landscaping and other problems with the subject property. Instead, they painted the inside of the units, installed new appliances and flooring. The purpose of these repairs was to create a picture of "new" and "refurbished" condominiums to these first time home buyers and inexperienced ASSOCIATION.

17. This construction was performed by defendants and various subcontractors. During the construction, defendants became aware of mold, termites, water intrusion, electrical and plumbing malfunctions. However, defendants chose to ignore the problems to the detriment of ASSOCIATION.

18. The next step for the defendants was to market these units. To do so, they represented to the public that these units would contain a one year warranty and be "as new" and had been completely "refurbished," among other material misrepresentations. These descriptions were contained on defendants' web-sites and the Multiple Listing Service. Defendants further made these representations at the time of showing the properties and throughout the sales process. The units were entry-level residences, marketed to inexperienced, first-time buyers. The purchase agreement was a take-it-or-leave-it proposition and potential buyers who wished to negotiate were summarily turned away.

19. After the purchase and sale of these units to the individual homeowners, the ASSOCIATION began to realize the major problems with the common areas and damages to units arising therefrom. Immediately, ASSOCIATION began registering both written and verbal complaints with defendants and asked them to comply with their warranty and the representations made to the Department of Real Estate, ASSOCIATION and homeowners. A majority of these complaints were met with responses to the effect that, "These were sold as is,"and "Your