1  homeowners signed a disclaimer and/or waiver" and other similar responses designed to lead

2  ASSOCIATION to believe that it had no legal remedies against the defendants. In making these

3  denials and disclaimers of liability, defendants referred ASSOCIATION to the unconscionable

4  language contained in the Conditions, Covenants and Restrictions ("CCRs").

5       20.    Furthermore, the CCRs for the project, attached hereto as Exhibit "A" mandate

6  that the ASSOCIATION be responsible for all maintance and repairs of the common areas.

7  Despite the fact that these CCRs were drafted by the defendants, defendants then prepared a

8  budget for the subject property and created such budget based on the premise that these units and

9  the common areas were akin to "as new" construction. The result was an ASSOCIATION

10 proscribed with the duty of maintaining and repairing the common areas with grossly insufficient

11 monetary funding to do so. In addition, the defendants failed to provide any insurance for the

12 ASSOCIATION whatsoever. Instead, they kept the insurance in their names so as to keep the

13 individual homeowners dues to a minimum and thereby make the units more attractive to

14 potential purchasers.

15      21.    ASSOCIATION brings this action under sections 367 and 383 of the Code of

16 Civil Procedure and section 1363 of the Civil Code. For the past six months the ASSOCIATION

17 has been engaged in protracted mediations with defendants as well as inspections of the property.

18 Accordingly, ASSOCIATION has met all requirements of the *Calderon* process. No resolution

19 was made at the various mediations of this matter.

20      22.    As the party required to maintain and repair the common areas, as the party

21 holding an easement over all common areas, and as the party harmed by defendants' conduct as

22 herein described, ASSOCIATION is a real party in interest under Code of Civil Procedure

23 section 363 that is entitled to bring claims concerning defective construction and conversion of

24 the common areas and the damages caused to the units by such defective construction.

25 ////

26 ////

27 ////

28 ////

## III.

### FIRST CAUSE OF ACTION

#### (NEGLIGENCE AGAINST ALL DEFENDANTS)

23.    ASSOCIATION incorporates paragraphs 1 through 22 of this Complaint as though fully set forth herein word for word.

24.    Defendants, and each of them, as developers, designers, contractors, marketers and sellers of the subject property had a duty to act reasonably in the conversion of the subject property into condominium units. Furthermore, these defendants voluntarily assumed the duty to fully refurbish the units and make them "as new."

25.    Defendants, and each of them, breached these duties in several respects, failing to use reasonable care in the conversion, construction, design, marketing and planning process. These breaches include, but are not necessarily limited to the following:

a.    Failing to prevent and remedy mold and water intrusion problems throughout the subject property;

b.    Failing to prevent and remedy faulty grading and landscaping throughout the subject property;

c.    Failing to bring the subject property up to the standards of the Uniform Building Code, Electrical Code, among others;

d.    Failing to properly inspect the condition of the units;

e.    Failing to prepare proper plans and specifications;

f.    Failing to properly set up the ASSOCIATION to meet the duties imposed by said defendants as set forth in the CCRs;

g.    Otherwise acting negligently in their construction, sale, conversion, and marketing of the units and subject property.

////
////
////
////

26.    As a direct and proximate result of the above breaches of duty and duties by defendants and each of them, the ASSOCIATION has suffered damages to property, loss of use of property, damages to common areas and budget. At this time, the exact amount of said damages is unascertainable, however, ASSOCIATION asserts that such damages are in excess of this Court's jurisdictional requirements and will be proven in certainty at the time of trial.

IV.

### SECOND CAUSE OF ACTION

(FOR CIVIL CONSPIRACY TO VIOLATE BUSINESS AND PROFESSIONS CODE SECTION 11020 AGAINST DEFENDANTS 1800 SOUTH MAPLE STREET LLC, RALPH GIANNELLA, WILLIAM AYYAD, WILLIAM G. AYYAD, INC., KEITHA GIANNELLA, DAN TOMASI, RALPH GIANNELLA AND KEITHA GIANNELLA REVOCABLE TRUST, PREMIER COMMUNITIES, LLC, MARK HOLMES CONSTRUCTION AND ALL DOES)

27.    ASSOCIATION incorporates paragraphs 1 through 26 of this Complaint as though fully set forth herein word for word.

28.    Defendants, and each of them, acted together and with knowledge of the others' actions, in a plan and scheme to violate Business and Professions Code Section 11020 which states, in pertinent part:

(a)    It shall be unlawful for any person to make, issue, publish, deliver, or transfer as true and genuine any public report which is forged, altered, false or counterfeit, knowing it to be forged, altered, false or counterfeit or to cause to be made or participate in the making, issuance, delivery, transfer, or publication of a public report with knowledge that it is forged, altered, false, or counterfeit. . . (Cal. Bus. & Prof. Code Section 11020(a)).

29.    Specifically, each of these defendants prepared numerous official documents, including but not limited to, DRE 639, DRE 623, sample Civil Code §1134 statements, the Public Report and disclosures therein, the Conditions, Covenants and Restrictions, that include misrepresentations regarding the subject property, ASSOCIATION's rights, and defendants' obligations, all in violation of California Bus. & Prof. Code §11020. For example, and not meant as an all inclusive list, the defendants made the following misrepresentations:

a.    The flat roof will be replaced/repaired prior to the first conveyance;

b.    The pool, pool heaters, pool filter, pool heaters, club house and restrooms will be replaced/repaired prior to the first conveyance;

c.    There are no known defects in the foundations, frame, wood structures, plumbing, heating, air condition, etc.;

d.    The spa, spa heater, spa filter, and pumps will be replaced prior to first conveyance;

e.    Fencing around the complex will be replaced prior to first conveyance;

f.    Streets and drives shall be new concrete prior to first conveyance;

g.    The asphalt parking area will be re-surfaced and stripped prior to first conveyance;

h.    The landscaping shall be enhanced/installed prior to first conveyance;

i.    The hot water heaters and air conditioners will be replaced/repaired prior to first conveyance; and,

j.    Developer is aware of absolutely no defects in the common areas and major systems at the subject property.

30.    Prior to the units at the subject property being sold, and thereafter, defendants, and each of them, made affirmative representations to government officials and ASSOCIATION members that each unit, common areas and utilities would be repaired or replaced, or conversely, defendants represented that they had no knowledge of any defects in the common areas or units. Defendants, and each of them, concealed material facts, including but not limited to the presence of mold, defective plumbing, defective electrical, termite damage, improper grading and landscaping, from the Department of Real Estate and ASSOCIATION. Defendants, and each of them, were the only parties with knowledge of these material facts and as the seller of real property, had a legal obligation and duty to disclose the true condition of the subject property to the Department of Real Estate and ASSOCIATION.

////
////
////
////
////

31.    Defendants, and each of them, knew that these representations were false when they made them and/or had no reasonable basis for making such assertions and representations. Defendants further concealed material facts regarding the condition of the subject property from ASSOCIATION and governmental officials when they prepared the ASSOCIATION budget based upon "as new" construction, while simultaneously creating governing documents for the ASSOCIATION asserting or omitting the following:

a.    The ASSOCIATION is mandated to make all repairs to all common areas;

b.    The condominium complex and all common areas are being sold in an "as is" condition;

c.    The project was built in 1981 and the ASSOCIATION should expect defects;

d.    Limiting the amount of money the ASSOCIATION could levy via special assessments from the homeowners;

e.    Omitting as a line item in the budget all plumbing and electrical maintenance;

f.    Otherwise misrepresenting the ASSOCIATION's ability to perform all necessary repairs given the inadequate budget based upon "as new" construction.

32.    The Department of Real Estate relied on the defendants' misstatements of material facts in approving the budget and the other master documents.

////
////
////
////
////
////
////
////

33.     Defendant, AYYAD, is, and was at all times relevant, the corporate officer and managing agent of defendants PREMIER, MAPLE and AYYAD, INC. In this capacity, he personally made the aforementioned misrepresentations and also ratified, condoned and approved the making of such representations by employees, including but not limited to, defendants TOMASI and GIANNELLA. Specifically, defendant AYYAD knew that elements of the subject property were not going to be replaced or repaired, yet still encouraged his agents and employees to make such representations to further the Department of Real Estate's approval of the budget and governing documents. In turn, this would create for AYYAD and his entities the benefit of more sales and profits.

34.     Defendant, RALPH, is, and was at all times relevant, the corporate officer and managing agent of defendants PREMIER, TRUST and MAPLE. In this capacity he personally made the aforementioned misrepresentations and also ratified, condoned and approved the making of such representations by employees, including but not limited to, defendants TOMASI and AYYAD. Specifically, RALPH knew that elements of the subject property were not going to be replaced or repaired, yet, still encouraged his agents and employees to make such representations to further the Department of Real Estate's approval of the budget and governing documents. In turn, this would create for RALPH and his entities the benefit of more sales and profits.

35.     As a direct and proximate result of the actions complained of herein, ASSOCIATION has been damaged in its property, loss of use of property, damages to common areas and budget. The exact amount of said damages is currently unknown, however, such amount is in excess of this Court's jurisdictional requirement and will be proven with specificity at the time of trial.

36.     Defendants, and each of them, in making the aforementioned representations, non-disclosures of material fact and acting together with the intent to violate California Bus. & Prof. Code § 11020 and defraud ASSOCIATION and public agencies, acted with malice, oppression and fraud as they knew said representations and concealment, would cause irreparable harm and damages. Defendants, and each of them, performed such actions with the intent of furthering

1 | their personal profits to the detriment of ASSOCIATION.  As such, ASSOCIATION is entitled

2 | to punitive and exemplary damages from each defendant.

3 |                                    V.

4 |                     THIRD CAUSE OF ACTION

5 | (FOR BREACH OF CCRS/CONTRACT AGAINST DEFENDANTS MAPLE, WILLIAM
    G. AYYAD, INC., WILLIAM AYYAD, RALPH GIANNELLA,  PREMIER
6 | COMMUNITIES, LLC, KEITHA GIANNELLA, RALPH AND KEITHA GIANNELLA
    REVOCABLE TRUST AND ALL DOES)
7 |

8 | 37.    ASSOCIATION incorporates paragraphs 1 through 36 of this Complaint as

9 | though fully set forth herein word for word.

10 | 38.    The CCRs provided to ASSOCIATION and purchasers contain the following

11 | statement/warranty:

12 | The Successor Declarant represents that the following items in the Project will be
     in "working condition" as of the Close of Escrow of each Condominium subject to
13 | this Declaration: Appliances, Roof, Plumbing, and Electrical.  (See Exhibit "B" at
     Page 88, paragraph 17.1(G).)
14 |

15 | 39.    Defendants, and each of them, breached this contract and warranty as the

16 | condominiums and common areas were not free from defects in material and/or workmanship at

17 | the time of sale and within one (1) year of purchase.

