Exhibit "A"

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 1800 SOUTH MAPLE STREET, LLC, et al., | ) | Civil No.07cv2030-JM(NLS) |
| | ) | |
| Plaintiffs, | ) | **ORDER FOLLOWING EARLY** |
| v. | ) | **NEUTRAL EVALUATION** |
| | ) | **CONFERENCE, SETTING RULE 26** |
| ALLIED PROPERTY & CASUALTY | ) | **COMPLIANCE, AND NOTICE OF** |
| INSURANCE CO., et al., | ) | ***TELEPHONIC* CASE MANAGEMENT** |
| | ) | **CONFERENCE** |
| Defendants. | ) | |

On January 10, 2008, the Court convened an Early Neutral Evaluation Conference in the above-entitled action. The case did not settle. The Court discussed compliance with Federal Rule of Civil Procedure, Rule 26, and based thereon, issues the following orders:

1.    Counsel are ordered to appear **telephonically** on ***March 7, 2008*** at ***10:00 a.m.*** before Magistrate Judge Stormes for a Case Management Conference pursuant to Federal Rule of Civil Procedure 16(b).  Plaintiffs' counsel shall initiate the telephonic conference.

2.    The Rule 26(f) conference shall be completed on or before ***February 6, 2008***.

3.    A Joint Discovery Plan shall be lodged with Magistrate Judge Stormes on or before ***February 15, 2008***.  (The date and time for the CMC should be included in the caption of the Joint Discovery Plan.)

4.    The date of initial disclosure pursuant to Rule 26(a)(1)(A-D) shall occur on or before ***February 22, 2008***.

1

5.  As agreed by the parties during the January 10, 2008 Early Neutral Evaluation Conference, Plaintiffs' counsel shall send a letter to defense counsel that: (a) identifies the parties to the underlying settlement agreement, (b) what each party paid in the settlement, and (c) whether that party is a named insured in the policy at issue in this case, and if not, how that party claims coverage under the policy.

Plaintiffs' counsel shall serve a copy of this order on all parties that enter this case hereafter. Each responsible attorney of record and all parties representing themselves shall participate in the conference. Represented parties need not participate.

Failure of any counsel or party to comply with this order will result in sanctions.

**IT IS SO ORDERED.**

DATED:  January 10, 2008

Hon. Nita L. Stormes
U.S. Magistrate Judge

2

07cv2030-JM(NLS)

Exhibit "B"

# MILLER LAW FIRM

Scott A. Johnson

The Marston Building
427 C Street, Suite 410
San Diego, California 92101

Telephone
619•232•0086
Facsimile
619•232•0089

March 3, 2006

Ms. Vekeno Kennedy
General Counsel
United Development Group, Inc.
9252 Chesapeake Drive, Ste. 100
San Diego, Calif.  92123

Re:    <u>Hidden Glen Maintenance Corp. v. 1800 South Maple Street, LLC, et al.</u>
       San Diego Superior Court Case No. GIC852647
       Policy No. ACP BPH 7801069841
       Claim No. 84L52141

Dear Ms. Kennedy:

My firm has been retained by AMCO Insurance Company to independently evaluate the request for coverage of the above-referenced litigation, that has been made under the AMCO insurance policy issued to ACDW Properties/Gianella Properties and 4-Way Farms.  Pursuant to that evaluation, I have carefully reviewed the complaint filed by The Hidden Glen Maintenance Corporation, the insurance policy and endorsements thereto issued by AMCO, plaintiff's bylaws and Hidden Glen's CC&Rs, other documents and information which you have provided to AMCO's Robert Johnson, and AMCO's underwriting file.

Based upon my review of these documents, and my independent legal research, it is my opinion that the complaint does not allege any claims which would potentially be covered by the AMCO insurance policy.  AMCO has come to the same conclusion.  However, before formally denying the claim for coverage, AMCO would like to give further consideration to one remaining issue.

Specifically, the documents and information now in AMCO's possession do not clearly establish the relationship between AMCO's insureds and the defendants named in the complaint.  To ensure that no basis for coverage of an AMCO insured has been overlooked, it would be appreciated if you could provide information, discussed below, regarding those relationships.

If you choose not to respond to this request for information, you may consider the request for coverage of the above-referenced litigation denied.  The reasons for that denial are explained in detail below.  If, after reading that explanation, you believe that you are aware of additional new facts which would justify a different conclusion, please contact the undersigned, or Mr. Johnson, as soon as possible.

