# EXHIBIT I

# MILLER LAW FIRM

Scott A. Johnson

The Marston Building
427 C Street, Suite 410
San Diego, California 92101

Telephone
619•232•0086
Facsimile
619•232•0089

March 3, 2006

Ms. Vekeno Kennedy
General Counsel
United Development Group, Inc.
9252 Chesapeake Drive, Ste. 100
San Diego, Calif. 92123

> Re:  Hidden Glen Maintenance Corp. v. 1800 South Maple Street, LLC, et al.
> San Diego Superior Court Case No. GIC852647
> Policy No. ACP BPH 7801069841
> Claim No. 84L52141

Dear Ms. Kennedy:

My firm has been retained by AMCO Insurance Company to independently evaluate the request for coverage of the above-referenced litigation, that has been made under the AMCO insurance policy issued to ACDW Properties/Gianella Properties and 4-Way Farms. Pursuant to that evaluation, I have carefully reviewed the complaint filed by The Hidden Glen Maintenance Corporation, the insurance policy and endorsements thereto issued by AMCO, plaintiff's bylaws and Hidden Glen's CC&Rs, other documents and information which you have provided to AMCO's Robert Johnson, and AMCO's underwriting file.

Based upon my review of these documents, and my independent legal research, it is my opinion that the complaint does not allege any claims which would potentially be covered by the AMCO insurance policy. AMCO has come to the same conclusion. However, before formally denying the claim for coverage, AMCO would like to give further consideration to one remaining issue.

Specifically, the documents and information now in AMCO's possession do not clearly establish the relationship between AMCO's insureds and the defendants named in the complaint. To ensure that no basis for coverage of an AMCO insured has been overlooked, it would be appreciated if you could provide information, discussed below, regarding those relationships.

If you choose not to respond to this request for information, you may consider the request for coverage of the above-referenced litigation denied. The reasons for that denial are explained in detail below. If, after reading that explanation, you believe that you are aware of additional new facts which would justify a different conclusion, please contact the undersigned, or Mr. Johnson, as soon as possible.

Ms. Vekeno Kennedy
Page 2 of 13
March 3, 2006

## I
## REQUEST FOR INFORMATION REGARDING THE DEFENDANTS
## AND THEIR RELATIONSHIP WITH THE NAMED INSUREDS

The complaint filed by plaintiff Hidden Glen Maintenance Corporation names as defendants: 1800 South Maple Street, LLC; Ralph Giannella and Keith Giannella, both individually and as the trustees of the Ralph Giannella and Keith A. Giannella Revocable Trust, William Ayyad and William G. Ayyad, Inc., Premier Communities LLC, Dan Tomasi, and Mark Holmes Corporation. None of these individuals and entities are named insureds in the AMCO insurance policy.

The AMCO insurance policy declarations, the underwriting file and the application for insurance all identify AMCO's insureds as being "ACDW Properties/Gianella Properties and 4-Way Farms." Two endorsements to the AMCO policy name as an additional insured "South Maple Street, LLC," in its capacity as manager or lessor of leased property, and as the mortgagee, assignee or receiver of the named insureds' property. The AMCO policy also provides specific limited types of coverage for a named insured's partners, stockholders, officers, members, managers and employees, and adds as "automatic additional insureds," subject to express limitations, the co-owners of insured premises, and persons or organizations having a controlling interest in an insured.

Presumably, defendant 1800 South Maple Street, LLC, is the same entity as additional insured South Maple Street LLC. However, as an additional insured, its coverage would be limited as stated above -- to claims involving its status as a manager, lessor, mortgagee, assignee or receiver of the named insureds' property. Also, such status would be difficult to reconcile with the CC&Rs for the Hidden Glen condominium project, which state that South Maple Street was the <u>owner</u> of the property.

The complaint alleges that defendants William Ayyad, Ralph Giannella and Keith Giannella were "principal partners" of 1800 South Maple Street LLC, and that defendant Dan Tomasi was a "principal partner and/or a managing agent" of the LLC. The complaint does not allege the role of defendants William Ayyad Inc., or the Giannella Revocable Trust, but the CC&Rs indicate that those entities were "members" of the South Maple Street LLC. Finally, the complaint does not explain what relationship defendants Premier Construction and Mark Holmes Corporation have with any of the named or additional insureds, other than William Ayyad's alleged partnership interest in Premier.

It would seem likely that relationships exist between the defendants and AMCO's named and additional insureds, and those relationships may entitle some of the defendants to the status of an insured. However, the information currently available to AMCO prevents any certain determination of which defendants are claiming that they are covered under the AMCO policy, and what the basis for their claim might be.

Consequently, it would be appreciated if you would provide AMCO's Mr. Johnson, or the undersigned, information regarding the connections and relationships between AMCO's named or additional insureds and the entities and individuals named as defendants in Hidden Glen's complaint, including: (1) whether any of AMCO's named insureds -- ACDW Properties/Gianella Properties and 4-Way Farms -- have exposure to liability in the <u>Hidden Glen</u> litigation, and if so,

Ms. Vekeno Kennedy
Page 3 of 13
March 3, 2006

why; (2) is the claim for coverage based upon South Maple Street LLC's additional insured status, and if so, are any other defendants claiming through that additional insured, and on what basis; and (3) are there connections between the named and additional insureds and the named defendants -- e.g., co-ownership of the insured premises, control, stockholder status, etc. -- that might give those defendants insured status under the AMCO policy, and if so, explain those connections in detail.

On the facts now known to AMCO, the complaint filed by The Hidden Glen Maintenance Corporation does not allege any covered claims. However, AMCO would like to make sure that all of the possible grounds for coverage of all potentially insured individuals and entities have been considered, so I would greatly appreciate your cooperation with this request for information, or your thoughts regarding any other potential arguments for coverage. If no response to this request is made, the claim for coverage will be considered denied, for the reasons discussed below.

## II
## BACKGROUND OF THE REQUEST FOR COVERAGE

A.     The Litigation

It is alleged that in 2001, the defendants purchased a five-building apartment complex located at 1800 South Maple Street in Escondido, California. Soon after the purchase, defendants began taking steps to subdivide the property, and to convert the apartments to condominiums. After the conversion process was completed, defendants began selling units at the complex.

On August 18, 2005, a complaint was filed in the San Diego Superior Court by The Hidden Glen Maintenance Corporation, the homeowners association for the condominiums sold by defendants. The complaint names as defendants: 1800 South Maple Street, LLC; Ralph Giannella and Keith Giannella, both individually and as the trustees of the Ralph Giannella and Keith A. Giannella Revocable Trust; William Ayyad and William G. Ayyad, Inc.; Premier Communities LLC; Dan Tomasi; and Mark Holmes Corporation. Although the complaint does not specify which defendant or defendants actually owned the condominium complex, the CC&Rs for the property identify South Maple Street LLC as the owner.

The complaint alleges that the defendants, in order to obtain the Department of Real Estate's approval of the "condo conversion," made "false representations" regarding repairs, replacements and upgrades that would be made to the common areas at the facilities. It is alleged that the defendants did not make these promised improvements, ignored significant existing problems with the property, and instead just covered up the problems by painting the units, and installing new appliances and flooring, so that the units could be marketed "as new" and completely "refurbished."

The complaint alleges that the defendants misrepresented the condition of the condominium complex, and concealed the defects, and that after the units were sold, it was realized that there were "major problems with the common area and damages to units arising therefrom." As the party with standing to "bring claims concerning defective materials and conversion of the common areas and the damages caused to the units by such defective construction," the homeowners association filed suit.

Ms. Vekeno Kennedy
Page 4 of 13
March 3, 2006

B.    The Insurance Policy

AMCO issued a "Premier Businessowners/Premier Habitational" insurance policy to named insureds "ACDW Properties/Giannella Properties" and "4-Way Farms." As discussed previously, none of these entities are named as a defendant in the litigation. The policy was effective on April 4, 2002, and was cancelled at the insureds' request on November 24, 2002.

The policy identifies the insured premises as five apartment buildings at 1800 South Maple Street. The file shows that two additional insured endorsements to the policy were issued, both naming "South Maple Street LLC" as an additional insured. One of the additional insured endorsements covers mortgagees, assignees or receivers of the named insured's property, but only with respect to liability as a mortgagee, assignee or receiver. The other endorsement covers managers or lessors of leased premises, but only with respect to liability arising out of the named insured's use of the part of the premises leased to the named insured. Both endorsements contain an exclusion for "structural alterations, new construction or demolition operations..."

For limited liability companies, the policy includes within the definition of "an insured": (1) "members," but only with respect to the conduct of the company's business; (2) managers, but only with respect to their duties as managers; (3) employees, but only for acts within the scope of employment or while performing duties related to the conduct of the LLC's business; and (4) a person acting as the LLC's real estate manager.

The policy also adds as "automatic additional insureds": (1) co-owners of the insured premises, but only with respect to liability as the co-owner of the premises; and (2) any person or organization that has a controlling interest in the insured, but only with respect to liability arising out of that financial control, or the ownership of the premises, and not as to "structural alterations, new construction or demolition operations performed by or for such person or organization."

C.    The Request For Coverage

On or about September 29, 2005, AMCO received a request for coverage of the complaint filed by The Hidden Glen Maintenance Corporation. After reviewing the file and investigating the claim, AMCO's Robert Johnson called your office on October 6, 2005. You agreed to fax copies of the CC&Rs for the condominiums, and the plaintiff's demand letter, to Mr. Johnson, and did so or or about October 28. After a few unsuccessful attempts to arrange a personal meeting, Mr. Johnson sent you a letter dated November 10, 2005, outlining the coverage issues and asking you to provide documents which would allow resolution of those issues.

By January 11, 2006, Mr. Johnson had received no response to his letter, and called your office. The next day, Mr. Johnson received a call from your assistant, who said that you would be out of the office for the week. The assistant said that the complaint had been properly served on the insureds, and that settlement negotiations were being engaged in. Mr. Johnson asked the assistant to have you call him, but apparently this has not yet happened.

Ms. Vekeno Kennedy
Page 5 of 13
March 3, 2006

### III
### COVERAGE ANALYSIS

A.    <u>Possible Rescission Based On Misrepresentations Regarding The Insured Risk</u>

The application for the AMCO insurance policy here at issue lists "applicant's operations" as being "Apartment Owner" of the apartments at 1800 South Maple Street, and information is provided regarding average percentage of units occupied and average monthly rent charged for a unit. No mention is made of any intent to convert the apartments into condominiums.

Conversion of apartments into condominiums gives rise to different types of risks than simple ownership of an apartment building, and subjects an insurer to substantially greater exposure. Consequently, if AMCO had been informed that the insureds intended to convert the apartments at South Maple Street, a higher premium would have been charged, and a different type of policy would have been issued.

If the allegations of the complaint are true, the defendants were already planning to convert the apartments when they applied for the insurance sometime around April of 2002. It is alleged that "[s]oon after purchase" of the apartment complex "in or about 2001," the defendants began to take steps to obtain reports from the Department of Real Estate that would allow the property to be subdivided. It is also alleged that "in or about March of 2002," the defendants requested the County of San Diego Assessor's office to segregate the property into individual units.

California Insurance Code section 332 provides that "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract..." Since knowledge that the applicants intended to convert the condominiums would have affected AMCO's treatment of the application, that intent was a material fact. Misstatements or concealment of material facts in an application for insurance, even if unintentional, may entitle an insurer to rescind the insurance policy. <u>Cal</u>. <u>Ins</u>. <u>Code</u> §§ 331, 359; <u>Mitchell v. United Title Ins. Co.</u>, 127 Cal.App.4th 457, 469 (2005). Such rescission also applies to innocent co-insureds. <u>Cal</u>. <u>Ins</u>. <u>Code</u> § 650.

Based on the file materials now available, it cannot be said with certainty whether an action by AMCO for rescission of the insurance policy would be appropriate. However, such an action may subsequently prove warranted by the facts, and if rescission is granted, AMCO would be relieved of any obligations under the policy.

B.    <u>The Complaint Does Not Allege Claims For Bodily Or Personal Injury</u>

The liability part of the insurance policy issued by AMCO covers claims for damages caused by "bodily injury," "property damage," and "personal and advertising injury." The complaint filed by The Hidden Glen Maintenance Corporation does not allege any claims for "bodily injury." Indeed, since the plaintiff is a corporation, it cannot suffer any "bodily injury."

For a covered "personal and advertising injury" claim to exist, the injury must arise out of one of the "offenses" specified in the policy (Liability Coverage Form, p. 10 of 24, par. 1.b). Those offenses are: (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling

Ms. Vekeno Kennedy
Page 6 of 13
March 3, 2006

or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication of material that slanders or libels a person or organization or disparages a person or organization's goods, products or services; (e) oral or written publication of material that violates another's right of privacy; (f) the use of another's advertising idea in your advertising; or (g) infringing upon another's copyright, trade dress or slogan in your advertising (Liability Coverage Form, p. 23 of 24, Definitions, no. 14). The complaint filed by Hidden Glen does not allege, or potentially involve, injuries arising out of any of these "offenses."

C.    The Claims For "Property Damage" Are Excluded

Since the complaint does not allege any claims for "bodily injury" or "personal and advertising injury," coverage obligations under the AMCO policy can only be triggered if there are allegations of "property damage." A possibility exists that the complaint alleges continuing "property damage," although any such damage was actually caused by previous owners of the property. In any event, the claims for that "property damage" are not covered, because they fall within a number of the exclusions in the AMCO policy.

The facts alleged in the complaint, and undisputable facts from other sources, establish that two of the exclusions, for property owned by the insured and for premises sold by the insured, completely bar coverage of the Hidden Glen litigation. Those exclusions will be discussed in some detail below. A number of other exclusions, which may completely or partially bar coverage, are briefly discussed thereafter.

1.    The "Owned Property" Exclusion

Exclusion "j.1" applies to claims for property damage to "[p]roperty you own, rent, or occupy." According to the complaint, defendants purchased the apartment complex in 2001, and defendants' alleged wrongful acts occurred while they owned the property. For example: (1) defendants owned the property when they allegedly made misrepresentations to the Department of Real Estate so that the property could be converted; (2) defendants owned the property when they made the cosmetic repairs to cover up defects; and (3) defendants owned the property when they allegedly had a duty to properly set up the homeowners association. Since the "property damage" allegedly continued throughout defendants' ownership of the premises, the claims alleged in the complaint all fall within the "owned property" exclusion.

Moreover, defendants were probably still "owners" of the common areas after the policy period ended. The CC&Rs note that unit owners are given an undivided interest in the common areas of the condominium complex. The CC&Rs also provide that the defendants would continue to hold the ownership interests of the unsold units, so defendants were arguably still "owners" of the common areas until all of the units were sold, which almost certainly did not occur before the policy period ended.

2.    The "Premises Alienated" Exclusion

The complaint does allege that defendants "sold the first individual unit in November of 2002," so it is possible that some of the units were no longer owned by defendants when the AMCO policy was cancelled, on November 24, 2002. However, if defendants were no longer the

Ms. Vekeno Kennedy
Page 7 of 13
March 3, 2006

owners of some of the units, or the common area, on November 24, 2002, those properties would be premises sold by defendants, and would fall within the "premises alienated" exclusion.

Exclusion "j.2" applies to property damage to "[p]remises you sell, give away or abandon, if the 'property damage' arises out of any part of those premises." This exclusion, combined with the "owned property" exclusion, bars coverage to the AMCO insureds in this case -- the individual units and the common areas where the property damage allegedly occurred were either owned by defendants, or were sold by defendants, and in either event, coverage is excluded.

The application of the "premises alienated" exclusion can sometimes be a complex issue, primarily because of two decisions of the Fourth District Court of Appeal, Prudential - LMI Commercial Ins. Co. v. Reliance Ins., 22 Cal.App.4th 1508 (1994) and Maryland Casualty Co. v. Reeder, 221 Cal.App.3d 961 (1990). Both cases held that, in certain circumstances, the "premises alienated" exclusion should not be literally applied.

However, Maryland Casualty and Prudential both make it clear that the exclusion is properly applied on the facts presented here. Both cases involved pre-1986 liability policies, and noted that a change was made to the standard "premises alienated" exclusion in 1986, which clarified that it was designed to apply to "situations where the premises were first 'occupied, rented, or held for rental by [the insured]'." Prudential, supra, 22 Cal.App.4th at p. 1512; Maryland Casualty, supra, 221 Cal.App.3d at 978.

The AMCO policy is a post-1986 policy, and its "premises alienated" exclusion contains the changed provision, specifying that the exclusion does not apply "if the premises are 'your work' and were never occupied, rented or held for rental by you." Given the allegations of the complaint and the representations on the insurance application, it cannot here be disputed that the premises were "held for rental" by defendants, so the exclusion remains applicable.

As noted by the court in Prudential, the purpose of the exclusion was to "deny coverage to an insured who has failed to repair property prior to its sale or who has failed to disclose the existence of a defect at the time of sale." Prudential, supra, 22 Cal.App.4th at p. 1512. Here, the claims against defendants are specifically based upon allegations that they failed to properly repair the rental property, and failed to disclose defects on the property, before sale. In this situation, it is clear that the "premises alienated" exclusion is applicable, and would bar coverage of any claims that were not already barred by the "owned property" exclusion.

3.    The Exclusion For Property Damage Arising Out Of Operations

Exclusion "j.5" applies to property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." If plaintiff is claiming that the repair and restoration work performed by "defendants and various subcontractors" did not just mask preexisting damage, but actually caused property damage, then this exclusion might apply.

Ms. Vekeno Kennedy
Page 8 of 13
March 3, 2006

    4.    <u>The Exclusion For Property That Must Be Restored, Repaired Or Replaced</u>

Exclusion "j.6" applies to property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." However, this exclusion "does not apply to 'property damage' included in the 'products-completed operations hazard'." Pursuant to the definition in the policy, the "products-completed operations hazard" only includes property damage that occurred "away from premises you own or rent," and does not apply to work that has not yet been completed.

This exclusion might be inapplicable to the work on <u>some</u> of the individual units, since it is possible that defendants' "condo conversion" work had been completed and some of the units sold while the policy was still in effect. However, to the extent that the damage was to common areas, defendants' likely status as an owner throughout the policy period would make the definition of "completed operations" inapplicable, and therefore make the exclusion applicable.

    5.    <u>The Exclusion For Damage To Your Work</u>

Exclusion "l" to the policy applies to property damage to "'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'." However, the exclusion is not applicable if "the damaged work, or the work out of which the damage arises, was performed on your behalf by a subcontractor." This exclusion may bar indemnification of some of the claims, but since the complaint alleges that "defendants and various subcontractors" performed the work, the extent of its application cannot be determined at this time.

    6.    <u>The Exclusion For Damage To Impaired Property</u>

Exclusion "m" to the policy applies to property damage to "impaired property" or property that has not been physically injured which arises out of "1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or 2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." "Impaired property" is defined as including property other than "your work" that cannot be used or is less useful because:

> a. It incorporates 'your product' or 'your work'
> that is known or thought to be defective, deficient,
> inadequate or dangerous; or
> b. You have failed to fulfill the terms of a
> contract or agreement;
> If such property can be restored to use by:
> a. The repair, replacement, adjustment
> or removal of 'your product' or 'your
> work'; or
> b. Your fulfilling the terms of the contract
> or agreement.

This exclusion might ultimately prove applicable. Plaintiff alleges that defendants had entered into an agreement with the Department of Real Estate to perform various repairs and upgrades of the common areas at the complex. Plaintiff alleges that defendants failed to perform

Ms. Vekeno Kennedy
Page 9 of 13
March 3, 2006

any of these improvements, and it is possible that plaintiff will subsequently attempt to prove that use of the units, or of other parts of the common areas, was impaired by the breach of the agreement.

### 7.     The Mold Exclusion

The complaint alleges that one of the preexisting problems with the complex was mold, and that defendants failed "to prevent and remedy mold...problems throughout the subject property..." An endorsement to the AMCO policy excludes coverage of:

> a. "Bodily injury" or "property damage" which would
> not have occurred, in whole or in part, but for:
> 1) The actual, alleged or threatened...contact with,
> exposure to, existence of, or presence of, any "fungi"
> or bacteria on or within a building or structure... or
> 2) The failure to warn or to disclose the presence of
> "fungi" or bacteria;
>
> regardless of whether any other cause, event, material
> or product contributed concurrently or in any sequence
> to such injury or damage.
>
> b. Any loss, cost or expenses arising out of the testing
> for, monitoring, cleaning up, removing, containing....
> remediating or disposing of... "fungi" or bacteria...

The endorsement defines "fungi" as including "mold."  Consequently, to the extent that plaintiff is seeking recovery for "property damage" caused by the presence of mold, or the failure to disclose mold, the claim is excluded.

