HOWARD M. GARFIELD, State Bar #43369
KAREN L. UNO, State Bar #117410
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, CA 94104
Tel: (415) 397-2222    Fax: (415) 397-6392
hgarfield@longlevit.com; kuno@longlevit.com

Attorneys for Defendants
ALLIED PROPERTY AND CASUALTY
INSURANCE COMPANY, AMCO INSURANCE
COMPANY, and NATIONWIDE MUTUAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| 1800 SOUTH MAPLE STREET, LLC, a California Limited Liability Company; RALPH J. GIANNELLA, an individual; GIANNELLA PROPERTIES, INC., a California Corporation; WILLIAM G. AYYAD, an individual; WILLIAM G. AYYAD, INC., a California Corporation; an PREMIER COMMUNITIES, LLC, a California Limited Liability Company,<br><br>            Plaintiff,<br><br>    vs.<br><br>ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, an Iowa Corporation; AMCO INSURANCE COMPANY, an Iowa Corporation; NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation, and DOES 1 to 100, inclusive,<br><br>            Defendants. | CASE No. 07-CV-2030<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>Date:         February 29, 2008<br>Time:        1:30 P.M.<br>Courtroom:  Honorable Judge Jeffrey T. Miller<br><br><br>Date Filed:        September 10, 2007<br>Date Removed:  October 19, 2007<br>Trial: |

//

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

## I.    INTRODUCTION

Plaintiffs seek to add an insurance broker as a non-diverse defendant to cause remand of the action to state court. However, they have long been aware of the broker and its potential liability to them, as demonstrated by this same broker's inclusion as a defendant in another bad faith action brought against AMCO (recently settled) by the same counsel on behalf of some of the same plaintiffs. Thus, when this case commenced, they must have made a deliberate decision not to include the broker and only recently, since removal, this court's first ENE session and a case management order, have plaintiffs taken action to add it. Their forum-shopping motive is apparent and is not a legitimate ground for granting leave to amend.

This bad faith lawsuit arises from an underlying lawsuit against the plaintiffs for misrepresentation and negligence in the renovation, marketing and sale of condominium units that were converted from an apartment complex. According to the underlying lawsuit, plaintiffs purchased an apartment complex in Escondido, California, with the intent of renovating and converting the apartments into condominiums units for sale. The plaintiff in that case, the condominium association, Hidden Glen Maintenance Corporation, alleged that following the sale, the purchasers discovered various defective conditions, giving rise to the suit.

The Hidden Glen lawsuit was tendered to AMCO Insurance Company, defendant here. As part of its investigation into whether a duty to defend or indemnify was owed, AMCO asked for information and documentation for its coverage evaluation. Some of the information was provided, but most of it was not. In fact, at the time plaintiffs filed this bad faith lawsuit on September 10, 2007, many of those requests for information by AMCO and its coverage counsel remained unanswered.

Pertinent to this motion for leave to amend, designed to destroy diversity and have this case remanded to state court, is the plaintiffs' long-term knowledge and understanding of the role that the insurance brokerage firm of Michael Ehrenfeld Company played with respect to plaintiffs' insurance transactions. In a separate bad faith lawsuit, also brought against AMCO and filed in San Diego County Superior Court (that recently settled), some of the plaintiffs in this case sued the same broker which they now seek to add as a defendant here. Throughout their motion,

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1  plaintiffs refer to this separate and now settled bad faith lawsuit, entitled *Avocado Crest*

2  *Condominiums LLC v. AMCO, et al.* as the "ACC Lawsuit" and defendants adopt the same

3  nomenclature for clarity and consistency.

4       In the ACC Lawsuit, some of the plaintiffs that appear here as plaintiffs, filed their second

5  amended complaint on July 20, 2006, to add the same broker as a defendant and the same causes

6  of action for professional negligence, negligent misrepresentation and breach of fiduciary duty

7  that they seek leave to bring here. [Exhibit A to the Declaration of Karen L. Uno in support of

8  AMCO's Opposition]. With respect to the cause of action for professional negligence, the ACC

9  complaint alleged that because of a long-term business relationship with plaintiffs, Ehrenfeld

10 knew and understood plaintiffs' business and undertook to secure appropriate insurance coverage

11 but allegedly breached that duty by failing to provide the same. They now seek to make basically

12 the same allegations against the same broker in an attempt to destroy diversity.

13      Similarly, the ACC complaint alleged with respect to the negligent misrepresentation

14 cause of action that the same broker had a duty to procure the insurance requested and/or needed

15 by the plaintiffs and represented that they were experienced in designing an appropriate

16 comprehensive insurance program. In July, 2006, plaintiffs alleged in the ACC Lawsuit that they

17 relied on those representations to their detriment. [Exhibit A to Uno Decl.] In this suit, plaintiffs

18 make essentially the same assertions of negligent misrepresentation against the same broker. In

19 fact, a side-by-side comparison between the causes of action in the second amended complaint

20 against the broker in the ACC Lawsuit and the causes of action against the same broker in the

21 proposed first amended complaint plaintiffs seek leave to file here suggests that entire paragraphs

22 were copied from the ACC complaint and pasted into the proposed amended complaint at issue.

23      Thus, there is absolutely no question that at the time of the filing of this suit, plaintiffs and

24 their counsel were well aware of Michael Ehrenfeld Company's potential liability to plaintiffs if

25 coverage were not afforded for the Hidden Glen lawsuit. When plaintiffs filed this case,

26 repeatedly alleging that AMCO had unreasonably denied coverage as early as November 2005,

27 they must have made a calculated decision not to include Michael Ehrenfeld Company as a

28 defendant. The absence of Ehrenfeld as a defendant in this case cannot have been an oversight

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1    and plaintiffs do not claim it was.  Only since the removal of this lawsuit to this Court, however,

2    have plaintiffs taken action to join Ehrenfeld, despite their full and long-time appreciation of its

3    potential liability.  Given these circumstances, plaintiffs' motion for leave to amend should be

4    denied.

