# EXHIBIT B

UNITED DEVELOPMENT GROUP
INC.

January 12, 2006

Bob Johnson
ALLIED INSURANCE                           **VIA FACSIMILE AND U.S. MAIL**
7777 Alvarado Road Suite 202
La Mesa, CA 91944

Re:    Hidden Glen Maintenance Corp. v. 1800 South Maple Street
       *San Diego Superior Court Case No. GIC 852647*

Mr. Johnson:

Enclosed are the following documents for your review per our telephone conversation this morning:

- Complaint for Damages (Excluding Exhibit A, the CC&R's for Hidden Glen, that have already been sent to your office)
- Signed Notice and Acknowledgement of Receipts for William Ayyad and William G. Ayyad Inc.
- Notice of Ruling on Ex Parte Application to Stay Proceeding
- Correspondence from Plaintiff's attorneys containing invoices for repairs for a possible partial settlement of this matter

Should you have any questions or need anything further, please feel free to contact me.

Very Truly Yours,

**UNITED DEVELOPMENT GROUP, INC.**

Andrea Ray
Assistant to General Counsel

Enclosures

/ar

# EXHIBIT C



UNITED DEVELOPMENT GROUP
INC.

March 9, 2006

Scott A. Johnson, Esq.                 **VIA FACSIMILE AND U.S. MAIL**
MILLER LAW FIRM
The Marston Building
427 C Street, Suite 410
San Diego, CA 92101

     Re:   Hidden Glen Maintenance Corp. v. 1800 South Maple Street
          *San Diego Superior Court Case No. GIC 852647*

Dear Mr. Johnson:

We have received your letter dated March 3, 2006. Currently, we are reviewing our files for additional information per your request. Should you have any questions or need anything further, please feel free to contact us.

Very Truly Yours,

**UNITED DEVELOPMENT GROUP, INC.**

Robyn Spagnuolo
Assistant to General Counsel

/rs

MJLAW 0473

# EXHIBIT D



# Rockwood & Noziska LLP

ATTORNEYS AT LAW

5060 North Harbor Drive, Suite 255
San Diego, CA 92106

Phone: 619.224.7778
Fax:    619.224.7779
E-mail: info@rockwood-noziska.com

Writers' Email
rockwood@rockwood-noziska.com
noziska@rockwood-noziska.com

May 7, 2007

Scott Johnson, Esq.
Miller and Johnson
The Marston Building
427 C Street, Suite 410
San Diego, CA 92101

Re:  Hidden Glen v. 1800 South Maple Street, LLC
     Our File No. 1031.01

Dear Mr. Johnson:

Please be advised our office has been retained to represent Allied/AMCO's (hereinafter "AMCO") insureds with respect to the abovementioned matter, specifically with respect to AMCO's wrongful denial of our clients' claim for defense and indemnification of an action arising out of their involvement with the property located at 1800 South Maple Street, Escondido, California. For your reference, AMCO assigned the following claim number: 841.52141. Although your coverage analysis and subsequent denial were apparently performed by evaluating policy number ACP BPH 7801069841, and in light of past experiences with AMCO's claims practices, we are nonetheless hereby requesting you accept this letter as a tender of the above claim under any policy issued by AMCO which may have provided your insureds with coverage. We therefore request you investigate with your client the existence or nonexistence of any other relevant AMCO policies.

Furthermore, we have reviewed your letter of denial dated March 3, 2006 as well as AMCO's letter of denial dated November 10, 2005. Our initial concern is AMCO's speed with which it dispatches its insureds' interests in denying claims without the benefit of even suggesting the probability of a defense. Of more particular concern is your willingness to carry AMCO's torch and perpetuate a pattern of practice of accusing our clients of fraud in the application when it was AMCO's own appointed agent who secured the coverage. We suggest you review Insurance Code Section 1731 if you have any questions.

Considering the position AMCO put our clients in, our clients had no alternative but to protect themselves and cut their losses early. As you know, in another case in which our clients requested defense and indemnification from AMCO, AMCO delayed for over one year causing our clients to incur over one million dollars in defense costs alone. Moreover, at the time

**MJLAW 0467**

Johnson.05.07.07

A Partnership    Professional Corporations

Scott Johnson, Esq.
Re:    Hidden Glen v. 1800 South Maple Street, LLC
May 7, 2007
Page 2

settlement of that matter was ultimately placed on the record, our clients were forced to commit $2,000,000.00 of their own money to assure settlement. That being said, our clients were left with no alternative in this matter, after being left high and dry, but to cut their losses early and settle without the assistance of AMCO.

The settlements and expenses for this matter are summarized as follows:

| | |
|---|---|
| Phase I Settlement | $73,187.11 |
| Phase II Settlement | $839,890.52 |
| Phase II Settlement Contingency Payment | $25,360.00 |
| Phase II Supplemental Settlement | $193,904.82 |
| *Pending* (not yet paid)Phase III Settlement | $345,661.12 |
| Expenses and Fees[1] | $37,435.30 |
| Attorney's Fees[2] | $13,890.00 |
| TOTAL | $1,529,328.87 |

Demand is hereby made that AMCO reopen this claim and reimburse its insureds. The current demand is $1,529,328.87 reimbursement for monies paid for settlement *in addition to* reimbursement of all expenses paid and attorney's fees for defense of the underlying third party action. Absent any good faith attempt to resolve this matter we will be left with no alternative but to proceed with litigation.

Thank you in advance for your professional courtesy and cooperation.

Very truly yours,

NEAL H. ROCKWOOD          C. BRANT NOZISKA

NHR/CBN/clf/cka

---

[1] Expenses and fees are still under review. This total does not reflect all expenses and fees incurred.
[2] A preliminary review of some of the defense fees from 2006-2007 total $13,890.00. The remaining defense fees are still being calculated so a full amount is not yet available.

Johnson.05.07.07

# EXHIBIT E

MILLER·JOHNSON·LAW

Scott A. Johnson
Eric M. Leenerts
Jon B. Miller

The Marston Building
427 C Street, Suite 410
San Diego, California 92101

Telephone
619·232·0086
Facsimile
619·232·0089

May 21, 2007

Neal H. Rockwood, Esq.
C. Brant Noziska, Esq.
ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, CA  92106

> RE:  Hidden Glen Maintenance Corp. v. 1800 South Maple Street, LLC, et al.
> San Diego Superior Court Case No. GIC852647
> Policy No. ACP BPH 7801069841
> Claim No. 84L52141

Dear Messrs. Rockwood and Noziska:

I have received and read your letter of May 7, 2007, regarding the request for coverage of the above-referenced litigation. Please excuse my delay in responding; I had been busy with other matters, and wanted to make sure that I could give your letter careful consideration.

A.    The Request For Information

Initially, it should be noted that my letter of March 3, 2006, did not state that AMCO had unequivocally denied its insureds' request for coverage. Rather, the letter requested specific information regarding the relationships between AMCO's named insureds and the defendants in the Hidden Glen action, and said that the request for coverage would be considered denied if no responsive information was provided.

The defendants named in the Hidden Glen complaint were Ralph and Keith Gianella (both individually and as co-trustees of a revocable trust), William Ayyad, William Ayyad, Inc., 1800 South Maple Street, LLC, Premier Communities, LLC, Dan Tomasi and Mark Holmes Construction. The named insureds under AMCO policy no. ACP BPH 7801069841 are "ACDW Properties/Gianella Properties" and "4-Way Farms." Accordingly, none of the named insureds were named defendants in the litigation.[1] "South Maple Street LLC" is named as an additional insured on two endorsements, and may be the same entity as defendant "1800 South Maple Street, LLC," but the endorsements only cover liability as a "mortgagee, assignee or receiver," or as a manager or lessor of the property, and the complaint did not appear to make any allegations against any defendants acting in such a capacity.