18 | 40.    Defendants, and each of them, were given proper notice of defects in material

19 | and/or workmanship and failed to correct same, despite timely demands made by

20 | ASSOCIATION.

21 | 41.    ASSOCIATION complied with all essential terms and provisions of the contract

22 | except those that were excused or deemed void by way of the breach of the defendants, and each

23 | of them.

24 | ////

25 | ////

26 | ////

27 | ////

28 | ////

---

13
COMPLAINT

42.     As a result of defendants, and each of their, breach of the aforementioned CCRs, the ASSOCIATION has suffered damage to property, loss of use of property, damages to common areas and budget.   In addition, ASSOCIATION has incurred attorneys fees and expended sums in assertion of their rights under the CCRs.  The exact amount of said damages is currently unascertainable, however, such amount is in excess of this Court's jurisdictional requirement and will be proven with specificity at the time of trial.

## VI.

## FOURTH CAUSE OF ACTION

### (FOR BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS WILLIAM G. AYYAD, INC., WILLIAM AYYAD, RALPH GIANNELLA, MAPLE, PREMIER COMMUNITIES, LLC, RALPH GIANNELLA AND KEITHA GIANNELLA REVOCABLE TRUST, AND ALL DOES)

43.     ASSOCIATION incorporates paragraphs 1 through 42 of this Complaint as though fully set forth herein word for word.

44.     Pursuant to the CCRs, and common law obligations, defendants had an obligation to adequately fund a reserve account for contingencies, avoid conflicts of interest or actions or decisions which benefit their own interests at the expense of the ASSOCIATION,  provide and maintain liability, fire and casualty insurance for the ASSOCIATION and all common area property, draft the CCRs without self-serving exculpatory clauses.

45.     Defendants, and each of them, failed to meet their fiduciary duties to the ASSOCIATION.  Defendants failed to adequately fund a reserve account for contingencies, avoid conflicts of interest or actions or decisions which benefit their own interests at the expense of the ASSOCIATION,  provide and maintain liability, fire and casualty insurance for the association and all common area property, and failed to properly draft the CCRs without self-serving exculpatory clauses as more fully set forth herein.

////
////
////
////

46.    As a direct and proximate result of the actions complained of herein, ASSOCIATION has been damaged in its property, loss of use of property, damages to common areas and budget.    The exact amount of said damages is currently unascertainable, however, such amount is in excess of this Court's jurisdictional requirement and will be proven with specificity at the time of trial.

47.    Defendants, and each of them, violated their fiduciary duty to ASSOCIATION with malice and oppression in that defendants, and each of them, prepared a false budget and submitted false documents to the Department of Real Estate in order to achieve greater profits for their companies and related entities.  Such conduct is the type of conduct that entitles ASSOCIATION to exemplary and punitive damages.

## VII.

### FIFTH CAUSE OF ACTION

**(FOR ALTER EGO LIABILITY AGAINST DEFENDANTS WILLIAM G. AYYAD, INC., WILLIAM AYYAD, RALPH GIANNELLA, MAPLE, RALPH GIANNELLA AND KEITHA GIANNELLA REVOCABLE TRUST, KEITHA GIANNELLA, PREMIER COMMUNITIES, LLC, AND ALL DOES)**

48.    ASSOCIATION incorporates paragraphs 1 through 47 of this Complaint as though fully set forth herein word for word.

49.    Defendants, and each of them, created the fiction of a separate corporate entity in the form of MAPLE.  Defendants, and each of them, engaged in a pattern and practice of fraud in commingling corporate and individual assets and use of corporate funds or property for individual purposes; utilized the corporate entity to procure labor, services or merchandise for the benefit of shareholders or another entity; engaged in a practice of diverting assets from a corporation to a shareholder or to another entity; or manipulation of the assets and liabilities between several controlled corporations so as to concentrate all assets in one and all liabilities in another; made representations by a shareholder that he or she is responsible for corporate obligations; failed to maintain minimum or adequate corporate records, and confusion of shareholder and corporate records; had, despite the presence of several separate LLCs and individuals, kept their identical equitable ownership, identical officers and directors, and identical

1  domination and control; had in many instances sole ownership of all corporate stock by one
2  individual or the members of a single family; utilized the same offices or business location; or
3  employed and utilized the same employees and/or attorney; failed to adequately capitalize the
4  corporation and LLCs, in light of its expected business obligations; formed LLCs and
5  corporations as a shell for a single venture, or the business of an individual or another
6  corporation; disregarded legal formalities and failure to maintain arms' length relationships
7  among related business entities; signed and executed legal documents without regard for the legal
8  entity responsible or prescribed the duty of executing such documents; and, used the corporations
9  an8d LLCs as a subterfuge for an illegal transaction.

10      50.    There exists at all times since MAPLE's incorporation, a unity of interest and
11  ownership between MAPLE and these defendants such that any separateness between them has
12  ceased to exist.  As a result of the aforementioned conduct, each defendant is the same as the
13  other and the corporate form or business entity became, for all practical and legal purposes, one
14  and the same.

15      51.    Defendant MAPLE is, and at all times mentioned was a mere shell,
16  instrumentality and conduit through which these defendants carried on their activities in the
17  corporate name to avoid personal liabilities and obligations and/or obligations from one corporate
18  entity to the other.  Should the acts alleged in referenced in this Complaint and otherwise be
19  treated as those of MAPLE's alone, an inequitable and unjust result will follow.

## VIII.

## SIXTH CAUSE OF ACTION

(FOR NEGLIGENCE PER SE [VIOLATION OF CIVIL CODE §1134] AGAINST
DEFENDANTS WILLIAM G. AYYAD, INC., WILLIAM AYYAD, RALPH
GIANNELLA, MAPLE, RALPH GIANNELLA AND KEITHA GIANNELLA
REVOCABLE TRUST, PREMIER COMMUNITIES, AND DOES 1-150)

25      52.    ASSOCIATION incorporates paragraphs 1 through 51 of this Complaint as
26  though fully set forth herein word for word.
27  ////
28  ////

53.    Defendants and each of them had an obligation, pursuant to Civil Code §1134 to provide a written statement listing all substantial defects or malfunctions of the major systems in the unit and common areas of the premises or a statement disclaiming knowledge of any such substantial defects of malfunctions.  The disclaimer may only be delivered after owner or subdivider has inspected the unit and the common areas and has not discovered a substantial defect of malfunction which would have been disclosed by a reasonable inspection.

54.    Defendants and each of them failed to perform a reasonable inspection of the major systems.  Defendants and each of them failed to deliver a statement which complied with Civil Code §1134.

55.    This ordinance was enacted to protect the purchasers of "converted" condominiums from substandard construction and dangerous conditions.  ASSOCIATION is a member of this class and thereby has standing to sue for negligence per se.

56.    As a direct and proximate result of the above breach of the aforementioned law by defendants and each of them, the ASSOCIATION has suffered damages in to its property, loss of use of property, damages to common areas and budget.  At this time, the exact amount of said damages is unascertainable, however, ASSOCIATION asserts that such damages are in excess of this Court's jurisdictional requirements and will be proven in certainty at the time of trial.

IX.

## SEVENTH CAUSE OF ACTION

(FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200
AGAINST ALL DEFENDANTS AND DOES, EXCEPT MARK HOLMES
CONSTRUCTION)

57.    ASSOCIATION incorporates paragraphs 1 through 56 of this Complaint as though fully set forth herein word for word.

58.    Defendants, and each of them, engaged in unfair and fraudulent business practices as more fully described above.  In particular, defendants, and each of them, submitted false and fraudulent documents in furtherance of their conspiracy to defraud the Department of Real Estate and violate California Bus. & Prof. Code § 11020, an act or actions that is forbidden by law.

59.    As a result of defendants' conduct, the ASSOCIATION has and continues to suffer irreparable harm and injuries.

## X.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff preys for judgment against Defendants and for relief as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For compensatory damages according to proof;

4.    For consequential damages according to proof;

5.    For attorneys' fees and costs as permitted by law;

6.    For punitive and exemplary damages;

7.    For all other relief as deemed just and appropriate and allowed by law.

DATE: August 16, 2005

DAWSON & OZANNE

By: _____
Brendan K. Ozanne,
Attorneys for Plaintiff

# EXHIBIT C



**Allied**
Insurance
A Nationwide® Company
On Your Side℠

**San Diego Service Office**
P.O. Box 1820
La Mesa, California 91944-1820

November 10, 2005

**Vekeno Kennedy, General Counsel**
**United Development Group, Inc.**
**9252 Chesapeake Drive, Suite 100**
**San Diego, CA 92123**

Re: <u>Hidden Glen Maintenance Corp. v. 1800 South Maple Street, LLC</u>
    SDSC Case Number: GIN 852647
    Policy Number: ACP BPH 7801069841
    Effective Dates: 04/04/2002 to 11/25/2002
    Insureds: ACDW Properties, Gianella Properties, 4-Way Farms, a California Corp.,
    South Maple LLC, A California Limited Liability Company, Subsequently
    Changed to a Corporation
    Date of Loss: Undetermined, Set at 11/24/2004 for Administrative Purposes
    Claim Number: 84L52141

Dear Ms. Kennedy,

This letter is intended to memorialize what has been discussed in our various telephone conversations.

First of all, I want to repeat that AMCO Insurance Company is conducting an investigation to determine if it has any obligation to defend and/or indemnify any of the policy insureds in the above captioned litigation. As we have discussed, AMCO doesn't presently have enough information to make a decision on whether or not it has any defense obligation in this matter, although given the allegations included within the Complaint and given information included in other documents you have provided to this company, our current understanding of this matter leads us to the conclusion that AMCO does not have any defense and/or indemnity obligations to its insureds in this litigation. Accordingly, all future investigation conducted by this company will be undertaken under the Company's reservation of its right to decline to defend or indemnify its insureds in this matter.

You verbally advised me on October 6, that service has not been properly effectuated on any of the named defendants. Please confirm that remains the case or, if not, please identify the parties served and the dates of service.

The following will be a summary of the facts as we currently understand them. Later in this letter, I will outline policy terms and conditions and list the reasons we currently believe that policy number ACP BPH 7801069841 does not afford coverage for the claims asserted by plaintiffs in this matter. Finally, I will list additional documents and     Allied Group, Inc.
    AMCO Insurance Company
    Allied Property and Casualty Insurance Company
    Depositors Insurance Company

information that I believe may be in your possession and I will ask you to provide copies of those documents and to provide additional information so that a final coverage determination can be made by this company.