I

## REQUEST FOR INFORMATION REGARDING THE DEFENDANTS AND THEIR RELATIONSHIP WITH THE NAMED INSUREDS

The complaint filed by plaintiff Hidden Glen Maintenance Corporation names as defendants: 1800 South Maple Street, LLC; Ralph Giannella and Keith Giannella, both individually and as the trustees of the Ralph Giannella and Keith A. Giannella Revocable Trust, William Ayyad and William G. Ayyad, Inc., Premier Communities LLC, Dan Tomasi, and Mark Holmes Corporation. None of these individuals and entities are named insureds in the AMCO insurance policy.

The AMCO insurance policy declarations, the underwriting file and the application for insurance all identify AMCO's insureds as being "ACDW Properties/Gianella Properties and 4-Way Farms." Two endorsements to the AMCO policy name as an additional insured "South Maple Street, LLC," in its capacity as manager or lessor of leased property, and as the mortgagee, assignee or receiver of the named insureds' property. The AMCO policy also provides specific limited types of coverage for a named insured's partners, stockholders, officers, members, managers and employees, and adds as "automatic additional insureds," subject to express limitations, the co-owners of insured premises, and persons or organizations having a controlling interest in an insured.

Presumably, defendant 1800 South Maple Street, LLC, is the same entity as additional insured South Maple Street LLC. However, as an additional insured, its coverage would be limited as stated above -- to claims involving its status as a manager, lessor, mortgagee, assignee or receiver of the named insureds' property. Also, such status would be difficult to reconcile with the CC&Rs for the Hidden Glen condominium project, which state that South Maple Street was the <u>owner</u> of the property.

The complaint alleges that defendants William Ayyad, Ralph Giannella and Keith Giannella were "principal partners" of 1800 South Maple Street LLC, and that defendant Dan Tomasi was a "principal partner and/or a managing agent" of the LLC. The complaint does not allege the role of defendants William Ayyad Inc., or the Giannella Revocable Trust, but the CC&Rs indicate that those entities were "members" of the South Maple Street LLC. Finally, the complaint does not explain what relationship defendants Premier Construction and Mark Holmes Corporation have with any of the named or additional insureds, other than William Ayyad's alleged partnership interest in Premier.

It would seem likely that relationships exist between the defendants and AMCO's named and additional insureds, and those relationships may entitle some of the defendants to the status of an insured. However, the information currently available to AMCO prevents any certain determination of which defendants are claiming that they are covered under the AMCO policy, and what the basis for their claim might be.

Consequently, it would be appreciated if you would provide AMCO's Mr. Johnson, or the undersigned, information regarding the connections and relationships between AMCO's named or additional insureds and the entities and individuals named as defendants in Hidden Glen's complaint, including: (1) whether any of AMCO's named insureds -- ACDW Properties/Gianella Properties and 4-Way Farms -- have exposure to liability in the <u>Hidden Glen</u> litigation, and if so,

Ms. Vekeno Kennedy
Page 3 of 13
March 3, 2006

why; (2) is the claim for coverage based upon South Maple Street LLC's additional insured status, and if so, are any other defendants claiming through that additional insured, and on what basis; and (3) are there connections between the named and additional insureds and the named defendants -- e.g., co-ownership of the insured premises, control, stockholder status, etc. -- that might give those defendants insured status under the AMCO policy, and if so, explain those connections in detail.

On the facts now known to AMCO, the complaint filed by The Hidden Glen Maintenance Corporation does not allege any covered claims. However, AMCO would like to make sure that all of the possible grounds for coverage of all potentially insured individuals and entities have been considered, so I would greatly appreciate your cooperation with this request for information, or your thoughts regarding any other potential arguments for coverage. If no response to this request is made, the claim for coverage will be considered denied, for the reasons discussed below.

II

**BACKGROUND OF THE REQUEST FOR COVERAGE**

A.    <u>The Litigation</u>

It is alleged that in 2001, the defendants purchased a five-building apartment complex located at 1800 South Maple Street in Escondido, California. Soon after the purchase, defendants began taking steps to subdivide the property, and to convert the apartments to condominiums. After the conversion process was completed, defendants began selling units at the complex.

On August 18, 2005, a complaint was filed in the San Diego Superior Court by The Hidden Glen Maintenance Corporation, the homeowners association for the condominiums sold by defendants. The complaint names as defendants: 1800 South Maple Street, LLC; Ralph Giannella and Keith Giannella, both individually and as the trustees of the Ralph Giannella and Keith A. Giannella Revocable Trust; William Ayyad and William G. Ayyad, Inc.; Premier Communities LLC; Dan Tomasi; and Mark Holmes Corporation. Although the complaint does not specify which defendant or defendants actually owned the condominium complex, the CC&Rs for the property identify South Maple Street LLC as the owner.