### 8.     The Breach Of Contract Exclusion

The "California Amendatory Endorsement" to the AMCO policy here at issue contains an exclusion for property damage "that arises out of or is a result of any breach of a written or oral contract, and breach of any other written or oral agreement, or any breach of an express or implied warranty."  This exclusion is directly applicable to, and precludes coverage of, the complaint's third cause of action, for "Breach of CC&Rs/Contract."

The exclusion might also apply to plaintiff's claims based on the alleged failure to comply with the improvements promised in the documents filed with the Department of Real Estate. Although plaintiff was not a party to these agreements, some of its claims "arise out of" the breach of the agreements.

### 9.     The Exclusion For Expected Or Intended Injury

Coverage of some of the causes of action alleged in the complaint should be barred by the exclusion for property damage "which is expected or intended by the insured." For example, the second cause of action, for civil conspiracy, alleges that defendants knowingly conspired to breach

Ms. Vekeno Kennedy
Page 10 of 13
March 3, 2006

Business and Professions Code section 11020 by making <u>intentional</u> misrepresentations to the Department of Real Estate.  The seventh cause of action, for violation of California Business and Professions Code section 17200, alleges that the defendants "submitted false and <u>fraudulent</u> documents in furtherance of their <u>conspiracy to defraud</u> the Department of Real Estate..."

          10.    <u>Fiduciary Responsibility Exclusion</u>

The AMCO policy excludes claims for property damage "arising out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity."  The fourth cause of action in the complaint is for breach of fiduciary duty, and alleges that defendants, "[p]ursuant to the CCRs, and common law obligations," owed fiduciary duties to the homeowners association, including duties to fund an adequate reserve account, avoid conflicts of interest, and maintain adequate insurance.  This claim may not be for "property damage" arising out of "ownership, maintenance or use" of "property" as to which defendants were acting in a fiduciary capacity, but the exclusion might be applicable.

      D.    <u>The Causes Of Action Alleged By Plaintiff Are Not Covered</u>

          1.    <u>Negligence</u>

The first cause of action in the complaint is for negligence.  Plaintiff alleges that defendants had a duty to act reasonably in converting the apartments to condominium units, and breached that duty by: failing to "prevent and remedy" mold, water intrusion problems, and faulty grading and landscaping; failing to bring the units up to Code standards; failing to inspect the condition of the units; failing to "prepare proper plans and specifications"; failing to properly set up the homeowners association; and "[o]therwise acting negligently in their construction, sale, conversion, and marketing of the units and subject property."

The combination of the "owned property" and the "premises alienated" exclusions bars coverage of this cause of action.  This is because all of plaintiff's claims involve property damage to units that were owned by defendants during the AMCO policy period, or were sold by defendants during the AMCO policy period.

          2.    <u>Civil Conspiracy</u>

The second cause of action in the complaint is for civil conspiracy to violate Business and Professions Code section 11020.  That section makes it "unlawful" to make or issue public reports which contain information that is known to be "forged, altered, false or counterfeit..."  Plaintiff alleges that defendants conspired to violate this section in their preparation of the report to the Department of Real Estate, in which defendants said that they would repair or replace many defective conditions at the complex.

This cause of action is barred by the exclusion for damage "expected or intended by the insured."  Participation in a civil conspiracy is inherently an intentional act.  <u>Fibreboard Corp. v. Hartford Accident & Indem. Co.</u>, 16 Cal.App.4th 492, 510 (1993) (a defendant "cannot inadvertently become a member of a civil conspiracy").  And, fraud and intentional misrepresentation are uncovered intentional acts.  "[F]raudulent acts are deemed purposeful rather

Ms. Vekeno Kennedy
Page 11 of 13
March 3, 2006

than accidental and, therefore, are not covered under a CGL policy..." Chatton v. National Union Fire Ins. Co., 10 Cal.App.4th 846, 861 (1992).

       3.   Breach of Contract

The third cause of action in the complaint is for breach of contract, based on the defendants' alleged failure to comply with a warranty in the CC&Rs that various parts of the project would be in "working condition." This cause of action would be barred by the exclusion in the "California Amendatory Endorsement," which applies to claims arising out of any breach of contract or warranty.

       4.   Breach of Fiduciary Duty

The fourth cause of action in the complaint is for breach of fiduciary duty. It is alleged that "[p]ursuant to the CCRs, and common law obligations," defendants owed certain fiduciary duties to plaintiff, including a duty to avoid conflicts of interest, to provide and maintain adequate levels of insurance, to adequately fund a reserve account for contingencies, and to refrain from placing self-serving exculpatory clauses in the CC&Rs.

These claims would not be covered, as they would fall within the exclusions for "expected or intended" damage, and for claims arising out of the breach of a contract. Additionally, these claims do not allege any form of "property damage," but instead seek recovery for uncovered economic loss. See Continental Casualty Co. v. Superior Court, 92 Cal.App.4th 430, 439 (2001); McLauglin v. National Union Fire Ins. Co., 23 Cal.App.4th 1132, 1150 (1994). And, if this cause of action did involve a claim for damage to property, it would probably be barred by the "breach of fiduciary duty" exclusion.

       5.   Alter Ego Liability

The fifth cause of action in the complaint is for "alter ego" liability. It is alleged that defendant 1800 South Maple Street LLC was formed for improper purposes, and that all of the defendants should be held liable for its acts. This cause of action does not in itself seek recovery for any covered injury or damage, and is based on intentional acts.

       6.   Negligence Per Se

The sixth cause of action in the complaint is for negligence per se, and alleges that defendants violated California Civil Code section 1134. According to plaintiff, this section required defendants to perform a reasonable inspection of the premises, and to provide a written statement to the purchaser listing all substantial defects or malfunctions on the property. Plaintiff alleges that as a result of defendants' failure to comply with the statute, it suffered "damages to its property, loss of use of property, damages to common areas and budget."

The exclusion for intentional acts may apply, as it is questionable whether a statute imposing inspection and reporting duties can be accidentally violated. Also, the violation of section 1134 did not cause property damage – i.e., the failure to inspect the property and provide a written list of defects did not cause the defects. Instead, it caused uncovered economic damage, in that

Ms. Vekeno Kennedy
Page 12 of 13
March 3, 2006

the failure to provide written statements listing the problems with the condominium complex caused homeowners to purchase units that had problems which had to be repaired.

In any event, if it was assumed that this cause of action was seeking recovery for property damage, that property damage occurred while the premises were owned by defendants, or after it had been sold. Consequently, the "owned property" and "premises alienated" exclusions would bar coverage.

       7.    <u>Violation of Business and Professions Code Section 17200</u>

The seventh cause of action in the complaint is for violation of California Business and Professions Code section 17200. Plaintiff alleges that defendants engaged in unfair and fraudulent business practices when committing the acts alleged in the foregoing causes of action, and in particular when they "submitted false and fraudulent documents" to the Department of Real Estate in violation of Business and Professions Code section 11020. These claims are clearly based on intentional acts, and they do not seek recovery for property damage.

**IV**
**<u>CONCLUSION</u>**

For the reasons discussed above, it is my opinion that the complaint filed by The Hidden Glen Maintenance Corporation does not allege any potentially covered claims against any of AMCO's insureds. AMCO has independently conducted its own evaluation, and has reached the same conclusion.

As discussed at the beginning of this letter, there are still uncertainties regarding the relationships between, and capacities of, AMCO's insureds and the defendants named in the complaint. To ensure that no basis for coverage of an AMCO insured has been overlooked, it would be appreciated if you would provide the information requested in the second section of this letter.

However, no facts of which AMCO is currently aware indicate that there is any potential for coverage of the claims against any of AMCO's insureds or any of the defendants named in the complaint. Consequently, if you choose not to respond to this letter, AMCO has requested me to inform you that the request for coverage of the <u>Hidden Glen</u> litigation can be considered denied.

It is my opinion that the policy provisions and exclusions discussed in this letter provide complete support for AMCO's coverage determinations. Nonetheless, AMCO reserves the right to rely upon other policy provisions and exclusions in the future, regardless whether they are discussed in this letter, and especially if AMCO is made aware of new facts regarding the claim for coverage.

Ms. Vekeno Kennedy
Page 13 of 13
March 3, 2006

If an insured believes his or her claim has been wrongfully denied, he or she may have the matter reviewed by the California Department of Insurance, Claim Service Bureau, 300 South Spring Street, 11th Floor, Los Angeles, California, 90013; the phone number for the Claim Service Bureau is 213-897-5961.

Very Truly Yours,

MILLER LAW FIRM

Scott A. Johnson

SAJ:gp

# EXHIBIT J

Clyde C. Greco, Jr
Paul A. Traficante
Michael M. Edwards
Peter J. Schulz
Jon S. Brick

Philip M. McKinney
Scott B. Ehlberg
Stephen F. Veersch
Craig A. Weeber
Roy Bartolome
Jaleaque Grech
Brandy P. Epley
Christopher D. Shortand

*Also Admitted in Arizona & Nevada

## Law Offices
# GRECO TRAFICANTE & EDWARDS
A Professional Corporation
555 West Beech Street, Suite 500
San Diego, CA 92101

Northern California Office
1415 Court Street
Redding, CA 96001

Of Counsel
Stanley J. Woolman
Phillip H. Howard

Legal Administrator
Lisa M. Chst

Telephone
(619) 234-3660

Facsimile
(619) 234-0626

www.gtelaw.com
email: info@gtelaw.com

November 22, 2004

_VIA FACSIMILE AND MAIL_
Timothy C. Earl, Esquire
SULLIVAN HILL LEWIN REZ & ENGEL
550 West "C" Street, Suite 1500
San Diego, CA 92101-3540

Re:  _The Oaks Management Corp, et al v. Avocado Crest Condominium_
     _San Diego Superior Court Case No. GIC 827085_
     _Our File No.: AL-239_

Dear Mr. Earl:

At this time we respond, on behalf of Amco, to your letter dated October 26, 2004. Amco has reviewed the underwriting file and related issues in connection with this matter, and it has determined that your clients, assuming they were to arguably fit the category of "insureds" under Amco's policy, have no coverage rights for the above-referenced lawsuit. This is so because the risk undertaken by Amco was for the named insured as an "association." The subject lawsuit filed by homeowner association Oaks Management Corporation is beyond the contractually accepted risk associated with the policy issued to "Avocado Crest Condominiums, LLC." (See _Waller v. Truck Ins. Exchange_, 11 Cal.4th 1, 37 [1995].)

We direct your attention the application which Avocado Crest Condominiums, LLC provided to Amco. For your ease of reference, we enclose a copy of the application which we now address in some detail.

First of all, we note, on page 1 of the application, that the premium charged is $6,172 for the policy, and the "line of business" description is listed as "Business Owners." (Application, page 1.) As you are probably aware, the premium charged does have an impact on a determination as to the risk

P:\AL\fin\AL-239\correspEarl\CCG\b005.wpd

```
EXHIBIT  5C
WIT: Greco
DATE: 3-13-07
CAROL NYGARD DROBNY
```

NOV 22 '04 12:22                                    619 234 0626          PAGE.02

AMCO03153

Greco Traficante & Edwards

Timothy C. Earl, Esquire
November 22, 2004
Page 2

contemplated by the parties entering into the contract of insurance. See e.g. American Internat. Bank v. Fidelity & Deposit Co., 49 Cal.App.4th 1558, 1574 (1996).

On page 2 of the application, you will note that the applicant's operations are listed as "Condo Association." The prospective insured said nothing about engaging in developmental operations or condominium conversion activities. In fact, later in the application, on the final page, the following language, inter alia, appears:

Other Business Operations

[Q.] Describe any other business operations performed by any of the listed insureds.

[A.] The applicant HAS NO other business operations.

On page 3 of the application, a question is posed as to whether "builders, developers or real estate agents have financial interest in the applicant?" And, the answer is "NO." The named insured, having made this representation, appears to now be saying that, quite obviously, a builder and developer did have an interest in the applicant. However, the law will not countenance such a post-application reversal by the insured.

On page 4 of the application, many questions are keyed to matters uniquely associated with condominium associations, e.g., descriptions of the "means of egress" for each building and "on-premise food preparation. . . ." Additionally, questions about the status of individual units appear: "Charcoal grills on porches and balconies?", the "height of fence at each location," and "the access available at any swimming pool being quoted with other than resident only key access." An application question is also posed as to whether "swimming pool rules [are] posted . . . ." (Id.) Moreover, the tenor of the entire application reveals that Amco's underwriting interest relates solely to business as a homeowner association, and Avocado Crest's responses not only do not contradict such tone, but they in fact reinforce same.

F:\AMeo\AAL-239\corrsp\Earl 00bdcl.wpd

AMCO03154

Greco Traficante & Edwards

Timothy C. Earl, Esquire
November 22, 2004
Page 3

On page 6 of the application, as indicated above, the applicant states, as a fact, that it "HAS NO other business operations." The indication, obviously, is that it was an "association," and nothing more. But, that was not the case.

It is obvious that misrepresentations/concealments were present in the application, and in accordance with California Insurance Code sections 331 et seq., Amco owes no coverage duties for the developer's loss that has been alleged in the subject lawsuit. Amco has addressed other matters in its April 16, 2004 letter to Mr. Roger C. Haerr, Esq. of the Luce, Forward, Hamilton, & Scripps law firm which, at that time, represented Avocado Crest. The key point, however, with respect to Amco's coverage declination is the application matter, and intended scope of coverage addressed directly above.

We do wish to speak to certain matters in your October 26, 2004 letter which reflect what we regard as important legal errors. First of all, you stated that.

Extrinsic evidence such as insurance applications may only be admitted to interpret the terms of an insurance policy where the terms are ambiguous.

(October 26, 2004 Letter page 6.)

In this regard, you cite to Fraley v. Allstate Ins. Co., 81 Cal.App.4th 1282, 1291 (2000). In fact, Fraley involved a first party coverage matter. We do not read the case to pertain to coverage issues relating to application misrepresentations, such as are extant here.

Also, you suggest that Amco's identification of misrepresentations/concealments of information are such that AMCO's remedy is to initiate and prevail in a lawsuit against the ACC Defendants to rescind the insurance policy. In this regard, you cite to the case of Merced County Mut. Fire Ins. Co. v. State of California, 233 Cal.App.3d 765 (1991). However, the Merced County case was one that involved, in the first instance, a rescission action, not the use of misrepresentations to defeat a third party coverage claim. (See Id., at 768.) In fact, the law concerning the use of misrepresentations, in a defensive posture, is the opposite of what you state. That is, an insurer is not obligated to rescind before invoking misrepresentations/

F:\ALL\Amco\430\Correspl\Earl CCG0505.wpd

AMCO03155

Greco Traficante & Edwards

Timothy C. Earl, Esquire
November 22, 2004
Page 4

concealments as coverage defenses. (See Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co., 64 Cal.App.3d 261, 274-275 [1976]; see also Campos v. State Compensation Ins. Fund, 122 Cal.App.2d 513, 528-529 (1954).)

Given that the coverage written was not for a developer, but for an association, all the allegations made against your clients are beyond the scope of the risk insured, and Amco thus owes no duties to those who purportedly are insured under its policy.

With respect to the remainder of your comments in the October 26, 2004 letter, we offer no observations except to note that Amco stands on previous positions taken and that Amco reserves all of its rights under any and all applicable policy provisions which support same in connection with the declination it has already provided. Under the circumstances of the lawsuit against Avocado Crest Condominiums, LLC, and certain others, those who claim rights as insureds under the Amco policy have failed to meet their mandated legal burden to demonstrate a potentially covered event (see Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at 17-18). The lack of that prerequisite, without more, is dispositive on all coverage issues.

If you have further matters, whether factual or legal, which your clients believe are salient to coverage questions, we will be pleased to consider them, on behalf of Amco. If you clients have questions or objections about Amco's coverage positions, they may contact the California Insurance Commissioner, who may be reached at the following address and phone number:

California Department of Insurance
Claims Service Bureau
300 Spring Street, 11th Floor
Los Angeles, CA 90013
(800) 937-HELP or (213) 897-5961

Very truly yours,

Clyde C. Greco, Jr.
Of
GRECO TRAFICANTE & EDWARDS

CCG:bd
Enclosure

F:\Wdox\AAL-109\corresp\Earl CCG0405.wpd

NOV 22 '04 12:23

619 234 8826                          PAGE.05

AMCO03156

Quote Summary Screen

☑ To print, click here, then FILE, PRINT.

| | | | |
|---|---|---|---|
| Prepared For: | Avocado Crest Condominiums, Llc | By: | Michael Ehrenfeld Company Ins |
| | | | 51252 |
| | San Diego, CA  921080000 | | |

Quote Number:    ACP 78D1073037

Effective:    04/04/2002    TO    04/04/2003

| Coverage Type | Premium |
|---|---|
| Premier Business Owners | $5,172 |
| TOTAL | $5,172 |

Allied offers flexible payment plans to meet your needs.  If you choose the flexible payment option, the down payment needed to issue this account is 25% of the total annual premium. For the quote provided above the down payment would be $1,543.

Issuance of this account is subject to the following:

-Underwriting review and approval

-Acceptable inspection of operations

Thank you for choosing Allied for your Commercial insurance needs.

| Policywide Coverages | | |
|---|---|---|
| Liability Limit | Per Occurence | $2,000,000 |
| | Aggregate | $4,000,000 |
| Medical Payments | Per Person | $1,000 |
| Property Deductible | | $1,000 |

https://a1.alliedinsurance.com/commercial/VirtualHTML/EMQ010print.htm

04/04/2002

ACC002431

Quote Summary Screen

**Building 1**
888 East Alvarado Street, Fallbrook, CA, 92028

| | | |
|---|---|---|
| | | Liability Premium: $1,495 |
| Building Limit: | $2,862,000 | Building Premium: $0 |
| BPP Limit: | $ | BPP Premium: $0 |
| Replacement Cost | | |
| Number of: | | |
| Swimming Pools | 1 | Premium $265 |
| | | |
| Equipment Breakdown | | |
| Additional Building Coverages | | $88 |
| Automatic Increase in Building Insurance | 4 % | Premium |

Building 1 Options Premium:    $1,848

Policy Premium:    $6,172
**TOTAL Premier Businessowners**    $6,172

04/04/2002

ACC002432

Commercial Application

☞ To print, click here, then FILE, PRINT.

**Applicant**
AVOCADO CREST CONDOMINIUMS, LLC
C/O 4856 CASS STREE
SAN DIEGO CA 92108-0000

**Agency**
Michael Ehrenfeld Company Ins
San Diego CA 92108-1633

Quote Number: ACP 7801073037

Quote Effective Date: 04/04/2002

| | Line of Business | | Premium |
| --- | --- | --- | --- |
| | Business Owners | | $6,172 |
| | Total Quoted Premium | | $6,172 |

Coverage Is Bound? No

Proposed Effective Date: 04/04/2002

If you do not wish to bind coverage on one or more of the above lines of business, return to the Quote Summary page and mark the checkbox in front of any line of business you wish to exclude from this application. Any lines of business not preceded by a marked checkbox on the Quote Summary page will be listed on this application for coverage. If you wish to bind coverage on any lines of business not included in your internet quotation, please make a note in the Additional Comments or Remarks section at the end of the application. A paper application for any such lines of business should be sent under separate cover to your underwriter.

Coverage may not be bound prior to today's date or 60 days after the quote effective date. Final account pricing may differ from that listed above if the proposed effective date does not match the effective date of the original quote.

Bill Type: Direct
*If Direct Bill is selected, a minimum down payment of $1,543.00 should be mailed to your Commercial Lines Underwriter for processing.

Who is the inspection contact for this account?
| Name | Title | Phone Number |
| --- | --- | --- |
| Dan Tomasi | Office manager | 858-274-2300 |

Who is the audit contact for this account?

https://asc.alliedinsurance.com/cominisppl/questions/Gen_Print.cfm?Frozen=YES&CFID=27032&CFI..  04/04/2002

ACC002433

Commercial Application

same

List all Named Insureds (include the type of entity for each):

| Name | DBA | Entity |
|------|-----|--------|
| Avocado Crest Condominiums, Llc | | LLC |

Please provide a full description of all of the applicant's operations:
Condo Assoc

How many years has the applicant been in this type of business? Less than 1

What are the annual receipts for the applicant's operations? 0

Which carrier(s) provided the aplicant's prior insurance coverage?

| Line | Carrier | Policy Term | Premium |
|------|---------|-------------|---------|
| GL & Prop | Allied | 12/1/2001-02 | 5911 |
| | | | 0 |
| | | | 0 |

Describe any other insurance that the applicant has with Allied.
The applicant HAS other insurance with Allied.
**Allied covers several of this insured's properties for ACDW Properties; owners are William Ayyad and Ralph Giannella**

Please provide a description of the applicant's 5 year loss history:
Insured has NO losses.

| Loss Date (mm/dd/yyyy) | Loss Description | Amount Incurred |
|------------------------|------------------|-----------------|
| | | 0 |
| | | 0 |
| | | 0 |
| | | 0 |
| | | 0 |

Please Note: Hard copy loss runs may be required to issue this account

Has the applicant ever been cancelled or non-renewed?(Note: If the risk is located in Missouri, the applicant is NOT required to provide this information.)
The Insured has NEVER been cancelled or non-renewed.