## II.    FACTUAL BACKGROUND

This is defendants' first opportunity to explain the nature and background of this bad faith lawsuit.  In light of the inaccuracies in plaintiffs' "Statement of Facts" in their motion, the following corrections will be helpful to the Court:

1.    The AMCO insurance policy at issue was not issued to all the "plaintiff insureds." The named insureds to the policy attached to plaintiffs' complaint are

- ACDW Properties/Giannella Properties;

- 4-Way Farms, a California corporation;

- South Maple Street LLC, a California limited liability company; as

"mortgagee, assignee or receiver of your property" or "manager or lessor" of leased premises;

Thus, all the plaintiffs may not be insureds.

2.    The individuals and entities named in the Hidden Glen lawsuit are

- 1800 South Maple Street, LLC;

- Ralph Giannella, individually and as co-trustee of the Ralph Giannella and Keitha Giannella Revocable Trust;

- William Ayyad;

- William G. Ayyad, Inc.;

- Keitha Giannella, individually and as co-trustee of the Ralph Giannella and Keitha Giannella Revocable Trust;

- Premier Communities, LLC;

- Dan Tomasi; and

- Mark Holmes Construction

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1    Thus, all the plaintiffs may not have faced liability in the Hidden Glen suit.

2         3.    Contrary to plaintiffs' assertions, the policy at issue, AMCO policy no. ACP BPH

3    7801069841, was in effect from April 4, 2002 through November 25, 2002, not April 4, 2002

4    through April 4, 2003. In other words, the policy was in effect for only seven and a half months,

5    not the full year presented by plaintiffs.

6         4.    While plaintiffs were in the business of purchasing apartment complexes,

7    renovating and converting them into condominium units for sale, they were also in the business of

8    purchasing apartment complexes and renting apartment units.

9         5.    When the Hidden Glen lawsuit was first filed on August 18, 2005, it was not

10   brought by "purchasers and their homeowners association". Rather, the only plaintiff was the

11   Hidden Glen Maintenance Corporation, the condominium association. As far as defendants

12   know, no individual unit owners were ever named as plaintiffs.

13        6.    The Hidden Glen complaint was first tendered to AMCO on or about

14   September 20, 2005. AMCO initiated its coverage investigation and requested information about

15   the underlying project from the general counsel of one of Mr. Ayyad's companies, Vekeno

16   Kennedy. On October 28, 2005, responding to AMCO's request, Ms. Kennedy, wrote to Robert

17   Johnson, AMCO's claims professional, and enclosed a copy of Hidden Glen's demand letter for

18   repair costs and the "Declaration of Covenants, Conditions and Restrictions and Reservations of

19   Easements for Hidden Glen" ("CC&Rs").

20        7.    AMCO responded by letter dated November 10, 2005, and plaintiffs

21   mischaracterize the letter when they contend that "on or about November 10, 2005, defendants

22   [AMCO] without full and proper investigation of the claim, denied all liability under the AMCO

23   policy and refused to undertake the defense of the underlying third party action." [Exhibit H to

24   "Declaration of L. Brant Noziska in Support of Plaintiffs'' Motion for Order Permitting Leave to

25   Amend Complaint" hereafter "Noziska Decl."] Prior to AMCO's letter of November 10, 2005,

26   Mr. Johnson called Ms. Kennedy for additional information and scheduled a meeting for the

27   purpose of reviewing the requests for information. Ms. Kennedy cancelled the meeting and

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

4

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1    AMCO did not receive the requested information, prompting Mr. Johnson to write on

2    November 10, 2005.

3         8.    That letter was not a denial of coverage as plaintiffs represent.  Rather, Mr.

4    Johnson summarized the facts that he knew about the Hidden Glen case, noted certain

5    information in the CC&Rs that might impact coverage, cited policy terms that might apply and

6    provided a list of coverage issues under consideration and documentation and information he still

7    needed to complete the coverage investigation.  Mr. Johnson, in an open and detailed manner,

8    essentially described AMCO's understanding of the underlying dispute with the unit owners, the

9    coverage questions raised by such claims, the policy terms that might be relevant, and the

10    information that could help resolve the questions.  In closing, Mr. Johnson wrote:

11
        I am anxious to gather the documentation and information necessary to make a
12        decision on whether or not the AMCO policy affords coverage for the claims
         asserted in the complaint filed by the Hidden Glen HOA so AMCO can properly
13        respond to your tender.  You have already agreed to send me selected documents.
         I hope they include documents that will answer some of the questions posed
14        above.

15        …

16
        Please call me at 619-668-6559 when you have gathered sufficient documents and
17        information to allow us to have a constructive meeting on this matter.

18    [Exhibit H to Noziska Decl.]

19         Nonetheless, plaintiffs steadfastly represent that Mr. Johnson's November 5, 2005 letter

20    constituted an unreasonable and improper denial of coverage.