---

[1] Your letter of May 7, 2007, does nothing to clear up the relationship between AMCO's insureds and the named defendants. In fact, you state that you represent "Allied/Amco's insureds," and you refer to your "clients" having to pay a settlement, but you nowhere identify who those "insureds" or "clients" are.

Messrs. Rockwood and Noziska
Page 2 of 3
May 21, 2007

Obviously, it could be assumed that there were connections between some of the named insureds and the named defendants -- e.g., Giannella Properties presumably involved Ralph and/or Keith Giannella, and Ralph Giannella and William Ayyad are involved with ACDW Properties. However, the mere existence of relationships as shareholders, owners, partners or employees does not create insurance coverage. Consequently, AMCO wanted information regarding the relationships, or some explanation of why it was believed that entities and/or individuals who were not named insureds were nonetheless entitled to coverage under the AMCO policy, so that careful consideration could be given to possible alternative grounds for coverage. Since both AMCO and I had independently concluded that the complaint did not allege any covered claims against the named or identified insureds, the refusal to respond to my request for information left us with no reason to believe that any of the defendants were entitled to insurance coverage.[2]

B.    The Insureds Have Not Been Accused Of Fraud

Neither AMCO's letter of November 10, 2005, nor my letter of March 3, 2006, accused your clients of "fraud." The letter of November 10 (which, contrary to your characterization, did not state that coverage had been denied), made no mention of the subject. My letter discussed the fact that the complaint's allegations, if true, indicated that material information had not been disclosed on the application for insurance, and that if subsequently "warranted by the facts," AMCO might seek rescission of the policy. This was only a reservation of rights; no claim was made that your clients engaged in fraud, or that they were directly responsible for any misrepresentation or nondisclosure on the application.

C.    AMCO Is Aware Of No Other Policies Covering Your Clients

The Hidden Glen litigation was originally tendered to AMCO under policy no. 7801069841, and the coverage analysis was performed under that policy. However, AMCO has checked to determine whether the defendants in that litigation might be insured, or whether the South Maple Street property is a "described premises," under any other policy. No such policy has been located.

D.    No Potential For Coverage Has Been Shown

It is significant that your letter nowhere attempts to address any of the specific reasons, discussed in detail in my letter of March 3, 2006, for my conclusion that coverage did not exist based on the facts known to AMCO. I still cannot see where the complaint in Hidden Glen alleges any potentially covered claim for "bodily injury" or "personal and advertising injury." And, it still seems clear that coverage of any claim for "property damage" would be completely precluded by the exclusions for "[p]roperty you own, rent, or occupy" and "premises you sell," and by the other exclusions discussed in my previous letter.

---

[2] I did receive a letter dated March 9, 2006, from Robyn Spagnuolo, Assistant to General Counsel of United Development Group, stating that "we are reviewing our files for additional information per your request." However, no further communications were received.

Messrs. Rockwood and Noziska
Page 3 of 3
May 21, 2007

Consequently, it remains my opinion, and AMCO concurs, that there was no duty under the insurance policy to cover the claims in the Hidden Glen litigation. However, I have no desire to render an opinion which erroneously denies coverage to an insured, and AMCO is not seeking to avoid any legitimate contractual obligations. If you are aware of another policy issued by AMCO or its affiliated companies which may cover some or all of your clients, or if you believe that there are mistaken assumptions of fact or conclusions of law in my coverage analysis, please let me know as soon as possible. Also, and despite the long period of time which its request has been ignored, AMCO is still willing to consider any information you could provide regarding the relationships between the named insureds and the named defendants which might indicate a potential for insured status.

Very truly yours,

MILLER JOHNSON LAW

Scott A. Johnson, Esq.

SAJ/gp

# EXHIBIT F

LEXSEE 2007 U.S. DIST. LEXIS 22628

**CHARLES FARRUGIA, Plaintiff, v. ALLSTATE INSURANCE COMPANY, and
DOES 1-50, inclusive, Defendants.**

**No. C 07-00212 WHA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

*2007 U.S. Dist. LEXIS 22628*

**March 8, 2007, Decided
March 8, 2007, Filed**

**COUNSEL:** [*1] For Charles Farrugia, Plaintiff: John N. Frye, LEAD ATTORNEY, Law Offices of John N. Frye, San Mateo, CA.

For Allstate Insurance Company, Defendant: Cynthia L. Mellema, LEAD ATTORNEY, Sonnenschein Nath & Rosenthal, San Francisco, CA; Kimberly Erin De Hope, LEAD ATTORNEY, Sonnenschein Nath & Rosenthal LLP, San Francisco, CA.

**JUDGES:** WILLIAM ALSUP, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** WILLIAM ALSUP

**OPINION**

**ORDER DENYING MOTION TO AMEND COMPLAINT, DENYING MOTION TO REMAND TO STATE COURT, AND CONTINUING CASE MANAGEMENT CONFERENCE**

**INTRODUCTION**

In this insurance-contract action, plaintiff Charles Farrugia seeks to amend his complaint and remand the case to state court. For the below-stated reasons, plaintiff's motion for leave to amend and remand to state court is **DENIED.**

**STATEMENT**

In this action, plaintiff contends that in 2001 and 2006 he was injured in two accidents involving uninsured drivers. Plaintiff alleges that after each accident he submitted claims to defendant Allstate Insurance Co. On the first claim, plaintiff contends that Allstate falsely told plaintiff that uninsured benefits were not available to him because he did not obtain the vehicle license number [*2] of the uninsured driver. On the second claim, plaintiff contends that Allstate wrongfully told him that his policy did not include uninsured motorist coverage. The complaint included claims based on breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation (Compl. PP 5-8).

This action was originally filed in San Francisco Superior Court on November 27, 2006. Defendant Allstate removed the case to federal court on January 11, 2007. In the notice of removal, defendant's sole asserted basis for jurisdiction was the parties' diversity of citizenship. Plaintiff is a resident of California and defendant is incorporated in and has its principal place of business in Illinois.

Plaintiff now seeks leave to amend his complaint to name as a defendant Steve Mahoney, an Allstate agent. The proposed amended complaint alleges that an individual from Mahoney's office was the person who made the misrepresentations to plaintiff. The proposed pleading also alleges that Mahoney does business in the City and County of San Francisco. Based on the proposed addition of Mahoney, plaintiff also seeks to remand the action to state court.

**ANALYSIS**

With respect [*3] to non-indispensable parties, the Ninth Circuit has stated: "Once removal has occurred, the district court has two options in dealing with an attempt to join a non-diverse party. *28 U.S.C. § 1447(e)* provides that '[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.'" *Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001)* (quoting *Newcombe v. Adolf Coors Co.,*

*157 F.3d 686, 691 (9th Cir. 1998)).* "The language of § *1447(e)* is couched in permissive terms and it clearly gives the district court the discretion to deny joinder." *Newcombe,* 157 F.3d at 691. Factors that a district court may consider in the exercise of its discretion include: the statute of limitations, the timeliness of the motion to amend, whether the plaintiff seeks to join a party solely to destroy diversity, the apparent validity of the claim, and the prejudice to the plaintiff. *See* William W Schwarzer et al.. California Practice Guide: Federal Civil Procedure Before [*4]   Trial 2:1078 (2005) (citing cases).

> *  Generally, if the plaintiff seeks to add a necessary, nondiverse defendant, remand is appropriate. See Yniques v. Cabral, 985 F.2d 1031, 1035 (9th Cir. 1993).* Here, plaintiff does not contend that Mahoney is a necessary defendant.