**THE FACTS**

The Complaint filed by The Hidden Glen Maintenance Corporation alleges that "defendants" purchased the "subject property", an apartment complex, in or about 2001. All named defendants, except certain contractors, are alleged to be partners in the 1800 South Maple Street LLC and it is alleged that this entity was the purchaser and subsequent owner of the apartment complex. The Complaint alleges that "At the time of purchase by these defendants, the lot had not been subdivided and no separate interest had ever been sold."

The Complaint alleges that "Soon after purchase, the defendants began a process to acquire an amended final "Subdivision Public Report" (hereinafter "Public Report" from the Department of Real Estate. The Complaint alleges that the defendants made representations to the Department of Real Estate indicating that the project and all its common areas would be in an "as new" condition at the time of same and/or fully repaired or replaced. Plaintiffs then go on to list a number of improvements they allege defendants represented to the Department of Real Estate would be performed. These improvements included repairs or replacement of major building components and allegedly included representations that the common areas and major systems were defect free.

The Complaint alleges that "in or about March of 2002, defendants sought segregation of the lot into individual units by the County of San Diego Assessor's office, including the issuance of individual assessor parcel numbers. In or about September 4, 2002, these defendants received a Final Public Report from the Department of Real Estate, and sold the first individual unit in November 2002." The Complaint does not indicate when the remaining units were sold.

The Complaint alleges that "between 2001 and 2002, defendants ignored the significant grading, water intrusion, structural, landscaping and other problems with the subject property. Instead, they painted the inside of the units, installed new appliances and flooring. The purpose of these repairs was to create a picture of "new" and "refurbished" condominiums."

The Complaint further alleges that "this Construction (painting, new appliances and flooring) was performed by defendants and various subcontractors. During the construction, defendants became aware of mold, termites, water intrusion, electrical and plumbing malfunctions." However, defendants chose to ignore the problems to the detriment of ASSOCIATION."

The Complaint alleges that the units were marketed as entry level residences to unsophisticated buyers and that defendants represented to the public that "these units

would contain a one year warranty and be "as new" and had been completely "refurbished," among other material misrepresentations."

The Complaint alleges that "after the purchase and sale of these units to the individual homeowners, the ASSOCIATION began to realize the major problems with common areas and damages to units arising therefrom." Plaintiff allege that verbal and written complaints made to the defendants relating to the problems prompted, in most instances, response to the effect that "the units were sold as is," and "Your homeowners signed a disclaimer and./or waiver".

The Complaint asserts Causes of Action for:

Negligence
Civil Conspiracy to Violate Business and Professions Code Section 11020
Breach of CCRS/Contract
Breach of Fiduciary Duty
Alter Ego Liability
Negligence Per Se
Violation of Business and Professions Code Section 17200

The Complaint seeks recovery of general damages according to proof, special damages, compensatory damages, attorney's fees, and punitive damages.

The CC&Rs include the following provisions:

1.19 Declarant.
Declarant shall mean South Maple Street, LOC, a California Limited Liability Company, its successors and any Person to which the Declarant shall have assigned any of its rights hereunder by an express written assignment.

2.4 Classes of Membership.
The Association shall have two (2) classes of voting membership.

(a) Class A. Class A Members shall originally be all Owners except Declarant for so long as there exists a Class A Membership. Class A Members shall be entitled to one (1) vote for each Condominium owned by such Class A Members and subject to assessment. Declarant shall become a Class A member with regard to Condominiums owned by Declarant upon conversion of Declarant's Class B membership as provided below. When more than one (1) Person owns any condominium, all such Persons shall be members. The vote for such Condominium shall be exercised in accordance with Section 2.6, but in no event shall more than one (1) Class A vote be cast for any Condominium.

(b) Class B. The Class B Member shall be Declarant. The Class B Member shall be entitled to three (3) votes for each Condominium owned by Declarant and subject to assessment. The Class B Membership shall cease and be converted to Class A membership immediately upon the first to occur of the following events:

      (1) When the total votes outstanding in the Class A membership equal the
          total votes outstanding in the Class B membership or

      (2) The second anniversary of the first Close of escrow in the Project;

The CC&R's require that the Association shall be responsible for maintenance and upkeep of the common area except for repair or improvement of the units or the Exclusive use Common Area, the maintenance of which is the responsibility of the Owners as provide in Section 2.8.

## THE POLICY

The AMCO Insurance Company Premier Businessowners policy promises to do the following:

A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
  1. INSURING AGREEMENT
    a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.
       HOWEVER, We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
       We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
      1) The amount we will pay for damages is limited as described in Section III, LIMITS OF INSURANCE; and
      2) Our right and duty to defend end when we have used up the applicable limit of insurance in payment of judgements or settlements under COVERAGES A AND B.
     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.
    b. This insurance applies to "bodily injury" and "property damage" only if:
    1) The "bodily injury" or "property damage" is caused by an 'occurrence" that takes place in the "coverage territory"; and
    2) The "bodily injury" or "property damage" occurs during the policy period; and
    3) Prior to the policy period, no insured listed under Paragraph 1. Of Section II, WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the 'bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II. WHO IS AN ISURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any or any other insurer;

      2)  Receives a written or verbal demand or claim for damages because of the "bodily Injury" or "property damage"; or

      3)  Becomes aware by any other means that "bodily injury" or "property damage" Has occurred or has begun to occur.

    e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

The following terms are defined by the policy:

"Bodily injury means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

"Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

"Property damage means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed t o occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

The following exclusions are included under Coverage A of the policy:

j. Damage To Property
This insurance, including any duty we have to defend 'suits", does not apply to:
"Property damage: to:

  1) Property you own, rent, or occupy;

  2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

  3) Property loaned to you;

  4) Personal property in the care, custody or control of the insured;

  5) That particular part of real property on which you or any contractors or subcontractors


working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it."

Other than damage by the Covered Causes of Loss provided under Tenants Property Damage legal Liability, paragraph 1), 3) and 4) of this exclusion do not apply to "property damage" to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage to Premises Rented To You as described in Section III. LIMITS OF INSURANCE.

Paragraph 2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3), 4), 5) and 6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6)of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**m. Damage To Impaired Property Or Property Not Physically Injured**

This insurance, including any duty we may have to defend "suits", does not apply to: "Property damage" to "impaired Property" or property that has not been physically injured, arising out of:

1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use."

Added via endorsement PB 29 99 (01-02); EXCLUSION – FUNGI OR BACTERIA (WITH LIMITED PROPERTY COVERAGE)

**B. AMENDMENTS TO THE PREMIER BUSINESSOWNERS LIABIITY COVERAGE FORM**

1. In Section I, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGES LIABIITY, under paragraph 2. EXCLUSIONS, the following exclusions are added: This insurance, including any duty we have to defend "suits", does not apply to:

**FUNGI OR BACTERIA**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part , but for:

1) The actual, alleged or threatened inhalation of, ingestion of, contract with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents; or

2) The failure to warn or to disclose the presence of "fungi" or bacteria;

Regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the testing for, monitoring cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity.

HOWEVER, this exclusion does not apply to any "fungi" or bacteria that are, are on or are contained in, "your product" intended for human or animal consumption.

This endorsement adds the following definitions:
ADDITIONAL DEFINITION
    1. The PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM, under Section H. DEFINITIONS; and
    2. The PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM, under Section V. DEFINITIONS.
"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

The AMCO Premier Businessowners policy also includes coverage under Coverage B. Coverage B states the following:

COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, the policy promises the following:

1. INSURING AGREEMENT
a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages for which there is coverage under this policy.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our sole discretion, investigate any offense and settle any claim or "suit" that may result.......

The policy defines the term "personal and advertising injury" as follows:

"Personal and advertising injury means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement.

Endorsement PB 29 99 (01-02) also adds an exclusion to COVERAGE B barring coverage for claims involving "personal and advertising injury" which would not have occurred, in whole or in part, but for

1) The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, any "fungi" or bacteria on or within a building or structure, including its contents........(the rest of the exclusion is identical to the Fungi or Bacteria exclusion quoted above applying to COVERAGE A of the policy.

A California Amendatory Endorsement (PB9004 03/04) was made part of the policy. This endorsement adds an exclusion that is applicable to both Coverage A and Coverage B of the policy. It states:

D. Additional Liability Exclusion
In the LIABILITY COVEAGE FORM under Section 1, COVERAGES, the following exclusion is added to COVERAGES A and B:
This insurance, including any duty we have to defend "suits" does not apply to:
BREACH OF CONTRACT
"Bodily injury", "property damage" or "personal and advertising injury" that arises out of or is a result of any breach of a written or oral contract, any breach of any other written or oral agreement, or any breach of an express or implied warranty."

## COVERAGE ISSUES

1) Coverage under the AMCO policy was cancelled by the insureds effective 11/25/2002. The Complaint filed by the Hidden Glenn Maintenance Corp, alleges that the first individual unit was sold in or about November 2002. Assuming the Complaint seeks covered damages arising out of an "occurrence," did the "occurrence" take place within the policy period?

2) Coverage under the AMCO policy was cancelled by the insureds effective 11/25/2002. The Complaint filed by the Hidden Glenn Maintenance Corp. alleges that the first individual unit was sold in or about November 2002. 1800 South Maple Street LLC is the Declarant, as defined by the CC&Rs. Given the formula prescribed by the CC&Rs for determining when responsibility for the Common Areas of the condominium would transfer to the Class A members (owners), would exclusion j of Coverage A apply?

3) All defendants, except for the contractor defendants, are sued as partners in the 1800 South Maple Street LLC. Is that allegation factual?

4) The Complaint alleges that defendants failed to repair major site systems prior to the sale of the individual condominium units. The Complaint alleges that failure to make repairs to existing problems constitutes negligence. There is no assertion



in the Complaint that work performed by the insured or by contractors engaged by the insured resulted in consequential damage that "occurred" within the AMCO policy period.

5) The policy doesn't cover claims arising out of alleged misrepresentations made in the sale of real property. That is well settled law in California.

6) The policy does not cover claims for Breach of Contract or Breach of Warranty. (See exclusion quoted above).

7) The policy does not cover claims arising out of the Cause of Action for Civil Conspiracy to Violate Business and professions Code Section 11020 because such claims do not arise out of an "occurrence" as that term is defined by the policy and such claims do not qualify as an offense under the definition of "personal and advertising injury."

8) The policy does not cover claims arising out of Breach of Fiduciary Duty because such claims do not arise out of circumstances that qualify as an "occurrence," as that term is defined by the policy or out of an offense listed within the definition of "personal and advertising injury".

9) The policy does not cover claims for damages arising out of alleged Breach of CCRS/Contract because such claims do not arise out of an "occurrence," as that term is defined by the policy and such claims are excluded by the Breach of Contract exclusion quoted above.

10) The policy does not cover damages arising out of alleged Violation of Business and Professions Code Section 17200 because such claims do not arise out of circumstances that qualify as an "occurrence" as the policy defines that term or out of an offense included within the definition of "personal and advertising injury."