The complaint alleges that the defendants, in order to obtain the Department of Real Estate's approval of the "condo conversion," made "false representations" regarding repairs, replacements and upgrades that would be made to the common areas at the facilities. It is alleged that the defendants did not make these promised improvements, ignored significant existing problems with the property, and instead just covered up the problems by painting the units, and installing new appliances and flooring, so that the units could be marketed "as new" and completely "refurbished."

The complaint alleges that the defendants misrepresented the condition of the condominium complex, and concealed the defects, and that after the units were sold, it was realized that there were "major problems with the common area and damages to units arising therefrom." As the party with standing to "bring claims concerning defective materials and conversion of the common areas and the damages caused to the units by such defective construction," the homeowners association filed suit.

Ms. Vekeno Kennedy
Page 4 of 13
March 3, 2006

B.    The Insurance Policy

AMCO issued a "Premier Businessowners/Premier Habitational" insurance policy to named insureds "ACDW Properties/Giannella Properties" and "4-Way Farms." As discussed previously, none of these entities are named as a defendant in the litigation. The policy was effective on April 4, 2002, and was cancelled at the insureds' request on November 24, 2002.

The policy identifies the insured premises as five apartment buildings at 1800 South Maple Street. The file shows that two additional insured endorsements to the policy were issued, both naming "South Maple Street LLC" as an additional insured. One of the additional insured endorsements covers mortgagees, assignees or receivers of the named insured's property, but only with respect to liability as a mortgagee, assignee or receiver. The other endorsement covers managers or lessors of leased premises, but only with respect to liability arising out of the named insured's use of the part of the premises leased to the named insured. Both endorsements contain an exclusion for "structural alterations, new construction or demolition operations..."

For limited liability companies, the policy includes within the definition of "an insured": (1) "members," but only with respect to the conduct of the company's business; (2) managers, but only with respect to their duties as managers; (3) employees, but only for acts within the scope of employment or while performing duties related to the conduct of the LLC's business; and (4) a person acting as the LLC's real estate manager.

The policy also adds as "automatic additional insureds": (1) co-owners of the insured premises, but only with respect to liability as the co-owner of the premises; and (2) any person or organization that has a controlling interest in the insured, but only with respect to liability arising out of that financial control, or the ownership of the premises, and not as to "structural alterations, new construction or demolition operations performed by or for such person or organization."

C.    The Request For Coverage

On or about September 29, 2005, AMCO received a request for coverage of the complaint filed by The Hidden Glen Maintenance Corporation. After reviewing the file and investigating the claim, AMCO's Robert Johnson called your office on October 6, 2005. You agreed to fax copies of the CC&Rs for the condominiums, and the plaintiff's demand letter, to Mr. Johnson, and did so on or or about October 28. After a few unsuccessful attempts to arrange a personal meeting, Mr. Johnson sent you a letter dated November 10, 2005, outlining the coverage issues and asking you to provide documents which would allow resolution of those issues.

By January 11, 2006, Mr. Johnson had received no response to his letter, and called your office. The next day, Mr. Johnson received a call from your assistant, who said that you would be out of the office for the week. The assistant said that the complaint had been properly served on the insureds, and that settlement negotiations were being engaged in. Mr. Johnson asked the assistant to have you call him, but apparently this has not yet happened.

Ms. Vekeno Kennedy
Page 5 of 13
March 3, 2006

### III
### COVERAGE ANALYSIS

A.    <u>Possible Rescission Based On Misrepresentations Regarding The Insured Risk</u>

The application for the AMCO insurance policy here at issue lists "applicant's operations" as being "Apartment Owner" of the apartments at 1800 South Maple Street, and information is provided regarding average percentage of units occupied and average monthly rent charged for a unit.  No mention is made of any intent to convert the apartments into condominiums.

Conversion of apartments into condominiums gives rise to different types of risks than simple ownership of an apartment building, and subjects an insurer to substantially greater exposure.  Consequently, if AMCO had been informed that the insureds intended to convert the apartments at South Maple Street, a higher premium would have been charged, and a different type of policy would have been issued.

If the allegations of the complaint are true, the defendants were already planning to convert the apartments when they applied for the insurance sometime around April of 2002.  It is alleged that "[s]oon after purchase" of the apartment complex "in or about 2001," the defendants began to take steps to obtain reports from the Department of Real Estate that would allow the property to be subdivided.  It is also alleged that "in or about March of 2002," the defendants requested the County of San Diego Assessor's office to segregate the property into individual units.