Comments:
No response provided.

You are hereby notified that an investigative consumer report MAY be made as a part of our routine
https://aoc.alliedinsurance.com/comintappl/questions/Geo_Print.cfm?Frozen=YES&CFID=27032&CF1... 04/04/2002

Commercial Application

procedure in reviewing applica___ or insurance. This inquiry includes ___ mation obtained through personal associates, financial sources, friends, neighbors, or heirs with whom the applicant's acquainted and typically includes information as to the applicant's, general reputation, personal characteristics and mode of living. The applicant has the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of such an investigation.

Has the agent personally inspected each location? NO
Pictures WILL NOT BE forthcoming under separate cover within the next 30 days.

List all occupancies in each building being leased in whole or in part to others. Include the building address and the percentage of building area occupied by each.
None

Are any of the applicant buildings used as a boarding house, shelter, halfway house, skilled nursing facility, nursing home, fraternity or sorority house, time share, resort or public housing project? If yes, indicate the location(s) involved and describe the situation in detail.
NONE of the applicant buildings are used as a boarding house, shelter, halfway house, skilled nursing facility, nursing home, fraternity or sorority house, time share, resort, or public housing project.

Condominium/Townhouse Associations

What is the average market value per unit?
Approximately $120,000

Percentage of units rented or leased to others:
None

Condominium Association Directors and Officers Liability

Do builders, developers or real estate agents have financial interest in the applicant? NO

Do builders, developers or real estate agents have representation on the board? NO

Do any directors or officers have knowledge or information of any negligent act, error, omission, or breach of duty that might give rise to claims against them? NO
        If yes, please describe in detail

Frequency of certified audits: Annual

Are all entrances to buildings protected by security phones, buzzers, or resident only keys? YES

Describe any complaints or lawsuits filed against the applicant based on inadequate security.
The applicant IS UNAWARE of any complaints or lawsuits filed due to inadequate security.

https://aac.alliedinsurance.com/comintappl/rquestions/Gen_Print.cfm?Frozen=YES&CFID=27032&CFL__  04/04/2002

Commercial Application

Are all buildings equipped with emergency lighting throughout? YES

Describe the means of egress for each building being quoted.
Doors & windows in all units,, plus exterior hallways

Describe any on-premise food preparation. Include the building address, type of food, method of preparation, and type of fire suppression system being utilized.
There IS NO food preparation in any buildings being quoted.

Are all open cooking surfaces protected by an UL approved automatic extinguishing system (i.e. Ansul system)?
There ARE NO open cooking surfaces at any location.

Is there an active maintenance contract in place to have all kitchen hoods and ducts cleaned on a regular basis? No Response Provided.

Does the applicant prohibit charcoal grills on porches and balconies? YES

Are all individual units and common hallways equipped with smoke detectors? YES
The applicant IS NOT responsible for maintenance of smoke detectors in any individual units or common hallways.

Frequency of smoke detector battery inspection: No Response Provided.

Are records of inspections retained? No Response Provided.

Describe any lakes, ponds, creeks, rivers, streams or other water hazards on site. Indicate the address of any locations with such an exposure, the approximate maximum depth of each body of water, and any access restrictions or other safety measures taken to minimize losses.
There ARE NO lakes, ponds, creeks, rivers, streams, or other water hazards on site.

Is each swimming pool fenced with a self-closing, latched gate? YES

Height of fence at each location:
6'

Indicate the address and a description of the access available at any swimming pool being quoted with other than resident only key access.
All swimming pools being quoted HAVE resident only key access.

Are swimming pool rules posted and a life ring or other pool safety equipment clearly visible at all locations? YES

https://aac.alliedinsurance.com/cominsappl/questions/Gen_Print.cfm?Frozen=YES&CFID=27032&CF1...  04/04/2002

ACC002436

Commercial Application

Indicate the address of any **swimming pool** being quoted that has a diving board or slide.
NO swimming pools on this quotation have diving boards or slides.

Describe any **fitness facilities** at the locations being quoted. Include the address of each building with such an exposure, the type of equipment, hours of operation, and level of supervision provided by the applicant, if any.
Applicant buildings **DO NOT HAVE** fitness facilities.

**Are there** any tanning beds or booths on premise? NO
If yes, advise applicant this is an excluded exposure.

Describe any **activities** the applicant sponsors or organizes on behalf of its residents.
The applicant **DOES NOT** sponsor or organize any activities for or on behalf of its residents.

Are there any **commercial ventures** in the applicant's residential buildings? If so, please indicate the building address involved and describe the commercial operations.
There **ARE NO** commercial ventures in the applicant's residential buildings.

Do any employees or hired security services carry weapons on premise? NO

Describe any situations in which the applicant requires a hold harmless agreement to be signed.
The applicant **DOES NOT** require any hold harmless agreements.

Describe any **updates to buildings over 20 years old**. Please indicate the building address, a description of the updates, and the year in which the updates were completed.
There **ARE** buildings over 20 years old.
Complete remodel when insured purchased the property in 1998.

Indicate the address and **original type of occupancy** of any buildings that were not built for the current type of occupancy.
All buildings included on this quotation **WERE** built for the current type of occupancy.

Indicate the address of any buildings that have a **wood burning stove** on premise. Please forward a photo of any wood stove areas under separate cover to your underwriter within the next 30 days.
There **ARE NO** wood stoves in any listed buildings.

**Employee Dishonesty**

Does the applicant check the references of all job applicants prior to employment? YES

The applicant has an independent audit completed by a CPA or public accountant?
Annually

Checks are immediately stamped "For deposit only" upon receipt?

Checks **ARE NOT** accepted at this establishment.

https://asc.alliedinsurance.com/comintappl/questions/Gen_Print.cfm?Frozen=YES&CEID=27032&CF1_    04/04/2002

Commercial Application

At what dollar level are counter___atures required on checks?
There IS NO established procedures for countersignature of checks.

Are bank accounts reconciled by someone who is not authorized to deposit or withdraw funds? NO

At what dollar level are credits for returned merchandise authorized by a manager?
Manager approval IS NOT required for returned merchandise.

Additional Insureds/Mortgagees/Loss Payees

No Additional Insureds Provided.

List any mortgagees or loss payees for this account. Be sure to include the name, address, and interest of the mortgagee or loss payee.
The account HAS mortgagees or loss payees.

| Name | Address | City | State | Zip | Interest |
|------|---------|------|-------|-----|----------|
| Capital Alliance Funding Corp | PO Box 30527 | Nashville | TN | 372295217 | 2nd Mortgage |
| Community Nat'l Bank | 130 W. Fallbrook St | Fallbrook | CA | 92028 | 1st Mortgage |
| Windsor Capital Mtg Corp | 132 N. El Camino Real, #384 | Encinitas | CA | 92024 | Mortgagee |
| | | | | 0 | |
| | | | | 0 | |

Other Business Operations

Describe any other business operations performed by any of the listed insureds.
The applicant HAS NO other business operations.

Describe any real property owned by the applicant but not included in this quotation.
The applicant owns NO other real property.

Other Premier Businessowners Comments:

Applicant's Signature: _____    Date: _____

Agent's Signature: _____    Date: _____

ACC002438

# EXHIBIT K

Clyde C. Greco, Jr.
Paul A. Traficante
Michael M. Edwards
Peter J. Scholz
Joe S. Brick

Philip M. McKenney
Scott B. Hilberg
Stephen F. Yurich
Craig A. Weeber
Bay Baniadam
Lalesque Grad*
Brandy P. Tyler
Christopher D. Shusland

*Also Admitted in Arizona & Nevada

Law Offices

# GRECO TRAFICANTE & EDWARDS

A Professional Corporation

555 West Beech Street, Suite 500
San Diego, CA 92101

Northern California Office
9555 Crossroads Drive
Redding, CA 96003

Of Counsel
Stanley J. Wezelman
Philip H. Howard

Legal Administrator
Lisa M. Class

Telephone
(619) 234-3660
Facsimile
(619) 234-0626

www.gtelaw.com
email: info@gtelaw.com

January 7, 2005

VIA FACSIMILE AND MAIL
Timothy C. Earl, Esquire
SULLIVAN HILL LEWIN REZ & ENGEL
550 West "C" Street, Suite 1500
San Diego, CA 92101-3540

Re:     *The Oaks Management Corp., et al. v. Avocado Crest Condominium*
        *San Diego Superior Court Case No. GIC 827085*
        *Our File No.: AL-239*

Dear Mr. Earl:

Allied Mutual Insurance Company ("Allied") has now concluded its coverage investigation, to the extent of the information available to it, regarding Allied's coverage duties under its policy issued to ACDW Properties, Inc., Policy No. ACP 7AD 1001164,[1] in connection with your clients' claim for coverage under the litigation known as The Oaks Management Corp., et al. v. Avocado Crest Condominium, LLC, et al., San Diego Superior Court Case No. GIC 827085 (the "subject litigation"). Allied has determined that, based upon present information, it has a duty to

---

[1]     The policy was in effect for the Avocado Crest Condominium, LLC risk for the period December 1, 2001 to April 4, 2002.

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 2

defend Avocado Crest Condominium, LLC, William G. Ayyad, Inc., Premier Communities, LLC, Construction Mediation Only, Inc., William G. Ayyad, Ralph Gianella and Dan Tomasi, all of whom are presently defendants in the subject litigation. You have advised us that William G. Ayyad, Inc. and Construction Mediation Only, Inc. were the "members" of Avocado Crest Condominium, LLC, and that Premier Communities, LLC was a manager of Avocado Crest. See Timothy C. Earl to Clyde C. Greco, Jr. letter, dated October 26, 2004, page 2. Plaintiffs have alleged that defendants William G. Ayyad, Ralph Gianella and Don Tomasi are "managers" of Avocado Crest. See Second Amended Complaint, paragraphs 12, 45 and 46.

The defense will be provided to the insureds through Allied's appointed counsel, Tim Lucas, Esq. and Parker • Stanbury. As you know, Allied has the right and duty to defend its insureds, when coverage potentiality exists in third party litigation against such insureds. See e.g. Safeco Ins. Co. of America v. Superior Court 71 Cal.App.4th 782, 889 (1999).

Allied requests that its insureds provide to the undersigned all of the invoices for attorney's fees and costs which the insureds contend are susceptible to Allied's payment of post-

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 3

tender defense costs to this point.[2]  Once Mr. Lucas and his law

firm are counsel of record, Allied will not pay any defense fees

which the insureds incur through your firm (Sullivan, Hill,

Lewin, Rez & Engel) or through any counsel other than appointed

counsel.  To the extent Mr. Lucas and Parker Stanbury may

specifically request your assistance for professional reasons,

and you provide such requested services, you and your firm will

be compensated at Allied's panel counsel rates for such

additional services.

Allied's defense of its insureds is to be provided under the

reservation of rights which is set forth below.  Allied

understands that under the holding of Buss v. Superior Court, 16

Cal.4th 35, 48-49 (1997), it is obligated to defend the insureds

fully, i.e., defending even for those alleged causes of action

which are not covered under Allied's policy.

Although Allied will defend the purported insureds in the

subject litigation, in accordance with the reservation of rights

set below, the insured should understand that Allied's defense

is solely under the ACDW policy referenced herein.  Allied has

previously declined coverage under Policy No. ACP BPH 78

---

[2]    As you likely know, no defense duty whatsoever is owed
      until "suit" is filed.  See Foster-Gardner, Inc. v.
      National Union Fire Ins. Co., 18 Cal.4th 857, 878-888
      (1998).

ID: AMCO01652                                          AMCO01652

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 4

01073037, the policy issued to Avocado Crest Condominium, LLC for the period April 4, 2002 - April 4, 2003.  Allied stands on its declination respecting the later policy for the reasons previously set forth in certain of our letters to you.

We provide below (a) a discussion of the Second Amended Complaint's causes of action which are <u>not</u> potentially covered under Allied's policy, (b) the reservation of rights under which Allied is affording a defense and (c) concluding remarks concerning the turnover of this case to Mr. Lucas and his firm.

1.    <u>NON-COVERED CAUSES OF ACTION AND ISSUES</u>

Non-covered causes of action issues in the subject litigation[3] by way of summary include the following:

    (1)  Third Cause of Action (Fraud);

    (2)  Fourth Cause of Action (Civil Conspiracy to Defraud Plaintiffs);

    (3)  Seventh Cause of Action (Fraudulent Conveyance);

    (4)  Eighth Cause of Action (Breach of Fiduciary Duty);

    (5)  Ninth Cause of Action (Alter Ego Liability);

    (6)  Eleventh Cause of Action (Negligence Per Se) [Violation of Civil Code § 1134]; and

    (7)  Plaintiffs' Bodily Injury Claims.

---

[3]    <u>See</u> Second Amended Complaint for Damages filed on May 3, 2004.

ID: AMCO01653

AMCO01653

Greco Traficante & ...wards

Timothy C. Earl, Esquire
January 7, 2005
Page 5

The Third Cause of Action for Fraud, i.e., intentional
misrepresentation, is not covered under the policy, for want of
an "occurrence," a requirement of Allied's insuring clause. See
Royal Globe Ins. Co. v. Whitaker, 186 Cal.App.3d 532, 537 (1986).
Nor is negligent misrepresentation -- if that were the object of
this count in the alternative -- covered, taking into account
that negligent misrepresentation entails intent to induce
reliance (see Dykstra v. Foremost Ins. Co. 14 Cal.App.4th 361,
366 (1993)); therefore, no "occurrence," i.e., an accident (see
Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 16-17 (1995)
is arguably present.

Respecting the Fourth Cause of Action, a conspiracy to
defraud is never covered under a liability insurance policy, for
want of an "occurrence." See Fibreboard Corp. v. Hartford
Accident & Indemnity Co., 16 Cal.App.4th 492, 510-511 (1993). By
its nature, a civil conspiracy involves the active combination of
persons intending to commit an intentional tort. See Applied
Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510-
512 (1994)..

The Seventh Cause of Action for "Fraudulent Conveyance"
does not allege any occurrence which results in property damage.
Paragraph 74 of the pleading alleges that the supposed fraudulent
transfer of assets was done "for the purpose of hindering,

ID: AMCO01654

AMCO01654

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 6

delaying and annoying [sic] plaintiffs' attempts to collect on

said claim and/or pending debt." Consequently, the loss

complained of is purely economic, something not covered under

Allied's policy. See e.g. Kazi v. State Farm Fire & Casualty

Co., 24 Cal.4th 871, 878-829 (1999).

The Eighth Cause of Action for Breach of Fiduciary Duty is

not covered, given that the allegations in question[4] do not

demonstrate that the acts of the insureds who are charged with

wrongdoing under this cause of action produced anything more

than economic loss. As previously explained, economic loss, as

opposed to property damage or bodily injury, is not covered under

Allied's policy.

The Ninth Cause of Action for "Alter Ego Liability" is not a

covered event, given that it, inter alia, does not seek "damages"

from the defendant insureds. "Alter ego" theory is equitable

relief designed to allow a plaintiff disregard a corporation or

other entity, while charging certain otherwise insulated persons

---

[4]    In part, it is alleged that "Defendants failed to
adequately fund a reserve account for contingencies,
avoid conflicts of interest or actions or decisions
which benefit their own interest at the expense of the
ASSOCIATION, provide and maintain liability, fire and
casualty insurance for the association and all common
area property, and failed to properly draft the CCRs
without self-serving exculpatory clauses as more fully
set forth herein." See Second Amended Complaint,
paragraph 81.

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 7

with liability.  See McClellan v. Northridge Park Townhome Owners
Assn., 89 Cal.App.4th 746, 752 (2001).  We note as well that
equitable relief, as opposed to "damages," is not generally
susceptible to insurance coverage under liability policies.  See
e.g. Bullock v. Maryland Casualty Co., 85 Cal.App.4th 1435, 1446-
1447 (2001).

The Eleventh Cause of Action for "Negligence Per Se,"
regarding the alleged violation of California Civil Code section
1134, is not potentially covered because the alleged wrongdoing
does not cause "property damage" as opposed to an economic loss.
The Second Amended Complaint, at paragraph 95 speaks to the gist
of plaintiff's allegations, i.e., that certain of the defendant
insureds supposedly failed to list "all substantial defects or
malfunctions of the major systems in the unit and common areas of
the premises or a statement disclaiming knowledge of any such
substantial defects of [sic] malfunctions."  In other words,
coverage is not potentially extant because this situation asserts
economic loss, as opposed to "damages."  See Waller, supra, 11
Cal.4th at pages 17-18.

A few comments are also in order about plaintiffs'
allegations of bodily injury.  It appears that some of the
individual plaintiffs may be claiming bodily injury as a result

ID: AMCO01656                                              AMCO01656

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 8

of the alleged negligence of the defendant insureds.  See e.g.
Second Amended Complaint, paragraphs 34 and 39.  However, the
sales of units to plaintiffs apparently did not occur before
Avocado Crest's coverage under the policy issued to ACDW
Properties terminated.  Consequently, the bodily injury claims
are beyond the scope of Allied's coverage duties.  The insured
has the burden to demonstrate a covered event (see e.g. Waller v.
Truck Ins. Exchange, Inc., 11 Cal.4th 1, 16 (1995)), and
information you have provided on behalf of your clients does not
reveal how the bodily injury alleged by some of the plaintiffs
could fall within the ambit of Allied's coverage.

2.    **RESERVATION OF RIGHTS**

    1.    **Reserving Rights**

        Under California law an insurer is clearly authorized
to defend its insured under a reservation of rights.  See e.g.
James 3 Corp. v. Truck Ins. Exchange, 91 Cal.App.4th 1093, 1102
(1990).  When an insurer reserves its rights, it is simply making
clear to the insured that the insurer, under certain
circumstances, may not have duties to an insured, based upon the
nature of the policy rights reserved.  See Blue Ridge Ins. Co. v.
Jacobsen, 25 Cal.4th 489, 497-498 (2001).

AMCO01657

Greco Traficante & _dwards

Timothy C. Earl, Esquire
January 7, 2005
Page 9

Allied invokes the following policy provisions which could have application to its ultimate coverage duties, relative to the subject litigation.

2.  **Rights Reserved**

Allied reserves its rights, with respect to certain policy exclusions which could have application.  The exclusions which are the subject of this reservation of rights, are the following:

2.  **Exclusions**

This insurance does not apply to:

a.  **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

j.  **Damage To Property**

"Property damage" to:

1)  Property you own, rent or occupy;

2)  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises . . . .

* * *

Greco Traficante & _dwards

Timothy C. Earl, Esquire
January 7, 2005
Page 10

6) That particular part of
any property that must be
restored, repaired or replaced
because "your work" was
incorrectly performed on it.

\* \* \*

k.  Damage To Your Product

"Property damage" to "your product"
arising out of it or any part of
it.

i.  Damage To Your Work

"Property damage" to "your work"
arising out of it or any part
of it and included in the
"products-completed operations
hazard."

This exclusion does not apply if
the damaged work or the work out
of which the damage arises was
performed on your behalf by a
subcontractor.

m.  Damage To Impaired Property Or Property
Not Physically Injured

"Property damage" to "impaired
property" or property that has not
been physically injured, arising
out of:

1) A defect, deficiency,
inadequacy or dangerous
condition in "your product"
or "your work"; or

2) A delay or failure by you or
anyone acting on your behalf
to perform a contract or

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 11

> agreement in accordance with
> its terms.
>
> This exclusion does not apply
> to the loss of use of other
> property arising out of sudden and
> accidental physical injury to "your
> product" or "your work" after it
> has been put to its intended use.

(Emphasis in original).

Allied also reserves the right to deny indemnity to any of the parties it is defending who is determined not to be insureds under the ACDW Properties policy which includes Avocado Crest as a named insured. In this regard, Allied refers you to its provision concerning those who are insureds under the subject policy if the named insured is a limited liability company. That provision, in part, reads as follows:

**SECTION II – WHO IS AN INSURED**

> 1.  If you are designated in the
>     Declarations as:
>
>                   * * *
>
> c.  A limited liability company, you
>     are an insured Your members are
>     also insureds, but only with
>     respect to the conduct of your
>     business. Your managers are
>     insureds, but only with respect
>     to their duties as your managers.
>
>                   * * *

(Emphasis in original).