21         9.    It was not until January 12, 2006, that AMCO finally received a response, not from

22    Ms. Kennedy but from her assistant, enclosing another copy of the Hidden Glen complaint,

23    notices of acknowledgement of service signed for Mr. Ayyad and Ayyad Inc., a notice of a ruling

24    staying the proceedings and the same repair estimate previously provided with some additional

25    invoices for repairs.  [Exhibit B to Uno Decl.]  There was no response to most of the questions

26
     Mr. Johnson had asked and most of the information he requested was not supplied.

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

5

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

10.     Accordingly, in late January 2006, having heard nothing more from any insured or representative of an insured, AMCO referred the file to the Miller Law Firm to assist with the coverage investigation and evaluation.  As of March 3, 2006, no additional information had been provided in response to the outstanding requests, prompting attorney Scott Johnson of the Miller Law Firm to write to Ms. Kennedy.  [Exhibit I to Noziska Decl.]  Similar to Robert Johnson's letter, attorney Johnson's letter reviewed in detail the allegations of the Hidden Glen complaint, the potentially relevant policy language, the claim investigation to date and set forth attorney Johnson's coverage analysis based on the information that had been obtained to date.

11.     As to this letter, plaintiffs assert in their "Statement of Facts" that on or about March 3, 2006, defendants again, without proper investigation, denied all liability under the AMCO policy.  In addition, the plaintiffs assert that AMCO accused its insureds of fraud in the application and threatened a recession action.  Attorney Johnson did not accuse the insureds of fraud nor did he threaten an action for recession.  Rather, he wrote,

> Based on the file materials now available it cannot be said with certainty whether an action by AMCO for recession of the insurance policy would be appropriate. However, such an action may subsequently prove warranted by the facts, and if recession is granted, AMCO would be relieved of any obligations under the policy.

[Exhibit I to Noziska Decl.]

Following a detailed review of the relevant policy provisions and their application to the various claims and causes of action, he also advised that it was his opinion that the complaint did not allege any potentially covered claims against any of AMCO's insureds and that AMCO had independently conducted its own evaluation and had reached the same conclusion.  However, he also wrote,

> As discussed at the beginning of this letter, there are still uncertainties regarding the relationships between, and capacities of, AMCO's insureds and the defendants named in the complaint.  To ensure that no basis for coverage of an AMCO insured has been overlooked, it would be appreciated if you would provide the information requested in the second section of this letter.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

6

However, no facts of which AMCO is currently aware indicate that there is any potential for coverage of the claims against any of AMCO's insureds or any of the defendants named in the complaint. Consequently, if you choose not to respond to this letter, AMCO has requested me to inform you that the request for coverage of the Hidden Glen litigation can be considered denied.

[Exhibit I to Noziska Decl.]

Attorney Johnson's letter certainly did not close the door to a response from Ms. Kennedy nor did it discourage her from providing the information that AMCO had requested months earlier. The only response to attorney Johnson's letter was a letter dated March 9, 2006, from another assistant to Ms. Kennedy, advising that they were reviewing files for the requested information. [Exhibit C to Uno Decl.] No additional information or response to the coverage questions or the preliminary coverage position was forthcoming.

12.     Rather, more than a year later, on or about May 7, 2007, AMCO's coverage counsel received a letter from Rockwood & Noziska accusing AMCO of unreasonably denying the claim on November 10, 2005 and again on March 3, 2006. [Exhibit D to Uno Decl.] Further, counsel asserted that AMCO had put their clients in a position where they had no alternative but to cut their losses and settle the Hidden Glen suit with their own money. They listed multiple settlement payments and expenses and fees incurred totaling $1,529,328.87 and demanded that AMCO repay this entire amount as well as additional fees or be faced with a lawsuit.

13.     Miller Johnson Law (formerly Miller Law Firm) responded on May 21, 2007, and recounted the history of AMCO's coverage investigation, questions and requests for information. [Exhibit E to Uno Decl.] In closing, attorney Johnson advised that it remained his opinion, and AMCO concurred, *that based on the information that had so far been provided*, there was no duty under the insurance policy to cover the claims in the Hidden Glen action. However, he had no desire to render an opinion that erroneously denied coverage to an insured and therefore, explained:

. . . if you are aware of another policy issued by AMCO or its affiliated companies which may cover some or all of your clients, or if you believe there are mistaken assumptions of fact or conclusions of law in my coverage analysis, please let me

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

7

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1    know as soon as possible.  Also, and despite the long period of time which its

2    request has been ignored, AMCO is still willing to consider any information you

3    could provide regarding your relationships between the named insured and the

4    named defendants which might indicate a potential for insured status.

5        14.    No response was forthcoming and on September 20, 2007, the plaintiffs served

6    AMCO with this suit.

7        The ACC Lawsuit to which plaintiffs continually refer in making their argument  that

8    AMCO wrongfully denied coverage for the Hidden Glen action provides the most persuasive

9    support for AMCO's opposition to plaintiffs' motion for leave to amend.  If, as the plaintiffs

10   contend, these lawsuits are so parallel and similar, then plaintiffs should have named the Michael

11   Ehrenfeld Company as a defendant to this case at its inception.  Plaintiffs cannot deny that they

12   were fully aware of Ehrenfeld's role in procuring their insurance and its potential liability if there

13   was no coverage.

14       Nor should the plaintiffs be allowed now to turnabout to accommodate their motion to

15   amend and represent now that they were unaware of Ehrenfeld's potential liability when they

16   filed suit, because it was unclear whether AMCO had denied coverage, when they repeatedly

17   allege in that suit that AMCO wrongfully denied coverage as early as November 2005.  Plaintiffs

18   simply have no legitimate reason for bringing Ehrenfeld into the case at this late date other than to

19   destroy diversity and obtain a remand to state court.  Their motion should be denied.