According to defendant, there are three reasons that counsel against granting plaintiff leave to amend and remanding to state court. *First,* defendant contends that plaintiff cannot state a valid claim for relief against Mahoney. *Second,* defendant alleges that without joining Mahoney, plaintiff will be able to obtain complete relief from defendant. *Third,* defendant contends that plaintiff seeks to join Mahoney only for the purpose of destroying diversity jurisdiction.

With the exception of defendant's first reason -- that plaintiff cannot state a claim for relief against Mahoney - - the factors tilt toward denying the addition of Mahoney. Plaintiff's reply brief does not respond to the contention that plaintiff seeks [*5]  to add Mahoney only to destroy diversity jurisdiction. It has been noted that such fraudulent joinder may be a "dispositive factor" that the Court may consider "in deciding whether a plaintiff may join a nondiverse defendant." *Mayes v. Rapoport, 198 F.3d 457, 463 (4th Cir. 1999); Desert Empire Bank v. Ins. Co. of No. Am., 623 F.2d 1371, 1376-77 (9th Cir. 1980)* ("[W]e conclude that a trial court should look with particular care at such motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court. In such cases, a plaintiff may well be inclined to add a new defendant only to have his action remanded to the state forum, the one that he had originally chosen as best suited to his purposes.") (citation omitted). Nor does plaintiff contend that joinder of Mahoney is necessary to obtain a full recovery. Plaintiff's request for money damages "could be fully satisfied by [defendant Allstate]." *Newcombe,* 157 F.3d at 691. Indeed, the proposed amended complaint does not include Mahoney in the prayer for relief. Moreover, plaintiff does not explain [*6]  why he waited until January 2007 -- two months after the action was initially filed in state court -- to add

Mahoney has a defendant. For these reasons, plaintiff's motion for leave to amend must be denied.

Notwithstanding this ruling, it is worth discussing whether plaintiff could maintain a claim against Mahoney. Both parties spend a significant portion of their briefs discussing this issue. This order holds that plaintiff could state a claim against Mahoney under California law. Nothing in this order prevents plaintiff from pursuing such a claim against Mahoney in state court.

Defendant contends that plaintiff cannot state claims against Mahoney for misrepresentation, breach of contract. or bad faith. As defendants point out, California courts have recognized the general principle that an agent or employee of an insurance company is not liable to an insured while acting in the scope of the agency or employment. *See Lippert v. Bailey, 241 Cal. App. 2d 376, 382, 50 Cal. Rptr. 478 (1966).* Defendants contend that this principle alone demonstrates the futility of adding Mahoney. an individual Allstate agent. as a defendant.

The principle recognized in *Lippert* in 1966 was only a [*7]  general one. Since *Lippert,* California courts have recognized three exceptions to the general rule. An agent may assume a greater duty -- and incur personal liability -- towards the insured by: (1) entering into "an express agreement to ensure adequate coverage": (2) "a holding out by the agent to assume a greater duty toward an insured"; and (3) "misrepresenting the policy's terms or extent of coverage." *Paper Savers, Inc. v. Nacsa, 51 Cal. App. 4th 1090, 1097, 59 Cal. Rptr. 2d 547 (1996); see also Clement v. Smith, 16 Cal. App. 4th 39, 45, 19 Cal. Rptr. 2d 676 (1993)* ("Absent some notice or warning, an insured should be able to rely on an agent's representations of coverage without independently verifying the accuracy of those representations by examining the relevant policy provisions."). This has been referred to as a "special duty" exception to the general rule. As plaintiff points out, numerous judges within this district, including the undersigned, have recognized that California does not have a *per se* bar against finding individual insurance agents liable. *See, e.g., Kaighn v. Nat'l Life of Vt., No. C 02-24984 CRB, 2003 U.S. Dist. LEXIS 959, at *3-*4 (N.D. Cal.  [*8]  2003)* (remanding action to state court and holding that "the *Lippert* rule does not preclude suit against an insurance agent who misrepresents the nature or scope of coverage or holds himself out as having special expertise in the type of insurance sought by the insured"); *Sun v. Equitable Life Assurance Soc'y, No. C 01-01553 WHA, 2001 U.S. Dist. LEXIS 9481, 2001 WL 764486, at *2-*3 (N.D. Cal. 2001)* (recognizing that "an agent may assume a greater duty and be held personally liable for merely negligently misrepresenting the scope of coverage under a policy"). The above-cited caselaw also disproves defendants' contention that the

*only* exception to the *Lippert* rule is where an agent acts as a "dual agent" on behalf of both the insurer and the insured. *See Quiroz v. Valley Forge Ins. Co., No. C 05-2025 SBA, 2005 U.S. Dist. LEXIS 43316, 2005 WL 1806366, at *5 (N.D.Cal. July 28, 2005)* (citing *Macey v. Allstate Property and Casualty Ins. Co., 220 F. Supp. 2d 1116, 1120 (N.D. Cal. 2002))* ("California courts have recognized two separate 'lines of exception' to the general *Lippert* rule: (1) the dual agency exception, and (2) the 'special duty' exception.").

In the proposed amended complaint here, plaintiff [*9] alleges that Mahoney's office "falsely told Plaintiff that uninsured motorist benefits were not available to him" and "wrongfully told Plaintiff that his policy did not include uninsured motorist coverage." Plaintiff contends that he relied on the misrepresentations and was induced not to pursue his uninsured motorist benefits (Prop. Am. Compl. PP 7, 20-21). This is sufficient to demonstrate that Mahoney "misrepresented the terms of the policy to the insured." *Paper Savers, Inc., 51 Cal. App. 4th at 1098.* Plaintiff thus appears to have a plausible theory of liability against Mahoney for misrepresentation of the policy's terms. The proposed amendment is therefore not futile. *See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)* ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") (internal citations omitted).

The decisions on which defendant relies are unpersuasive. Those decisions are federal court decisions that relied on *Lippert* -- but without discussion of any of the subsequent authority that held individual [*10] agents liable to insured plaintiffs. *See Sun, 2001 U.S. Dist. LEXIS 9481, 2001 WL 764486, at *4* (distinguishing decisions that had "correctly quote[d] *Lippert*" but noting that in those cases "the plaintiff's complaint clearly alleged that the defendant insurance agent was an employee of the insurance company and acted within the scope of his employment"). For example, in *Duffy v. Allstate Insurance Co., Case No. SA CV 97-231-GLT(ANX), 1997 U.S. Dist. LEXIS 18023, at *1 (C.D. Cal. Feb. 17, 2007)*, the district court relied on *Lippert* and denied a motion for leave to amend where the plaintiffs admitted that the "'entire controversy' [arose] from acts within the scope of [the individual agent's] agency." In *Mercado v. Allstate Ins. Co., 340 F.3d 824, 826 (9th*

*Cir. 2003)*, the Ninth Circuit only briefly discussed the general rule and the "dual agent" exception but not the "special duty" exception. Other decisions cited by defendants can also be distinguished for their failure to discuss the "special duty" exception to the general rule. *See Icasiano v. Allstate Ins. CO., 103 F.Supp. 2d 1187, 1190 (N.D. Cal. 2002); Moreno v. Allstate Ins. Co., No. CIV-S02-1426 DFL JFM, 2002 U.S. Dist. LEXIS 22073, 2002 WL 31133203,* [*11] *at *2 (C.D. Cal. Sept. 10, 2002)*. This order relies on the well-settled principle that a plaintiff can, for pleading purposes, maintain a claim against an individual insurance agent so long as the plaintiff alleges that the agent acted under one of the three exceptions recognized in *Paper Savers. See Smith v. New England Mut. Life Ins. Co., No. C 98-3083 SI, 1998 U.S. Dist. LEXIS 17572, 1998 WL 775124, at *2 (N.D. Cal. Nov. 2, 1998)* ("Because *Lippert* is silent regarding liability for an agent's fraudulent actions and the instant case includes allegations of intentional misrepresentation, *Lippert* may not be authority for determining agent non-liability with respect to fraud claims.").