**DOCUMENTATION, INFORMATION NEEDED:**

1) On what date was the first condominium purchased by an individual homeowner? On what date did escrow close on that unit.

2) On what date did the Class A owners assume control of the Homeowners Association?

3) Provide a list of all partners in the 1800 Maple Street LLC.

4) Did 1800 Maple Street LLC employ contractors to make repairs to the apartment complex before individual units were sold as condominiums to individual homeowners? If so, please identify those contractors, the dates they were hired and what work they performed. Please provide copies of any contracts entered between 1800 South Maple LLC (or any other potential insured) and any contractors hired to perform work.

5) The Complaint alleges that defendants performed some repairs after receiving complaints from the Association. If that is true, please provide any paperwork retained that describes the nature and extent of repairs made, the date of those repairs and identifies who did the repairs.

I acknowledge receipt of the CCRS you sent to me as well as a copy of attorney Ozanne's demand letter dated September 27, 2005. Has the insured given any response to this demand? If so, please provide me with a copy of that response.

I am anxious to gather the documentation and information necessary to make a decision on whether or not the AMCO policy affords coverage for the claims asserted in the Complaint filed by the Hidden Glen HOA so AMCO can promptly respond to your tender. You have already agreed to send me selected documents. I hope they include documents that will answer some of the questions posed above.

AMCO's investigation of this claim shall not be construed as a waiver of any policy defense or legal grounds available in support of our eventual coverage position. Nor shall AMCO be deemed to be estopped in the future to assert any additional policy defenses or legal grounds in support of our eventual coverage position, not stated here. Likewise, none of the insured's rights under the AMCO policy or at law shall be deemed to have been waived. Nor shall the insured be deemed to be estopped in the future to assert any of its rights to coverage under the AMCO policy.

Please call me at 619 668-6559 when you have gathered sufficient documents and information to allow us to have a constructive meeting on this matter.

Sincerely,

Robert K. Johnson
AMCO Insurance Company
A Nationwide Company

# EXHIBIT D

ORIGINAL

# MILLER LAW FIRM

Scott A. Johnson

The Marston Building
427 C Street, Suite 410
San Diego, California 92101

Telephone
619•232•0086
Facsimile
619•232•0089

March 3, 2006

Ms. Vekeno Kennedy
General Counsel
United Development Group, Inc.
9252 Chesapeake Drive, Ste. 100
San Diego, Calif.  92123

Re:    Hidden Glen Maintenance Corp. v. 1800 South Maple Street, LLC, et al.
San Diego Superior Court Case No. GIC852647
Policy No. ACP BPH 7801069841
Claim No. 84L52141

Dear Ms. Kennedy:

My firm has been retained by AMCO Insurance Company to independently evaluate the request for coverage of the above-referenced litigation, that has been made under the AMCO insurance policy issued to ACDW Properties/Gianella Properties and 4-Way Farms.  Pursuant to that evaluation, I have carefully reviewed the complaint filed by The Hidden Glen Maintenance Corporation, the insurance policy and endorsements thereto issued by AMCO, plaintiff's bylaws and Hidden Glen's CC&Rs, other documents and information which you have provided to AMCO's Robert Johnson, and AMCO's underwriting file.

Based upon my review of these documents, and my independent legal research, it is my opinion that the complaint does not allege any claims which would potentially be covered by the AMCO insurance policy.  AMCO has come to the same conclusion.  However, before formally denying the claim for coverage, AMCO would like to give further consideration to one remaining issue.

Specifically, the documents and information now in AMCO's possession do not clearly establish the relationship between AMCO's insureds and the defendants named in the complaint.  To ensure that no basis for coverage of an AMCO insured has been overlooked, it would be appreciated if you could provide information, discussed below, regarding those relationships.

If you choose not to respond to this request for information, you may consider the request for coverage of the above-referenced litigation denied.  The reasons for that denial are explained in detail below.  If, after reading that explanation, you believe that you are aware of additional new facts which would justify a different conclusion, please contact the undersigned, or Mr. Johnson, as soon as possible.

Ms. Vekeno Kennedy
Page 2 of 13
March 3, 2006

I

### REQUEST FOR INFORMATION REGARDING THE DEFENDANTS
### AND THEIR RELATIONSHIP WITH THE NAMED INSUREDS

The complaint filed by plaintiff Hidden Glen Maintenance Corporation names as defendants: 1800 South Maple Street, LLC; Ralph Giannella and Keith Giannella, both individually and as the trustees of the Ralph Giannella and Keith A. Giannella Revocable Trust, William Ayyad and William G. Ayyad, Inc., Premier Communities LLC, Dan Tomasi, and Mark Holmes Corporation. None of these individuals and entities are named insureds in the AMCO insurance policy.

The AMCO insurance policy declarations, the underwriting file and the application for insurance all identify AMCO's insureds as being "ACDW Properties/Gianella Properties and 4-Way Farms." Two endorsements to the AMCO policy name as an additional insured "South Maple Street, LLC," in its capacity as manager or lessor of leased property, and as the mortgagee, assignee or receiver of the named insureds' property. The AMCO policy also provides specific limited types of coverage for a named insured's partners, stockholders, officers, members, managers and employees, and adds as "automatic additional insureds," subject to express limitations, the co-owners of insured premises, and persons or organizations having a controlling interest in an insured.

Presumably, defendant 1800 South Maple Street, LLC, is the same entity as additional insured South Maple Street LLC. However, as an additional insured, its coverage would be limited as stated above -- to claims involving its status as a manager, lessor, mortgagee, assignee or receiver of the named insureds' property. Also, such status would be difficult to reconcile with the CC&Rs for the Hidden Glen condominium project, which state that South Maple Street was the <u>owner</u> of the property.

The complaint alleges that defendants William Ayyad, Ralph Giannella and Keith Giannella were "principal partners" of 1800 South Maple Street LLC, and that defendant Dan Tomasi was a "principal partner and/or a managing agent" of the LLC. The complaint does not allege the role of defendants William Ayyad Inc., or the Giannella Revocable Trust, but the CC&Rs indicate that those entities were "members" of the South Maple Street LLC. Finally, the complaint does not explain what relationship defendants Premier Construction and Mark Holmes Corporation have with any of the named or additional insureds, other than William Ayyad's alleged partnership interest in Premier.

It would seem likely that relationships exist between the defendants and AMCO's named and additional insureds, and those relationships may entitle some of the defendants to the status of an insured. However, the information currently available to AMCO prevents any certain determination of which defendants are claiming that they are covered under the AMCO policy, and what the basis for their claim might be.

Consequently, it would be appreciated if you would provide AMCO's Mr. Johnson, or the undersigned, information regarding the connections and relationships between AMCO's named or additional insureds and the entities and individuals named as defendants in Hidden Glen's complaint, including: (1) whether any of AMCO's named insureds -- ACDW Properties/Gianella Properties and 4-Way Farms -- have exposure to liability in the <u>Hidden Glen</u> litigation, and if so,



Ms. Vekeno Kennedy
Page 3 of 13
March 3, 2006

why; (2) is the claim for coverage based upon South Maple Street LLC's additional insured status, and if so, are any other defendants claiming through that additional insured, and on what basis; and (3) are there connections between the named and additional insureds and the named defendants -- e.g., co-ownership of the insured premises, control, stockholder status, etc. -- that might give those defendants insured status under the AMCO policy, and if so, explain those connections in detail.

On the facts now known to AMCO, the complaint filed by The Hidden Glen Maintenance Corporation does not allege any covered claims.  However, AMCO would like to make sure that all of the possible grounds for coverage of all potentially insured individuals and entities have been considered, so I would greatly appreciate your cooperation with this request for information, or your thoughts regarding any other potential arguments for coverage.  If no response to this request is made, the claim for coverage will be considered denied, for the reasons discussed below.

## II
## BACKGROUND OF THE REQUEST FOR COVERAGE

A.    The Litigation

It is alleged that in 2001, the defendants purchased a five-building apartment complex located at 1800 South Maple Street in Escondido, California.  Soon after the purchase, defendants began taking steps to subdivide the property, and to convert the apartments to condominiums.  After the conversion process was completed, defendants began selling units at the complex.

On August 18, 2005, a complaint was filed in the San Diego Superior Court by The Hidden Glen Maintenance Corporation, the homeowners association for the condominiums sold by defendants.  The complaint names as defendants: 1800 South Maple Street, LLC; Ralph Giannella and Keith Giannella, both individually and as the trustees of the Ralph Giannella and Keith A. Giannella Revocable Trust; William Ayyad and William G. Ayyad, Inc.; Premier Communities LLC; Dan Tomasi; and Mark Holmes Corporation.  Although the complaint does not specify which defendant or defendants actually owned the condominium complex, the CC&Rs for the property identify South Maple Street LLC as the owner.

The complaint alleges that the defendants, in order to obtain the Department of Real Estate's approval of the "condo conversion," made "false representations" regarding repairs, replacements and upgrades that would be made to the common areas at the facilities.  It is alleged that the defendants did not make these promised improvements, ignored significant existing problems with the property, and instead just covered up the problems by painting the units, and installing new appliances and flooring, so that the units could be marketed "as new" and completely "refurbished."

The complaint alleges that the defendants misrepresented the condition of the condominium complex, and concealed the defects, and that after the units were sold, it was realized that there were "major problems with the common area and damages to units arising therefrom."  As the party with standing to "bring claims concerning defective materials and conversion of the common areas and the damages caused to the units by such defective construction," the homeowners association filed suit.

Ms. Vekeno Kennedy
Page 4 of 13
March 3, 2006

B.    The Insurance Policy

AMCO issued a "Premier Businessowners/Premier Habitational" insurance policy to named insureds "ACDW Properties/Giannella Properties" and "4-Way Farms." As discussed previously, none of these entities are named as a defendant in the litigation. The policy was effective on April 4, 2002, and was cancelled at the insureds' request on November 24, 2002.

The policy identifies the insured premises as five apartment buildings at 1800 South Maple Street. The file shows that two additional insured endorsements to the policy were issued, both naming "South Maple Street LLC" as an additional insured. One of the additional insured endorsements covers mortgagees, assignees or receivers of the named insured's property, but only with respect to liability as a mortgagee, assignee or receiver. The other endorsement covers managers or lessors of leased premises, but only with respect to liability arising out of the named insured's use of the part of the premises leased to the named insured. Both endorsements contain an exclusion for "structural alterations, new construction or demolition operations..."

For limited liability companies, the policy includes within the definition of "an insured": (1) "members," but only with respect to the conduct of the company's business; (2) managers, but only with respect to their duties as managers; (3) employees, but only for acts within the scope of employment or while performing duties related to the conduct of the LLC's business; and (4) a person acting as the LLC's real estate manager.