California Insurance Code section 332 provides that "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract..."  Since knowledge that the applicants intended to convert the condominiums would have affected AMCO's treatment of the application, that intent was a material fact.  Misstatements or concealment of material facts in an application for insurance, even if unintentional, may entitle an insurer to rescind the insurance policy.  <u>Cal</u>. <u>Ins</u>. <u>Code</u> §§ 331, 359; <u>Mitchell v. United Title Ins. Co.</u>, 127 Cal.App.4th 457, 469 (2005).  Such rescission also applies to innocent co-insureds.  <u>Cal</u>. <u>Ins</u>. <u>Code</u> § 650.

Based on the file materials now available, it cannot be said with certainty whether an action by AMCO for rescission of the insurance policy would be appropriate.  However, such an action may subsequently prove warranted by the facts, and if rescission is granted, AMCO would be relieved of any obligations under the policy.

B.    <u>The Complaint Does Not Allege Claims For Bodily Or Personal Injury</u>

The liability part of the insurance policy issued by AMCO covers claims for damages caused by "bodily injury," "property damage," and "personal and advertising injury."  The complaint filed by The Hidden Glen Maintenance Corporation does not allege any claims for "bodily injury."  Indeed, since the plaintiff is a corporation, it cannot suffer any "bodily injury."

For a covered "personal and advertising injury" claim to exist, the injury must arise out of one of the "offenses" specified in the policy (Liability Coverage Form, p. 10 of 24, par. 1.b).  Those offenses are: (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling

or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication of material that slanders or libels a person or organization or disparages a person or organization's goods, products or services; (e) oral or written publication of material that violates another's right of privacy; (f) the use of another's advertising idea in your advertising; or (g) infringing upon another's copyright, trade dress or slogan in your advertising (Liability Coverage Form, p. 23 of 24, Definitions, no. 14). The complaint filed by Hidden Glen does not allege, or potentially involve, injuries arising out of any of these "offenses."

C.     The Claims For "Property Damage" Are Excluded

Since the complaint does not allege any claims for "bodily injury" or "personal and advertising injury," coverage obligations under the AMCO policy can only be triggered if there are allegations of "property damage." A possibility exists that the complaint alleges continuing "property damage," although any such damage was actually caused by previous owners of the property. In any event, the claims for that "property damage" are not covered, because they fall within a number of the exclusions in the AMCO policy.

The facts alleged in the complaint, and undisputable facts from other sources, establish that two of the exclusions, for property owned by the insured and for premises sold by the insured, completely bar coverage of the <u>Hidden Glen</u> litigation. Those exclusions will be discussed in some detail below. A number of other exclusions, which may completely or partially bar coverage, are briefly discussed thereafter.

1.     The "Owned Property" Exclusion

Exclusion "j.1" applies to claims for property damage to "[p]roperty you own, rent, or occupy." According to the complaint, defendants purchased the apartment complex in 2001, and defendants' alleged wrongful acts occurred while they owned the property. For example: (1) defendants owned the property when they allegedly made misrepresentations to the Department of Real Estate so that the property could be converted; (2) defendants owned the property when they made the cosmetic repairs to cover up defects; and (3) defendants owned the property when they allegedly had a duty to properly set up the homeowners association. Since the "property damage" allegedly continued throughout defendants' ownership of the premises, the claims alleged in the complaint all fall within the "owned property" exclusion.

Moreover, defendants were probably still "owners" of the common areas after the policy period ended. The CC&Rs note that unit owners are given an undivided interest in the common areas of the condominium complex. The CC&Rs also provide that the defendants would continue to hold the ownership interests of the unsold units, so defendants were arguably still "owners" of the common areas until all of the units were sold, which almost certainly did not occur before the policy period ended.

2.     The "Premises Alienated" Exclusion

The complaint does allege that defendants "sold the first individual unit in November of 2002," so it is possible that some of the units were no longer owned by defendants when the AMCO policy was cancelled, on November 24, 2002. However, if defendants were no longer the

owners of some of the units, or the common area, on November 24, 2002, those properties would be premises sold by defendants, and would fall within the "premises alienated" exclusion.

Exclusion "j.2" applies to property damage to "[p]remises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises." This exclusion, combined with the "owned property" exclusion, bars coverage to the AMCO insureds in this case -- the individual units and the common areas where the property damage allegedly occurred were either owned by defendants, or were sold by defendants, and in either event, coverage is excluded.