ID: AMCO01660

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 12


Additionally, Allied calls to the insureds' attention the
following "other insurance" provision in the policy which may
impact Allied's duty to defend its insureds:

4.    **Other Insurance**

If other valid and collectible insurance
is available to the insured for a loss
we cover under Coverages A or B of this
Coverage Part, our obligations are
limited as follows:

* * *

b.    **Excess Insurance**

This insurance is excess over:

* * *

2)    Any other primary insurance
available to you covering
liability for damages arising
out of the premises or
operations for which you have
been added as an additional
insured by attachment of an
endorsement.

When this insurance is excess, we
will have no duty under Coverages
A and B to defend the insured
against any "suit" if any other
insurer has a duty to defend the
insured against that "suit." If
no other insurer defends, we will
undertake to do so, but we will be
entitled to the insured's rights
against all those other insurers.

(Emphasis in original).

Greco Traficante & Edwards

Timothy C. Earl, Esquire
January 7, 2005
Page 13

In the event the provisions of the above-quoted "other insurance" provision become applicable, i.e., a primary additional insurer provides a defense to the insureds, then Amco reserves its right to withdraw from the defense under the provisions set forth in the above-quoted "other insurance" provision.

Further, while a reservation of rights, strictly speaking, is not required on this point, Allied reserves its rights under California Insurance Code section 533, and case authority holding that willful acts and punitive damages are not susceptible to indemnification.  See e.g. PPG Industries, Inc. v. TransAmerica Ins. Co., 20 Cal.4th 310, 318 (1999).  Insurance Code section 533 reads as follows:

> An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the inured, or of the insured's agents or others.

If one or more of the insureds is adjudicated a willful wrongdoer, then the public policy of California precludes an insurer's paying indemnification.  See e.g. J.C. Penney Casualty Ins. Co. v. M.K., 52 Cal.3d 1009, 1019 (1991).  As indicated above, punitive damages fall within the willful acts statutory exclusion, and they may not be indemnified under California law.

ID: AMCO01662

Greco Traficante & ᴸdwards

Timothy C. Earl, Esquire
January 7, 2005
Page 14

See City Products Corp. v. Globe Indemnity Co., 88 Cal.App.3d 31, 39-41 (1979).

In addition to the above-stated reservations, Allied wants to make clear that it is not foregoing other policy exclusions, or provisions, which, because of circumstances not currently known, may yet justify its not defending or covering any judgment against the insureds. While Allied does not currently have information suggesting other policy exclusions or provisions have application, Allied is not waiving its right to rely upon them, if they are applicable.

Finally, Allied reserves the right to withdraw from the defense of this matter should, as to any insured (or all insureds), there be conclusive evidence that there is no coverage potentiality for such insured(s). In the event such a withdrawal becomes necessary, Allied will give the insured(s) reasonable notice so that it/he/they may retain substitute defense counsel for the subject litigation.

3.    CONCLUSION

The above sets forth Allied's agreement to defend under a specific reservation of rights. Allied will direct Mr. Lucas of Parker Stanbury to contact you for purposes of copying relevant documents from your files, so that Mr. Lucas and his law firm may

Greco Traficante &    dwards

Timothy C. Earl, Esquire
January 7, 2005
Page 15

assume the defense of those persons and entities whom Allied has identified as its alleged insureds. We anticipate that you will cooperate with Mr. Lucas, so as to facilitate a smooth transition of the defense effort from you and your firm to appointed counsel.

Should your clients whom are Allied's alleged insureds have any objections to the herein enumerated defense under a reservation of rights, he, it, or they may contact the California Insurance Commissioner concerning this matter. The Commissioner may be reached telephonically and geographically as follows:

> California Department of Insurance
> Claims Service Bureau
> 300 Spring Street, 11th Floor
> Los Angeles, CA 90013
> (800) 937-HELP or (213) 897-5961

Yours very truly,

Clyde C. Greco, Jr.
of
GRECO TRAFICANTE & EDWARDS

CCG:bd
cc: David Easton, Senior Litigation Specialist (Via Fax)

AMCO01664

# EXHIBIT L

# PREMIER BUSINESSOWNERS POLICY

## PREMIER HABITATIONAL
## LIABILITY DECLARATIONS

Policy Number: ACP  BPH  7801001164

Policy Period:
From 12-01-01  To 12-01-02

---

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

---

## COVERAGES

| | | LIMITS OF INSURANCE |
|---|---|---|
| Liability and Medical Payments | Per Occurrence | |
| Medical Payments Coverage Sub Limit | Per Person | $2,000,000 |
| Tenants Property Damage Legal Liability Sub Limit | Per Covered Loss | $5,000 |
| Personal and Advertising Injury | Per Person Or Organization | $300,000 |
| Products - Completed Operations Aggregate | All Occurrences | $2,000,000 |
| General Aggregate | All Occurrences | $4,000,000 |
| (Other than Products - Completed Operations) | | $4,000,000 |

## AUTOMATIC ADDITIONAL INSUREDS STATUS

The following persons or organizations are automatically insureds when you and they have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy.

| | |
|---|---|
| Co-Owners of Insured Premises | Included in Liability & Medical Payments Limit |
| Controlling Interest | Included in Liability & Medical Payments Limit |
| Grantor of Franchise or License | Included in Liability & Medical Payments Limit |
| Lessors of Leased Equipment | Included in Liability & Medical Payments Limit |
| Managers or Lessors of Leased Premises | Included in Liability & Medical Payments Limit |
| Mortgagee, Assignee or Receiver | Included in Liability & Medical Payments Limit |
| Owners or Other Interest from Whom Land has been Leased | Included in Liability & Medical Payments Limit |
| State or Political Subdivisions - Permits Relating to Premises | Included in Liability & Medical Payments Limit |

## PROPERTY DAMAGE DEDUCTIBLE

NONE

## OPTIONAL COVERAGES

NONE PROVIDED

PB 81 03 (01-01)

DIRECT BILL    7BMG         LJP        INSURED COPY                UID    DG    REPRINT    7B  01554

AMCO_06195

# PREMIER BUSINESSOWNERS POLICY

### PREMIER HABITATIONAL
### FORMS AND ENDORSEMENTS SUMMARY

Policy Number: ACP  BPH  7801001164

From 12-01-01

Policy Period:
To 12-01-02

| FORM NUMBER | | TITLE |
|---|---|---|
| PB0412 | 0101 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES |
| PB0002 | 0101 | PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM |
| PB0006 | 0101 | PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM |
| PB9004 | 0101 | CALIFORNIA AMENDATORY ENDORSEMENT |
| PB0009 | 0101 | PREMIER BUSINESSOWNERS COMMON POLICY CONDITIONS |
| LI0021 | 0101 | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PB0430 | 0101 | PROTECTIVE SAFEGUARDS |

J 81 03 (01-01)

INSURED COPY

78  01555

AMCO_06196

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of the ownership, maintenance or use of those premises that are shown in the Declarations, and your operations necessary or incidental to those premises.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1985

**PB 04 12 (01-01)**

ACP BPH 7801001164                    INSURED COPY

78    01B34

AMCO_06197

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

BUSINESSOWNERS
PB 00 06 (01-01)

# PREMIER BUSINESSOWNERS
# LIABILITY COVERAGE FORM

## TABLE OF CONTENTS

I.   COVERAGES..........................................................................................................
     COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY ........................... 2
       INSURING AGREEMENT ................................................................................. 2
       EXCLUSIONS .............................................................................................. 2
       TENANTS PROPERTY DAMAGE LEGAL LIABILITY ............................................. 3
     COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY .......................... 9
       INSURING AGREEMENT ................................................................................. 10
       EXCLUSIONS .............................................................................................. 10
     COVERAGE C - MEDICAL PAYMENTS .............................................................. 10
       INSURING AGREEMENT ................................................................................. 13
       EXCLUSIONS .............................................................................................. 13
     SUPPLEMENTARY PAYMENTS - COVERAGES A AND B .......................................... 13
II.  WHO IS AN INSURED ............................................................................................ 13
     Automatic Additional Insureds ......................................................................... 15
       Co-Owners of Insured Premises ...................................................................... 16
       Controlling Interest ...................................................................................... 16
       Grantor of Franchise or License ..................................................................... 16
       Lessors of Leased Equipment ........................................................................ 16
       Managers or Lessors of Leased Premises ......................................................... 16
       Mortgagee, Assignee or Receiver ................................................................... 17
       Owners or Other Interest from Whom Land has been Leased ............................... 17
       State or Political Subdivisions - Permits Relating to Premises ............................. 17
III. LIMITS OF INSURANCE AND DEDUCTIBLE ................................................................ 17
     General Aggregate Limit of Insurance (Other than Products-Completed Operations) ..... 18
     Products-Completed Operations Aggregate Limit of Insurance ................................. 18
     Personal and Advertising Injury Limit of Insurance ............................................... 18
     Each Occurrence Limit of Insurance ................................................................... 18
     Tenants Property Damage Legal Liability Limit of Insurance ................................... 18
     Medical Payments Limit of Insurance ................................................................. 18
     Property Damage Deductible ............................................................................ 18
IV.  LIABILITY CONDITIONS ....................................................................................... 18
     Bankruptcy ................................................................................................... 19
     Duties in the Event of Occurrence, Offense, Claim or Suit ...................................... 19
     Financial Responsibility Laws ........................................................................... 19
     Legal Action Against Us .................................................................................. 20
     Separation of Insureds .................................................................................... 20
V.   DEFINITIONS ..................................................................................................... 20
                                                                                                  21

ACP BPH 7801001164

INSURED COPY

AMCO_06198

PB 00 06 (01-01)

# PREMIER BUSINESSOWNERS
# LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under Section II. WHO IS AN INSURED. Other words and phrases that appear in quotation marks have special meaning. Please refer to Section V. DEFINITIONS.

## I. COVERAGES

### A. COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **INSURING AGREEMENT**

   a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

      HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

      We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      1) The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

      2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      2) The "bodily injury" or "property damage" occurs during the policy period; and

      3) Prior to the policy period, no insured listed under Paragraph 1. of Section II. WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II. WHO IS AN INSURED or any "employee" authorized

PB 00 06 (01-01)

ACP BPH 7801001164

INSURED COPY

AMCO_06199

by you to give or receive notice of an "occurrence" or claim:

1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2.  EXCLUSIONS

This insurance, including any duty we have to defend "suits", does not apply to:

a.  **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by the insured.

This exclusion applies even if the resulting "bodily injury" or "property damage":

1)  Is of a different kind, quality or degree than initially expected or intended; or

2)  Is sustained by a different person, entity, real property, or personal property than that initially expected or intended.

HOWEVER, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1)  That the insured would have in the absence of the contract or agreement; or

2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c.  **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1)  Causing or contributing to the intoxication of any person;

2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

1)  Manufacture, sell or distribute alcoholic beverages;

2)  Serve or furnish alcoholic beverages for a charge whether or not such activity:

a)  Requires a license; or

ACP BPH 7601001164                                    INSURED COPY

AMCO_06200

b) Is for the purpose of financial gain or livelihood; or

3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

d. Laws

Any liability or legal obligation of any insured with respect to "bodily injury" or "property damage" arising out of any of the following:

1) Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including but not limited to those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, religion or religious belief, age, economic status, income, medical condition, pregnancy, parenthood or mental or physical disability;

2) Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

3) The Migrant and Seasonal Agricultural Worker Protection Act;

4) Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

5) The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974; or

6) Any other similar statutes, ordinances, orders, directives or regulations.

e. Employer's Liability

"Bodily injury" to:

1) An "employee" of the insured arising out of and in the course of:

a) Employment by the insured; or

b) Performing duties related to the conduct of the insured's business; or

2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1) above.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. Pollution

1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

HOWEVER, this subparagraph does not apply to:

i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is

ACP BPH 7B01001164                    INSURED COPY

AMCO_06201

PB 00 06 (01-01)

not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

HOWEVER, this subparagraph does not apply to:

i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional dis-

charge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

2) Any loss, cost or expense arising out of any:

a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

b) Claim or "suit" by or on behalf of a governmental authority for damages because of test-

ing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

HOWEVER, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g.  **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

HOWEVER, this exclusion does not apply to:

1)  A watercraft while ashore on premises you own or rent;

2)  A watercraft you do not own that is:

    a)  Less than 26 feet long; and

    b)  Not being used to carry persons or property for a charge;

3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

4)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

5)  "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.2) or f.3) of the definition of "mobile equipment".

h.  **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

1)  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

2)  The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i.  **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.  **Damage To Property**

"Property damage" to:

1)  Property you own, rent, or occupy;

2)  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3)  Property loaned to you;

4)  Personal property in the care, custody or control of the insured;

5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Other than damage by the Covered Causes of Loss provided under Tenants Property Damage Legal Liability, paragraph 1), 3) and 4) of this exclusion do not apply to "property damage" to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A

ACP BPH 7801001164                    INSURED COPY

AMCO_06203

separate limit of insurance applies to Damage To Premises Rented To You as described in Section III. LIMITS OF INSURANCE.

Paragraph 2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs 3), 4), 5) and 6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.  **Damage To Your Product**

"Property damage" to "your product", arising out of it or any part of it.

l.  **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

HOWEVER, this exclusion does not apply if the damaged work, or the work out of which the damage arises, was performed on your behalf by a subcontractor.

m.  **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1)  "Your product";

2)  "Your work"; or

3)  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.  **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p.  **Bodily Injury To Any Insured** "Bodily injury" to:

1)  Any insured; or

2)  Any insured whenever the ultimate benefits of any indemnification will accrue directly or indirectly to any insured or the heirs of any insured.

q.  **Damage To Named Insured's Property**

Any claim or "suit" for "property damage" by you or on your behalf against any other person or organization that is also a Named Insured under this policy.

r.  **Abuse or Molestation**

"Bodily injury" or "property damage" arising out of:

1)  The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2)  The negligent:

a)  Employment;

b)  Investigation;

c)  Supervision;

ACP BPH 7801001164                                    INSURED COPY

AMCO_06204

d) Reporting to the proper authorities, or failure to so report; or

e) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1) above.

s. **Asbestos, Electromagnetic Emissions, Lead or Radon**

"Bodily injury" or "property damage" arising out of:

1) Asbestos including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

2) Electromagnetic emissions or radiation including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

3) Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

4) Radon or any other radioactive emissions, manmade or natural, including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other

radioactive emissions or any other duty involving radon or other radioactive emissions.

t. **Employment Practices**

"Bodily injury" to:

1) A person arising out of any:

a) Refusal to employ that person;

b) Termination of that person's employment; or

c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs a), b), or c) above is directed.

This exclusion applies:

1) Whether the insured may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

u. **Fiduciary Responsibility**

"Bodily injury" or "property damage" arising out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity.

v. **Professional Services**

"Bodily injury" or "property damage" that arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to, any:

AMCO_06205

1) Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

3) Supervisory, inspection, engineering, or architectural service, advice or instruction;

4) Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

5) Any psychological therapy or any other counseling or mental health service, treatment, advice or instruction;

6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including but not limited to cosmetology, tonsorial, tattooing, tanning or massage;

7) Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

8) Ear or other body piercing service, treatment, advice or instruction; or

9) Service, treatment, advice or instruction in the practice of pharmacy.

w. **Testing, Evaluating or Consulting**

"Bodily injury" or "property damage" arising out of:

1) An error, omission, defect or deficiency:

    a) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

    b) In experimental data or the insured's interpretation of that data.

2) The reporting of or reliance upon any such test, evaluation, consultation or advice.

3. **TENANTS PROPERTY DAMAGE LEGAL LIABILITY**

**Certain Exclusions Not Applicable**

Exclusions c. through n., p., q., r., t., u., v. and w. do not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, if such "property damage" arises out of a Covered Cause Of Loss provided under the BUSINESSOWNERS PROPERTY COVERAGE FORM. A separate limit of insurance, called Tenants Property Damage Legal Liability Limit, applies to this coverage as described in Section III. LIMITS OF INSURANCE.

ACP BPH 7801001164

INSURED COPY

AMCO_06206

B.  **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1.  **INSURING AGREEMENT**

    a.  We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

    HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

    We may, at our sole discretion, investigate any offense and settle any claim or "suit" that may result.  But:

    1)  The amount we will pay for damages is limited as described in Section III. LIMITS OF INSURANCE; and

    2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.  **EXCLUSIONS**

    This insurance, including any duty we have to defend "suits", does not apply to:

    a.  "Personal and advertising injury":

    1)  Caused by or at the direction of the insured with the knowledge that the act would violate the

rights of another and would inflict "personal and advertising injury";

2)  Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

3)  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

4)  Arising out of a criminal act committed by or at the direction of any insured;

5)  For which the insured has assumed liability in a contract or agreement.

    HOWEVER, this exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

6)  Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

7)  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

8)  Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

9)  Committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

    HOWEVER, this exclusion does not apply to Paragraphs a., b. and c. of the definition of "personal and advertising injury" under Section V. DEFINITIONS;

10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

11) Any liability or legal obligation of any insured arising out of any of the following:

a) Any federal, state, county, municipal or local law, ordinance, order, directive or regulation barring discrimination, including but not limited to those based on race, color, national origin, ancestry, citizenship, gender, sexual orientation, marital status, parenthood, religion or religious belief, age, economic status, income, medical condition, pregnancy, or mental or physical disability;

b) Any workers' compensation, unemployment compensation, disability benefits law, or any other statutory benefits law;

c) The Migrant and Seasonal Agricultural Worker Protection Act;

d) Any state, federal or governmental antitrust statute or regulation, including but not limited to the Racketeer Influenced and Corrupt Organizations Act (RICO), the Securities Act of 1933, the Securities Exchange Act of 1934, or any state Blue Sky law;

e) The Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974; or

f) Any other similar statutes, ordinances, orders, directives or regulations;

12) Arising out of:

a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

b) The negligent:

   i) Employment;

   ii) Investigation;

   iii) Supervision;

   iv) Reporting to the proper authorities, or failure to so report; or

   v) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph a) above;

13) To:

a) A person arising out of any:

   i) Refusal to employ that person;

   ii) Termination of that person's employment; or

   iii) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs i), ii), or iii) above is directed.

This exclusion applies:

a) Whether the insured may be liable as an employer or in any other capacity; and

b) To any obligation to share damages with or repay someone else who must pay damages because of the injury;

14) Arising out of:

a) Asbestos including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of asbestos or any other duty involving asbestos;

b) Electromagnetic emissions or radiation including but not

AMCO_06208

limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of electromagnetic emissions or radiation or any other duty involving electromagnetic emissions or radiation;

c) Lead including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of lead or any other duty involving lead; or

d) Radon or any other radioactive emissions, manmade or natural, including but not limited to any injury or damage related to, arising or alleged to have arisen out of any use, exposure, existence, detection, removal, elimination, avoidance, act, error, omission, failure to disclose or warn of the presence of radon or any other radioactive emissions or any other duty involving radon or other radioactive emissions;

15) That arises out of the ownership, maintenance or use, including all related operations, of property in relation to which you or any insured is acting in any fiduciary or representative capacity;

16) That arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to any:

a) Legal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction;

b) Preparing, approving, or failing to prepare or approve

maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

c) Supervisory, inspection, engineering, or architectural service, advice or instruction;

d) Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;

e) Any psychological therapy or any other counseling or mental health service, treatment, advice or instruction;

f) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming, including but not limited to cosmetology, tonsorial, tattooing, tanning or massage.

g) Optometry or optical or hearing aid service, treatment, advice or instruction, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

h) Ear or other body piercing service, treatment, advice or instruction; or

i) Service, treatment, advice or instruction in the practice of pharmacy; or

17) Arising out of:

a) An error, omission, defect or deficiency:

i) In any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

ii) In experimental data or the insured's interpretation of that data.

ACP BPH 7801001164

INSURED COPY

78    01725

AMCO_06209

PB 00 06 (01-01)

b) The reporting of or reliance upon any such test, evaluation, consultation or advice.

b. Any loss, cost or expense arising out of any:

1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any responding to, or assessing the effects of, "pollutants".

## C. COVERAGE C - MEDICAL PAYMENTS

### 1. INSURING AGREEMENT

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

1) On premises you own or rent;

2) On ways next to premises you own or rent; or

3) Because of your operations;

provided that:

1) The accident takes place in the "coverage territory" and during the policy period;

2) The expenses are incurred and reported to us within one year of the date of the accident; and

3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

1) First aid administered at the time of an accident;

2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. EXCLUSIONS

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under COVERAGE A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war; insurrection, rebellion or revolution.