20   **III.    ANALYSIS**

21       **A.    The General Rule of § 15(a) of the Federal Rules of Civil Procedure**

22           **Regarding Leave to Amend Does Not Apply to Diversity-Destroying**
             **Amendments to Pleadings; A Stricter Six-Factor Standard Applies**

23       Plaintiffs incorrectly and inconsistently rely on FRCP 15(a) to support their contention

24   that leave to amend pleadings is freely granted in a case where the amendment would destroy

25   diversity jurisdiction and force remand of the case. As the plaintiffs unsuccessfully argued in *IBC*

26   *Aviation Services, Inc. v. Compania Mexicana de Aviacion, S.A.*, 125 F.Supp.2d 1008 (N.D.Cal.

27   2000), plaintiffs here assert that "[l]eave to amend the pleadings is freely given unless the

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

1    opposing party makes a showing of undue prejudice, or bad faith, or dilatory motive on the part of

2    the moving party." The court rejected that very standard, holding:

3        These are the factors that courts use **generally**. While there is a certain degree of
         overlap, courts use the factors recently listed in *Palestini*[1] to scrutinize amendment
4        more closely when the amendment will defeat diversity jurisdiction.

5    *Id.* at 1011; *accord Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1086-87 (C.D. Cal. 1999)

6        Plaintiffs' inclusion of Section III.A in their Motion for Leave is curious because they

7    actually address in Section III.B the correct six-factor *Palestini* standard that must be used by the

8    Court in the exercise of its discretion in determining whether leave to amend should be granted

9    when leave will destroy diversity jurisdiction. Whether intentional or not, Plaintiffs' decision to

10   discuss the F.R.C.P. Section 15(a) standard is superfluous and diverts attention from the proper

11   test to be employed in these circumstances. Section III.A should simply be ignored.

12       **B.    Plaintiffs' Motion for Leave to Amend Their Complaint Must Be Denied**

13       Defendants agree with plaintiffs that 28 U.S.C. §1447(e) generally governs whether a

14   court should allow an amendment to a removed complaint that would destroy diversity. Because

15   the decision under § 1447(e) is a discretionary one, courts consider all issues that bear on whether

16   or not the amendment should be allowed. Ultimately, because the exercise of that discretion

17   cannot be arbitrary, the six factors formulated in *Palestini* have been universally adopted to assist

18   the courts.

19       A thorough analysis of § 1447(e), which became law in 1988, and a review of the

20   subsequent cases interpreting this provision demonstrate that joinder in this case is not proper

21   because the *Palestini* factors do not weigh in plaintiffs' favor. Plaintiffs' motion for leave to

22   amend the complaint should be denied.

23       **1.    The Brokers Are Not Needed For Just Adjudication and Would Not
                 Be Joined Under Federal Rule of Civil Procedure 19(a).**
24
25       Two different Rule 19(a) standards have been applied in the Ninth Circuit where joinder

26   of a non-diverse defendant would eliminate jurisdiction. First, joinder has been found permissible

27   where the non-diverse defendant is an indispensable party. Second, joinder has been found

28   _____
     [1] *Palestini v. General Dynamics Corporation*, 193 F.R.D. 654, 658 (S.D. Cal. 2000).

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

9

**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

1   permissible where failure to join would lead to separate and redundant actions. Plaintiffs fail to

2   meet either standard; thus, joinder must be denied.

3          a.      **Plaintiffs Can Receive Just Adjudication of Their Claims Against AMCO Without Joinder of the Agent, Rendering the Non-Diverse Party Dispensable.**

4

5          When a non-diverse defendant is an indispensable party whose claims are inherently

6   connected with the claims against an existing diverse defendant, the court must join the non-

7   diverse defendant and remand the case to state court. *Clinco*, 41 F. Supp. 2d at 1082. In other

8   words, "this means that the Court must consider whether [the non-diverse] defendant falls within

9   the scope of *Rule 19(a)*." *Id.* at 1082.

10         The Central District in *Clinco* decided that Rule 19(a) was not met where "there is no

11  indication that forcing [plaintiff] to sue [the non-diverse defendant] in state court would prevent

12  [the plaintiff] from receiving just adjudication of his claim against [the named defendant] in

13  federal court." *Id.*

14         In the present instance, plaintiffs cannot proffer any reason why forcing them to sue

15  Ehrenfeld in state court would prevent them from receiving just adjudication of their claims

16  against the defendants here:  first, the claims against the Ehrenfeld are completely different from

17  those made against AMCO, to wit, negligent misrepresentation and negligence in failing to secure

18  coverage versus breach of contract and bad faith. Second, in their case plaintiffs seek coverage

19  from AMCO under the subject policy (breach of contract). The court can readily interpret the

20  policy and make the ultimate coverage decision without the presence of the broker. Indeed,

21  courts do this everyday all over the land. Put another way, the broker is not necessary in this case

22  for adjudication of plaintiffs' claims against AMCO. They can obtain complete relief without the

23  presence of the broker.

24         While joinder of the two actions may be convenient for plaintiffs, convenience is not a

25  factor. Because the plaintiffs originally filed in state court, it is safe to assume that they preferred

26  state court, but their preference is not a factor. Because Ehrenfeld is not an indispensable party

27  under Rule 19(a), its joinder in the case is not required or preferred.

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

10

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       **b.**     **Joinder Is Not Necessary Because Denial Will Not Lead to Redundant Actions.**

Joinder has also been permitted where failure to join would lead to separate and redundant actions and where the non-diverse defendant is more than just tangentially related to the cause of action. *IBC Aviation Services*, 125 F. Supp. 2d at 1011-1012. In other words, § 1447(e) demands a determination of whether the non-diverse defendant is "crucial." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998).

In *Newcombe*, the court found the non-diverse defendant was not crucial because whatever damages the plaintiff sought "could be fully satisfied by the other defendants" and plaintiff "could still proceed separately against [the additional defendant] in state court." *Id.* This is precisely the case here. Indeed, another federal court has already faced the question of joining a non-diverse broker in a coverage dispute and found the broker not crucial. *Farrugia v. Allstate Insurance Co.*, 2007 U.S. Dist. LEXIS 22628 (N.D. Cal. 2007) (finding joinder of the agent in the action by the insured against the insurer for coverage unnecessary under § 1447(e)).