## CONCLUSION

This order holds that plaintiff could state a claim against Mahoney. It is conceivable -- if not likely -- that if Mahoney had been named as a defendant in the original state action, the Court would remand the instant action. But plaintiff's request to amend after a proper removal gives this Court the discretion to allow such amendment. Accordingly, for the above-stated reasons, plaintiff's motion for leave to amend is **DENIED.** Because diversity of citizenship exists between plaintiff and defendant. [*12] the motion for remand is also **DENIED.**

At oral argument, plaintiff's counsel requested a one-week continuance of the case management conference. That request is **GRANTED.** The initial case management conference will be held on **APRIL 26, 2007,** at **11:00 A.M.** The joint case management statement is due by **APRIL 19, 2007.**

**IT IS SO ORDERED.**

Dated: March 8, 2007.

WILLIAM ALSUP

UNITED STATES DISTRICT JUDGE

# EXHIBIT G

LEXSEE 2002 U.S. DIST. LEXIS 3628

**CALVIN F GUNN, Plaintiff, v HANS PETER WILD, CASUN INVEST AG and DOES ONE through TEN, inclusive, Defendants. HANS PETER WILD and CASUN INVEST AG, Counter-Claimants, v CALVIN F GUNN and KAREN GUNN, Counter-Defendants.**

**No C-01-4320 VRW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2002 U.S. Dist. LEXIS 3628*

**February 26, 2002, Filed**

**DISPOSITION:** [*1] Plaintiff's motion for leave to file an amended complaint and remand GRANTED. Defendants' motion to strike DENIED. Matter REMANDED to state court.

**COUNSEL:** For Calvin F. Gunn, Plaintiff: Charles J. Smith, Smith Bentley & Hartnett, Redwood City, CA.

For Calvin F. Gunn, Plaintiff: Ivo M. Labar, Kerr & Wagstaffe LLP, San Francisco, CA.

For Hans Peter Wild, Casun Invest A.G., Defendants: Hilton S. Williams, John P. Phillips, Paul Hastings Janofsky & Walker, LLP, San Francisco, CA.

For Hans Peter Wild, Casun Invest A.G., Defendants: Karla J. Kraft, Paul Hastings Janofsky & Walker, LLP, Peter M. Stone, Paul Hasting Janofsky & Walker, LLP, Costa Mesa, CA.

For Karen Gunn, Counter-defendant: Charles J. Smith, Smith Bentley & Hartnett, Redwood City, CA.

**JUDGES:** VAUGHN R WALKER, United States District Judge.

**OPINION BY:** VAUGHN R WALKER

**OPINION**

ORDER

Plaintiff moves for leave to amend his complaint to join a non-diverse defendant and for the action to be remanded to state court. Doc # 16. For the reasons set forth below, plaintiff's motion (Doc # 16) is GRANTED. The

court finds this matter appropriate for disposition without oral argument. See Civ LR 7-1(b). [*2] The hearing scheduled for February 14, 2002. is VACATED.

I

Plaintiff filed suit in the Superior Court of the State of California for the County of San Mateo on October 19. 2001. Compl (Doc # 1, Exh A). Defendants removed to this court on November 19, 2001, based on alleged diversity of citizenship. Doc # 1. Defendants filed a counterclaim on November 28. 2001. Doc # 9. All claims and counterclaims are state law claims.

On January 3, 2002, plaintiff filed the present motion, seeking leave to file amended complaint joining a non-diverse party and, accordingly, remand to state court, pursuant to *28 USC § 1447(e)*. Doc # 16. The parties stipulated to continue this motion on January 15, 2002, while the court considered defendants' ex parte application for a temporary restraining order (TRO). Doc # 20. The court denied defendants' application for a TRO on January 25, 2002. Doc # 32.

The claims and counterclaims in this matter are a product of a bitter personal and business dispute between plaintiff, his daughter and defendant Wild. From the record before the court, it appears that by 1992 plaintiff was suffering severe financial difficulties. Plaintiff attributes [*3] his debt to problems stemming from his investment in Lloyd's of London. See Compl (Doc # 1, Exh A) at 3. Defendants attribute plaintiff's debt to his lavish lifestyle. See Def Opp Br (Doc # 27) at 4.

Wild and plaintiff's daughter, Lezlie [1], have a close personal relationship. Plaintiff alleges that in response to his financial difficulties, as a "family" gesture, Wild offered to enter into an agreement with plaintiff to resolve plaintiff's debt. Plaintiff asserts that Wild offered to set

up a holding company, which became defendant Casun Invest. Plaintiff alleges that plaintiff and Wild agreed that plaintiff was to convey title of his home, the "Woodside home," to Casun Invest, to secure an advance by Wild to plaintiff for $ 1,600,000. The purpose of this plan, alleges plaintiff, was to secure the ability of plaintiff and his family to continue to live in the Woodside home, while alleviating plaintiff's debt. Although this was not mentioned in the deed conveying legal title, plaintiff contends that Wild promised that plaintiff could reside in the Woodside home for plaintiff's lifetime and that plaintiff could reacquire title at any time for $ 1,600,000.

> 1   The parties do not agree on how to refer to plaintiff's daughter. In his brief, plaintiff refers to her as "Lezlie Simpson" and alleges that she is married to Ronald Simpson, although plaintiff also alleges that she represents that she is married to Wild and sometimes calls herself "Lezlie Wild." Defendants, however, refer to Lezlie as "Lezlie Gunn." Rather than weighing in on one side or the other, the court will refer to plaintiff's daughter as "Lezlie" or "plaintiff's daughter."

[*4]   Plaintiff's complaint alleges that defendants breached their promise that plaintiff could continue to reside in the Woodside home, with an option to repurchase. Plaintiff seeks declaratory relief, specific performance of the alleged oral agreement for life estate and damages for conspiracy to commit fraud and deceit and abuse of elderly person.

Wild claims that plaintiff's debt was the result of plaintiff's tendency to live beyond his means. In order to help plaintiff avoid bankruptcy, Wild claims that he bought the Woodside home for $ 1,600,000, which was considerably more than the present value of the home. Wild contends that plaintiff continued to suffer financial reverses into the late 1990s and, as a result, Wild allowed plaintiff to do legal work for Wild's companies. Wild claims that plaintiff and his wife then conspired to get more money from Wild, by falsifying the claims in plaintiff's complaint. As a result of this alleged conspiracy, defendants filed their counterclaims alleging a variety of state law claims including breach of fiduciary duty relating to plaintiff's legal work for Wild.

Plaintiff's complaint discussed the participation of his daughter, Lezlie, in the [*5] actions in dispute and referred to her repeatedly as the agent of Wild. See, e g, Compl (Doc # 1, Exh A) at P 15. Plaintiff now contends, however, that "recent investigation" has revealed that Lezlie was involved in the conspiracy to "wrestle [plaintiff's] Woodside home from him." Pl Br (Doc # 16) at 1. Plaintiff states that this new information, which indicates Lezlie's active participation in the alleged conspiracy,

has overcome his initial reluctance to assert claims against his daughter and that he now wishes to join her as a defendant. Besides joining her in all existing claims, plaintiff also wishes to bring a claim solely against Lezlie, alleging defamation and libel as a result of a letter Lezlie wrote to plaintiff, which plaintiff contends was also shown to Wild. See proposed first amended complaint (FAC) (Doc # 16, Exh # 2) at PP 50-53. As plaintiff and Lezlie are both residents of California, plaintiff contends that the matter must be remanded to state court.