The policy also adds as "automatic additional insureds": (1) co-owners of the insured premises, but only with respect to liability as the co-owner of the premises; and (2) any person or organization that has a controlling interest in the insured, but only with respect to liability arising out of that financial control, or the ownership of the premises, and not as to "structural alterations, new construction or demolition operations performed by or for such person or organization."

C.    The Request For Coverage

On or about September 29, 2005, AMCO received a request for coverage of the complaint filed by The Hidden Glen Maintenance Corporation. After reviewing the file and investigating the claim, AMCO's Robert Johnson called your office on October 6, 2005. You agreed to fax copies of the CC&Rs for the condominiums, and the plaintiff's demand letter, to Mr. Johnson, and did so or or about October 28. After a few unsuccessful attempts to arrange a personal meeting, Mr. Johnson sent you a letter dated November 10, 2005, outlining the coverage issues and asking you to provide documents which would allow resolution of those issues.

By January 11, 2006, Mr. Johnson had received no response to his letter, and called your office. The next day, Mr. Johnson received a call from your assistant, who said that you would be out of the office for the week. The assistant said that the complaint had been properly served on the insureds, and that settlement negotiations were being engaged in. Mr. Johnson asked the assistant to have you call him, but apparently this has not yet happened.

Ms. Vekeno Kennedy
Page 5 of 13
March 3, 2006

III
**COVERAGE ANALYSIS**

A.    Possible Rescission Based On Misrepresentations Regarding The Insured Risk

The application for the AMCO insurance policy here at issue lists "applicant's operations" as being "Apartment Owner" of the apartments at 1800 South Maple Street, and information is provided regarding average percentage of units occupied and average monthly rent charged for a unit. No mention is made of any intent to convert the apartments into condominiums.

Conversion of apartments into condominiums gives rise to different types of risks than simple ownership of an apartment building, and subjects an insurer to substantially greater exposure. Consequently, if AMCO had been informed that the insureds intended to convert the apartments at South Maple Street, a higher premium would have been charged, and a different type of policy would have been issued.

If the allegations of the complaint are true, the defendants were already planning to convert the apartments when they applied for the insurance sometime around April of 2002. It is alleged that "[s]oon after purchase" of the apartment complex "in or about 2001," the defendants began to take steps to obtain reports from the Department of Real Estate that would allow the property to be subdivided. It is also alleged that "in or about March of 2002," the defendants requested the County of San Diego Assessor's office to segregate the property into individual units.

California Insurance Code section 332 provides that "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract..." Since knowledge that the applicants intended to convert the condominiums would have affected AMCO's treatment of the application, that intent was a material fact. Misstatements or concealment of material facts in an application for insurance, even if unintentional, may entitle an insurer to rescind the insurance policy. Cal. Ins. Code §§ 331, 359; Mitchell v. United Title Ins. Co., 127 Cal.App.4th 457, 469 (2005). Such rescission also applies to innocent co-insureds. Cal. Ins. Code § 650.

Based on the file materials now available, it cannot be said with certainty whether an action by AMCO for rescission of the insurance policy would be appropriate. However, such an action may subsequently prove warranted by the facts, and if rescission is granted, AMCO would be relieved of any obligations under the policy.

B.    The Complaint Does Not Allege Claims For Bodily Or Personal Injury

The liability part of the insurance policy issued by AMCO covers claims for damages caused by "bodily injury," "property damage," and "personal and advertising injury." The complaint filed by The Hidden Glen Maintenance Corporation does not allege any claims for "bodily injury." Indeed, since the plaintiff is a corporation, it cannot suffer any "bodily injury."

For a covered "personal and advertising injury" claim to exist, the injury must arise out of one of the "offenses" specified in the policy (Liability Coverage Form, p. 10 of 24, par. 1.b). Those offenses are: (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling

Ms. Vekeno Kennedy
Page 6 of 13
March 3, 2006

or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication of material that slanders or libels a person or organization or disparages a person or organization's goods, products or services; (e) oral or written publication of material that violates another's right of privacy; (f) the use of another's advertising idea in your advertising; or (g) infringing upon another's copyright, trade dress or slogan in your advertising (Liability Coverage Form, p. 23 of 24, Definitions, no. 14). The complaint filed by Hidden Glen does not allege, or potentially involve, injuries arising out of any of these "offenses."

C.    The Claims For "Property Damage" Are Excluded

Since the complaint does not allege any claims for "bodily injury" or "personal and advertising injury," coverage obligations under the AMCO policy can only be triggered if there are allegations of "property damage." A possibility exists that the complaint alleges continuing "property damage," although any such damage was actually caused by previous owners of the property. In any event, the claims for that "property damage" are not covered, because they fall within a number of the exclusions in the AMCO policy.

The facts alleged in the complaint, and undisputable facts from other sources, establish that two of the exclusions, for property owned by the insured and for premises sold by the insured, completely bar coverage of the Hidden Glen litigation. Those exclusions will be discussed in some detail below. A number of other exclusions, which may completely or partially bar coverage, are briefly discussed thereafter.

1.    The "Owned Property" Exclusion

Exclusion "j.1" applies to claims for property damage to "[p]roperty you own, rent, or occupy." According to the complaint, defendants purchased the apartment complex in 2001, and defendants' alleged wrongful acts occurred while they owned the property. For example: (1) defendants owned the property when they allegedly made misrepresentations to the Department of Real Estate so that the property could be converted; (2) defendants owned the property when they made the cosmetic repairs to cover up defects; and (3) defendants owned the property when they allegedly had a duty to properly set up the homeowners association. Since the "property damage" allegedly continued throughout defendants' ownership of the premises, the claims alleged in the complaint all fall within the "owned property" exclusion.

Moreover, defendants were probably still "owners" of the common areas after the policy period ended. The CC&Rs note that unit owners are given an undivided interest in the common areas of the condominium complex. The CC&Rs also provide that the defendants would continue to hold the ownership interests of the unsold units, so defendants were arguably still "owners" of the common areas until all of the units were sold, which almost certainly did not occur before the policy period ended.

2.    The "Premises Alienated" Exclusion

The complaint does allege that defendants "sold the first individual unit in November of 2002," so it is possible that some of the units were no longer owned by defendants when the AMCO policy was cancelled, on November 24, 2002. However, if defendants were no longer the

Ms. Vekeno Kennedy
Page 7 of 13
March 3, 2006

owners of some of the units, or the common area, on November 24, 2002, those properties would be premises sold by defendants, and would fall within the "premises alienated" exclusion.

Exclusion "j.2" applies to property damage to "[p]remises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises." This exclusion, combined with the "owned property" exclusion, bars coverage to the AMCO insureds in this case -- the individual units and the common areas where the property damage allegedly occurred were either owned by defendants, or were sold by defendants, and in either event, coverage is excluded.

The application of the "premises alienated" exclusion can sometimes be a complex issue, primarily because of two decisions of the Fourth District Court of Appeal, Prudential - LMI Commercial Ins. Co. v. Reliance Ins., 22 Cal.App.4th 1508 (1994) and Maryland Casualty Co. v. Reeder, 221 Cal.App.3d 961 (1990). Both cases held that, in certain circumstances, the "premises alienated" exclusion should not be literally applied.

However, Maryland Casualty and Prudential both make it clear that the exclusion is properly applied on the facts presented here. Both cases involved pre-1986 liability policies, and noted that a change was made to the standard "premises alienated" exclusion in 1986, which clarified that it was designed to apply to "situations where the premises were first 'occupied, rented, or held for rental by [the insured]'." Prudential, supra, 22 Cal.App.4th at p. 1512; Maryland Casualty, supra, 221 Cal.App.3d at 978.

The AMCO policy is a post-1986 policy, and its "premises alienated" exclusion contains the changed provision, specifying that the exclusion does not apply "if the premises are 'your work' and were never occupied, rented or held for rental by you." Given the allegations of the complaint and the representations on the insurance application, it cannot here be disputed that the premises were "held for rental" by defendants, so the exclusion remains applicable.

As noted by the court in Prudential, the purpose of the exclusion was to "deny coverage to an insured who has failed to repair property prior to its sale or who has failed to disclose the existence of a defect at the time of sale." Prudential, supra, 22 Cal.App.4th at p. 1512. Here, the claims against defendants are specifically based upon allegations that they failed to properly repair the rental property, and failed to disclose defects on the property, before sale. In this situation, it is clear that the "premises alienated" exclusion is applicable, and would bar coverage of any claims that were not already barred by the "owned property" exclusion.

3.    The Exclusion For Property Damage Arising Out Of Operations

Exclusion "j.5" applies to property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." If plaintiff is claiming that the repair and restoration work performed by "defendants and various subcontractors" did not just mask preexisting damage, but actually caused property damage, then this exclusion might apply.

Ms. Vekeno Kennedy
Page 8 of 13
March 3, 2006

4.    The Exclusion For Property That Must Be Restored, Repaired Or Replaced

Exclusion "j.6" applies to property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." However, this exclusion "does not apply to 'property damage' included in the 'products-completed operations hazard'." Pursuant to the definition in the policy, the "products-completed operations hazard" only includes property damage that occurred "away from premises you own or rent," and does not apply to work that has not yet been completed.

This exclusion might be inapplicable to the work on some of the individual units, since it is possible that defendants' "condo conversion" work had been completed and some of the units sold while the policy was still in effect. However, to the extent that the damage was to common areas, defendants' likely status as an owner throughout the policy period would make the definition of "completed operations" inapplicable, and therefore make the exclusion applicable.

5.    The Exclusion For Damage To Your Work

Exclusion "l" to the policy applies to property damage to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'." However, the exclusion is not applicable if "the damaged work, or the work out of which the damage arises, was performed on your behalf by a subcontractor." This exclusion may bar indemnification of some of the claims, but since the complaint alleges that "defendants and various subcontractors" performed the work, the extent of its application cannot be determined at this time.

6.    The Exclusion For Damage To Impaired Property

Exclusion "m" to the policy applies to property damage to "impaired property" or property that has not been physically injured which arises out of "1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or 2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." "Impaired property" is defined as including property other than "your work" that cannot be used or is less useful because:

> a. It incorporates 'your product' or 'your work'
> that is known or thought to be defective, deficient,
> inadequate or dangerous; or
> b. You have failed to fulfill the terms of a
> contract or agreement;
> If such property can be restored to use by:
> a. The repair, replacement, adjustment
> or removal of 'your product' or 'your
> work'; or
> b. Your fulfilling the terms of the contract
> or agreement.