The application of the "premises alienated" exclusion can sometimes be a complex issue, primarily because of two decisions of the Fourth District Court of Appeal, <u>Prudential - LMI Commercial Ins. Co. v. Reliance Ins.</u>, 22 Cal.App.4th 1508 (1994) and <u>Maryland Casualty Co. v. Reeder</u>, 221 Cal.App.3d 961 (1990). Both cases held that, in certain circumstances, the "premises alienated" exclusion should not be literally applied.

However, <u>Maryland Casualty</u> and <u>Prudential</u> both make it clear that the exclusion is properly applied on the facts presented here. Both cases involved pre-1986 liability policies, and noted that a change was made to the standard "premises alienated" exclusion in 1986, which clarified that it was designed to apply to "situations where the premises were first 'occupied, rented, or held for rental by [the insured]'." <u>Prudential</u>, <u>supra</u>, 22 Cal.App.4th at p. 1512; <u>Maryland Casualty</u>, <u>supra</u>, 221 Cal.App.3d at 978.

The AMCO policy is a post-1986 policy, and its "premises alienated" exclusion contains the changed provision, specifying that the exclusion does not apply "if the premises are 'your work' and were never occupied, rented or held for rental by you." Given the allegations of the complaint and the representations on the insurance application, it cannot here be disputed that the premises were "held for rental" by defendants, so the exclusion remains applicable.

As noted by the court in <u>Prudential</u>, the purpose of the exclusion was to "deny coverage to an insured who has failed to repair property prior to its sale or who has failed to disclose the existence of a defect at the time of sale." <u>Prudential</u>, <u>supra</u>, 22 Cal.App.4th at p. 1512. Here, the claims against defendants are specifically based upon allegations that they failed to properly repair the rental property, and failed to disclose defects on the property, before sale. In this situation, it is clear that the "premises alienated" exclusion is applicable, and would bar coverage of any claims that were not already barred by the "owned property" exclusion.

3.    <u>The Exclusion For Property Damage Arising Out Of Operations</u>

Exclusion "j.5" applies to property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." If plaintiff is claiming that the repair and restoration work performed by "defendants and various subcontractors" did not just mask preexisting damage, but actually caused property damage, then this exclusion might apply.

Ms. Vekeno Kennedy
Page 8 of 13
March 3, 2006

    4.    <u>The Exclusion For Property That Must Be Restored, Repaired Or Replaced</u>

Exclusion "j.6" applies to property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." However, this exclusion "does not apply to 'property damage' included in the 'products-completed operations hazard'." Pursuant to the definition in the policy, the "products-completed operations hazard" only includes property damage that occurred "away from premises you own or rent," and does not apply to work that has not yet been completed.

This exclusion might be inapplicable to the work on <u>some</u> of the individual units, since it is possible that defendants' "condo conversion" work had been completed and some of the units sold while the policy was still in effect. However, to the extent that the damage was to common areas, defendants' likely status as an owner throughout the policy period would make the definition of "completed operations" inapplicable, and therefore make the exclusion applicable.

    5.    <u>The Exclusion For Damage To Your Work</u>

Exclusion "l" to the policy applies to property damage to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'." However, the exclusion is not applicable if "the damaged work, or the work out of which the damage arises, was performed on your behalf by a subcontractor." This exclusion may bar indemnification of some of the claims, but since the complaint alleges that "defendants and various subcontractors" performed the work, the extent of its application cannot be determined at this time.

    6.    <u>The Exclusion For Damage To Impaired Property</u>

Exclusion "m" to the policy applies to property damage to "impaired property" or property that has not been physically injured which arises out of "1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or 2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." "Impaired property" is defined as including property other than "your work" that cannot be used or is less useful because:

        a. It incorporates 'your product' or 'your work'
        that is known or thought to be defective, deficient,
        inadequate or dangerous; or
        b. You have failed to fulfill the terms of a
        contract or agreement;
        If such property can be restored to use by:
        a. The repair, replacement, adjustment
        or removal of 'your product' or 'your
        work'; or
        b. Your fulfilling the terms of the contract
        or agreement.

This exclusion might ultimately prove applicable. Plaintiff alleges that defendants had entered into an agreement with the Department of Real Estate to perform various repairs and upgrades of the common areas at the complex. Plaintiff alleges that defendants failed to perform

Ms. Vekeno Kennedy
Page 9 of 13
March 3, 2006

any of these improvements, and it is possible that plaintiff will subsequently attempt to prove that use of the units, or of other parts of the common areas, was impaired by the breach of the agreement.