## D. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

PB 00 06 (01-01)

78    01726

AMCO_06210

PB 00 06 (01-01)

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e.  All costs taxed against the insured in the "suit".

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

1)  Agrees in writing to:

a)  Cooperate with us in the investigation, settlement or defense of the "suit";

b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

c)  Notify any other insurer whose coverage is available to the indemnitee; and

d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

2)  Provides us with written authorization to:

a)  Obtain records and other information related to the "suit"; and

b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.2) of Section I. COVERAGE, A. COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.  The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

AMCO_06211

II.  **WHO IS AN INSURED**

1.  If you are:

    a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d.  A trust, you are an insured. Your trustee or co-trustees are also insureds, but only with respect to their duties as a trustee in connection with your property, operations and activities.

    e.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

    a.  Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

    HOWEVER, none of these "employees" is an insured for:

    1)  "Bodily injury" or "personal and advertising injury":

        a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

        b)  To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph 1)a) above;

        c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs 1)a) or b) above; or

        d)  Arising out of his or her providing or failing to provide professional health care services.

    2)  "Property damage" to property:

        a)  Owned, occupied or used by; or

        b)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    b.  Any person (other than your "employee"), or any organization while acting as your real estate manager.

    c.  Any person or organization having proper temporary custody of your property if you die, but only:

    1)  With respect to liability arising out of the maintenance or use of that property; and

    2)  Until your legal representative has been appointed.

    d.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3.  With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the

AMCO_06212

conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

HOWEVER, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

HOWEVER:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. COVERAGE A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. COVERAGE B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

5. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

6. **Automatic Additional Insureds**

Any of the following persons or organizations are automatically insureds when you and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

a. **Co-Owners of Insured Premises**

Any person or organization with whom you co-own a premises insured under this policy is an additional insured, but only with respect to their liability as the co-owner of such premises.

HOWEVER, their status as additional insured under this policy ends when you cease to co-own such premises with that person or organization.

b. **Controlling Interest**

Any person or organization that has a controlling interest in you is an additional insured, but only with respect to liability arising out of:

1) Their financial control of you; or

2) Their ownership, maintenance or control of premises you lease or occupy;

subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when they cease to have such controlling interest in you.

c. **Grantor of Franchise or License**

Any person or organization that has granted you a franchise or license by written contract or agreement is an additional insured, but only with respect to their liability as the grantor of a franchise or license to you.

HOWEVER, their status as additional insured under this policy ends when their contract or agreement with you granting the franchise or license ends.

d. **Lessors of Leased Equipment**

Any person or organization from whom you lease equipment by written contract or agreement is an additional insured, but only with respect to their liability arising out of the maintenance,

ACP BPH 7801001164                    INSURED COPY

AMCO_06213

operation or use by you of the equipment leased to you by that person or organization, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to "bodily injury" or "property damage" arising out of, in whole or in part, or results from, in whole of in part, the active negligence of such person or organization.

HOWEVER, their status as additional insured under this policy ends when their contract or agreement with you for such leased equipment ends.

e. **Managers or Lessors of Leased Premises**

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to be a tenant of such premises.

f. **Mortgagee, Assignee or Receiver**

Any person or organization who has status as mortgagee, assignee or receiver of your property is an additional insured, but only with respect to their liability as mortgagee, assignee or receiver arising out of your ownership, maintenance, or use of such premises, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when their status as mortgagee, assignee or receiver ends.

g. **Owners or Other Interest from Whom Land has been Leased**

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your maintenance or use of that part of the land leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to lease that land.

h. **State or Political Subdivisions - Permits Relating to Premises**

Any state or political subdivision which has issued a permit in connection with premises insured by this policy which you own, rent, or control is an additional insured, but only with respect to the following hazards:

1) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decoration and similar exposures;

2) The construction, erection, or removal of elevators; or

3) The ownership, maintenance, or use of any elevators covered by this insurance.

HOWEVER, such state or political subdivision's status as additional insured under this policy ends when the permit ends.

ACP BPH 7801001164                    INSURED COPY

AMCO_06214

PB 00 06 (01-01)

III.  **LIMITS OF INSURANCE AND DEDUCTIBLE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. **General Aggregate Limit of Insurance (Other than Products-Completed Operations)**

   The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under COVERAGE C;

   b. Damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under COVERAGE B.

   The General Aggregate Limit applies separately to each of your described premises. For the purposes of this provision, premises means involving the same or connecting lots, or premises whose connection is interrupted only by a public street, roadway or waterway, or railroad right-of-way.

3. **Products-Completed Operations Aggregate Limit of Insurance**

   The Products-Completed Operations Aggregate Limit is the most we will pay under COVERAGE A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. **Personal and Advertising Injury Limit of Insurance**

   Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under COVERAGE A for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. **Each Occurrence Limit of Insurance**

   Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under COVERAGE A; and

   b. Medical expenses under COVERAGE C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. **Tenants Property Damage Legal Liability Limit of Insurance**

   Subject to 5. above, the Tenants Property Damage Legal Liability Limit is the most we will pay under COVERAGE A for damages because of all "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one "occurrence".

7. **Medical Payments Limit of Insurance**

   Subject to 5. above, the Medical Payments Limit is the most we will pay under COVERAGE C for all medical expenses because of "bodily injury" sustained by any one person.

8. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

9. **Property Damage Deductible**

   If a deductible amount is shown in the Liability Declarations, the following provisions apply:

   a. If a deductible amount for Property Damage is shown in the Liability Declarations, any obligation by us under this policy to pay sums on your behalf because of "property damage", applies only to sums in excess of the deductible amount shown in the Declarations for any one "occurrence".

**PB 00 06 (01-01)**

ACP BPH 7801001164                    INSURED COPY

Page 18 of 24

7B    01731

AMCO_06215

b. If a deductible amount for Car Wash Property Damage is shown in the Liability Declarations, any obligation by us under this policy to pay sums on your behalf because of "property damage", applies only to sums in excess of the deductible amount shown in the Declarations for any one "claim".

c. If we pay all or any part of a deductible to settle any claim or "suit", upon notification of such payment by us, you shall promptly reimburse us for the amount of the deductible that has been paid by us.

IV. **LIABILITY CONDITIONS**

The following conditions apply in addition to the COMMON POLICY CONDITIONS.

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You and any insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense that may result in a claim.  To the extent possible, notice should include:

      1) How, when and where the "occurrence" or offense took place;

      2) The names and addresses of any injured persons and witnesses; and

      3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      1) Immediately record the specifics of the claim or "suit" and the date received; and

      2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      2) Authorize us to obtain records and other information;

      3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

      4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to

ACP BPN 7B01001164

INSURED COPY

AMCO_06216

which this insurance may also apply; and

5) Agree to be examined under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim or "suit". At our option and expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. In the event of an examination, an insured's answers must be signed.

d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Financial Responsibility Laws**

a. When this policy is certified as proof of financial responsibility for the future under the provision of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by law.

b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

4. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

5. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

AMCO_06217

## V. DEFINITIONS

The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form. The following words or phrases, which appear in quotation marks throughout this Coverage Form and any of its endorsements, are defined as follows:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      1) The injury or damage arises out of:

         a) Goods or products made or sold by you in the territory described in a. above; or

         b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises.

      HOWEVER, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury"

AMCO_06218

PB 00 06 (01-01)

or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in 2) above and supervisory, inspection, architectural or engineering activities.

10. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. **"Loading or unloading"** means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, forklifts, farm machinery, farm implements and other vehicles designed for use or used principally off public roads. This includes motorized golf carts, snowmobiles, and other land vehicles designed for recreational use;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles, other than snowmobiles, that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        1) Power cranes, shovels, loaders, diggers or drills; or

        2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in paragraphs a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in paragraphs a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

HOWEVER, self-propelled vehicles with the following types of permanently attached equipment are not "mobile

B 00 06 (01-01)

Page 22 of 24

AMCO_06219

equipment" but will be considered "autos":

1) Equipment designed primarily for:

    a) Snow removal;

    b) Road maintenance, but not construction or resurfacing; or

    c) Street cleaning;

2) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; and

3) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste. Such irritants or contaminants are "pollutants" whether or not they have any function in your business, operations, premises, sites or locations.

Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed and livestock, poultry or other animal excrement.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

1) Products that are still in your physical possession; or

2) Work that has not yet been completed or abandoned.

    HOWEVER, "your work" will be deemed completed at the earliest of the following times:

    a) When all of the work called for in your contract has been completed.

    b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    HOWEVER, the "bodily injury" or "property damage" must occur away from premises you own or rent unless your business includes the selling, handling or distribution of "your prod-

AMCO_06220

uct" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. **"Property damage"** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. **"Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. **"Your product"** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

1) You;

2) Others trading under your name; or

3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. **"Your work"** means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1997

AMCO_06221

# EXHIBIT M



DOI / 300

12/550

1  Brian Dawson, Esq. (SBN 183251)
   Brendan Ozanne, Esq. (SBN 185806)
2  **Dawson & Ozanne**
   614 Fifth Avenue, Suite B
3  San Diego, CA 92101
   Telephone: (619) 237-5161
4  Facsimile: (619) 237-5151

5  David A. Veljovich, Esq. (SBN 190856)
   **Veljovich Law Group**
6  701 Palomar Airport Road, Suite 300
   Carlsbad, CA 92009
7  Telephone: (760) 931-5680
   Facsimile: (760) 454-2431
8

9  Attorneys for Plaintiffs THE OAKS MANAGEMENT CORP. and INDIVIDUAL
   HOMEOWNERS

10

11                 SUPERIOR COURT OF CALIFORNIA

12            COUNTY OF SAN DIEGO -- CENTRAL BRANCH

13  T H E   O A K S   M A N A G E M E N T          CASE NO: GIC 827085
    CORPORATION, a California Corporation;
14  MARK NORBURN; JORDAN NORBURN;
    BARBARA FIDDLER; RICHARD J.                    **COMPLAINT FOR DAMAGES**
15  FIDDLER; RONNIE BOOKER; LEESA                   **BASED UPON:**
    BOOKER; BRADEN BOOKER, a minor, by
16  and through his guardian ad litem, RONNIE       1.  NEGLIGENCE
    BOOKER; KAREN DOBBS; ASHLEY                     2.  NEGLIGENCE PER
17  DOBBS, a minor, by and through her guardian         SE–COUNTY CODE
    ad litem, KAREN DOBBS; JACQUELINE                   SECTION 81.110
18  NAVARETTE; JOHN NAVARRETTE;                     3.  FRAUD
    JADZHIA NAVARETTE, a minor, by and             4.  CIVIL CONSPIRACY
19  through her guardian ad litem, JOHN            5.  BREACH OF CONTRACT
    NAVARETTE; GARY ROBERTSON;                      6.  BREACH OF CCRS
20  DANIEL SOUTHER; CINDY SOUTHER;                  7.  FRAUDULENT
    CHRISTOPHER K. TOM; KEVIN CULLEY;                   CONVEYANCE
21  LORALIE CULLEY; ALMA SNELL; BRIAN              8.  BREACH OF FIDUCIARY
    LERNER; KRYSTAL LERNER; CECILIA                     DUTY
22  SIRIO; BARRY VARNEY; PATRICIA                   9.  ALTER EGO
    VARNEY; JAMES IRWIN; BEVERLY                    10. BREACH OF IMPLIED
23  IRWIN; BRIAN RADUENZ; CECILIA                       WARRANTY
    RADUENZ; SUSIE SHERRY; JEANNE M.               11. NEGLIGENCE PER
24  BECKER; JOANNE HAMEL; FARROKH                       SE–CIVIL CODE SECTION
    MODABBER; SAFA KILLIDAR; MONIKA                     1134
25  SZESZEL; CYNTHIA SUE CARPENTER;
    LAURIE A. BOLTON; GIOVANNI A.
26  FIORENTINI; ROBERT CRAIG; JANELLE
    CRAIG; ANGELISA CRAIG, by and through
27  her guardian ad litem, ROBERT CRAIG;
    LAURA ROUNSAVILLE; LARISA
28  ROUNSAVILLE, a minor, by and through her
    guardian ad litem, LAURA ROUNSAVILLE;
    CHRIS RUSHING; AMY RUSHING;

                          1
                       COMPLAINT

LFHS01646

III.

## FIRST CAUSE OF ACTION

### (NEGLIGENCE AGAINST ALL DEFENDANTS BY ALL PLAINTIFFS)

30.     Plaintiffs incorporate all paragraphs of this Complaint as though fully set forth herein word for word.

31.     Defendants, and each of them, as developers, designers, contractors, marketers and sellers of the subject property had a duty to act reasonably in the conversion of the subject property into condominium units. Furthermore, these defendants voluntarily assumed the duty to fully refurbish the units and make them "as new."

32.     Defendants, and each of them, breached these duties by failing to use reasonable care in the conversion, construction, design, marketing, planning process as follows:

    a.   Failing to prevent and remedy mold and water intrusion problems throughout the subject property;

    b.   Failing to prevent and remedy faulty grading and landscaping throughout the subject property;

    c.   Failing to bring the subject property up to the standards of the Uniform Building Code, Electrical Code, among others;

    d.   Failing to properly inspect the condition of the units;

    e.   Failing to prepare proper plans and specifications;

    f.   Failing to properly set up the ASSOCIATION to meet the duties imposed by said defendants as set forth in the CCRs;

    g.   Were otherwise negligent in their construction, sale, conversion, and marketing of the units and subject property.

////
////
////
////
////

LFHS01655

# EXHIBIT N

Scott A. Johnson
Eric M. Leenerts
Jon B. Miller

The Marston Building
427 C Street, Suite 410
San Diego, California 92101

Telephone
619·232·0086
Facsimile
619·232·0089

May 21, 2007



Neal H. Rockwood, Esq.
C. Brant Noziska, Esq.
ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, CA   92106

RE:   Hidden Glen Maintenance Corp. v. 1800 South Maple Street, LLC, et al.
San Diego Superior Court Case No. GIC852647
Policy No. ACP BPH 7801069841
Claim No. 84L52141

Dear Messrs. Rockwood and Noziska:

I have received and read your letter of May 7, 2007, regarding the request for coverage of the above-referenced litigation. Please excuse my delay in responding; I had been busy with other matters, and wanted to make sure that I could give your letter careful consideration.

A.   The Request For Information

Initially, it should be noted that my letter of March 3, 2006, did not state that AMCO had unequivocally denied its insureds' request for coverage. Rather, the letter requested specific information regarding the relationships between AMCO's named insureds and the defendants in the Hidden Glen action, and said that the request for coverage would be considered denied if no responsive information was provided.

The defendants named in the Hidden Glen complaint were Ralph and Keith Gianella (both individually and as co-trustees of a revocable trust), William Ayyad, William Ayyad, Inc., 1800 South Maple Street, LLC, Premier Communities, LLC, Dan Tomasi and Mark Holmes Construction. The named insureds under AMCO policy no. ACP BPH 7801069841 are "ACDW Properties/Gianella Properties" and "4-Way Farms." Accordingly, none of the named insureds were named defendants in the litigation.[1] "South Maple Street LLC" is named as an additional insured on two endorsements, and may be the same entity as defendant "1800 South Maple Street, LLC," but the endorsements only cover liability as a "mortgagee, assignee or receiver," or as a manager or lessor of the property, and the complaint did not appear to make any allegations against any defendants acting in such a capacity.

---

[1] Your letter of May 7, 2007, does nothing to clear up the relationship between AMCO's insureds and the named defendants. In fact, you state that you represent "Allied/Amco's insureds," and you refer to your "clients" having to pay a settlement, but you nowhere identify who those "insureds" or "clients" are.

Obviously, it could be assumed that there were connections between some of the named insureds and the named defendants -- e.g., Giannella Properties presumably involved Ralph and/or Keith Giannella, and Ralph Giannella and William Ayyad are involved with ACDW Properties. However, the mere existence of relationships as shareholders, owners, partners or employees does not create insurance coverage. Consequently, AMCO wanted information regarding the relationships, or some explanation of why it was believed that entities and/or individuals who were not named insureds were nonetheless entitled to coverage under the AMCO policy, so that careful consideration could be given to possible alternative grounds for coverage. Since both AMCO and I had independently concluded that the complaint did not allege any covered claims against the named or identified insureds, the refusal to respond to my request for information left us with no reason to believe that any of the defendants were entitled to insurance coverage.[2]

B.     The Insureds Have Not Been Accused Of Fraud

Neither AMCO's letter of November 10, 2005, nor my letter of March 3, 2006, accused your clients of "fraud." The letter of November 10 (which, contrary to your characterization, did not state that coverage had been denied), made no mention of the subject. My letter discussed the fact that the complaint's allegations, if true, indicated that material information had not been disclosed on the application for insurance, and that if subsequently "warranted by the facts," AMCO might seek rescission of the policy. This was only a reservation of rights; no claim was made that your clients engaged in fraud, or that they were directly responsible for any misrepresentation or nondisclosure on the application.

C.     AMCO Is Aware Of No Other Policies Covering Your Clients

The Hidden Glen litigation was originally tendered to AMCO under policy no. 7801069841, and the coverage analysis was performed under that policy. However, AMCO has checked to determine whether the defendants in that litigation might be insured, or whether the South Maple Street property is a "described premises," under any other policy. No such policy has been located.

D.     No Potential For Coverage Has Been Shown

It is significant that your letter nowhere attempts to address any of the specific reasons, discussed in detail in my letter of March 3, 2006, for my conclusion that coverage did not exist based on the facts known to AMCO. I still cannot see where the complaint in Hidden Glen alleges any potentially covered claim for "bodily injury" or "personal and advertising injury." And, it still seems clear that coverage of any claim for "property damage" would be completely precluded by the exclusions for "[p]roperty you own, rent, or occupy" and "premises you sell," and by the other exclusions discussed in my previous letter.

---

[2] I did receive a letter dated March 9, 2006, from Robyn Spagnuolo, Assistant to General Counsel of United Development Group, stating that "we are reviewing our files for additional information per your request." However, no further communications were received.

Consequently, it remains my opinion, and AMCO concurs, that there was no duty under the insurance policy to cover the claims in the <u>Hidden Glen</u> litigation. However, I have no desire to render an opinion which erroneously denies coverage to an insured, and AMCO is not seeking to avoid any legitimate contractual obligations. If you are aware of another policy issued by AMCO or its affiliated companies which may cover some or all of your clients, or if you believe that there are mistaken assumptions of fact or conclusions of law in my coverage analysis, <u>please</u> let me know as soon as possible. Also, and despite the long period of time which its request has been ignored, AMCO is still willing to consider any information you could provide regarding the relationships between the named insureds and the named defendants which might indicate a potential for insured status.

Very truly yours,

MILLER JOHNSON LAW

Scott A. Johnson, Esq.

SAJ/gp

# EXHIBIT O

**ROCKWOOD & NOZISKA, L.L.P.**
NEAL H. ROCKWOOD, ESQ. SB# 106197
C. BRANT NOZISKA, ESQ. SB#106117
5060 North Harbor Drive, Suite 255
San Diego, California 92106
Phone: (619) 224-7778 Fax (619) 224-7779

Attorneys for Plaintiffs

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

ORIGINAL

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| AVOCADO CREST CONDOMINIUMS, LLC, a California Limited Liability Company; RALPH J. GIANNELLA, an individual; CONSTRUCTION MEDIATION ONLY INC., a California Corporation; WILLIAM G. AYYAD, an individual; and WILLIAM G. AYYAD, INC., a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIED MUTUAL INSURANCE COMPANY, an Iowa Corporation; SEQUOIA INSURANCE COMPANY, a California Corporation; AMCO INSURANCE COMPANY, an Iowa Corporation; MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND BROKERS, a California Corporation (DOE 1); KETTERING.ROSE INSURANCE AGENTS & BROKERS, dba KETTERING ROSE INSURANCE AGENTS AND BROKERS, a California Corporation (DOE 2); ROBYN KETTERING, an individual (DOE 3); and DOES 4 through 100, inclusive,<br><br>Defendants. | CASE NO. GIC 857918<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY**<br><br>**JURY REQUESTED**<br><br>**[UNLIMITED CIVIL]**<br><br>Judge:  RONALD S. PRAGER<br>Dept:   71 |

AVOCADO CREST CONDOMINIUMS, LLC, a California Limited Liability Company; RALPH J. GIANNELLA, an individual; CONSTRUCTION MEDIATION ONLY INC., a California Corporation; WILLIAM G. AYYAD, an individual; and WILLIAM G. AYYAD, INC., a California Corporation, ("Plaintiffs") hereby allege as follows:

**IDENTIFICATION OF PARTIES**

1.      Plaintiff, AVOCADO CREST CONDOMINIUMS, LLC, its members, officers, directors, employees, and partners, hereinafter "AVOCADO CREST," is and at all times herein mentioned, was a limited liability company operating and existing under the laws of the State of California.