Similarly, nothing precludes plaintiffs from proceeding against Michael Ehrenfeld Company in state court, as it has done in the past, and plaintiffs seek damages that can be fully satisfied by AMCO. In that case, a suit against the broker would be superfluous and without merit. *See* Plaintiffs' Motion for Leave to File as Amended Complaint 1:18-20 ("Plaintiffs have met and conferred on the issue of coverage, advising AMCO counsel that an admission of coverage on its part would render the proposed amendment unnecessary.") Indeed, plaintiffs are not even damaged by Ehrenfeld until and unless the Court finds that the AMCO policy does ***not*** cover the losses they allege.

The leading case in the area, *Palestini,* is informative in this regard. There, the employee plaintiffs sued their employer for knowingly exposing them to dangerous carcinogens that caused plaintiffs' cancer. After removal by the employer, the court permitted plaintiffs to join the non-diverse chemical company that manufactured and supplied the hazardous carcinogens. The court held: "While Plaintiffs' claims against the original Defendants and the Chemical Company Defendants are based upon different theories of liability, they share the substantial issue of

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

11

**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

1   causation (i.e., whether the chemicals at issue caused . . . cancer), which would be litigated twice

2   in separate actions."

3       Here, not only are different theories of liability alleged against the insurer and the broker,

4   but the defendants do not even share the issue of causation with it. The causative element of

5   plaintiffs' claims against their insurer is its refusal to provide coverage pursuant to the terms of

6   the insurance policy. On the other hand, the causative element of their claim against the

7   broker/agent is its alleged misrepresentation and/or its negligence in failing to procure an

8   insurance policy that would cover plaintiffs' business activities. Litigation on the second issue of

9   the broker's conduct is, therefore, predicated on a prior adjudication of the issue of coverage.

10  Plaintiffs need not fear redundant relitigation of the same issues in separate actions because the

11  same issues are not presented by the two claims.

12      Plaintiffs' reliance on *Boon* is based on an incomplete reading of the case. Plaintiffs claim

13  that "one of the two defendants to be added was the defendant insurer's agent [Ronald A.

14  Schmidt]." *See* Plaintiffs' Motion for Leave to File Amended Complaint 7:5-7. This is factually

15  incorrect. *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1018 (C.D. Cal. 2002) ("Plaintiffs . . .

16  initiated this action . . . naming as defendants Allstate Insurance Group . . . and Ronald A.

17  Schmidt."). The issue with the agent was whether he was diverse for purposes of jurisdiction, not

18  whether joinder based on the claims against an insurance agent was appropriate. Further, the

19  court never related the claims against the insurer and the agent, as plaintiffs would have the Court

20  believe. The court considered the interrelatedness between the insurer and the insured, and the

21  agent and the insured separately. The court made no analysis as to the interrelatedness between

22  the agent and the insurer, **because it was not an issue.**

23      Any reliance on *Desert Empire Bank v. Insurance Company of North America* is also a

24  mistake. 623 F.2d 1371 (9th Cir. 1980). *Desert Empire Bank* was decided well before the

25  enactment of § 1447(e) and is, therefore, of extremely limited authority. *Gunn v. Wild*, 2002 U.S.

26  Dist. LEXIS 3628 (N.D. Cal. 2002). *Desert Empire Bank* is now severely flawed because it uses

27  the permissive Rule 20(a) joinder standard to ascertain whether joinder is "proper." *Id.* at 1374-

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

75.  Since Section 1447(e) was enacted in 1988, Rule 20(a) has never been used to analyze whether joinder that destroys diversity should be allowed.

Further, the joinder at issue in *Desert Empire Bank* depended on a factual element missing in this case.  After notice of cancellation of the policy at issue there had already been sent, the agent specifically informed the insured of pending insurance through another insurer and that the insurer would cover until the insured obtained coverage from the other carrier.  This specific instance of misrepresentation compelled the court to permit joinder under Rule 20(a).  *Id.* at 1376. The only misrepresentation plaintiffs allege in the amended complaint is a generic misrepresentation by the agent  that it would procure coverage for plaintiffs' business needs.

Finally, Plaintiffs' reliance on *Ingersoll v. Pearl Assurance Company* is misplaced for the same reasons.   153 F. Supp. 558 (N.D. Cal. 1957).  *Ingersoll* was decided more than 30 years prior to the enactment of § 1447(e).  Also, the facts in *Ingersoll* are totally different from those in this case.  There, *the resident defendant had already been named as a party in the complaint filed in the state court*. *Id.* at 560.  *Based on this fact, the court distinguished its holding from amendments where joinder of the non-diverse defendant would force a remand, as it would in this case*. *Id.* at 559-560.  The same can be said for the broker in the ACC Lawsuit, but not in the present case.

Adjudication of this factor weighs in favor of AMCO.

### 2.    The Statute of Limitations Does Not Preclude an Original Action Against the Broker in State Court.

Although plaintiffs mention the statute of limitations factor in their points and authorities, it is conspicuously missing from their analysis, perhaps because it weighs heavily in favor of defendants.  The extent to which a statute of limitations would adversely affect a plaintiff's ability to bring a separate suit against the proposed party is relevant to the equitable nature of § 1447(e). This makes sense, but if a plaintiff's action against a new party is not time-barred and plaintiff can receive just adjudication in state court, equity lies in favor of denying the joinder. *Newcombe v. Adolf Coors Co.* 157 F.3d 686, 691 (9th Cir. 1998).  Failure to address this singular factor, in the face of analyzing all the others, must be interpreted as an implicit admission that the factor

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

13

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1   does not support the motion. *Boon v. Allstate Ins. Co.* 229 F. Supp. 2d 1016 (C.D. Cal. 2002);

2   *Clinco v. Roberts* 41 F.Supp.2d 1080, 1083 (C.D. Cal. 1999). Even without the benefit of this

3   admission, there is no evidence, claim or agreement that plaintiffs' claims against the Ehrenfeld

4   are time-barred if they have to sue in state court.