II

A

Consistent with the vigorously contested nature of the proceedings to date, each party has filed evidentiary objections to the other party's declarations. On January 24, 2002, defendants filed evidentiary [*6] objections to plaintiff's declaration. Doc # 28. Soon after, plaintiff filed evidentiary objections to defendants' declarations. Doc # 36. Defendants then filed evidentiary objections to plaintiff's reply declaration. Doc # 40.

On February 11, 2002, three days before the hearing on plaintiff's motion, defendants also filed a separate motion to strike plaintiff's reply declaration. Doc # 37. In this motion, defendants make a variety of allegations, including that in his reply declaration plaintiff disclosed defendants' confidential information, learned as a result of plaintiff's legal representation of defendants, without authorization. Defendants, however, do not identify the substance of this allegedly unauthorized disclosure. Defendants also assert that plaintiff's reply declaration contains various factual and legal inaccuracies.

Defendants' motion to strike is noticed for hearing on February 14, 2002, the same day as the hearing on plaintiff's motion. Defendants, however, provide no authority for their attempt to notice a motion for hearing on three days time, nor is the court aware of any such authority. Moreover, defendants' evidentiary objections, filed on the same day as [*7] the motion to strike, cover the same territory as the motion. As a result of this procedural defect, the court DENIES defendants' motion to strike. Doc # 37.

Both of defendants' evidentiary objections (Doc # 28 and # 40) identify numerous allegedly conclusory and irrelevant statements made by plaintiff in his declaration (Doc # 17) and reply declaration (Doc # 35). Defendants are undoubtedly correct that plaintiff's declarations are replete with conclusory, indeed sometimes inflammatory, statements and irrelevant allegations. Defendants' objections, therefore, are duly noted. The court does not find it necessary, however, to analyze defendants' objections individually, because the court's ruling on plaintiff's substantive motion does not rely upon plaintiff's statements

in his declarations. Moreover, many of the disputes raised by defendants' evidentiary objections go to the factual issues underlying plaintiff's complaint, such as the extent of plaintiff's legal representation of defendants, and the court sees no reason to attempt to resolve these disputes here.

Not to be left out, plaintiff has also filed cursory evidentiary objections to defendants' declarations. Doc # 36. In his [*8] objections, plaintiff merely states, with negligible variation, that the statements in Wild's declaration are "conclusory and lack[] foundation" and that paragraph one of Ponder's declaration "rests on hearsay and its subject matter is not relevant." See id at 1. Again, the court notes plaintiff's objections, but, because of their lack of both specificity and relevance to the court's determination, declines to analyze them individually. Resolution of the substantive issues before the court simply does not require addressing these matters.

B

Plaintiff's substantive motion is governed by *28 USC § 1447(e)*, which provides:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

"Under *§ 1447*, whether to permit joinder of a party that will destroy diversity jurisdiction remains in the sound discretion of the Court." *Palestini v General Dynamics Corp, 193 F.R.D. 654, 658 (SD Cal 2000)*, citing *Newcombe v Adolf Coors Co, 157 F.3d 686, 691 (9th Cir 1998); Clinco v Roberts, 41 F. Supp. 2d 1080, 1082 (CD Cal 1999)*. [*9] In the Ninth Circuit, district courts, in the exercise of their broad discretion, may consider any of a wide range of factors in considering whether to permit amendment to join non-diverse defendants, including whether: (1) the party to be joined is necessary for just adjudication; (2) plaintiff would be barred by a statute of limitations from bringing claims against the new defendant in state court; (3) there has been unexplained delay in seeking joinder; (4) plaintiff's purpose in seeking joinder is dilatory; (5) the claims against the new defendant appear valid; and (6) denial of joinder will prejudice plaintiff. See, e g, *IBC Aviation Servs v Compania Mexicana De Aviacion, 125 F. Supp. 2d 1008, 1011 (ND Cal 2000); Righetti v Shell Oil Co, 711 F. Supp. 531, 535 (1989)*.

Relying heavily on *Yniques v Cabral, 985 F.2d 1031 (9th Cir 1993)*, defendants assert that, when considering whether to permit an amendment that would destroy diversity, the court is required to analyze the case under both *§ 1447(e) and* FRCP 19, which concerns joinder of necessary parties. Because Lezlie is not a necessary or indispensable party under FRCP 19, defendants [*10] assert, the court should deny plaintiff's motion. This is, however, both a misstatement of the law and the holding of the *Yniques* court. In *Yniques*, the district court dismissed a removed action sua sponte and without a hearing after plaintiff joined a non-diverse defendant. The court subsequently declined to reconsider its order. The Ninth Circuit reversed, holding that, pursuant to *§ 1447(e)*, a district court could not both allow joinder and dismiss a removed action.

The *Yniques* court, however, explicitly rejected defendants' assertion that the district court was required to undertake a FRCP 19 analysis, holding instead that Congress intended "district courts to have a choice" between the options available under *§ 1447(e)* and FRCP 19. *Id at 1036*. Besides the options available under *§ 1447(e)*, allowing joinder and remanding the action or denying joinder, the *Yniques* court held that a district court could, pursuant to FRCP 19, determine that the party seeking to be joined is indispensable to the action but nevertheless refuse joinder, perhaps because the motion was untimely, and dismiss the action.

Defendants' reliance on *Yniques* is unavailing. [*11] A court considering joinder of a non-diverse party after removal is not required to undergo FRCP 19 analysis. *Section 1447* was intended to broaden the options available to a district court, by "taking advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal." HR Rep No 889, 100th Cong, 2d Sess 73-74, reprinted in 1988 US Code Cong & Admin News 6033, quoted in *Righetti, 711 F. Supp. at 535*.

Although courts considering whether to allow joinder of a non-diverse party under *§ 1447(e)* frequently discuss the FRCP 19 standard, such courts only "disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief." *IBC Aviation Servs, 125 F. Supp. 2d at 1012*. Clearly, the actions of plaintiff's daughter are not tangentially related to the actions in dispute. Lezlie, in fact, is alleged to be a full, active participant in the alleged conspiracy at the basis of plaintiff's claims.

Defendants also contend that plaintiff has failed adequately to explain the reasons for his delay [*12] in naming his daughter as a defendant. Plaintiff's motion is brought at an early stage of this litigation. Discovery has not commenced, nor has the first case management con-

ference occurred. Moreover, plaintiff has explained that, although aware that Lezlie was a participant in defendants' actions, plaintiff was unaware of her culpability until recently. Particularly in light of Congress' intention in enacting *§ 1447(e)* to "undermine the doctrine employed by some courts that amendments that destroyed diversity were to be viewed with suspicion." the court sees no reason to inquire further into plaintiff's expressed initial reluctance to name his daughter as a defendant. *IBC Aviation, 125 F. Supp. 2d at 1012*, quoting *Trotman v United Parcel Service, 1996 U.S. Dist. LEXIS 10388*, *1 (ND Cal 1996).