This exclusion might ultimately prove applicable. Plaintiff alleges that defendants had entered into an agreement with the Department of Real Estate to perform various repairs and upgrades of the common areas at the complex. Plaintiff alleges that defendants failed to perform

Ms. Vekeno Kennedy
Page 9 of 13
March 3, 2006

any of these improvements, and it is possible that plaintiff will subsequently attempt to prove that use of the units, or of other parts of the common areas, was impaired by the breach of the agreement.

### 7.    The Mold Exclusion

The complaint alleges that one of the preexisting problems with the complex was mold, and that defendants failed "to prevent and remedy mold...problems throughout the subject property..." An endorsement to the AMCO policy excludes coverage of:

> a. "Bodily injury" or "property damage" which would
> not have occurred, in whole or in part, but for:
> 1) The actual, alleged or threatened...contact with,
> exposure to, existence of, or presence of, any "fungi"
> or bacteria on or within a building or structure... or
> 2) The failure to warn or to disclose the presence of
> "fungi" or bacteria;
>
> regardless of whether any other cause, event, material
> or product contributed concurrently or in any sequence
> to such injury or damage.
>
> b. Any loss, cost or expenses arising out of the testing
> for, monitoring, cleaning up, removing, containing....
> remediating or disposing of... "fungi" or bacteria...

The endorsement defines "fungi" as including "mold." Consequently, to the extent that plaintiff is seeking recovery for "property damage" caused by the presence of mold, or the failure to disclose mold, the claim is excluded.

### 8.    The Breach Of Contract Exclusion

The "California Amendatory Endorsement" to the AMCO policy here at issue contains an exclusion for property damage "that arises out of or is a result of any breach of a written or oral contract, and breach of any other written or oral agreement, or any breach of an express or implied warranty." This exclusion is directly applicable to, and precludes coverage of, the complaint's third cause of action, for "Breach of CC&Rs/Contract."

The exclusion might also apply to plaintiff's claims based on the alleged failure to comply with the improvements promised in the documents filed with the Department of Real Estate. Although plaintiff was not a party to these agreements, some of its claims "arise out of" the breach of the agreements.

### 9.    The Exclusion For Expected Or Intended Injury

Coverage of some of the causes of action alleged in the complaint should be barred by the exclusion for property damage "which is expected or intended by the insured." For example, the second cause of action, for civil conspiracy, alleges that defendants knowingly conspired to breach

Ms. Vekeno Kennedy
Page 10 of 13
March 3, 2006

Business and Professions Code section 11020 by making <u>intentional</u> misrepresentations to the Department of Real Estate.  The seventh cause of action, for violation of California Business and Professions Code section 17200, alleges that the defendants "submitted false and <u>fraudulent</u> documents in furtherance of their <u>conspiracy to defraud</u> the Department of Real Estate..."

        10.    <u>Fiduciary Responsibility Exclusion</u>

The AMCO policy excludes claims for property damage "arising out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity."  The fourth cause of action in the complaint is for breach of fiduciary duty, and alleges that defendants, "[p]ursuant to the CCRs, and common law obligations," owed fiduciary duties to the homeowners association, including duties to fund an adequate reserve account, avoid conflicts of interest, and maintain adequate insurance. This claim may not be for "property damage" arising out of "ownership, maintenance or use" of "property" as to which defendants were acting in a fiduciary capacity, but the exclusion might be applicable.

    D.    <u>The Causes Of Action Alleged By Plaintiff Are Not Covered</u>

        1.    <u>Negligence</u>

The first cause of action in the complaint is for negligence.  Plaintiff alleges that defendants had a duty to act reasonably in converting the apartments to condominium units, and breached that duty by: failing to "prevent and remedy" mold, water intrusion problems, and faulty grading and landscaping; failing to bring the units up to Code standards; failing to inspect the condition of the units; failing to "prepare proper plans and specifications"; failing to properly set up the homeowners association; and "[o]therwise acting negligently in their construction, sale, conversion, and marketing of the units and subject property."

The combination of the "owned property" and the "premises alienated" exclusions bars coverage of this cause of action.  This is because all of plaintiff's claims involve property damage to units that were owned by defendants during the AMCO policy period, or were sold by defendants during the AMCO policy period.

        2.    <u>Civil Conspiracy</u>

The second cause of action in the complaint is for civil conspiracy to violate Business and Professions Code section 11020.  That section makes it "unlawful" to make or issue public reports which contain information that is known to be "forged, altered, false or counterfeit..."  Plaintiff alleges that defendants conspired to violate this section in their preparation of the report to the Department of Real Estate, in which defendants said that they would repair or replace many defective conditions at the complex.

This cause of action is barred by the exclusion for damage "expected or intended by the insured."  Participation in a civil conspiracy is inherently an intentional act.  <u>Fibreboard Corp. v. Hartford Accident & Indem. Co.</u>, 16 Cal.App.4th 492, 510 (1993) (a defendant "cannot inadvertently become a member of a civil conspiracy").  And, fraud and intentional misrepresentation are uncovered intentional acts.  "[F]raudulent acts are deemed purposeful rather

Ms. Vekeno Kennedy
Page 11 of 13
March 3, 2006

than accidental and, therefore, are not covered under a CGL policy..." <u>Chatton v. National Union Fire Ins. Co.</u>, 10 Cal.App.4th 846, 861 (1992).

     3.    <u>Breach of Contract</u>

     The third cause of action in the complaint is for breach of contract, based on the defendants' alleged failure to comply with a warranty in the CC&Rs that various parts of the project would be in "working condition." This cause of action would be barred by the exclusion in the "California Amendatory Endorsement," which applies to claims arising out of any breach of contract or warranty.

     4.    <u>Breach of Fiduciary Duty</u>

     The fourth cause of action in the complaint is for breach of fiduciary duty. It is alleged that "[p]ursuant to the CCRs, and common law obligations," defendants owed certain fiduciary duties to plaintiff, including a duty to avoid conflicts of interest, to provide and maintain adequate levels of insurance, to adequately fund a reserve account for contingencies, and to refrain from placing self-serving exculpatory clauses in the CC&Rs.

     These claims would not be covered, as they would fall within the exclusions for "expected or intended" damage, and for claims arising out of the breach of a contract. Additionally, these claims do not allege any form of "property damage," but instead seek recovery for uncovered economic loss. <u>See</u> <u>Continental Casualty Co. v. Superior Court</u>, 92 Cal.App.4th 430, 439 (2001); <u>McLauglin v. National Union Fire Ins. Co.</u>, 23 Cal.App.4th 1132, 1150 (1994). And, if this cause of action did involve a claim for damage to property, it would probably be barred by the "breach of fiduciary duty" exclusion.

     5.    <u>Alter Ego Liability</u>

     The fifth cause of action in the complaint is for "alter ego" liability. It is alleged that defendant 1800 South Maple Street LLC was formed for improper purposes, and that all of the defendants should be held liable for its acts. This cause of action does not in itself seek recovery for any covered injury or damage, and is based on intentional acts.

     6.    <u>Negligence Per Se</u>

     The sixth cause of action in the complaint is for negligence per se, and alleges that defendants violated California Civil Code section 1134. According to plaintiff, this section required defendants to perform a reasonable inspection of the premises, and to provide a written statement to the purchaser listing all substantial defects or malfunctions on the property. Plaintiff alleges that as a result of defendants' failure to comply with the statute, it suffered "damages to its property, loss of use of property, damages to common areas and budget."

     The exclusion for intentional acts may apply, as it is questionable whether a statute imposing inspection and reporting duties can be accidentally violated. Also, the violation of section 1134 did not <u>cause</u> property damage – i.e., the failure to inspect the property and provide a written list of defects did not cause the defects. Instead, it caused uncovered economic damage, in that

Ms. Vekeno Kennedy
Page 12 of 13
March 3, 2006

the failure to provide written statements listing the problems with the condominium complex caused homeowners to purchase units that had problems which had to be repaired.

In any event, if it was assumed that this cause of action was seeking recovery for property damage, that property damage occurred while the premises were owned by defendants, or after it had been sold. Consequently, the "owned property" and "premises alienated" exclusions would bar coverage.

       7.    <u>Violation of Business and Professions Code Section 17200</u>

The seventh cause of action in the complaint is for violation of California Business and Professions Code section 17200. Plaintiff alleges that defendants engaged in unfair and fraudulent business practices when committing the acts alleged in the foregoing causes of action, and in particular when they "submitted false and fraudulent documents" to the Department of Real Estate in violation of Business and Professions Code section 11020. These claims are clearly based on intentional acts, and they do not seek recovery for property damage.

**IV**
**CONCLUSION**

For the reasons discussed above, it is my opinion that the complaint filed by The Hidden Glen Maintenance Corporation does not allege any potentially covered claims against any of AMCO's insureds. AMCO has independently conducted its own evaluation, and has reached the same conclusion.

As discussed at the beginning of this letter, there are still uncertainties regarding the relationships between, and capacities of, AMCO's insureds and the defendants named in the complaint. To ensure that no basis for coverage of an AMCO insured has been overlooked, it would be appreciated if you would provide the information requested in the second section of this letter.

However, no facts of which AMCO is currently aware indicate that there is any potential for coverage of the claims against any of AMCO's insureds or any of the defendants named in the complaint. Consequently, if you choose not to respond to this letter, AMCO has requested me to inform you that the request for coverage of the <u>Hidden Glen</u> litigation can be considered denied.

It is my opinion that the policy provisions and exclusions discussed in this letter provide complete support for AMCO's coverage determinations. Nonetheless, AMCO reserves the right to rely upon other policy provisions and exclusions in the future, regardless whether they are discussed in this letter, and especially if AMCO is made aware of new facts regarding the claim for coverage.

Ms. Vekeno Kennedy
Page 13 of 13
March 3, 2006


    If an insured believes his or her claim has been wrongfully denied, he or she may have the matter reviewed by the California Department of Insurance, Claim Service Bureau, 300 South Spring Street, 11th Floor, Los Angeles, California, 90013; the phone number for the Claim Service Bureau is 213-897-5961.


                    Very Truly Yours,

                    MILLER LAW FIRM

                    Scott A. Johnson

SAJ:gp

# EXHIBIT E

Unknown

From:           David M Everett
Sent:           Thursday, February 26, 2004 6:04 PM
To:             Charles L Foster
Subject:        Avocado Crest Policy - ACP 7801073037 - Prior policy ACP 7801001164

Chuck,

 Per our phone discussion,     Here is a brief timeline of events. Allied
wrote a Policy for ACDW Properties  -  Policy ACP 7801001164.   I have
attached the Policies to this email for your information.     Avacado Crest
Condominiums LLC is listed as a named insured on the CPAA and GLAO Policies
but not on the BPH.      868 East Alvarado, Fallbrook, CA  is listed as
Location 3 on the BPH policy.    The Policy Period was 12/1/01 to 12/1/02.