       7.     <u>The Mold Exclusion</u>

The complaint alleges that one of the preexisting problems with the complex was mold, and that defendants failed "to prevent and remedy mold...problems throughout the subject property..." An endorsement to the AMCO policy excludes coverage of:

> a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for:
> 1) The actual, alleged or threatened...contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure... or
> 2) The failure to warn or to disclose the presence of "fungi" or bacteria;
>
> regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> b. Any loss, cost or expenses arising out of the testing for, monitoring, cleaning up, removing, containing.... remediating or disposing of... "fungi" or bacteria...

The endorsement defines "fungi" as including "mold." Consequently, to the extent that plaintiff is seeking recovery for "property damage" caused by the presence of mold, or the failure to disclose mold, the claim is excluded.

       8.     <u>The Breach Of Contract Exclusion</u>

The "California Amendatory Endorsement" to the AMCO policy here at issue contains an exclusion for property damage "that arises out of or is a result of any breach of a written or oral contract, and breach of any other written or oral agreement, or any breach of an express or implied warranty." This exclusion is directly applicable to, and precludes coverage of, the complaint's third cause of action, for "Breach of CC&Rs/Contract."

The exclusion might also apply to plaintiff's claims based on the alleged failure to comply with the improvements promised in the documents filed with the Department of Real Estate. Although plaintiff was not a party to these agreements, some of its claims "arise out of" the breach of the agreements.

       9.     <u>The Exclusion For Expected Or Intended Injury</u>

Coverage of some of the causes of action alleged in the complaint should be barred by the exclusion for property damage "which is expected or intended by the insured." For example, the second cause of action, for civil conspiracy, alleges that defendants <u>knowingly</u> conspired to breach

Business and Professions Code section 11020 by making <u>intentional</u> misrepresentations to the Department of Real Estate.  The seventh cause of action, for violation of California Business and Professions Code section 17200, alleges that the defendants "submitted false and <u>fraudulent</u> documents in furtherance of their <u>conspiracy to defraud</u> the Department of Real Estate..."

      10.    <u>Fiduciary Responsibility Exclusion</u>

The AMCO policy excludes claims for property damage "arising out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity."  The fourth cause of action in the complaint is for breach of fiduciary duty, and alleges that defendants, "[p]ursuant to the CCRs, and common law obligations," owed fiduciary duties to the homeowners association, including duties to fund an adequate reserve account, avoid conflicts of interest, and maintain adequate insurance. This claim may not be for "property damage" arising out of "ownership, maintenance or use" of "property" as to which defendants were acting in a fiduciary capacity, but the exclusion might be applicable.

    D.    <u>The Causes Of Action Alleged By Plaintiff Are Not Covered</u>

      1.    <u>Negligence</u>

The first cause of action in the complaint is for negligence.  Plaintiff alleges that defendants had a duty to act reasonably in converting the apartments to condominium units, and breached that duty by: failing to "prevent and remedy" mold, water intrusion problems, and faulty grading and landscaping; failing to bring the units up to Code standards; failing to inspect the condition of the units; failing to "prepare proper plans and specifications"; failing to properly set up the homeowners association; and "[o]therwise acting negligently in their construction, sale, conversion, and marketing of the units and subject property."

The combination of the "owned property" and the "premises alienated" exclusions bars coverage of this cause of action.  This is because all of plaintiff's claims involve property damage to units that were owned by defendants during the AMCO policy period, or were sold by defendants during the AMCO policy period.

      2.    <u>Civil Conspiracy</u>

The second cause of action in the complaint is for civil conspiracy to violate Business and Professions Code section 11020.  That section makes it "unlawful" to make or issue public reports which contain information that is known to be "forged, altered, false or counterfeit..."  Plaintiff alleges that defendants conspired to violate this section in their preparation of the report to the Department of Real Estate, in which defendants said that they would repair or replace many defective conditions at the complex.

This cause of action is barred by the exclusion for damage "expected or intended by the insured."  Participation in a civil conspiracy is inherently an intentional act.  <u>Fibreboard Corp. v. Hartford Accident & Indem. Co.</u>, 16 Cal.App.4th 492, 510 (1993) (a defendant "cannot inadvertently become a member of a civil conspiracy").  And, fraud and intentional misrepresentation are uncovered intentional acts.  "[F]raudulent acts are deemed purposeful rather

Ms. Vekeno Kennedy
Page 11 of 13
March 3, 2006

than accidental and, therefore, are not covered under a CGL policy..." <u>Chatton v. National Union Fire Ins. Co.</u>, 10 Cal.App.4th 846, 861 (1992).