2.      Plaintiff, CONSTRUCTION MEDIATION ONLY, INC., hereinafter "CMO INC.," is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California and a member of AVOCADO CREST.

3.      Plaintiff, RALPH J. GIANELLA, hereinafter "GIANNELLA," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California and was an officer of CMO INC.

4.      Plaintiff, WILLIAM G. AYYAD, hereinafter "AYYAD," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California and was an officer of WILLIAM G. AYYAD, INC.

5.      Plaintiff, WILLIAM G. AYYAD, INC., hereinafter "AYYAD INC.," is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California and a member of AVOCADO CREST.

6.      Plaintiffs allege on information and belief that at all times herein mentioned Defendant ALLIED MUTUAL INSURANCE COMPANY of Iowa was and is a corporation doing business within the State of California, County of San Diego. Plaintiffs further allege on information and belief that ALLIED MUTUAL INSURANCE COMPANY of Iowa, is, and at all times mentioned herein, was duly organized and existing under the laws of the State of Iowa.

7.      Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendant AMCO INSURANCE COMPANY, a wholly owned subsidiary of Defendant ALLIED MUTUAL INSURANCE COMPANY, was and is a corporation doing business within the State of California, County of San Diego. Plaintiffs further allege on information and belief that AMCO INSURANCE COMPANY is, and at all times mentioned herein, was duly organized and existing under the laws of the State of Iowa. Hereinafter ALLIED MUTUAL

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-2-

1  INSURANCE COMPANY and AMCO INSURANCE COMPANY will be collectively referred

2  to as "AMCO."

3       8.     Throughout the issuance of the AMCO/Allied Insurance Policies and the claims

4  adjustment period, Defendant ALLIED MUTUAL INSURANCE COMPANY was the

5  insurance carrier under the AMCO/Allied Policies.  Defendant ALLIED MUTUAL

6  INSURANCE COMPANY conducted the claims adjustment and made the decision to deny

7  coverage.  Defendant ALLIED MUTUAL INSURANCE COMPANY managed, controlled, and

8  ratified all conduct of Defendant AMCO INSURANCE COMPANY.

9       9.     Plaintiffs allege on information and belief that at all times herein mentioned

10  Defendant SEQUOIA INSURANCE COMPANY, hereinafter "SEQUOIA," was and is a

11  corporation doing business within the State of California, County of San Diego.  Plaintiffs

12  further allege on information and belief that SEQUOIA is, and at all times mentioned herein,

13  was duly organized and existing under the laws of the State of California.

14       10.    Plaintiffs hereby name MICHAEL EHRENFELD COMPANY-INSURANCE

15  AGENTS AND BROKERS as DOE 1.  Plaintiffs are informed and believe and based thereon

16  allege that at all times herein mentioned MICHAEL EHRENFELD COMPANY-INSURANCE

17  AGENTS AND BROKERS was a corporation organized and existing under the laws of the state

18  of California and operating as a business at 2655 Camino Del Rio North, San Diego, California.

19       11.    Plaintiffs hereby name KETTERING.ROSE INSURANCE AGENTS &

20  BROKERS, dba KETTERING ROSE INSURANCE AGENTS AND BROKERS as DOE 2.

21  Plaintiffs are informed and believe and based thereon allege that at all times herein mentioned

22  KETTERING ROSE INSURANCE AGENTS & BROKERS was a Corporation organized and

23  existing under the laws of the State of California.

24       12.    Plaintiffs hereby name ROBYN KETTERING as DOE 3, hereinafter referred to

25  as "KETTERING."  KETTERING has been the agent for Plaintiffs initially as an employee of

26  MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND BROKERS and

27  subsequently as a principal of KETTERING ROSE INSURANCE AGENTS & BROKERS.

28  During the time she was employed at MICHAEL EHRENFELD COMPANY-INSURANCE

ROCKWOOD & NUZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-3-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1  AGENTS AND BROKERS she committed acts of negligence and misrepresentation as more

2  fully set forth herein.  Plaintiffs allege that all of her actions were within the course and scope of

3  her employment at MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND

4  BROKERS and later at KETTERING ROSE INSURANCE AGENTS & BROKERS.

5       13.    Plaintiffs are informed and believe and based thereon allege that at all times

6  herein mentioned MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND

7  BROKERS is, and at all times herein mentioned was, an appointed agent of AMCO

8  INSURANCE COMPANY and as such all acts alleged herein were within the course and scope

9  of said agency and imputed to AMCO INSURANCE COMPANY.

10       14.    Plaintiffs are presently unaware of the true names and capacities of those

11  defendants sued herein as Does 4 through 100 inclusive.  Plaintiffs will amend this complaint to

12  state their true names and capacities when they are ascertained.  Plaintiffs are informed and

13  believe, and thereon allege, that each of the fictitiously-named defendants are responsible in

14  some manner for the occurrences alleged herein, and that Plaintiffs' damages were proximately

15  caused by such defendants.

16       15.    Plaintiffs are informed and believe, and thereon allege, that AMCO and

17  SEQUOIA (collectively "Insurer Defendants") and each of them, including the fictitious

18  defendants named as Does herein, were the agents and/or employees of each of the remaining

19  defendants and in doing the things herein mentioned were acting within the scope of such

20  agency and/or employment.

21       16.    Plaintiffs are informed and believe that venue is properly within the County of

22  San Diego and the Insurer Defendants and Broker Defendants are subject to personal

23  jurisdiction in this County at the time the action is commenced.  The insured property in

24  question is located at 868 East Alvarado Street, Fallbrook, California, commonly referred to as

25  "The Oaks Condominiums."  Such property consists of forty-eight residential condominiums

26  and related common areas.

27       17.    Plaintiffs request a jury in this matter.

28  ///

-4-

SECOND AMENDED COMPLAINT FOR: BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT
MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

## JURISDICTION & VENUE

18.     The causes of action in this complaint arise out of agreements entered into in the County of San Diego, and some or all of the Defendants have their principal place of business in the County of San Diego.  Accordingly, venue is proper in San Diego County Superior Court pursuant to Code of Civil Procedure §§ 393 and 395.5.

## GENERAL ALLEGATIONS

19.     Plaintiffs incorporate by reference Paragraphs 1 - 18 of this Complaint and repeat those Paragraphs as though fully set forth herein.

20.     Plaintiff AVOCADO CREST purchased The Oaks Condominiums in or about July or August 2001, which at that time were rental units referred to collectively as The Oaks Condominiums.  Plaintiffs are informed and believe, and thereon allege that The Oaks Condominiums, which were originally constructed in 1978 as an apartment complex, were converted to condominiums in or about 1982; however, the units continued to be rented as apartments.  After AVOCADO CREST purchased The Oaks Condominiums, AVOCADO CREST performed some renovations to some of the units.  Beginning in or about April 2002, Plaintiff AVOCADO CREST sold units at The Oaks Condominiums.  Escrows for all of the condominiums closed between April 10, 2002 and the end of October 2002.

### *Avocado Crest's Brokers and/or Agents*

21.     MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND BROKERS, KETTERING ROSE INSURANCE AGENTS & BROKERS and ROBYN KETTERING, (hereinafter referred to as the "Broker Defendants") have been Plaintiffs' insurance brokers for sometime.  Each year, Broker Defendants designed and administered a comprehensive "insurance program" for Plaintiffs' insurance needs.

22.     In 2000, Broker Defendants secured a Commercial General Liability ("CGL") package policy for Plaintiffs in effect from December 1, 2000 to December 1, 2001 (SEQUOIA issued Insurance Policy No. CMP 114137-1) hereinafter referred to as the "Sequoia Policy."

///

-5-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

23.     On or about August 14, 2001, by and through Broker Defendants, the Sequoia Policy was amended to include Plaintiff AVOCADO CREST as an insured and The Oaks Condominiums as an insured property. Attached as Exhibit "A" is a copy of the Sequoia Policy and its terms are incorporated herein by this reference. Under the terms of the Sequoia Policy, SEQUOIA undertook to and did insure Plaintiffs against, among other things, Commercial General Liability pursuant to Policy Form CG 0001 (11/88).

**_The Sequoia Insurance Policy_**

24.     Under the terms of the Sequoia Policy, SEQUOIA undertook to and did agree 1) to "pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies"; 2) that SEQUOIA would have "the right and duty to defend any "suit" seeking those damages"; and 3) that SEQUOIA may, at its discretion, "investigate any "occurrence" and settle any claim or "suit" that may result." (*See* Exhibit "A" at CG 00011188 at page 1 of 12.)

**_The First AMCO/Allied Insurance Policy_**

25.     Upon expiration of the Sequoia Policy, by and through Broker Defendants, Plaintiffs were issued by AMCO, Insurance Policy No. ACP 7801001164, hereinafter referred to as the "First AMCO/Allied Policy," for the policy period December 1, 2001 to December 1, 2002. The First AMCO/Allied Policy insured AVOCADO CREST among other insureds. Attached as Exhibit "B" is a copy of the First AMCO/Allied Policy and its terms are incorporated herein by this reference. Said policy was issued by and through Broker Defendants who were appointed agents of AMCO.

**_The Second AMCO/Allied Insurance Policy_**

26.     On or about April 4, 2002, by and through Broker Defendants, another policy was issued insuring AVOCADO CREST separately, AMCO Insurance Policy No. ACP 7801073037, hereinafter referred to as the "Second AMCO/Allied Policy," for the policy period April 4, 2002 to April 4, 2003. Attached as Exhibit "C" is a copy of the Second AMCO/Allied Policy and its terms are incorporated herein by this reference. Said policy was issued by and through Broker Defendants who were appointed agents of AMCO.

-6-

SECOND AMENDED COMPLAINT FOR: BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY

27.　　Under the terms of the First and Second AMCO/Allied Policies (collectively, the "AMCO/Allied Policies"), AMCO undertook to and did agree 1) to "pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies"; 2) that AMCO would have "the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy"; and 3) that AMCO may, at its sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

28.　　At all times mentioned herein Plaintiffs have performed all the terms and conditions of the SEQUOIA and AMCO/Allied Policies (collectively, the "Policies") to be performed on their part.

29.　　Under the Policies, AVOCADO CREST is an insured.  The remaining Plaintiffs are also insured by virtue of their positions as members, officers and/or employees of AVOCADO CREST and/or its members.

30.　　Tenants and Homeowners at The Oaks Condominiums reported occurrences and made claims regarding their units to Plaintiffs at various times, which were duly and timely tendered to the insurers under the Policies.

31.　　On or about September 16, 2003, a Notice of Commencement of Legal Proceedings pursuant to former Civil Code section 1375 ("Calderon Notice") was sent to AVOCADO CREST by attorneys representing The Oaks Management Corporation claiming property damage and bodily injury as a result of certain defects at The Oaks Condominiums.

32.　　Plaintiffs timely tendered the Calderon Notice to AMCO and SEQUOIA under the Policies.

33.　　On or about February 2, 2004, SEQUOIA, without full and proper investigation of the claim, denied coverage and refused to defend Plaintiffs with respect to the Calderon Notice and subsequent mediation.

34.　　Without the participation of Insurer Defendants, Plaintiffs were unable to settle the claims through the Calderon mediation.

///

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-7-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

35.    On or about March 16, 2004, The Oaks Management Corporation and individual homeowners commenced action against Plaintiffs herein in the San Diego Superior Court entitled *The Oaks Management Corporation v. Avocado Crest Condominiums, LLC,* case number GIC 827085, hereinafter referred to as the "Third Party Action." Plaintiffs in the Third Party Action sought damages based upon negligence, negligence per se, fraud, civil conspiracy to defraud, breach of contract, breach of the Conditions, Covenants and Restrictions, fraudulent conveyance, breach of fiduciary duty, alter ego, and breach of implied warranty arising out of the renovations and sale of units at The Oaks Condominiums.

36.    Plaintiffs timely tendered a copy of the summons and complaint in the Third Party Action to AMCO and SEQUOIA with the request that the Insurer Defendants, as required by the Policies, undertake the defense of this action.

37.    Notwithstanding Plaintiffs' request, on or about November 18, 2004, SEQUOIA, without full and proper investigation of the claim, for the second time denied all liability under its policy and refused to undertake the defense of the Third Party Action against Plaintiffs.

38.    Notwithstanding Plaintiffs' request, on or about April 16, 2004, AMCO, without full and proper investigation of the claim, denied all liability under the AMCO/Allied policies and refused to undertake the defense of the Third Party Action.

39.    On or about November 15, 2004, Plaintiffs made another demand of AMCO to undertake the defense of the Third Party Action as required by the Second AMCO/Allied Policy.

40.    On or about November 22, 2004, AMCO confirmed that it would not defend Plaintiffs in the Third Party Action.

41.    Plaintiffs persisted in advising AMCO and SEQUOIA that they had a duty to defend Plaintiffs to no avail. In the meantime, Plaintiffs were faced with a multi-million dollar lawsuit, which they had to defend. Plaintiffs retained counsel to defend themselves in the Third Party Action, and continued attempts to convince Insurer Defendants to defend.

42.    Finally, on or about January 7, 2005, AMCO conceded that it had a duty to defend Plaintiffs in the Third Party Action pursuant to the First AMCO/Allied Policy under a

SECOND AMENDED COMPLAINT FOR: BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY

1    reservation of rights.  AMCO maintained that it did not owe a duty to defend pursuant to the

2    Second AMCO/Allied Policy.

3        43.    On or about March 21, 2005, SEQUOIA withdrew its prior declination of

4    defense, and accepted Plaintiffs' tender of the Third Party Action pursuant to an express

5    reservation of rights.

6        44.    Until such time as AMCO and SEQUOIA agreed to defend Plaintiffs in the Third

7    Party Action, Plaintiffs were each required to retain separate and multiple law firms to advise

8    Plaintiffs of the separate defenses, claims, and interests relating to the Third Party Action.

9        45.    Plaintiffs were obligated to mount a vigorous defense against the multi-million

10   dollar Third Party Action.  As a proximate result of Insurer Defendants' refusal as herein

11   alleged, Plaintiffs were compelled to engage defense counsel for the Third Party Action and to

12   incur attorneys' fees, costs and expenses therefore in the sum of $1,235,212.08.

13       46.    On or about February 18, 2005, Plaintiffs served AMCO with a demand for

14   reimbursement for investigation and defense costs associated with the Third Party Action in the

15   amount of $1,235,212.08 as required pursuant to the Policies.  On or about April 19, 2005,

16   Plaintiffs served SEQUOIA with a demand for reimbursement for investigation and defense

17   costs associated with the Third Party Action in the amount of $1,235,212.08.  This amount

18   included attorney's fees, litigation costs, mediation expenses, expert/consultant fees and costs

19   incurred to investigate and mitigate alleged damages.  Excluded from that amount were costs

20   associated with counsel's efforts to secure insurance coverage for Plaintiffs.  All relevant

21   documentation for those costs and fees were forwarded to AMCO and SEQUOIA.

22       47.    Insurer Defendants delayed in making a decision whether to reimburse Plaintiffs.

23   After a number of months of review and audit conducted by said Defendants, Insurer

24   Defendants agreed to pay only a fraction of Plaintiffs' out-of-pocket costs.  Insurer Defendants

25   agreed to pay approximately two-hundred and eighty-five thousand dollars ($285,000).

26       48.    Payment of the two-hundred and eighty-five thousand dollars ($285,000) was

27   predicated upon a purported audit performed by and on behalf of Insurer Defendants; hereinafter

28   referred to as the "Purported Audit."  The Purported Audit was not conducted by a qualified

RUCKWOOD & NUZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-9-

SECOND AMENDED COMPLAINT FOR: BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT
MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY

1   independent firm.  Rather, it was prepared on behalf of Insurer Defendants specifically by a

2   vendor to the insurance industry, Church & Company.  Moreover, the Purported Audit by its

3   very terms recommended further investigation, which has not been performed to Plaintiffs'

4   knowledge.  As such, Insurer Defendants did not discharge their full duty of investigation and

5   claims adjustment, did not give equal consideration to the interests of their insured as to their

6   own interests, and did not resolve uncertainty of the reasonableness of the fees incurred in favor

7   of their insureds as required by California law.

8          49.     By waiting more than a year before engaging counsel to defend Plaintiffs, Insurer

9   Defendants have waived any and all rights to contest the amount of the attorneys' fees incurred

10  by Plaintiffs and are estopped from contesting the amount submitted by Plaintiffs.

11

12                              **FIRST CAUSE OF ACTION**

13      **(Breach of Contract As Against Insurer Defendants and DOES 4 - 75)**

14         50.     Plaintiffs incorporate by reference Paragraphs 1 - 49 of this Complaint and repeat

15  those Paragraphs as though fully set forth herein.

16         51.     Plaintiffs have performed each and every covenant and/or condition of the

17  insurance Policies to be performed by them, or have been excused from so performing as a

18  result of Defendants' breach of contract.

19         52.     Plaintiffs are informed and believe and thereon allege that Insurer Defendants,

20  and each of them, breached their obligations under the Policies in the following manner:

21             a.      By failing to conduct a full and complete investigation into the facts and

22      circumstances of the claims asserted against Plaintiffs in the Third Party Action;

23             b.      By failing and refusing to defend Plaintiffs, and each of them, from the

24      claims asserted in the Third Party Action;

25             c.      By failing and refusing to indemnify Plaintiffs, and each of them, from

26      the claims asserted in the Third Party Action;

27  ///

28  ///

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-10-

1       d.      By failing to promptly and fully reimburse Plaintiffs for defense costs,

2   fees and expenses incurred in defending against claims asserted in the Third Party

3   Action;

4       e.      By failing to conduct a fair, independent audit of the costs and fees

5   incurred by Plaintiffs in defending against claims asserted in the Third Party Action;

6       f.      By failing to adjust the claim giving equal consideration to the insureds'

7   interest as to their own; and

8       g.      By doing each of the acts or omissions as otherwise alleged above.

9       53.      Plaintiffs are informed and believe and thereon allege that Insurer Defendants,

10  and each of them, failed and refused to conduct an investigation into the facts and circumstances

11  of the claims asserted against Plaintiffs in the Third Party Action. As a result of the breaches of

12  contract by said Defendants, or any of them, to conduct any investigation into the facts and

13  circumstances of the claims asserted against Plaintiffs, Plaintiffs have been damaged, injured,

14  and prejudiced. Plaintiffs were required to retain counsel and defend themselves against the

15  claims asserted against them.

16      54.      As a direct and proximate result of the breach by Insurer Defendants of their

17  obligations under the Policies, Plaintiffs have been damaged as follows:

18      a.      Plaintiffs were required to retain attorneys to defend themselves from the

19  claims asserted in the Third Party Action all in an amount to be proved at time of trial;

20  and

21      b.      The expenditure of monies for attorneys fees caused Plaintiffs to lose

22  business opportunities to which the monies paid to attorneys could have been applied.

23

24  **SECOND CAUSE OF ACTION**

25  **(Breach of The Implied Covenant of Good Faith & Fair Dealing Against Insurer**

26  **Defendant's and DOES 4-75)**

27      55.      Plaintiffs incorporate by reference Paragraphs 1 - 54 of this Complaint and repeat

28  those Paragraphs as though fully set forth herein.

**ROCKWOOD & NOZISKA, LLP**
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-11-

ROCKWOOD & NUZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1   56.    Implied in Plaintiffs' Policies is a covenant by Insurer Defendants, and each of

2   them, to act in good faith and deal fairly with Plaintiffs, and to do nothing to impair or interfere

3   with the rights and benefits of Plaintiffs under the Policies.

4   57.    Plaintiffs are informed and believe and thereon allege that Insurer Defendants,

5   and each of them, breached the implied covenant of good faith and fair dealing arising out of the

6   Policies in the following respects:

7   a.    Insurer Defendants, and each of them, unreasonably and without proper

8   cause, failed and refused to conduct a competent and timely investigation into the facts

9   which gave rise to the claims asserted in the Third Party Action;

10   b.    Insurer Defendants, and each of them, unreasonably refused to defend,

11   and without cause, denied coverage to Plaintiffs in the Third Party Action;

12   c.    Insurer Defendants, and each of them, unreasonably refused to pay for the

13   defense of the Third Party Action;

14   d.    Insurer Defendants, and each of them, unreasonably refused to promptly

15   reimburse Plaintiffs for defense costs incurred by Plaintiffs in their own defense of the

16   Third Party Action after said Defendants acknowledged their duty to defend and

17   accepted Plaintiffs' tender of the defense;

18   e.    Insurer Defendants, and each of them, unreasonably failed to conduct a

19   fair, independent audit of the costs and fees incurred by Plaintiffs in defending against

20   claims asserted in the Third Party Action; and

21   f.    Insurer Defendants, and each of them, unreasonably failed to adjust the

22   claim giving equal consideration to the insureds' interest as to their own.