5          Adjudication of this factor also weighs in favor of AMCO.

6              **3.    Timing of the Proposed Joinder Is Suspicious and the Explanations as
                       to the Delay Are Insufficient.**

7          Plaintiffs assert in their motion that courts consider whether the amendment has been

8   attempted in a timely fashion. Plaintiffs' Memorandum of Points and Authorities 8:13-14 (*citing*

9   *Clinco*, 41 F. Supp. 2d at 1083). Defendnats agree, but timeliness is not based strictly on the

10  number of days or months elapsed from the initial filing of the complaint to the attempt to amend.

11  Suspicious timing of the proposed amendment is also relevant. *See Bonner v. Fuji Photo Film*

12  461 F. Supp. 2d 1112 (N.D. Cal. 2006).

13         In *Bonner*, the plaintiff filed suit on January 13, 2006, only to have the case removed to

14  the Northern District of California on July 17, 2006. The plaintiff responded soon thereafter by

15  filing a motion to join additional non-diverse defendants. In rejecting the proposed amendment,

16  Judge Breyer opined that the plaintiffs' timing was "suspicious," in fact, "glaring given that she

17  has long known about [the alleged wrongdoings] and that she knew for some time before the case

18  was removed about the existence of [the non-diverse defendant]." *Id.* at 1120.

19         In *Farrugia v. Allstate Insurance Company*, the court considered facts remarkably close to

20  those in this case. 2007 U.S. Dist. LEXIS 22628 (N.D. Cal. 2007). The plaintiff/insured filed a

21  state court action on November 27, 2006, against the insurer for failing to provide coverage for an

22  underlying third-party action. The defendant removed the case to federal court on January 11,

23  2007. Plaintiff immediately sought leave to amend the complaint to add the insurer's agent, a

24  non-diverse party, in a misrepresentation cause of action. The court denied the motion and stated,

25  "plaintiff does not explain why he waited until January 2007 – two months after the action was

26  initially filed in state court – to add [the] defendant." *Id.* at *5-6. In the instant case, the timing

27  of plaintiffs' motion is similarly suspicious, and they fail to provide a legitimate explanation of

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

14

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1    why they did not sue Michael Ehrenfeld Company earlier.

2         Plaintiffs have known for years that AMCO might not provide coverage.  Indeed, they

3    actually claim in their complaint repeatedly that AMCO initially denied coverage in November of

4    2005 and again in March of 2006.  They even attached copies of the purported declinations as

5    exhibits to the complaint.  Throughout the complaint and consistently in proceedings thereafter

6    plaintiffs have referred to these letters as declinations of coverage.  Indeed, the factual basis of all

7    their claims is the purported 2005 declination, reaffirmed, they claim, in March 2006.  In the face

8    of their own allegations how can they have any credibility when they now say that they did not

9    know of AMCO's denial of coverage until after removal.  AMCO's position has remained the

10    same from 2005, when coverage was first sought, to today.  In view of the complete transparency

11    of AMCO's position, plaintiffs' proffered reasons for failing to sue Michael Ehrenfeld Company

12    in the original complaint are simply unbelievable.

13         Moreover, plaintiffs not only "knew for some time before the case was removed about the

14    existence of the non-diverse defendant," *but admit to having conducted business with AMCO*

15    *through Michael Ehrenfeld Company for nearly ten years*.  In fact, plaintiffs admit having sued

16    Michael Ehrenfeld Company in the ACC Lawsuit.  Indeed, they made the same claims against

17    Ehrenfeld in that case (in state court) that they seek leave to raise here.  Surely, plaintiffs were not

18    oblivious to Michael Ehrenfeld Company's role as their agent and the nature of their claims

19    against it.  They even took its deposition in the ACC Lawsuit.  When they filed this case in state

20    court, they certainly knew that they could have named Ehrenfeld as a co-defendant, as they had

21    done in that case.  The decision to refrain then and to seek amendment now is highly suspicious.

22    Plaintiffs' tactics can only be explained by their desire to destroy diversity and force the case out

23    of federal court.

24         Notably, in both *Farrugia* and *Bonner*, only a few months had passed between the filing

25    of the initial complaint in state court and the motion for leave to amend the complaint in the

26    federal court.  Thus, the passage of only two months or six months, or any other short time

27    period, between the filing of the complaint and the proposed amendment is not dispositive of the

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

15

**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

1   timeliness factor.  Leave to amend was denied in both *Farrugia* and *Bonner* and should similarly

2   be denied here.