Defendants also seek to impugn plaintiff's motive. asserting that plaintiff's motive is to "drag two foreign nationals * * * to the state court in the area where he was born and raised * * * ." Def Opp Br (Doc # 27) at 18. In other words, defendants suggest that plaintiff added Lezlie as a defendant in order solely to defeat diversity jurisdiction. There is divergence [*13] within the Ninth Circuit whether an intention to defeat diversity jurisdiction is a dilatory motive. Clearly, *§ 1447(e)* makes the possibility that plaintiff adds a defendant in order to defeat diversity *less* of a concern. "Suspicion of diversity destroying amendments is not as important now that *§ 1447(e)* gives courts more flexibility in dealing with the addition of such defendants." *IBC Aviation, 125 F. Supp. 2d at 1012.* As a result, when considering motive, courts often consider whether plaintiff is attempting unreasonably to delay proceedings. See *Righetti, 711 F. Supp. at 534.*

Moreover, courts that consider diversity destroying amendments improper invariably rely on *Desert Empire Bank v Ins Co of N America, 623 F.2d 1371 (9th Cir 1980)*, which was decided well before the enactment of *§ 1447(e)* and is, therefore, of extremely limited pertinence. See, e g. *Clinco, 41 F. Supp. 2d at 1083.* As a result, the court finds *Desert Empire Bank* unpersuasive. To the extent that the intention to destroy diversity counts as an improper motive under *§ 1447(e)*, however, the court finds that defendants have not produced evidence [*14] demonstrating this intention. Defendants assert that plaintiff was aware of Lezlie's actions at the time of filing his original complaint and deduce that the attempt to include her now must, therefore, be dilatory. Yet although plaintiff's complaint did discuss Lezlie's actions, it did not assign her active participation in the conspiracy at issue, but relegated her to the role of agent for Wild's actions. Plaintiff's proposed FAC asserts that Lezlie, aside from being Wild's agent, was an active par-

ticipant in designing and carrying out the alleged conspiracy.

Since defendants possess no "substantive right" to remove an action, "the 'right' of removal is merely an expectancy contingent on plaintiff['s] failure to add non-diverse defendants * * * ." *Righetti v. Shell Oil Company, 711 F. Supp. 531, 534 n3.* As a result, "denying the amendment would require plaintiff to choose between redundant litigation arising out of the same facts and involving the same legal issues or foregoing [his] potential claims against" Lezlie. *IBC Aviation v. Compania Mexicana de Aviacion, 125 F. Supp. 2d at 1013.* On the other hand, "allowing amendment will not prejudice defendants as discovery has not yet begun." Id. Plaintiff's [*15] motion is timely and his delay in naming Lezlie as a defendant has been explained. Moreover, although plaintiff may not ultimately prevail against any defendant, plaintiff's claims against Lezlie appear to be as viable as those against the original defendants. As a result, the court determines that, pursuant to *§ 1447(e)*, joinder and remand are appropriate.

As in *Righetti*:

> This approach is consistent with Congress' concern for the administration of justice by reducing the number of diversity-of-citizenship cases to be handled in federal court and the express purpose of *section 1447(e)*, as well as the liberal policy favoring amendment under [FRCP] 15.

*Righetti, 711 F. Supp. at 535,* citing *Foman v Davis, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).*

III

In sum, for the foregoing reasons, plaintiff's motion for leave to file an amended complaint and remand (Doc # 16) is GRANTED. Defendants' motion to strike (Doc # 37) is DENIED. The court ORDERS this matter to be REMANDED to San Mateo superior court. The clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER

United States [*16] District Judge

# EXHIBIT H

LEXSEE 2007 U.S. DIST. LEXIS 37223

**LAURIE MISKUSKI, Plaintiff, v. CRESCENT HEIGHTS OF AMERICA, INC., a corporation, SONNY KAHN, an individual, BRIAN DUCHMAN, an individual, KATHY CURTIS, an individual, and DOES 1 through 100, inclusive, Defendants.**

**CASE NO. 06cv2739 BTM(LSP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 37223*

**May 21, 2007, Decided
May 21, 2007, Filed**

**COUNSEL:** [*1] For Laurie Miskuski, Plaintiff: Lauren Mayo-Abrams, LEAD ATTORNEY, Law Offices of Lauren Abrams, Beverly Hills, CA, US.

For Crescent Heights of America, Inc., a corporation, Sonny Kahn, Brian Duchman, Kathy Curtis, an individual, Defendants: Anne M Brafford, Michael J Haskell, LEAD ATTORNEYS, Morgan Lewis and Bockius, Irvine, CA, US.

**JUDGES:** Hon. Barry Ted Moskowitz, United States District Judge.

**OPINION BY:** Barry Ted Moskowitz

**OPINION**

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; AND DENYING MOTION FOR REMAND**

Defendants Sonny Kahn, Brian Duchman, and Kathy Curtis ("Defendants") have filed a Motion for Judgment on the Pleadings on the second and fifth causes of action. Plaintiff has filed a Motion for Leave to File a First Amended Complaint and a Motion for Remand. For the reasons discussed below, Defendants' Motion for Judgment on the Pleadings is **GRANTED,** Plaintiff's Motion for Leave to File a First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART,** and Plaintiff's Motion for Remand is **DENIED.**

**I. FACTUAL ALLEGATIONS**

The following facts are taken from [*2] Plaintiff's Complaint. The Court makes no finding as to the truth of the allegations.

Plaintiff Laurie Miskuski began working for Defendant Crescent Heights of America, Inc. ("Crescent Heights") in 1998 and quickly worked her way up the ranks to the position of Project Manager. (Complaint, P 11.) In the Fall of 2005, Plaintiff's doctor informed her that he had found a tumor in one of her ovaries and that further tests needed to be performed. (Id. at P 15.) In late December, after test results came back, Plaintiff's doctors scheduled immediate surgery and advised Plaintiff that she would need four to six weeks of leave to recover from the surgery. (Id. at P 17.) In addition, Plaintiff's doctors informed her that the CT scan revealed a second tumor in her leg, which could be indicative of bone cancer. (Id. at P 18.)

Plaintiff informed Defendant Brian Duchman, a supervisor, of her medical condition and her need to take leave. (Id. at P 19.) Duchman repeatedly assured Plaintiff that she was extremely valuable to the company, that her job would be safe, and that there would be no changes to her job status as a result of her condition. (Id. at P 20.) Plaintiff also [*3] met with Human Resources Representative Vital Osegueda [1] about her need to take medical leave. (Id. at P 21.) Plaintiff asked Osegueda whether she needed to take vacation time in order to ensure that she would be compensated for her medical leave. (Id.) Osegueda assured Plaintiff that she did not need to use personal leave and that she would be paid. (Id.) Plaintiff filled out CFRA-related paperwork at his request. (Id.)

Plaintiff underwent surgery on January 5, 2006, and took leave until February 6, 2006. (Id. at P 22.) When Plaintiff returned to work, she found that her office had

been completely rearranged and that her desk had been cleaned out. (Id. at P 23.) Duchman told Plaintiff that she had been permanently replaced, that she was no longer involved in the operations end of Crescent Heights, and that she would be assigned other duties to be determined at a later time. (Id. at P 25.) Duchman told Plaintiff that whether she had future employment with the company depended on her attitude. (Id. at P 26.) Duchman refused to answer any questions regarding her future level of compensation but did inform her that she would not receive her expected compensation [*4] on the Verano project. (Id.)

> 1    The Complaint incorrectly spells his name "Oswega." The proposed First Amended Complaint corrects the spelling.

The next morning, Plaintiff packed up her office belongings and met with Duchman, who purposefully humiliated Plaintiff by walking her through every department where she had previously served as a manager and pointing to empty desks while loudly stating, "Oh, there's a spare desk. Maybe you could sit here." (Id. at P 29.) Eventually, Plaintiff was placed in a small bedroom in a condominium development which was completely isolated from the sales and operations building. (Id.)

Plaintiff was never provided new business cards for her new position, was not allowed to attend meetings, and received no phone calls. Only after repeated requests was she given a partial job description. (Id. at P 34.) The bullet points that were supposed to detail her duties were left blank. (Id.)