 The ACDW Properties account was quite large with many locations,   when
originally presented.     Allied originally quoted a much larger premium with
several other locations,   The agent moved coverage for some accounts to other
carriers.   To the best of my knowledge, Sequoia did write some locations for
that policy period.     The policy was issued late due to these changes and
was not issued until 4/10/04.        Loss control reports in file showed that
renovation work was being performed during the policy period at some
locations.       Allied was aware that the insured was a rehabilitator of
properties per the Large Account Write up in file.   I seem to recall that the
insured had a seperate entity to do the renovation work but I can not locate
documentation in the file.

 On  6/11/02 I received a request to delete 868 East Alvarado from ACP
7801001164 effective 4/4/02.     Allied received the application for ACP
7801073037  on 4/9/04.   There was a delay in issue due to incomplete rating
information from the agent.  A comment on the Processing sheet indicates
that I was aware the building was rehabbed.     I can not recollect for certain
if we knew the rehabilitation process was ongoing or if we thought it was
already completed.    I can find no firm documentation in the file.

 I repeat my earlier assertion that Allied Insurance did not contemplate
providing coverage for extensive renovation work on either of these policies.

 You will find the Underwriting file information for ACP 7801001164 in
AWD.    I note that in the claim file on 2/6/04, you mention an email to a
Melissa.    I believe that email would have been sent to Melissa Addison,  who
was Robyn Kettering's assistant.   Melissa is still employed by Michael
Ehrenfeld Insurance although Robyn Kettering has left to start her own
agency.

Please feel free to contact me if you need additional information.




David Everett

Allied Insurance
Commercial Underwriting
Phone: 1-800-552-2437. extension 4146
Fax: 1-877-807-9528
Email : EVERETD@Nationwide.com

1

AMCO 05706

CM-015

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* <br> NEAL H. ROCKWOOD, ESQ. / SB#106197 <br> ROCKWOOD &. NOZISKA, LLP <br> 5060 No. Harbor Drive, #255 <br><br> San Diego, CA  92106 <br> TELEPHONE NO.: 619.224.7778   FAX NO. *(Optional):*  619.224.7779 <br> E-MAIL ADDRESS *(Optional):*  info@rockwood-noziska.com <br> ATTORNEY FOR *(Name):*  Plaintiffs | **FOR COURT USE ONLY** <br><br> FILED <br> CIVIL BUSINESS OFFICE 5 <br> CENTRAL DIVISION <br><br> 2007 SEP 10  P 4: 02 <br><br> CLERK-SUPERIOR COURT <br> SAN DIEGO COUNTY, CA |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA  92101
BRANCH NAME: Central Division

**"VIA FAX"**

| | |
|---|---|
| PLAINTIFF/PETITIONER: 1800 South Maple Street, LLC, et al. | CASE NUMBER: <br> 37-2007-00074662-CU-NP-CTL |
| DEFENDANT/RESPONDENT: Allied Property and Casualty <br> Insurance Company | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Avocado Crest Condominiums, LLC v. Allied Mutual Insurance

   b. Case number: GIC857918

   c. Court:  [X] same as above

      [ ] other state or federal court *(name and address):*

   d. Department: 71, Judge Ronald Prager

   e. Case type:  [ ] limited civil   [X] unlimited civil   [ ] probate   [ ] family law   [ ] other *(specify):*

   f. Filing date: December 6, 2005

   g. Has this case been designated or determined as "complex?"   [X] Yes   [ ] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      [X]  involves the same parties and is based on the same or similar claims.

      [X]  arises from the same or substantially identical transactions, incidents, or events requiring the determination of
           the same or substantially identical questions of law or fact.

      [ ]  involves claims against, title to, possession of, or damages to the same property.

      [X]  is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

           [ ]  Additional explanation is attached in attachment 1h

   i. Status of case:

      [X]  pending

      [ ]  dismissed   [ ] with   [ ] without prejudice

      [ ]  disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court:  [ ] same as above

      [ ] other state or federal court *(name and address):*

   d. Department:

Form Approved for Optional Use <br> Judicial Council of California <br> CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Legal
Solutions
☆ Plus

Cal. Rules of Court, rule 3.300

| | CM-015 |
|---|---|
| PLAINTIFF/PETITIONER: 1800 South Maple Street, LLC, et al.<br>DEFENDANT/RESPONDENT: Allied Property and Casualty Insurance Company | CASE NUMBER: |

2. (continued)

    e. Case type: ☐ limited civil    ☐ unlimited civil    ☐ probate    ☐ family law    ☐ other (specify):

    f. Filing date:

    g. Has this case been designated or determined as "complex?"    ☐ Yes    ☐ No

    h. Relationship of this case to the case referenced above (check all that apply):

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 2h

    i. Status of case:

        ☐ pending

        ☐ dismissed    ☐ with    ☐ without prejudice

        ☐ disposed of by judgment

3.    a. Title:

    b. Case number:

    c. Court: ☐ same as above

        ☐ other state or federal court (name and address):

    d. Department:

    e. Case type: ☐ limited civil    ☐ unlimited civil    ☐ probate    ☐ family law    ☐ other (specify):

    f. Filing date:

    g. Has this case been designated or determined as "complex?"    ☐ Yes    ☐ No

    h. Relationship of this case to the case referenced above (check all that apply):

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 3h

    i. Status of case:

        ☐ pending

        ☐ dismissed    ☐ with    ☐ without prejudice

        ☐ disposed of by judgment

4.    ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: September 10, 2007

NEAL H. ROCKWOOD, ESQ.
    (TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
        (SIGNATURE OF PARTY OR ATTORNEY)

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS:     330 West Broadway | |
| MAILING ADDRESS:    330 West Broadway | |
| CITY AND ZIP CODE:   San Diego, CA 92101 | |
| BRANCH NAME:       Central | |
| TELEPHONE NUMBER:  (619) 685-6150 | |

| PLAINTIFF(S) / PETITIONER(S):     1800 SOUTH MAPLE STREET LLC et.al. |
|---|

| DEFENDANT(S) / RESPONDENT(S):  AMCO INSURANCE COMPANY et.al. |
|---|

| 1800 SOUTH MAPLE STREET LLC VS. ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY |
|---|

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: |
|---|---|
| | 37-2007-00074662-CU-NP-CTL |

Judge: Steven R. Denton                                    Department: C-73

COMPLAINT/PETITION FILED: 09/10/2007

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS: Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

SDSC CIV-721 (Rev. 11-06)

**NOTICE OF CASE ASSIGNMENT**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00074662-CU-NP-CTL      CASE TITLE: 1800 SOUTH MAPLE STREET LLC vs. ALLIED PROPERTY

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

### ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:        330 West Broadway | |
| MAILING ADDRESS:       330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME:        Central | |

| PLAINTIFF(S):  1800 SOUTH MAPLE STREET LLC et.al. |
|---|
| DEFENDANT(S): AMCO INSURANCE COMPANY  ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY et.al. |
| SHORT TITLE:    1800 SOUTH MAPLE STREET LLC VS. ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS<br>(CRC 3.221) | CASE NUMBER:<br>37-2007-00074662-CU-NP-CTL |
|---|---|

Judge: Steven R. Denton                                                                  Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative  dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                    ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                                ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                            ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                              ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral    ☒ Private Binding Arbitration

☐ Other (specify):

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name)

Alternate: (mediation & arbitration only)

Date:                                                                  Date:

Name of Plaintiff                                               Name of Defendant

Signature                                                          Signature

Name of Plaintiff's Attorney                               Name of Defendant's Attorney

Signature                                                          Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated:  09/10/2007

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)          **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**          Page: 1

3

# EXHIBIT 2



COPY

CIVIL BUS?????? 9

2007 OCT 17 P 3: 57

1  HOWARD M. GARFIELD, State Bar #43369
   LONG & LEVIT LLP
2  465 California Street, Suite 500
   San Francisco, California 94104
3  Telephone:    (415) 397-2222
   Facsimile:    (415) 397-6392
4  Email:        hgarfield@longlevit.com

5

6  Attorney for Defendants
   ALLIED PROPERTY AND CASUALTY
7  INSURANCE COMPANY, AMCO INSURANCE
   COMPANY, and NATIONWIDE MUTUAL
8  INSURANCE COMPANY

               IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
               FOR THE COUNT OF SAN DIEGO, CENTRAL DIVISION
10
                                                              BY FAX
11
12  1800 SOUTH MAPLE STREET, LLC,          CASE No. 37-2007-00074662-CU-NP-CTL
    RALPH J. GIANNELLA, GIANNELLA
    PROPERTIES, INC., WILLIAM G.           ANSWER TO UNVERIFIED COMPLAINT
13  AYYAD, WILLIAM G. AYYAD, INC.,
    and PREMIER COMMUNITIES, LLC           Action Filed:     September 10, 2007
14
                     Plaintiffs,
15
16          vs.

17  ALLIED PROPERTY AND
    CASUALTY INSURANCE COMPANY,
18  AMCO INSURANCE COMPANY,
    NATIONWIDE MUTUAL INSURANCE
    COMPANY, and DOES 1 to 100,
19  inclusive,

20                   Defendants.

21

22

23          Defendants ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,

24  AMCO INSURANCE COMPANY, NATIONWIDE MUTUAL INSURANCE COMPANY,

25  ("Defendants") answer the unverified complaint of 1800 SOUTH MAPLE STREET, LLC,

26  RALPH J. GIANNELLA, GIANNELLA PROPERTIES, INC., WILLIAM G. AYYAD,

27  WILLIAM G. AYYAD, INC., and PREMIER COMMUNITIES, LLC, ("Plaintiffs") as follows:

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

## GENERAL DENIAL

Pursuant to the provisions of California Code of Civil Procedure section 431.30(d), Defendants deny each and every allegation therein, and further deny that the Complaint and each purported cause of action therein states facts sufficient to constitute a cause of action against these answering Defendants.

Defendants further deny that Plaintiffs have sustained or will sustain any injury, damage, or loss in the sum or sums alleged, or in any sum at all, by reason of any act, omission, or breach on the part of these answering Defendants or their agents.

## AFFIRMATIVE DEFENSES

As and for separate affirmative defenses, Defendants are informed and believe, and on that basis allege as follows:

### FIRST AFFIRMATIVE DEFENSE

#### (CLAIMS BARRED BY POLICY TERMS)

1.      Defendants allege that Plaintiffs' causes of action are barred in whole or in part by the terms, provisions and conditions of the applicable insurance policy issued by Defendant AMCO Insurance Company.

### SECOND AFFIRMATIVE DEFENSE

#### (INTENTIONAL OR NEGLIGENT CONDUCT OF THIRD PARTIES)

2.      Defendants allege that other third party individuals or entities were negligent and/or committed intentional acts in and about the matters alleged in the Complaint, and that these negligent and/or intentional acts proximately caused and/or contributed to the matters alleged in the Complaint. Accordingly, any damages to which Plaintiffs might be entitled should be apportioned by the amount of fault attributable to such third parties.