     3.    <u>Breach of Contract</u>

The third cause of action in the complaint is for breach of contract, based on the defendants' alleged failure to comply with a warranty in the CC&Rs that various parts of the project would be in "working condition." This cause of action would be barred by the exclusion in the "California Amendatory Endorsement," which applies to claims arising out of any breach of contract or warranty.

     4.    <u>Breach of Fiduciary Duty</u>

The fourth cause of action in the complaint is for breach of fiduciary duty. It is alleged that "[p]ursuant to the CCRs, and common law obligations," defendants owed certain fiduciary duties to plaintiff, including a duty to avoid conflicts of interest, to provide and maintain adequate levels of insurance, to adequately fund a reserve account for contingencies, and to refrain from placing self-serving exculpatory clauses in the CC&Rs.

These claims would not be covered, as they would fall within the exclusions for "expected or intended" damage, and for claims arising out of the breach of a contract. Additionally, these claims do not allege any form of "property damage," but instead seek recovery for uncovered economic loss. <u>See</u> <u>Continental Casualty Co. v. Superior Court</u>, 92 Cal.App.4th 430, 439 (2001); <u>McLauglin v. National Union Fire Ins. Co.</u>, 23 Cal.App.4th 1132, 1150 (1994). And, if this cause of action did involve a claim for damage to property, it would probably be barred by the "breach of fiduciary duty" exclusion.

     5.    <u>Alter Ego Liability</u>

The fifth cause of action in the complaint is for "alter ego" liability. It is alleged that defendant 1800 South Maple Street LLC was formed for improper purposes, and that all of the defendants should be held liable for its acts. This cause of action does not in itself seek recovery for any covered injury or damage, and is based on intentional acts.

     6.    <u>Negligence Per Se</u>

The sixth cause of action in the complaint is for negligence per se, and alleges that defendants violated California Civil Code section 1134. According to plaintiff, this section required defendants to perform a reasonable inspection of the premises, and to provide a written statement to the purchaser listing all substantial defects or malfunctions on the property. Plaintiff alleges that as a result of defendants' failure to comply with the statute, it suffered "damages to its property, loss of use of property, damages to common areas and budget."

The exclusion for intentional acts may apply, as it is questionable whether a statute imposing inspection and reporting duties can be accidentally violated. Also, the violation of section 1134 did not <u>cause</u> property damage – i.e., the failure to inspect the property and provide a written list of defects did not cause the defects. Instead, it caused uncovered economic damage, in that

Ms. Vekeno Kennedy
Page 12 of 13
March 3, 2006

the failure to provide written statements listing the problems with the condominium complex caused homeowners to purchase units that had problems which had to be repaired.

In any event, if it was assumed that this cause of action was seeking recovery for property damage, that property damage occurred while the premises were owned by defendants, or after it had been sold. Consequently, the "owned property" and "premises alienated" exclusions would bar coverage.

       7.    <u>Violation of Business and Professions Code Section 17200</u>

The seventh cause of action in the complaint is for violation of California Business and Professions Code section 17200. Plaintiff alleges that defendants engaged in unfair and fraudulent business practices when committing the acts alleged in the foregoing causes of action, and in particular when they "submitted false and fraudulent documents" to the Department of Real Estate in violation of Business and Professions Code section 11020. These claims are clearly based on intentional acts, and they do not seek recovery for property damage.

IV
**CONCLUSION**

For the reasons discussed above, it is my opinion that the complaint filed by The Hidden Glen Maintenance Corporation does not allege any potentially covered claims against any of AMCO's insureds. AMCO has independently conducted its own evaluation, and has reached the same conclusion.

As discussed at the beginning of this letter, there are still uncertainties regarding the relationships between, and capacities of, AMCO's insureds and the defendants named in the complaint. To ensure that no basis for coverage of an AMCO insured has been overlooked, it would be appreciated if you would provide the information requested in the second section of this letter.

However, no facts of which AMCO is currently aware indicate that there is any potential for coverage of the claims against any of AMCO's insureds or any of the defendants named in the complaint. Consequently, if you choose not to respond to this letter, AMCO has requested me to inform you that the request for coverage of the <u>Hidden Glen</u> litigation can be considered denied.

It is my opinion that the policy provisions and exclusions discussed in this letter provide complete support for AMCO's coverage determinations. Nonetheless, AMCO reserves the right to rely upon other policy provisions and exclusions in the future, regardless whether they are discussed in this letter, and especially if AMCO is made aware of new facts regarding the claim for coverage.