23   g.    AMCO has wrongfully denied coverage under the Second AMCO/Allied

24   Policy by failing to conduct a reasonable investigation and failing to give equal

25   consideration to their insureds' interest as they gave to their own in refusing to defend

26   and indemnify Plaintiffs' against the alleged claims in the Third Party Action.

27   58.    Plaintiffs are informed and believe, and thereon allege, that Insurer Defendants

28   have breached their duty of good faith and fair dealing owed to Plaintiffs by other acts or

-12-

1  omissions of which Plaintiffs are presently unaware.  Plaintiffs will seek leave of court to amend

2  this complaint at such time as they discover the other acts or omissions of Insurer Defendants

3  constituting such breach.

4    59.    The denial of benefits claimed by Plaintiffs under the Policies was done by

5  Insurer Defendants without reasonable cause.  Insurer Defendants knew that a duty to defend

6  was owed to Plaintiffs, yet refused to provide such a defense.  As a direct and proximate result

7  of the unreasonable conduct of Insurer Defendants, and each of them, Plaintiffs have been

8  required to retain attorneys to obtain benefits due to them under the Policies.  As a direct and

9  proximate result of the tortious conduct of the Insurer Defendants and each of them, Plaintiffs

10  were damaged and injured.  Plaintiffs are therefore entitled to recover:

11    a.    Reasonable attorney fees incurred by Plaintiffs in obtaining policy

12  benefits in an amount to be proved at time of trial;

13    b.    Reasonable attorney fees, expert fees, investigative fees, and costs

14  incurred by Plaintiffs in defending the Third Party Action;

15    c.    Compensation for lost opportunities; and

16    d.    Out of pocket payments by Plaintiffs, assuming any, to settle claims made

17  against them in the Third Party Action.

18    60.    The refusal of Insurer Defendants and each of them to carry out their obligations

19  under the insurance policy to investigate, defend, indemnify and to promptly communicate their

20  coverage position to Plaintiffs, and the acts of their agents were all done willfully and

21  maliciously and in conscious disregard of the rights of Plaintiffs to receive the benefits due them

22  under the Policies.  These acts were done with the knowledge and approval and ratification of

23  Insurer Defendants and each of them.  These acts continued even after Plaintiffs protested to

24  Insurer Defendants and Plaintiffs were powerless to obtain from Insurer Defendants compliance

25  with their obligations.  Plaintiffs are therefore entitled to recover punitive damages.

26  ///

27  ///

28  ///

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-13-

KOCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

## THIRD CAUSE OF ACTION

### (Estoppel As Against The Insurer Defendants and DOES 4 - 75)

61.    Plaintiffs incorporate by reference Paragraphs 1 – 60 of this Complaint and repeat those Paragraphs as though fully set forth herein.

62.    Insurer Defendants had full knowledge that the Third Party Action had commenced against Plaintiffs.  Plaintiffs timely tendered a copy of the summons and complaint in the Third Party Action to Insurer Defendants with the request that Insurer Defendants undertake the defense of this action.  Insurer Defendants subsequently acknowledged the receipt of the tender of defense.

63.    Insurer Defendants wrongfully denied all liability under the Policies and refused to undertake the defense of the Third Party Action against Plaintiffs.

64.    Insurer Defendants intended and had reason to foresee that Plaintiffs would rely upon Insurer Defendants wrongful denial of defense.  Plaintiffs had a right to believe that after Insurer Defendants denied tender, Plaintiffs would be required to engage their own counsel and defend the Third Party Action.

65.    Insurer Defendants later conceded they had a duty to defend Plaintiffs in the Third Party Action pursuant to the Policies, and withdrew their prior declination of coverage.

66.    Plaintiffs were ignorant of the true state of facts in that Plaintiffs were told that no coverage existed under Policies when in fact the duty to defend and indemnify did exist under the Policies.

67.    Plaintiffs reasonably relied on Insurer Defendants' denial of coverage to their detriment, and were compelled to engage counsel on their own.  In doing so, Plaintiffs were injured and incurred substantial costs, fees, and expenses that should have been covered under the Policies

68.    By virtue of the conduct described above and otherwise, Insurer Defendants must be estopped from contesting the fact that they owed Plaintiffs a duty to defend Plaintiffs in the Third Party Action.

///

-14-

69.     By virtue of the conduct described above and otherwise, Insurer Defendants must be estopped from contesting the attorneys' fees and costs incurred by Plaintiffs in defense of the Third Party Action.

70.     By virtue of the conduct described above and otherwise, Insurer Defendants have waived their right to contest attorneys' fees and costs incurred by the Plaintiffs in defense of the Third Party Action.

## FOURTH CAUSE OF ACTION

### (Professional Negligence As Against Broker Defendants and DOES 76-100)

71.     Plaintiffs incorporate by reference Paragraphs 1 -70 of this Complaint and repeat those Paragraphs as though fully set forth herein.

72.     As Plaintiffs' insurance brokers, Broker Defendants held themselves out as experts in the area of insurance and risk management and were responsible for procuring all necessary insurance for Plaintiffs.  Because of the long-term business relationship with Plaintiffs, Broker Defendants knew and understood Plaintiffs' business and undertook to secure appropriate insurance coverage.

73.     Broker Defendants owed Plaintiffs a duty of care in procuring its insurance policies and insuring that those policies provided the insurance requested and/or needed and required, and to advise Plaintiffs of the adequacy of their insurance, as well as their insurance needs; that those insurance policies were sufficient to protect Plaintiffs' interests as requested and/or needed; and that the policies issued to Plaintiffs were appropriate and adequate for their operations.

74.     Broker Defendants represented to Plaintiffs and others that they were experienced at designing comprehensive insurance programs.  Based thereon, Plaintiffs relied on those representations by allowing said Defendants to design for them their own comprehensive insurance program during which time Broker Defendants were fully aware of the business in which Plaintiffs were engaged.  Plaintiffs placed their trust in Broker Defendants ///

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-15-

1 │ and fully relied on their expertise to recommend and secure appropriate and adequate insurance

2 │ coverage.

3 │      75.    Although Plaintiffs contend that they are insured and coverage is afforded under

4 │ the insurance policies for the claims alleged in the Third Party Action, in the event there is

5 │ either a gap and/or insufficient coverage, Plaintiffs allege that said lack of coverage is the

6 │ proximate result of Broker Defendants' negligence as follows:

7 │         a.    By failing and/or negligently completing and submitting the insurance

8 │ applications for the primary and excess policies on behalf of Plaintiffs;

9 │         b.    By failing to obtain for Plaintiffs the proper scope and amount of

10 │ coverage;

11 │         c.    By making misrepresentations regarding the policy limits of the First

12 │ AMCO/Allied Policy and on information and belief failing to disclose the true policy

13 │ limits;

14 │         d.    By failing to procure excess coverage contrary to the business practices

15 │ and wishes of Plaintiffs;

16 │         e.    By failing to list the property location on subsequent primary and excess

17 │ policies affording coverage to Plaintiffs;

18 │         f.    By continuing to insist at all times that Broker Defendants had procured

19 │ adequate, accurate and appropriate insurance policies and endorsements for Plaintiffs;

20 │         g.    By completing and submitting an erroneous application for insurance as

21 │ to the Second AMCO/Allied Policy without review or signature by Plaintiffs causing

22 │ denial of coverage based on same; and

23 │         h.    By failing to disclose or advise Plaintiffs that there was a change in the

24 │ Second AMCO/Allied Policy form, which purports to limit or take away coverage.

25 │         i.    By continuing to insist there was no need for excess insurance.

26 │      76.    As a proximate result of Broker Defendants' breach of their duties, Plaintiffs

27 │ have been damaged to the extent that the appropriate insurance coverage would have covered

28 │ the amount of unreimbursed defense costs, fees and indemnity arising out of the underlying

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-16-

SECOND AMENDED COMPLAINT FOR: BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT
MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY

1  Third Party Action. Plaintiffs have been further damaged by incurring fees and costs as a result

2  of being forced to file this action based on the negligent acts and omissions of Broker

3  Defendants.

4       77.    As a direct and proximate result of Broker Defendants' negligence, Plaintiffs

5  have been damaged in an amount according to proof at time of trial.s

6  **FIFTH CAUSE OF ACTION**

7  **(Negligent Misrepresentation As Against Broker Defendants and Does 76-100)**

8       78.    Plaintiffs incorporate by reference Paragraphs 1 - 77 of this Complaint and repeat

9  those Paragraphs as though fully set forth herein.

10       79.    Broker Defendants owed Plaintiffs a duty of care in procuring its insurance

11  policies and insuring that those policies provided the insurance requested and/or needed and

12  required, and to advise Plaintiffs of the adequacy of their insurance, as well as their insurance

13  needs; that those insurance policies were sufficient to protect Plaintiffs' interests as requested

14  and/or needed; and that the policies issued to Plaintiffs were appropriate for their operations.

15       80.    Broker Defendants represented to Plaintiffs and others that they were

16  experienced at designing comprehensive insurance programs. Based thereon, Plaintiffs relied

17  on those representations by allowing said Defendants to design for them their own

18  comprehensive insurance program during which time Broker Defendants were fully aware of

19  the business in which Plaintiffs were engaged.

20       81.    Although Plaintiffs contend that they are insured and coverage is afforded under

21  the insurance policies for the claims alleged in the Third Party Action, in the event there is

22  either a gap and/or insufficient insurance coverage Plaintiffs allege that said lack of insurance

23  coverage is the proximate result of Broker Defendants' negligent misrepresentations as follows:

24       a.    By making misrepresentations regarding the policy limits of the First

25       AMCO/Allied Policy and on information and belief failing to disclose the true policy

26       limits;

27       b.    By continuing to insist at all times that Broker Defendants had procured

28       adequate, accurate and appropriate insurance policies and endorsements for Plaintiffs;

**ROCKWOOD & NOZISKA, LLP**
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-17-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

c.    By failing to disclose or advise Plaintiffs that there was a change in the Second AMCO/Allied Policy form, which purports to limit or takes away coverage; and

d.    By completing and submitting an erroneous application for insurance as to the Second AMCO/Allied Policy without review or signature by Plaintiffs causing denial of coverage based on same.

e.    By continuing to insist there was no need for excess insurance.

82.    Plaintiffs justifiably relied on the representations made by Broker Defendants regarding the scope and amount of insurance coverage procured by Broker Defendants and based on their representations that they were competent brokers to obtain the correct type and amount of coverage to protect Plaintiffs' interests.

83.    According AMCO and SEQUOIA, representations made by Broker Defendants were false. Additionally, AMCO contends that the application for the Second AMCO/Allied Policy was predicated on misrepresentation of fact.

84.    Plaintiffs justifiably relied on these representations made by Broker Defendants regarding the scope and amount of coverage procured by said Defendants for Plaintiffs.

85.    Relying on these representations has damaged Plaintiffs in an amount according to proof at time of trial.

86.    Broker Defendants' negligent procurement; failure to procure; and, design of comprehensive insurance program has damaged Plaintiffs according to proof.

## SIXTH CAUSE OF ACTION

### (Breach of Fiduciary Duty As Against Broker Defendants and Does 76-100)

87.    Plaintiffs incorporate paragraphs 1 through 86 as if set forth herein.

88.    Plaintiffs are informed and believe and thereon allege, at all times herein mentioned, agents, representatives, and employees of Broker Defendants, were employed as Plaintiffs' insurance broker and/or agent.

-18-

89.    Plaintiffs are informed and believe and thereon allege, Broker Defendants were charged with a fiduciary duty to exercise due care and undivided loyalty for the interests of Plaintiffs.

90.    Said duties required the brokers and agents, representatives, and employees, of the Broker Defendants, who served as the insurance brokers of Plaintiffs, to make decisions solely for the benefit of Plaintiffs.

91.    Said duties required, *inter alia*, that the agents, employees, and representative of the Broker Defendants act with honesty, good faith, and good management in exercising their duties as Plaintiffs' insurance broker and/or agent.   Moreover, the agents, employees, and representatives of said Defendants owed a duty to make reasonable inquiry and to properly investigate the appropriate insurance coverage for Plaintiffs, with such care and diligence as an ordinarily prudent person in a like position would use under similar circumstances.

92.    Broker Defendants, as broker and/or agent of Plaintiffs, breached their fiduciary duties by virtue of the following:

a.    By failing and/or negligently completing and submitting the insurance applications for the primary and excess policies;

b.    By failing to obtain the proper scope and amount of coverage;

c.    By making misrepresentations regarding the policy limits of the First AMCO/Allied Policy and on information and belief failing to disclose the true policy limits;

d.    By failing to procure excess coverage contrary to the business practices and wishes of the insureds;

e.    By failing to list the property location on subsequent primary and excess policies affording coverage to Plaintiffs;

f.    By continuing to insist at all times Broker Defendants had procured adequate, accurate and appropriate insurance coverage limits and endorsements;

g.    By completing and submitting an erroneous application for insurance as to the Second AMCO/Allied Policy without review or signature by Plaintiffs causing

-19-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

denial of coverage based on same.

   h.  By failing to disclose or advise Plaintiffs that there was a change in the Second AMCO/Allied Policy form, which purports to limit or take away coverage.

   i.  By continuing to insist there was no need for excess insurance.

  93.  Broker Defendants' breach of fiduciary duties damaged Plaintiffs in an amount according to proof at time of trial.

  **WHEREFORE**, Plaintiffs and their members pray for judgment against Defendants, and each of them, as follows:

**FIRST CAUSE OF ACTION (Breach of Contract):**

1.  For special damages in an amount to be proven at the time of trial;

2.  For interest at a maximum legal rate;

3.  For interest, attorneys fees and costs of suit herein incurred; and

4.  For such other and further relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION (Breach of The Implied Covenant of Good Faith & Fair Dealing):**

1.  For special damages in an amount to be proven at the time of trial;

2.  For punitive damages in an amount to punish and deter defendants' wrongful conduct;

3.  For interest at a maximum legal rate;

4.  For attorneys fees and costs of suit herein incurred in obtaining policy benefits; and

5.  For such other and further relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION (Estoppel):**

1.  For such relief as the court may deem just and proper.

**FOURTH CAUSE OF ACTION (Professional Negligence):**

1.  For special damages in an amount to be proven at the time of trial;

2.  For interest at a maximum legal rate;

3.  For interest, attorneys fees and costs of suit herein incurred; and

1    4.    For such other and further relief as this Court deems just and proper.

2    <u>**FIFTH CAUSE OF ACTION (Negligent Misrepresentation)**</u>:

3    1.    For special damages in an amount to be proven at the time of trial;

4    2.    For interest at a maximum legal rate;

5    3.    For interest, attorneys fees and costs of suit herein incurred; and

6    4.    For such other and further relief as this Court deems just and proper.

7    <u>**SIXTH CAUSE OF ACTION (Breach of Fiduciary Duty)**</u>:

8    1.    For special damages in an amount to be proven at the time of trial;

9    2.    For interest at a maximum legal rate;

10    3.    For interest, attorneys fees and costs of suit herein incurred; and

11    4.    For such other and further relief as this Court deems just and proper.

12

13    Dated: July 19, 2006                    ROCKWOOD & NOZISKA, LLP

14

15

16    By: _____
          NEAL H. ROCKWOOD, ESQ.
17        C. BRANT NOZISKA, ESQ.
          Attorneys for Plaintiffs
18

19

20

21

22

23

24

25

26

27

28

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-21-

SECOND AMENDED COMPLAINT FOR: BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT
MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY

# EXHIBIT P

1  ROCKWOOD & NOZISKA, L.L.P.
   NEAL H. ROCKWOOD, ESQ. SB# 106197
2  C. BRANT NOZISKA, ESQ. SB#106117
   5060 North Harbor Drive, Suite 255
3  San Diego, California 92106
   Phone: (619) 224-7778 Fax (619) 224-7779

4

5  Attorneys for Plaintiffs

F I L E D
Clerk of the Superior Court

DEC 0 6 2005

By:_____Deputy

6

7

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION**

10  AVOCADO CREST CONDOMINIUMS,        )  CASE NO.
    LLC, a California Limited Liability Company;  )      GIC    **857918**
11  RALPH J. GIANNELLA, an individual;  )
    CONSTRUCTION MEDIATION ONLY        )
12  INC., a California Corporation; WILLIAM G.  )  **COMPLAINT FOR:**
    AYYAD, an individual; WILLIAM G.    )
13  AYYAD, INC., a California Corporation;  )  **DECLARATORY RELIEF;**
    PREMIER COMMUNITIES, LLC, a         )  **DECLARATORY RELIEF FOR**
14  California Limited Liability Company;  )  **INDEMNITY; BREACH OF**
    PREMIER COASTAL DEVELOPMENT,        )  **CONTRACT; BREACH OF IMPLIED**
15  INC., a California Corporation; and DAN  )  **COVENANT OF GOOD FAITH AND**
    TOMASI, an individual,             )  **FAIR DEALING; NEGLIGENCE; AND**
16                                      )  **ESTOPPEL**
              Plaintiffs,               )
17                                      )  **JURY REQUESTED**
         v.                             )
18                                      )  **[UNLIMITED CIVIL]**
    ALLIED MUTUAL INSURANCE            )
19  COMPANY, an Iowa Corporation; SEQUOIA  )
    INSURANCE COMPANY, a California     )
20  Corporation; and DOES 1 through 100,  )
    inclusive,                          )
21                                      )
              Defendants.               )
22  _____  )

23       AVOCADO CREST CONDOMINIUMS, LLC, a California Limited Liability

24  Company; RALPH J. GIANNELLA, an individual; CONSTRUCTION MEDIATION ONLY

25  INC., a California Corporation; WILLIAM G. AYYAD, an individual; WILLIAM G. AYYAD,

26  INC., a California Corporation; PREMIER COMMUNITIES, LLC, a California Limited

27  Liability Company; PREMIER COASTAL DEVELOPMENT, INC., a California Corporation;

28  and DAN TOMASI, an individual, ("Plaintiffs") hereby allege as follows:

_Left margin, vertical:_ ROCKWOOD & NOZISKA, LLP  5060 North Harbor Drive, Suite 255  San Diego, California 92106  (619) 224-7778 FAX (619) 224-7779

_Left margin:_ COPY

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT;
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

**VENUE**

1.    Plaintiff, AVOCADO CREST CONDOMINIUMS, LLC, hereinafter "AVOCADO CREST" is, and at all times herein mentioned, was a limited liability company operating and existing under the laws of the State of California.

2.    Plaintiff, CONSTRUCTION MEDIATION ONLY, INC., hereinafter "CMO Inc.," is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California and a member of AVOCADO CREST.

3.    Plaintiff, RALPH GIANELLA, hereinafter "GIANNELLA," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California and was a managing agent of AVOCADO CREST and officer of CMO INC.

4.    Plaintiff, PREMIER COMMUNITIES, LLC, hereinafter "PREMIER," is, and at all times herein mentioned, was a limited liability company operating and existing under the laws of the State of California and was the operations manager for AVOCADO CREST.

5.    Plaintiff, PREMIER COASTAL DEVELOPMENT, INC., hereinafter "PCD INC.", is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California.

6.    Plaintiff, WILLIAM AYYAD, hereinafter "AYYAD," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California and was a managing agent of AVOCADO CREST and officer of WILLIAM G. AYYAD, INC.

7.    Plaintiff, WILLIAM G. AYYAD, INC., hereinafter "AYYAD INC.," is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California and a member of AVOCADO CREST.

8.    Plaintiff, DAN TOMASI, hereinafter "TOMASI," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California and an employee of PREMIER.

9.    The causes of action in this complaint arise out of agreements entered into in the County of San Diego, and some or all of the Defendants have their principal place of business in

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-2-

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

1  the County of San Diego.  Accordingly, venue is proper in San Diego County Superior Court

2  pursuant to Code of Civil Procedure §§ 393 and 395.5.

3

4  **<u>INTRODUCTORY ALLEGATIONS</u>**

5      10.    Plaintiffs incorporate by reference Paragraphs 1-9 of this Complaint and repeat

6  those Paragraphs as though fully set forth herein.