3          Adjudication of this factor weighs in favor of AMCO.

4          **4.    Plaintiff's Motivation for Seeking to Add Michael Ehrenfeld Company**
           **Now as a Defendant Is to Destroy Diversity and Remand the Case**

5          **Back to State Court.**

6          The singular case plaintiffs cite to support this factor, *Boon v. Allstate Insurance*

7   *Company*, states as a rule: "The motive of a plaintiff in seeking the joinder of an additional

8   defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his original

9   complaint."  229 F. Supp. 2d 1016, 1023 (C.D. Cal. 2002).  Contrary to plaintiffs' argument to

10  the Court, analysis of this factor does not depend on eliminating every conceivable excuse for

11  seeking the amendment.  *See* Plaintiffs' Motion for Leave to File Amended Complaint 10:17-20

12  ("Plaintiffs' motive here in amending the complaint is not *solely based on destroying diversity*,

13  for Plaintiffs' efforts in the prior case would have been pointless *if destroying diversity was the*

14  *only motivation*.")  Any reasonably intelligent attorney should be able to articulate bases for

15  amending a complaint beyond destruction of diversity jurisdiction.  If this were truly the standard,

16  the threshold for overcoming the "motivation" factor would be insurmountable for any defendant.

17  But this is not the case in the Ninth Circuit, and several cases therein shed light on how to apply

18  this factor correctly.

19         In *Clinco v. Roberts*, the plaintiff attorney sued, as his client's representative, the client's

20  partner for mishandling trust and partnership accounts.  41 F. Supp. 2d 1080 (C.D. Cal. 1999).

21  One month later, the defendant removed the case to federal court.  The plaintiff attempted then to

22  add the trust and its trustees as defendants, thereby destroying diversity.

23         The court found the plaintiffs' attempt to add the co-defendants weak.  "Apart from

24  various editorial differences, the first amended complaint adds a one-sentence allegation to the

25  first cause of action and slightly alters the sixth cause of action.  In addition, the first amended

26  version contains descriptions of the new defendants."  *Id.* at 1083.  Therefore, "one could

27  justifiably suspect that Clinco's amendment of the complaint *was caused by the removal rather*

28  *than an evolution of his case*."  *Id.* (Emphasis added.)

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

16

**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

1    The same conclusion can be drawn in the present case. The parallels between this case

2  and *Clino* are clear. Two changes have been made between the original complaint and the

3  proposed first amended complaint. The amendment contains descriptions of the new defendant,

4  cut and pasted from plaintiffs' prior complaint against the same entity. *See* Second Amended

5  Complaint of the ACC Lawsuit. Two new causes of action are added, both in relation to Michael

6  Ehrenfeld Company, again cut and pasted from the Second Amended Complaint in the ACC

7  Lawsuit. As in *Clinco*, one could justifiably suspect that these minor changes were caused by the

8  removal rather than an evolution of the case, even more so here because there has been no

9  "evolution of the case." AMCO's position has been the same since 2005.

10    In *Miskuski v. Crescent Heights of America, Inc.*, the Southern District also found the

11  plaintiffs' joinder motive to be disingenuous, after consideration of facts remarkably similar to

12  those here. 2007 U.S. Dist. LEXIS 37223 (S.D. Cal. 2007). Two months after the formerly

13  employed plaintiff filed a state court complaint, the defendant employer removed the case. In

14  ruling that "the only reason plaintiff seeks to join [the additional defendant, i.e., the human

15  resources employee,] is to destroy diversity jurisdiction," Justice Moskowitz stated: "Plaintiff

16  knew of [the additional defendant] and his involvement in the events underlying Plaintiffs' claims

17  at the time Plaintiff filed her original complaint on July 28, 2006. The original complaint actually

18  identified [the additional defendant] by name." *Id.* at *10.

19    The same is true here: plaintiffs admit they "knew of [Michael Ehrenfeld Company] and

20  [its] involvement in the events underlying [the] claims in the original complaint . . ." Here, too,

21  the "original complaint actually identified the broker by name." The ACC Lawsuit filed by

22  plaintiffs against AMCO also identified Michael Ehrenfeld Company by name and raised the

23  same causes of action plaintiffs attempt to present here.

24    This Court should not be persuaded by plaintiffs' effort to distinguish the instant case on

25  the basis of their claim that AMCO failed to confirm lack of coverage until after removal. This is

26  simply not true. ***AMCO has maintained exactly the same position on coverage for two years***.

27  That position is the position AMCO's counsel in his letter of March 6, 2006, an exhibit to the

28  original complaint. It was AMCO's position then, before removal. It is AMCO's position now.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

1  It was AMCO's *preliminary*, conditional observation in 2005 and 2006, that there was no

2  coverage for the Hidden Glen suit but that a final, conclusive coverage determination would not

3  be made until plaintiffs furnished additional requested information about the identities of the

4  claimants and their status as insureds. Plaintiffs have still not supplied the information, and that

5  is still AMCO's position. There has been no "evolution" of the case and no "confirmation" that

6  there is no coverage. Plaintiffs do not point to a single document as evidence of this

7  "confirmation" because there is none. The argument is completely disingenuous.

8          Finally, plaintiffs point to the ACC Lawsuit to establish their intentions in attempting to

9  add Michael Ehrenfeld Company as a defendant. Their reasoning here, too, is unavailing. The

10  motivation factor for § 1447(e), like the statute of limitations factor, is highly dependent on the

11  timing of the motion. The ACC Lawsuit establishes conclusively that Michael Ehrenfeld

12  Company was no stranger to plaintiffs at the time they filed the original complaint in this case.

13  Plaintiffs had already sued it for the exact same causes of action, negligent misrepresentation and

14  professional negligence, in the ACC Lawsuit. The logical conclusion to be derived, then, is that

15  plaintiffs made a deliberate, strategic decision not to name Michael Ehrenfeld Company in the

16  original complaint, for whatever reason. Plaintiffs easily could have sued Ehrenfeld in the

17  original complaint, instead of suspiciously attempting to add it after the case had been removed.