On or about February 10, 2006, Plaintiff wrote an e-mail to Osegueda, complaining [*5] of CFRA discrimination. (Id. at P 36.) The following week, Kathy Curtis, Director of Human Resources, flew out to San Diego to meet with Plaintiff. (Id. at P 37.) Instead of addressing Plaintiff's discrimination complaint, Curtis gave Plaintiff a "one year review." The review was extremely negative and was based on entirely subjective criteria. (Id.) Curtis also informed Plaintiff that her compensation on the in-process Nobel development was being cut from a .25 override to a .1 override - a difference amounting to approximately $ 200,000. (Id. at P 38.)

Plaintiff also learned that she had not been paid for her CFRA leave, despite prior assurances that she would be. (Id. at P 39.) Plaintiff sent a second e-mail to human resources questioning the changes to her compensation and requesting an explanation. (Id. at P 40.) The following week, Duchman met with Plaintiff and demanded to know whether she intended to sue the company. (Id. at P 41.) Duchman told Plaintiff that he could "fix" the situation if she would send e-mails rescinding her complaints and sign a release.

Shortly thereafter, Duchman informed Plaintiff that her compensation was not going to be [*6] changed and that an offer letter was forthcoming, but conditioned the offer letter on Plaintiff sending Curtis an e-mail explaining how happy and excited she was about the new position. (Id. at P 45.) Plaintiff did not send the requested e-mail and never received the offer letter. (Id. at P 46.)

During this time period, a paycheck error occurred, depriving many employees of payment on seven closings. (Id. at P 47.) When the error was caught, all affected employees except Plaintiff received their proper compensation within days. (Id.)

At the end of February 2006, Plaintiff saw her doctor, who immediately placed her on one week of medical leave due to stress. (Id. at P 48.) While she was on leave, a rumor began circulating at the office that Plaintiff had engaged in sexual relations with Duchman in order to obtain her position. (Id. at P 49.)

On or about March 3, 2006, Plaintiff attempted to return to work. (Id. at P 50.) However, the atmosphere continued to be hostile and harassing. (Id.) After a few days, Plaintiff's mental status deteriorated and her physician recommended that she take extended stress leave to recuperate. (Id.)

## II. PROCEDURAL [*7] HISTORY

On July 28, 2006, Plaintiff filed her Complaint in Los Angeles Superior Court. The Complaint names as defendants Crescent Heights, Sonny Kahn, Brian Duchman, and Kathy Curtis. The Complaint asserts causes of action for (1) interference with protected leave under the California Family Rights Act; (2) retaliation in violation of the California Family Rights Act; (3) disability discrimination; (4) wrongful termination in violation of public policy; and (5) intentional infliction of emotional distress.

On September 15, 2006, Crescent Heights filed a motion to transfer venue to San Diego County. The motion was granted, and the case was transferred to San Diego Superior Court.

On September 15, 2006, Crescent Heights removed the action to this Court. The basis of removal was diversity jurisdiction.

## III. DISCUSSION

### A. Plaintiff's Motion to Amend and Motion to Remand

Plaintiff seeks to amend her complaint by adding as a defendant human resource representative Vital Osegueda and by adding a sixth cause of action for retaliation (based on protected complaints of disability discrimination) in violation of California's Fair Employment

and Housing Act ("FEHA") [*8] (*Cal. Gov't Code § 12940*) and a seventh cause of action for harassment in violation of FEHA. Plaintiff also moves to remand this action on the ground that if the Court allows Plaintiff to join Osegueda as a defendant, diversity jurisdiction will be destroyed. Although the Court will allow Plaintiff to amend her complaint by adding the additional FEHA causes of actions, the Court will not permit the joinder of Osegueda and will not remand the action.

Under *28 U.S.C. § 1447(e)*, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." District courts in this Circuit consider various factors in determining whether to permit joinder under *section 1447(e)*, including the following: (1) whether the party sought to be joined is needed for just adjudication and would be joined under *Fed. R. Civ. P. 19(a)*; (2) whether the statute of limitations would bar the filing of a new action against the new defendant if the court denied joinder; (3) whether there [*9] has been unexplained delay in seeking the joinder; (4) whether the joinder is solely for the purpose of defeating federal jurisdiction; and (5) whether the claim against the new party seems valid. *IBC Aviation Services, Inc. v. Compania Mexicana de Aviacion, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000)*; *Clinco v. Roberts, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999)*.

No argument can be made that Osegueda is a necessary party under *Fed. R. Civ. P. 19(a)*. However, the fact that Osegueda does not meet the restrictive requirements of *Fed. R. Civ. P. 19(a)* does not control the Court's analysis under *section 1447(e)*. See *Righetti v. Shell Oil Co., 711 F. Supp. 531, 535 (N.D. Cal. 1989)* (explaining that Congress gave the courts broad discretion to allow joinder under *section 1447(e)* and that such discretion is inconsistent with the more restrictive approach under *Rule 19*).

Plaintiff would not be prejudiced if the Court denied joinder because Plaintiff could file a separate action against Osegueda in state court. The DFEH issued Plaintiff's Right to Sue Notice on [*10] January 11, 2007. Therefore, Plaintiff has until January 11, 2008 to file a lawsuit against Osegueda. See *Cal. Gov't Code § 12965(b)*.

It appears that the only reason Plaintiff seeks to join Osegueda is to destroy diversity jurisdiction. Plaintiff knew of Osegueda and his involvement in the events underlying Plaintiff's claims at the time Plaintiff filed her original complaint on July 28, 2006. The original complaint actually identified Osegueda by name. However, Plaintiff did not file a DFEH charge against Osegueda until January 9, 2007, several months after this action

was removed. Plaintiff's explanation that she inadvertently failed to pursue claims against Osegueda is unpersuasive.

Some courts have held that the plaintiff's motive for adding a non-diverse defendant should not be considered in determining whether to allow joinder under *section 1447(e)*. See *Righetti, 711 F. Supp. at 535*. Even if the Court does not consider Plaintiff's motive, the Court finds that joinder would not be appropriate given the lack of prejudice to Plaintiff and the questionable validity of her claims against Osegueda.

According to the proposed First Amended [*11] Complaint ("PFAC"), Plaintiff talked to Osegueda before taking her medical leave. Osegueda assured her that she did not need to take personal leave in order to be paid for her medical leave. (PFAC, P 22.) Plaintiff filled out CFRA-related paperwork at his request. (Id.) On February 10, 2006, Plaintiff sent an e-mail to Osegueda complaining of CFRA discrimination and/or discrimination on the basis of her medical condition/disability. (Id. at P 37.) Shortly thereafter, Plaintiff sent a second e-mail to Osegueda questioning the changes to her compensation and requesting an explanation. (Id. at P 41.) Later, Osegueda intimated to Plaintiff that the "company stance" was that what was happening to her was unrelated to her medical leave and that she would have to take care of the issue herself. (Id.)

Although the PFAC includes a general allegation that "Plaintiff is informed and believes and on that basis alleges that Vital Osegueda . . . was a human resources representative with Defendant Employer *with control over the terms and conditions of Plaintiff's employment*" (emphasis added), there are no facts alleged in support thereof. Plaintiff does not allege that Osegueda [*12] actually participated in making decisions regarding Plaintiff's position, compensation, or other terms of employment. Osegueda was the human resources point person who answered questions regarding CFRA leave, received Plaintiff's discrimination complaints, and related the "company stance" regarding Plaintiff's discrimination claims. Plaintiff does not allege any facts indicating that Osegueda was anything more than a rank-and-file human resources employee. It was Kathy Curtis, *Director of Human Resources*, who responded to Plaintiff's complaints of discrimination by conducting a performance review and informing Plaintiff that her compensation on the Nobel development was being reduced. Indeed, according to the Declaration of Kathy Curtis submitted by Defendants, Osegueda has no supervisory authority over any employee and has no authority to make any employment-related decisions about Plaintiff or anyone else.