### THIRD AFFIRMATIVE DEFENSE

#### (FAILURE TO MITIGATE)

3.      Defendants allege that Plaintiffs' damages are barred in whole or in part to the extent that Plaintiffs failed to mitigate, minimize or avoid its alleged damages and any recovery against Defendant must be reduced by that amount.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

ANSWER TO UNVERIFIED COMPLAINT – 37-2007-00074662-CU-NP-CTL

**FOURTH AFFIRMATIVE DEFENSE**

**(ESTOPPEL)**

4.     Defendants allege that Plaintiffs are estopped from asserting the allegations contained in the Complaint, or from asserting any other right to relief against Defendants, by reason of the acts, omissions, representations, and courses of conduct by Plaintiffs upon which Defendants relied, to their prejudice and detriment.

**FIFTH AFFIRMATIVE DEFENSE**

**(UNCLEAN HANDS)**

5.     The doctrine of unclean hands bars each of Plaintiffs' causes of action in whole or in part.

**SIXTH AFFIRMATIVE DEFENSE**

**(MISREPRESENTATION)**

6.     Plaintiffs made material misrepresentations of fact in the application for insurance with Defendant AMCO Insurance Company, rendering the policy void as to all insureds and said Defendant is excused from performance by reason thereof.

**PRAYER**

WHEREFORE, Defendants request that the Court enter judgment in this action as follows:

1.     That Plaintiffs take nothing by their Complaint;

2.     For a judicial determination that Defendants had no obligation under the express or implied terms of the relevant insurance policy to provide benefits to Plaintiffs;

3.     That judgment be rendered in favor of Defendants;

4.     That Defendants be awarded costs of suit incurred herein; and

///

///

///

///

///

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

3

ANSWER TO UNVERIFIED COMPLAINT – 37-2007-00074662-CU-NP-CTL

1        5.    For such other and further relief as the Court deems just and proper.

2   Dated:  October 16, 2007                          LONG & LEVIT LLP

3

4
                                        By   _Howard M. Garfield_
5                                            HOWARD M. GARFIELD
                                             Attorney for Defendants
6                                            ALLIED PROPERTY AND
                                             CASUALTY INSURANCE
7                                            COMPANY, AMCO INSURANCE
                                             COMPANY, and NATIONWIDE
8                                            MUTUAL INSURANCE COMPANY

9   DOCS\S5240-336\540330.V1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94108
(415) 397-2222

4

ANSWER TO UNVERIFIED COMPLAINT  – 37-2007-00074662-CU-NP-CTL

1

**PROOF OF SERVICE**

2

I am employed in the City and County of San Francisco, California. I am over the age of 18 years and not a party to the within action. My business address is Long & Levit LLP, 465 California Street, Suite 500, San Francisco, California 94104.

3

4

On October 17, 2007, I served the document(s) named below on the following attorney(s) of record and/or interested parties in the case of *1800 South Maple Street, LLC, et al. v. Allied Property and Casualty Insurance Company, et al.,* San Diego, Central Division Superior Court Action No. 37-2007-0074662-CU-NP-CTL.

5

6

7

| **ANSWER TO UNVERIFIED COMPLAINT** |
|---|

8

SERVED ON:

9

| Neal H. Rockwood, Esq. | |
| C. Brant Noziska, Esq. | |
| Charles L. Fanning IV, Esq. | |
| Rockwood & Noziska, L.L.P. | |
| 5060 North Harbor Drive, Suite 255 | |
| San Diego, CA 92106 | |
| Telephone:    (619) 224-7778 | |
| Facsimile:    (619) 224-7779 | |

10

11

12

13

14

☒    (BY MAIL) I am readily familiar with Long & Levit LLP's practice for collection and processing of documents for mailing with the United States Postal Service. I caused such document(s) to be placed in a sealed envelope, addressed to the person(s) on whom it is to be delivered pursuant to the attached service list, with postage thereon fully prepaid, to be deposited with the United States mail at San Francisco, California, that same day in the ordinary course of business.

15

16

17

18    ☐    (BY OVERNIGHT MAIL) I am readily familiar with Long & Levit LLP's practice for collection and processing of documents for mailing via overnight delivery. I caused such document(s) to be placed in a sealed envelope designated by the overnight service carrier, addressed to the person(s) on whom it is to be served pursuant to the attached service list, and deposited said envelope in a box or other facility regularly maintained by the overnight service carrier with delivery fees paid or provided for.

19

20

21

22    ☐    (BY FACSIMILE) I caused the document(s) described herein to be transmitted from facsimile number (415) 397-6392 to the facsimile number(s) for each party indicated above.

23

24    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

25    Executed on October 17, 2007, at San Francisco, California.

26

27    

J. Locker

28    DOCS\S5240-336\540381.V1

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

## PROOF OF SERVICE

2        I am employed in the City and County of San Francisco, California. I am over the age of

3   18 years and not a party to the within action. My business address is Long & Levit LLP, 465 California Street, Suite 500, San Francisco, California 94104.

4

5        On October 18, 2007, I served the document(s) named below on the following attorney(s) of record and/or interested parties in the case of *1800 South Maple Street, LLC, et al. v. Allied Property and Casualty Insurance Company, et al.,* San Diego, Central Division Superior Court

6   Action No. 37-2007-0074662-CU-NP-CTL.

7

| NOTICE AND PETITION FOR REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(B) (DIVERSITY) |

8

9   SERVED ON:

| | |
|---|---|
| Neal H. Rockwood, Esq. | Brian C. Dawson, Esq. |
| C. Brant Noziska, Esq. | Brendan K. Ozanne, Esq. |
| Charles L. Fanning IV, Esq. | Dawson & Ozanne |
| Rockwood & Noziska, L.L.P. | 614 Fifth Avenue, Suite B |
| 5060 North Harbor Drive, Suite 255 | San Diego, CA 92101 |
| San Diego, CA 92106 | Telephone:  (619) 237-5161 |
| Telephone:     (619) 224-7778 | Facsimile:  (619) 237-5151 |
| Facsimile:     (619) 224-7779 | |

15   ☒   (BY MAIL) I am readily familiar with Long & Levit LLP's practice for collection and

16        processing of documents for mailing with the United States Postal Service. I caused such document(s) to be placed in a sealed envelope, addressed to the person(s) on whom it is to

17        be delivered pursuant to the attached service list, with postage thereon fully prepaid, to be deposited with the United States mail at San Francisco, California, that same day in the

18        ordinary course of business.

19

20   ☐   (BY FACSIMILE) I caused the document(s) described herein to be transmitted from facsimile number (415) 397-6392 to the facsimile number(s) for each party indicated above.

21

22        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

23        Executed on October 18, 2007, at San Francisco, California.

24

25

26                                 J. Locker

DOCS\S5240-336\540381.V1

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

PROOF OF SERVICE

**PROOF OF SERVICE**

I am employed in the City and County of San Francisco, California.  I am over the age of 18 years and not a party to the within action.  My business address is Long & Levit LLP, 465 California Street, Suite 500, San Francisco, California  94104.

On October 18, 2007, I served the document(s) named below on the following attorney(s) of record and/or interested parties in the case of *1800 South Maple Street, LLC, et al. v. Allied Property and Casualty Insurance Company, et al.,* San Diego, Central Division Superior Court Action No. 37-2007-0074662-CU-NP-CTL.

| **CIVIL COVER SHEET** |
|---|

SERVED ON:

| | |
|---|---|
| Neal H. Rockwood, Esq.<br>C. Brant Noziska, Esq.<br>Charles L. Fanning IV, Esq.<br>Rockwood & Noziska, L.L.P.<br>5060 North Harbor Drive, Suite 255<br>San Diego, CA 92106<br>Telephone:    (619) 224-7778<br>Facsimile:    (619) 224-7779 | Brian C. Dawson, Esq.<br>Brendan K. Ozanne, Esq.<br>Dawson & Ozanne<br>614 Fifth Avenue, Suite B<br>San Diego, CA 92101<br>Telephone:  (619) 237-5161<br>Facsimile:  (619) 237-5151 |

☒    (BY MAIL) I am readily familiar with Long & Levit LLP's practice for collection and processing of documents for mailing with the United States Postal Service.  I caused such document(s) to be placed in a sealed envelope, addressed to the person(s) on whom it is to be delivered pursuant to the attached service list, with postage thereon fully prepaid, to be deposited with the United States mail at San Francisco, California, that same day in the ordinary course of business.

☐    (BY FACSIMILE) I caused the document(s) described herein to be transmitted from facsimile number (415) 397-6392 to the facsimile number(s) for each party indicated above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 18, 2007, at San Francisco, California.

J. Locker

DOCS\S5240-336\540381.V1

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 143705    — KD
* * C O P Y * *
October 19, 2007
11:39:29

## Civ Fil Non-Pris
USAO #.: 07CV2030
Judge..: JEFFREY T MILLER
Amount.:                  $350.00 CK
Check#.: BC D3112134


Total—>  $350.00


FROM: CIVIL FILING
      1800 S. MAPLE ST., LLC., ET AL
      ALLIED PROPERTY & CASUALTY INS
      CO., ET AL

ORIGINAL

✎ JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

1800 SOUTH MAPLE STREET,LLC,;RALPH J. GIANNELLA; GIANNELLA PROPERTIES, INC.; WILLIAM G. AYYAD; WILLIAM G. AYYAD, INC.; and PREMIER COMMUNITIES, LLC

07000302 2

## DEFENDANTS

ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY; AMCO INSURANCE COMPANY; and NATIONWIDE MUTUAL INSURANCE COMPANY

'07 CV 2030 JM NLS

BY FAX

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Neal Rockwood,Esq.
Rockwood & Noziska, LLP
5060 North Harbor Dr.,Suite 255
San Diego, CA 92106
619-224-7778

Attorneys (If Known)
Howard M. Garfield,Esq.
Long & Levit LLP
465 California Street, 5th Floor
San Francisco, CA 94104
415-397-2222

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities- Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities- Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC sec. 1441(b)
Brief description of cause: Breach of covenant, fraud, and conspiracy for failure to provide insurance coverage

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Unknown

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE Ronald Prager

DOCKET NUMBER GIC857918 SD Sup. Ct.
GIC852647 SD Sup. Ct.

DATE
October 19, 2007

SIGNATURE OF ATTORNEY OF RECORD
Howard M. Garfield

---

FOR OFFICE USE ONLY
RECEIPT # 193705     AMOUNT $350     APPLYING IFP 10/19/07 JUDGE _____     MAG. JUDGE _____