Ms. Vekeno Kennedy
Page 13 of 13
March 3, 2006

    If an insured believes his or her claim has been wrongfully denied, he or she may have the matter reviewed by the California Department of Insurance, Claim Service Bureau, 300 South Spring Street, 11th Floor, Los Angeles, California, 90013; the phone number for the Claim Service Bureau is 213-897-5961.

Very Truly Yours,

MILLER LAW FIRM

Scott A. Johnson

SAJ:gp

Exhibit "C"

# LONG & LEVIT LLP

ATTORNEYS AND COUNSELORS AT LAW

Howard M. Garfield
*Partner*

Email: hgarfield@longlevit.com
Direct Dial: 415-438-4545

January 15, 2008

S5240.336

**VIA FACSIMILE ONLY**

C. Brant Noziska
Rockwood & Noziska, LLP
5060 North Harbor Drive, Suite 255
San Diego, CA  92106

**Re:  1800 South Maple et al. v. Allied Property and Casualty, et al.**

Dear Mr. Noziska

Unfortunately, I have had over the course of my career far too much experience with the battle of letters: adverse counsel writes a letter that misstates various matters forcing me to write a letter back correcting the misstatements and on and on. I sincerely hope we do not get started down that path, but your just-delivered letter of today's date compels me to respond.

In response to the tender of the Hidden Glen matter, AMCO did not deny coverage. In response to the tender, AMCO did not fail to conduct an investigation. In fact, AMCO conducted an investigation. In order to complete its investigation and reach a conclusion about coverage, AMCO requested information from its putative insured about the identities of the insureds at risk in the Hidden Glen matter. That information was never forthcoming.

I thought I had made clear at the ENE hearing that AMCO still needs that information in order to evaluate coverage. I thought that Judge Stormes ordered your clients to furnish that information. In sum, until AMCO gets that information, it is still not in a position to provide a definitive coverage evaluation. When I get a moment, I will shortly furnish you with a description of the information I believe AMCO will need for that evaluation.

As an aside, I don't know why the plaintiffs would have no choice but to move to add Michael Ehrenfeld Company as a defendant or the basis of a professional negligence claim against that company if AMCO does not admit coverage. While I don't presume to tell you how to further your clients' interests, perhaps you might tell me why your clients would have to make such a motion.

Very truly yours,

Howard M. Garfield

Exhibit "D"

# Rockwood & Noziska LLP
ATTORNEYS AT LAW

5060 North Harbor Drive, Suite 255
San Diego, CA 92106

Writer's Email:
noziska@rockwood-noziska.com

Phone: 619.224.7778
Fax:   619.224.7779
E-mail: info@rockwood-noziska.com

January 15, 2008

**VIA FACSIMILE ONLY**

Howard M. Garfield, Esq.
Long & Levit LLP
465 California, Suite 500
San Francisco, CA 94104
Facsimile: 415.397.6392

Re:   <u>1800 South Maple et al. v. Allied Property and Casualty, et al.</u>
      Our File No.: 1026.02

Dear Counsel:

The purpose of this letter is to determine whether defendants, ALLIED PROPERTY & CASUALTY INSURANCE COMPANY, AMCO INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE (collectively "AMCO"), admit coverage under the ACP BPH 7801069841 policy for the claim giving rise to this bad faith action by Plaintiffs.

In AMCO's previous denials of coverage, despite its failure to conduct an investigation required by law, AMCO asserted that numerous exclusions barred coverage, including the "premises alienated" 2(j) exclusion. In light of AMCO's reliance on these alleged policy exclusions, Plaintiffs would like confirmation that AMCO has otherwise conceded liability under the policy.

Without an admission of coverage by AMCO, Plaintiffs will have no choice but to move to amend the complaint to add AMCO agent Michael Ehrenfeld Company as a defendant. In doing so, Plaintiffs will assert a cause of action for professional negligence on the part of this prospective defendant. As Honorable Judge Stormes acknowledged, this will destroy diversity of citizenship and the case will be remanded to Honorable Judge Prager's department in the San Diego Superior Court.

garfield.ltr.01.15.08.doc

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

Rockwood & Noziska, L.L.P.
A Partnership of Professional Corporations

Howard M. Garfield, Esq.
Re: <u>1800 South Maple et al. v. Allied Property and Casualty, et al</u>.
January 15, 2008
Page 2

        Your prompt reply regarding AMCO's admission of coverage under the ACP BPH 7801069841 policy is greatly appreciated given the time constraints of the recent ENE order.

        Thank you for your cooperation.

                        Very truly yours,


                        C. BRANT NOZISKA

CBN/cka

garfield.ltr.01.15.08.doc