7      11.    Plaintiffs allege on information and belief that at all times herein mentioned

8  Defendant ALLIED MUTUAL INSURANCE COMPANY of Iowa, hereinafter "ALLIED,"

9  was and is a corporation doing business within the State of California, County of San Diego.

10 Plaintiffs further allege on information and belief that ALLIED of Iowa, is, and at all times

11 mentioned herein, was duly organized and existing under the laws of the State of Iowa.

12     12.    Plaintiffs allege on information and belief that at all times herein mentioned

13 Defendant SEQUOIA INSURANCE COMPANY, hereinafter "SEQUOIA," was and is a

14 corporation doing business within the State of California, County of San Diego.  Plaintiffs

15 further allege on information and belief that SEQUOIA is, and at all times mentioned herein,

16 was duly organized and existing under the laws of the State of California.

17     13.    Plaintiffs are presently unaware of the true names and capacities of those

18 defendants sued herein as Does 1 through 100 inclusive.  Plaintiffs will amend this complaint to

19 state their true names and capacities when they are ascertained.  Plaintiffs are informed and

20 believe, and thereon allege, that each of the fictitiously-named defendants are responsible in

21 some manner for the occurrences alleged herein, and that Plaintiffs' damages were proximately

22 caused by such defendants.

23     14.    Plaintiffs are informed and believe, and thereon allege, that ALLIED and

24 SEQUOIA (collectively "Defendants") and each of them, including the fictitious defendants

25 named as Does herein, were the agents and/or employees of each of the remaining defendants

26 and in doing the things herein mentioned were acting within the scope of such agency and/or

27 employment.

28

**ROCKWOOD & NOZISKA, LLP**
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-3-

15.    Plaintiffs are informed and believe that venue is properly within the County of San Diego and the Defendants are subject to personal jurisdiction in this County at the time the action is commenced.  The insured property in question is located at 868 East Alvarado Street, Fallbrook, California, commonly referred to as "Oaks Condominiums."  Such property consists of six residential buildings and related facilities.

16.    Plaintiffs request a jury in this matter.

## FACTUAL ALLEGATIONS

17.    Plaintiffs incorporate by reference Paragraphs 1-16 of this Complaint and repeat those Paragraphs as though fully set forth herein.

18.    Plaintiff AVOCADO CREST purchased Oaks Condominiums in or about July 2001.  Plaintiffs are informed and believe, and thereon allege that Oaks Condominiums, which were originally constructed in 1978 as an apartment complex, were converted to condominiums in or about 1982; however, the units continued to be rented as apartments.  After AVOCADO CREST purchased Oaks Condominiums, AVOCADO CREST performed some renovations to some of the units.  Beginning in or about April 2002, Plaintiff AVOCADO CREST sold units at Oaks Condominiums.  Escrows for all of the condominiums closed between April 10, 2002 and the end of October 2002.

19.    SEQUOIA issued Insurance Policy No. CMP 114137-1, hereinafter referred to as the "Sequoia Policy," for the policy period December 1, 2000 to December 1, 2001.  On or about August 14, 2001 the Sequoia Policy was amended to include Plaintiff AVOCADO CREST as an insured and Oaks Condominiums as an insured property.  Attached as Exhibit A is a copy of the Sequoia Policy and its terms are incorporated herein by this reference.  Under the terms of the Sequoia Policy, SEQUOIA undertook to and did insure Plaintiffs against, among other things, Commercial General Liability pursuant to Policy Form CG 0001 (11/88).

20.    Under the terms of the Sequoia Policy, SEQUOIA undertook to and did agree 1) to "pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies"; 2) that SEQUOIA would

-4-

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1    have "the right and duty to defend any "suit" seeking those damages"; and 3) that SEQUOIA

2    may, at its discretion, "investigate any "occurrence" and settle any claim or "suit" that may

3    result." (*See* Exhibit A at CG 00011188 at page 1 of 12.)

4        21.    Upon expiration of the Sequoia Policy, ALLIED issued Insurance Policy No.

5    ACP 7801001164, hereinafter referred to as the "Allied Policy," for the policy period December

6    1, 2001 to December 1, 2002. The Allied Policy insured AVOCADO CREST among other

7    insureds. Attached as Exhibit B is a copy of the Allied Policy and its terms are incorporated

8    herein by this reference.

9        22.    On or about April 4, 2002, a separate policy insuring AVOCADO CREST

10   separately, Insurance Policy No. ACP 7801073037, was issued by ALLIED, hereinafter referred

11   to as the "Second Allied Policy," for the policy period April 4, 2002 to April 4, 2003. Attached

12   as Exhibit C is a copy of the Second Allied Policy and its terms are incorporated herein by this

13   reference.

14       23.    Under the terms of the Allied Policies, ALLIED undertook to and did agree 1)

15   to "pay those sums up to the applicable Limit of Insurance that the insured becomes legally

16   obligated to pay as damages because of "bodily injury" or "property damage" to which this

17   insurance applies"; 2) that ALLIED would have "the right and duty to defend the insured

18   against any "suit" seeking those damages for which there is coverage under this policy"; and 3)

19   that ALLIED may, at its sole discretion, investigate any "occurrence" and settle any claim or

20   "suit" that may result."  (*See* Exhibit C attached at PB 00 06 (01-01) at page 2 of 24.)

21       24.    At all times mentioned herein Plaintiffs performed all the terms and conditions of

22   the SEQUOIA and ALLIED Policies (collectively the "Policies") to be performed on their part.

23       25.    Under the Policies, AVOCADO CREST is an insured. The remaining Plaintiffs

24   are also insured by virtue of their positions as members, officers and/or employees of

25   AVOCADO CREST and/or its members.

26       26.    Homeowners at the Oaks Condominiums reported occurrences and made claims

27   regarding their units to Plaintiffs at various times.

28

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT;
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

27.    On or about September 16, 2003, a Notice of Commencement of Legal Proceedings pursuant to former Civil Code section 1375 ("Calderon Notice") was sent to AVOCADO CREST by attorneys representing the Oaks Management Corporation claiming property damage and bodily injury as a result of certain defects at the Oaks Condominiums.

28.    Plaintiffs timely forwarded the Calderon Notice to ALLIED and SEQUOIA.

29.    On or about February 2, 2004, SEQUOIA, without full and proper investigation of the claim, denied coverage and refused to defend Plaintiffs with respect to the Calderon Notice and subsequent mediation.

30.    Without the participation of Defendants, Plaintiffs were unable to settle the Third Party Action through the Calderon mediation.

31.    On or about March 16, 2004, the Oaks Management Corporation and individual homeowners commenced action against Plaintiffs herein in the San Diego Superior Court entitled *The Oaks Management Corporation v. Avocado Crest Condominiums, LLC*, case number GIC 827085, hereinafter referred to as the "Third Party Action."    Plaintiffs in the Third Party Action sought damages based upon negligence, negligence per se, fraud, civil conspiracy to defraud, breach of contract, breach of the Conditions, Covenants and Restrictions, fraudulent conveyance, breach of fiduciary duty, alter ego, and breach of implied warranty arising out of the conversion and sale of units at Oaks Condominiums.

32.    Plaintiffs timely forwarded a copy of the summons and complaint in the Third Party Action to ALLIED and SEQUOIA with the request that the Defendants, as required by the aforementioned insurance policies, undertake the defense of this action.

33.    Notwithstanding Plaintiffs' request, on or about November 18, 2004, SEQUOIA for the second time denied all liability under its policy and refused to undertake the defense of the Third Party Action against Plaintiffs.

34.    Notwithstanding Plaintiffs' request, on or about April 16, 2004, ALLIED, without full and proper investigation of the claim, denied all liability under the ALLIED policies and refused to undertake the defense of the Third Party Action.

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

35.    On or about November 15, 2004, Plaintiffs made another demand of ALLIED to undertake the defense of the Third Party Action as required by the Second Allied Policy.

36.    On or about November 22, 2004, ALLIED confirmed that it would not defend Plaintiffs in the Third Party Action.

37.    Plaintiffs persisted in advising ALLIED and SEQUOIA that they had a duty to defend Plaintiffs to no avail.  In the meantime, Plaintiffs were faced with a multi-million dollar lawsuit, which they had to defend.  Plaintiffs retained counsel to defend themselves in the Third Party Action, and continued attempts to convince Defendants to defend.

38.    Finally, on or about January 7, 2005, ALLIED conceded that it had a duty to defend Plaintiffs in the Third Party Action pursuant to the Allied Policy under a reservation of rights.  ALLIED maintained that it did not owe a duty to defend pursuant to the Second Allied Policy.

39.    On or about March 21, 2005, SEQUOIA withdrew its prior declination of defense, and accepted Plaintiffs' tender of the Third Party Action pursuant to an express reservation of rights.

40.    Until such time as Defendants ALLIED and SEQUOIA agreed to defend Plaintiffs in the Third Party Action, Plaintiffs were each required to retain separate and multiple law firms to advise Plaintiffs of the separate defenses, claims, and interests relating to the Third Party Action.

41.    Plaintiffs were obligated to mount a vigorous defense against the multi-million dollar Third Party Action.  As a proximate result of Defendants' refusal as herein alleged, Plaintiffs were compelled to engage defense counsel for the Third Party Action and to incur attorneys' fees, costs and expenses therefore in the sum of $1,235,212.08.

42.    On or about February 18, 2005, Plaintiffs served Defendant ALLIED with a demand for reimbursement for investigation and defense costs associated with the Third Party Action in the amount of $1,235,212.08 as required pursuant to the Policies.  On or about April 19, 2005, Plaintiffs served Defendant SEQUOIA with a demand for reimbursement for investigation and defense costs associated with the Third Party Action in the amount of

-7-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1  $1,235,212.08. This amount included attorney's fees, litigation costs, mediation expenses,

2  expert/consultant fees and costs incurred to investigate and mitigate alleged damages. Excluded

3  from that amount were costs associated with counsel's efforts to secure insurance coverage for

4  Plaintiffs. All relevant documentation for those costs and fees were forwarded to Defendants

5  ALLIED and SEQUOIA.

6       43.    Defendants delayed in making a decision whether to reimburse Plaintiffs. After a

7  number of months of review and audit conducted by Defendants, Defendants agreed to pay only

8  a fraction of Plaintiffs' out-of-pocket costs. Defendants agreed to pay approximately two-

9  hundred and eighty-five thousand ($285,000).

10       44.    A further demand was made by Plaintiffs for review of the audit prepared by

11  Defendants, which to date has been refused. Defendants continue to refuse to provide a proper

12  explanation for their refusal to fairly reimburse Plaintiffs for defense costs.

13       45.    By waiting more than a year before engaging counsel to defend Plaintiffs,

14  Defendants have waived any and all rights to contest the amount of the attorneys' fees incurred

15  by Plaintiffs and are estopped from contesting the amount submitted by Plaintiffs.

16

17  ### FIRST CAUSE OF ACTION

18  **(For Declaratory Relief Against All Defendants)**

19       46.    Plaintiffs incorporate by reference Paragraphs 1-45 of this Complaint and repeat

20  those Paragraphs as though fully set forth herein.

21       47.    As set forth above, Defendants, among other things, agreed in the Policies to

22  defend third party claims against Plaintiffs based on covered risks.

23       48.    Defendants denied Plaintiffs' tender of defense of the Third Party Action.

24       49.    Defendants later withdrew their prior declination of the claim and accepted

25  Plaintiffs' tender of defense. On or about January 25, 2005, ALLIED accepted Plaintiffs'

26  tender of defense. On or about March 21, 2005, SEQUOIA accepted Plaintiffs' tender of

27  defense.

28

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT;
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

50.     A dispute has arisen between Plaintiffs and Defendants in that Plaintiffs contend that the third party claims were covered by the Policies, and that Plaintiffs' initial tender of defense was wrongfully denied.  Plaintiffs are informed and believe, and thereon allege that Defendants failed and refused to provide the benefits of the Policies and defend Plaintiffs in the Third Party Action.  An actual controversy exists between Plaintiffs and Defendants regarding Defendants' initial obligations to defend Plaintiffs in the Third Party Action.  A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the Policies.

## SECOND CAUSE OF ACTION

### (For Declaratory Relief for Indemnification Against All Defendants)

51.     Plaintiffs incorporate by reference Paragraphs 1 - 50 of this Complaint and repeat those Paragraphs as though fully set forth herein.

52.     As set forth above, Defendants, among other things, agreed in the Policies to defend third party claims against Plaintiffs based on covered risks.

53.     Plaintiffs are informed and believe, and thereon allege that Plaintiffs have been forced to incur fees, costs, and expenses because of third party claims made against Plaintiffs for an occurrence falling within the coverage of the Policies.

54.     A dispute has arisen between Plaintiffs and Defendants in that Plaintiffs contend that certain fees, costs, and expenses are covered by the Policies, and they are entitled to be reimbursed for those fees, costs, and expenses.  Plaintiffs are informed and believe, and thereon allege, that Defendants failed and refused to provide the benefits of the Policies and reimburse Plaintiffs for the fees, costs, and expenses related to the third party claims.  An actual controversy exists between Plaintiffs and Defendants regarding Defendants' obligations to reimburse Plaintiffs for fees, costs, and expenses incurred by them.  A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the Policies.

///

///

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

1

# THIRD CAUSE OF ACTION

2

## (Breach of Contract As Against All Defendants)

3      55.      Plaintiffs incorporate by reference Paragraphs 1 - 54 of this Complaint and

4    repeat those Paragraphs as though fully set forth herein.

5      56.      Plaintiffs have performed each and every covenant and/or condition of the

6    insurance policies to be performed by them, or have been excused from so performing as a

7    result of Defendants' breach of contract.

8      57.      Plaintiffs are informed and believe and thereon allege that Defendants, and each

9    of them, breached their obligations under the Policies in the following manner:

10          a.      By failing to conduct a full and complete investigation into the facts and

11    circumstances of the claims asserted against Plaintiffs in the Third Party Action;

12          b.      By failing and refusing to defend Plaintiffs, and each of them, from the

13    claims asserted in the Third Party Action;

14          c.      By failing and refusing to indemnify Plaintiffs, and each of them, from

15    the claims asserted in the Third Party Action; and

16          d.      By doing each of the acts or omissions as otherwise alleged above.

17      58.      Plaintiffs are informed and believe and thereon allege that Defendants, and each

18    of them, failed and refused to conduct an investigation into the facts and circumstances of the

19    claims asserted against Plaintiff in the Third Party Action.  As a result of the breaches of

20    contract by Defendants, or any of them, to conduct any investigation into the facts and

21    circumstances of the claims asserted against Plaintiffs, Plaintiffs have been damaged, injured,

22    and prejudiced.  Plaintiffs were required to retain counsel and defend themselves against the

23    claims asserted against them.

24      59.      As a direct and proximate result of the breach by Defendants of their obligations

25    under the Policies, Plaintiffs have been damaged as follows:

26          a.      Plaintiffs have been required to retain attorneys to defend themselves

27    from the claims asserted in the Third Party Action all in an amount to be proved at time

28    of trial; and

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-10-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1    b.    General damages in an amount to be proved at time of trial.

2

3    **FOURTH CAUSE OF ACTION**

4    **(Breach of Covenant of Good Faith and Fair Dealing As Against All Defendants)**

5    60.    Plaintiffs incorporate by reference Paragraphs 1 - 59 of this Complaint and

6    repeat those Paragraphs as though fully set forth herein.

7    61.    Implied in Plaintiffs' Policies was a covenant by Defendants, and each of them,

8    to act in good faith and deal fairly with Plaintiffs, and to do nothing to impair or interfere with

9    the rights of Plaintiffs under the Policies.

10    62.    Plaintiffs are informed and believe and thereon allege that Defendants, and each

11    of them, breached the implied covenant of good faith and fair dealing arising out of the Policies

12    in the following respects:

13    a.    Defendants, and each of them, unreasonably and without proper cause,

14    failed and refused to conduct an investigation into the facts which gave rise to the claims

15    asserted in the Third Party Action;

16    b.    Defendants, and each of them, unreasonably refused to defend Plaintiffs

17    in the Third Party Action;

18    c.    Defendants, and each of them, unreasonably refused to pay for the

19    defense of the Third Party Action;

20    d.    Defendants, and each of them, unreasonably refused to indemnify

21    Plaintiffs for reasonable attorney fees incurred by Plaintiffs in their own defense of the

22    Third Party Action after Defendants acknowledged their duty to defend and accepted

23    tender of the defense; and

24    e.    Defendants, and each of them, unreasonably continue to refuse to provide

25    a proper explanation for their refusal to fairly reimburse Plaintiffs for defense costs and a

26    review of the audit prepared by Defendants.

27    63.    Plaintiffs are informed and believe, and thereon allege, that Defendants have

28    breached their duty of good faith and fair dealing owed to Plaintiffs by other acts or omissions

-11-

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

1  of which Plaintiffs are presently unaware. Plaintiffs will seek leave of court to amend this

2  complaint at such time as they discover the other acts or omissions of Defendants constituting

3  such breach.

4      64.    The denial of benefits claimed by Plaintiffs under the Policies was done by

5  Defendants without reasonable cause. Defendants knew that a duty to defend was owed to

6  Plaintiffs, yet refused to provide such a defense. As a direct and proximate result of the

7  unreasonable conduct of Defendants, and each of them, Plaintiffs have been required to retain

8  attorneys to obtain benefits due to them under the Policies. As a direct and proximate result of

9  the tortious conduct of the Defendants and each of them, Plaintiffs were damaged and injured.

10  Plaintiffs are therefore entitled to recover:

11      a.    Reasonable attorney fees incurred by Plaintiffs in obtaining policy

12  benefits in an amount to be proved at time of trial;

13      b.    Reasonable attorney fees incurred by Plaintiffs in defending the Third

14  Party Action; and

15      65.    The refusal of Defendants and each of them to carry out their obligations under

16  the insurance policy to investigate, defend, indemnify and to promptly communicate their

17  coverage position to their insureds, and the acts of their agents were all done willfully and

18  maliciously and in conscious disregard of the rights of Plaintiffs to receive the benefits due

19  them under the Policies. These acts were done with the knowledge and approval and

20  ratification of Defendants and each of them. These acts continued even after Plaintiffs

21  protested to Defendants and Plaintiffs were powerless to obtain from Defendants compliance

22  with their obligations. Plaintiffs are therefore entitled to recover punitive damages.

23

24          **FIFTH CAUSE OF ACTION**

25          **(Estoppel As Against All Defendants)**

26      66.    Plaintiffs incorporate by reference Paragraphs 1 - 65 of this Complaint and

27  repeat those Paragraphs as though fully set forth herein.

28

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-12-

67.     Defendants had full knowledge that the Third Party Action had commenced against Plaintiffs.  Plaintiffs timely forwarded a copy of the summons and complaint in the Third Party Action to Defendants with the request that the Defendants undertake the defense of this action.  Defendants subsequently acknowledged the receipt of the tender of defense.

68.     Defendants wrongfully denied all liability under its policy and refused to undertake the defense of the Third Party Action against Plaintiffs.

69.     Defendants intended and had reason to foresee that Plaintiffs would rely upon Defendants wrongful denial of defense.  Plaintiffs had a right to believe that after Defendants denied tender, Plaintiffs would be required to engage its own counsel.

70.     Defendants later conceded they had a duty to defend Plaintiffs in the Third Party Action pursuant to the insurance policies, and withdrew their prior declination of defense.

71.     Plaintiffs were ignorant of the true state of facts in that Plaintiffs were told that no coverage existed under the insurance policies when in fact the duty to defend did exist under the insurance policies.

72.     Plaintiffs reasonably relied on Defendants' denial of defense to their detriment, and were compelled to engage counsel on their own.  In doing so, Plaintiffs were injured and incurred substantial costs, fees, and expenses that should have been covered under the insurance policies.

73.     By virtue of the conduct described above and otherwise, Defendants must be estopped from contesting the attorneys' fees incurred by Plaintiffs in defense of the Third Party Action.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.     Declaration of the rights of the parties.

2.     For general damages in an amount to be proven at the time of trial;

3.     For special damages in an amount to be proven at the time of trial;

4.     For punitive damages in an amount to punish and deter defendants' wrongful conduct;

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-13-

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL

5.    For interests, attorneys fees and costs of suit herein incurred; and

6.    For such other and further relief as the Court may deem just and proper.

Dated: December 6, 2005                     ROCKWOOD & NOZISKA, LLP


By: _____
     NEAL H. ROCKWOOD, ESQ.
     C. BRANT NOZISKA, ESQ.
     Attorneys for Plaintiffs

COMPLAINT FOR: DECLARATORY RELIEF; DECLARATORY RELIEF FOR INDEMNITY; BREACH OF CONTRACT;
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; AND ESTOPPEL