18  Their disingenuous argument is no substitute for fact.

19          Adjudication of this factor weighs in favor of AMCO.

20          **5.     Denial of Joinder Cannot Prejudice Plaintiffs Because the Broker May
                     Still Testify at Trial, Plaintiffs May Still Proceed Against the Broker in**

21          **State Court, and Plaintiffs' Case Against the Broker Is Moot if
                     Coverage Is Found.**

22
          Plaintiffs will suffer no prejudice by the absence of Michael Ehrenfeld Company's joinder

23  as a co-defendant. Courts within the Ninth Circuit have repeatedly concluded that prejudice does

24  not exist under circumstances substantially similar to those presented here.

25          A plaintiff does not suffer prejudice due to the absence of an additional defendant as a

26  party where the plaintiff can subpoena the proposed new defendant to testify at trial, and if he so

27  chose, can proceed separately against the additional defendant in state court. *Newcombe*, 157

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

18

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1    F.3d at 691; *Boon*, 229 F. Supp. 2d at 1025; *Miskuski*, 2007 U.S. Dist. LEXIS at *9-10. Prejudice

2    is also missing where the originally named defendant remains a party and a potential source for

3    payment of all damages. *Boon*, 229 F. Supp. 2d at 1025.

4         The same can be said here. Plaintiffs have a remedy available in state court against

5    Michael Ehrenfeld Company, if they so choose. The broker's absence from this case would not

6    hinder the instant case against AMCO. The issues are not similar. The causes of actions are

7    different. Plaintiffs' case against AMCO is grounded in its alleged failure to adhere to the terms

8    of the insurance contract by refusing to provide coverage for a specific claim against plaintiffs.

9    Their case against the broker is grounded in negligence for an alleged failure to procure the

10   necessary coverage for their business in general.

11        The facts are distinct. The contract case against AMCO depends on the terms of the

12   policy, the factual claims of the underlying third party against insureds under the policies and the

13   source(s) of the settlement funds. The negligence case depends on the broker's representations to

14   the insured, the scope of its engagement, the work it did to procure the insurance policies, and

15   whether or not it departed from the standard of care (calling for expert testimony). None of these

16   issues is in the case against AMCO. Indeed, it can be honestly argued that joinder will

17   unnecessarily complicate that case, not the opposite.

18        Finally, the cases are procedurally distinct. Assuming, *arguendo*, that the court finds that

19   coverage exists for the Hidden Glen claim, all of plaintiffs' damages can be fully recovered from

20   AMCO. The case against the broker would then become moot. Conversely, if coverage does not

21   exist, plaintiffs' case against the broker for failing to secure a policy appropriate to plaintiffs'

22   business becomes ripe for adjudication. These two cases necessarily cannot be adjudicated

23   concurrently without unduly complicating each. Plaintiffs can readily file their claim against

24   Ehrenfeld in state court and stay that case until this Court has ruled on the issue of coverage or

25   they can await that decision and file against Ehrenfeld only if and when AMCO loses. This is

26   done all the time. In both scenarios, there is absolutely no risk of inconsistent rulings on the issue

27   of coverage. The issue of coverage will be adjudicated before any ruling on the case against the

28   broker and plaintiffs' fears of inconsistent rulings by the federal and state courts on the issue of

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

1  coverage are groundless.

2        Adjudication of this factor weighs in favor of AMCO.

3    **6.    The Claims Against the Brokers Do Not Appear Valid.**

4        Where the other factors do not favor allowing joinder of the additional defendant, the

5  court need not consider the validity or strength of the proposed claims against the broker. *Boon,*

6  229 F.Supp.2d. at 1025.  But if the court chooses to consider the issue of validity, the standard is

7  whether a new claim sought to be added "seems to have merit." *Clinco,* 41 F.Supp.2d at 1083.

8        In *Clinco,* the court considered the validity of an intentional infliction of emotional

9  distress cause of action and gave as close a definition of the standard as any court has in

10  analyzing §1447(e).  The court stated: "Although [the plaintiffs'] claim against [the additional

11  defendant] might survive a motion to dismiss because of the liberal pleading rules, it would be

12  unlikely to survive a motion for summary judgment." *Id.* at 1084.

13        Without damages, we can say with conviction in this case that the claim against Ehrenfeld

14  would be "unlikely to survive a motion for summary judgment."  At the very least the claim is

15  premature and would likely be stayed pending outcome of the coverage dispute.   It surely makes

16  little sense to permit the addition of a non-diverse defendant, whose presence is not indispensable

17  or "crucial," but which will destroy diversity, only to have that very claim stayed pending

18  resolution of the case-in-chief.

19        Moreover, it would be unfair.  Defendants had the right to remove.  They exercised a right

20  granted on the basis of a strong conviction that foreigners would get a fairer trial in a federal court

21  than in a plaintiff's hometown court, and defendants still hold to that belief.  In the face of a

22  transparent effort by plaintiffs to regain the home court advantage, the Court should deny the

23  motion and give the defendants their day here.

24  ///

25  ///

26  ///

27  ///

28  ///

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

20

OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

1  IV.    **CONCLUSION**

2          Defendants respectfully submit that the application of the six-factor *Palestini* test, as it has

3  been applied by the courts, compels a denial of the motion.  Adjudication of all the factors weighs

4  in defendants' favor and they respectfully urge the Court to deny.

5

6  Dated: February /5, 2008                    LONG & LEVIT LLP

7

8                                         By   *Howard M. Garfield*
                                                ———————————————————
9                                               HOWARD M. GARFIELD
                                                Attorneys for Defendants
10                                              ALLIED PROPERTY AND
                                                CASUALTY INSURANCE
11                                              COMPANY, AMCO INSURANCE
                                                COMPANY, and NATIONWIDE
12                                              MUTUAL INSURANCE COMPANY

13

14

15

16

17

18  DOCS\S5240-336\545306.V2

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

21
**OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**