2007 U.S. Dist. LEXIS 37223, *

Accordingly, the Court has doubts about the merits of Plaintiff's claims against Osegueda and will not allow Plaintiff to destroy diversity by joining him as a defendant. Plaintiff's motion to amend the complaint is **DENIED** to the extent that Plaintiff seeks to join Osegueda [*13] but is **GRANTED** to the extent Plaintiff wishes to add claims for retaliation and harassment under FEHA. In addition, Plaintiff's motion to remand is **DENIED.**

B. Motion for Judgment on the Pleadings

Defendants move for judgment on the pleadings with respect to the second cause of action for retaliation in violation of the California Family Rights Act ("CFRA") and the fifth cause of action for intentional infliction of emotional distress ("IIED"). As discussed below, the Court finds that Defendants are entitled to judgment as a matter of law on the CFRA retaliation action. The Court also dismisses the IIED cause of action but will allow Plaintiff to seek leave to amend if discovery uncovers any evidence supporting such a claim.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *Fed. R. Civ. P. 12(c).* Judgment on the pleadings is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co, Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).* [*14] All allegations of fact by the party opposing the motion are accepted as true, and construed in the light most favorable to that party. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).*

1. Retaliation for Exercise of CFRA Rights

Plaintiff's CFRA retaliation claim against Defendants fails because only employers can be held liable for retaliation under the CFRA. The CFRA provides:

> It shall be an unlawful employment practice for an employer to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of any of the following:
>
> > (1) An individual's exercise of the right to family care and medical leave provided by subdivision (a).

*Cal. Gov't Code § 12945.2(l).*

The CFRA defines an "Employer" as "Any person who directly employs 50 or more persons to perform services for a wage or salary." *Cal. Gov't Code § 12945.2(c)(2)(A).* Under the plain meaning of the statute, individual supervisors cannot be sued for retaliation under the CFRA. Cf. *Reno v. Baird, 18 Cal. 4th 640, 76 Cal. Rptr. 2d 499, 957 P.2d 1333 (1998)* [*15] (holding that individual supervisors could not be sued for discrimination under the FEHA, which prohibited "an employer" from engaging in discrimination).

Plaintiff points out that a regulation promulgated by the FEHC indicates that individual supervisors can be held liable for retaliation under the CFRA. The regulation provides, in pertinent part, "[I]t shall be an unlawful employment practice for any person to discharge, fine, suspend, expel, punish, refuse to hire, or otherwise discriminate against any individual . . . because that individual has . . . exercised his or her right to CFRA leave . . . ." *Cal. Code Regs. Tit. 2, § 7297.7.*

Courts "assign great weight to the interpretations an administrative agency like the FEHC gives to the statutes under which it operates, although ultimately statutory interpretation is a question of law the courts must resolve." *Reno, 18 Cal. 4th at 660.* The FEHC regulation cannot counteract the clear language of the statute, which limits liability for retaliation under the CFRA to employers.

Plaintiff argues that individual supervisors may be held liable under *Cal. Gov't Code § 12940(h),* which makes [*16] it unlawful "[f]or any employer . . . *or person* to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Emphasis added.) Plaintiff contends that "this part" refers to Part 2.8 of the Government Code, which includes *section 12945.2.*

However, even assuming *section 12940(h)* is referring to "Part 2.8," at the time *section 12940(h)* was enacted, Part 2.8 did not include *section 12945.2. Section 12945.2* did not come into existence until a decade after *section 12940* and Part 2.8 were added by Stats. 1980 C. 992, § 4. *Section 12945.2* includes its own provision regarding retaliation for an employee's exercise of the right to family care and medical leave. If retaliation for the exercise of CFRA rights is governed by *section 12940(h),* the language in *section 12945.2(l)* is redundant in part (because *12940(h)* would also prohibit an employer from retaliating) and contradictory in part (be-

cause *12940(h)* does not limit liability for retaliation to the employer).

It is a principle of statutory construction [*17] that "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates." *People v. Tanner, 24 Cal. 3d 514, 521, 156 Cal. Rptr. 450, 596 P.2d 328 (1979).* Another principle of statutory construction is that every part of a statute serves a purpose and that nothing is superfluous. *In re J.W., 29 Cal. 4th 200, 209, 126 Cal. Rptr. 2d 897, 57 P.3d 363 (2002).* Respecting these principles, the Court determines that Plaintiff's CFRA retaliation claim is governed by *section 12945.2(l),* which does not provide for individual supervisor liability. Therefore, judgment on the pleadings is granted in favor of Defendants on this claim.

### 2. IIED

The factual allegations of the Complaint do not support a claim of IIED against any of the individual defendants.

An essential element of an IIED claim is outrageous conduct beyond the bounds of human decency. *Cole v. Fair Oaks Fire Protection Dist., 43 Cal. 3d 148, 155, 233 Cal. Rptr. 308, 729 P.2d 743 (1987).* "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even [*18] if improper motivation is alleged." *Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 80, 53 Cal. Rptr. 2d 741 (1996).*

The allegations regarding Kathy Curtis relate to personnel management activity, including a negative performance review and Curtis' involvement in compensation issues. There are no factual allegations regarding non-personnel management activity by Curtis. Therefore, Plaintiff has not made out a claim of IIED against Curtis.

There are no specific factual allegations regarding Sonny Kahn. Accordingly, Plaintiff's IIED claim against Khan fails as well.

As for Brian Duchman, Plaintiff claims that he went beyond his managerial functions when he embarrassed her by walking her through the office, loudly stating, "Oh, there's a spare desk. Maybe you could sit here."

Although this alleged behavior was rude and somewhat humiliating, it was not so extreme that it exceeded all bounds of decency.

In her papers, Plaintiff claims that "Defendants started a humiliating rumor that Plaintiff had engaged in sexual relations to obtain her position." However, the Complaint does not identify Defendants as the source of the rumor. The Complaint merely states, "While she was on leave, a [*19] humiliating rumor about Plaintiff began circulating the office, namely that she had engaged in sexual relations with Defendant Duchman in order to obtain her position." (Complaint, P 49.) The Court cannot imply that it was Defendants, as opposed to other Crescent Heights employees, who started the rumor.

Due to the absence of factual allegations supporting an IIED claim against Defendants, the Court **DISMISSES** the IIED claim **WITHOUT PREJUDICE.** If Plaintiff discovers evidence that any of the Defendants in fact started the rumor, Plaintiff may seek leave to amend her complaint to reassert the IIED claim.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Leave to File First Amended Complaint [14] is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff may not join Vital Osegueda as a defendant but may add causes of action for disability discrimination and harassment under FEHA. Plaintiff's Motion for Remand [13] is **DENIED.** Defendants' Motion for Judgment on the Pleadings [12] is **GRANTED.** Judgment shall be entered in favor of Kahn, Duchman, and Curtis on the second cause of action for retaliation in violation of the California [*20] Family Rights Act. Plaintiff's IIED claim is **DISMISSED WITHOUT PREJUDICE.** Plaintiff may seek leave to reassert the IIED claim upon discovery of facts supporting such a claim. Plaintiff shall file her First Amended Complaint within 20 days of the filing of this order.

**IT IS SO ORDERED.**

DATED: May 21, 2007

Hon. Barry Ted Moskowitz

United States District Judge

C:\Documents and Settings\412\Local Settings\Temporary Internet Files\Content.IE5\EDRY48QI\2007_U_S__Dist__LEXIS_37223[1].doc