1  HOWARD M. GARFIELD, State Bar #43369
   KAREN L. UNO, State Bar #117410
2  LONG & LEVIT LLP
   465 California Street, Suite 500
3  San Francisco, CA 94104
   Tel: (415) 397-2222   Fax: (415) 397-6392
4  hgarfield@longlevit.com; kuno@longlevit.com

5  Attorneys for Defendants
   ALLIED PROPERTY AND CASUALTY
6  INSURANCE COMPANY, AMCO INSURANCE
   COMPANY, and NATIONWIDE MUTUAL
7  INSURANCE COMPANY

8                UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10                   SAN DIEGO DIVISION

11

12  1800 SOUTH MAPLE STREET, LLC, a          CASE No. 07-CV-2030
    California Limited Liability Company;
13  RALPH J. GIANNELLA, an individual;       **DECLARATION OF KAREN L. UNO IN
    GIANNELLA PROPERTIES, INC., a            SUPPORT OF DEFENDANTS'
14  California Corporation; WILLIAM G.        OPPOSITION TO PLAINTIFFS' MOTION
    AYYAD, an individual; WILLIAM G.         FOR LEAVE TO AMEND; EXHIBITS**
15  AYYAD, INC., a California Corporation;
    an PREMIER COMMUNITIES, LLC, a
16  California Limited Liability Company,

                                             Date:      February 29, 2008
17                          Plaintiff,       Time:      1:30 P.M.
                                             Courtroom: Honorable Judge Jeffrey T. Miller
18          vs.

19  ALLIED PROPERTY AND
    CASUALTY INSURANCE COMPANY,              Date Filed:     September 10, 2007
20  an Iowa Corporation; AMCO                Date Removed:  October 19, 2007
    INSURANCE COMPANY, an Iowa               Trial:
21  Corporation; NATIONWIDE MUTUAL
    INSURANCE COMPANY, an Ohio
22  Corporation, and DOES 1 to 100,
    inclusive,

23                          Defendants.

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1  I, Karen L. Uno, declare as follows:

2        1.    I am an attorney, licensed to practice law before all courts in the State of

3  California. I am a partner in the law firm of Long & Levit LLP, counsel of record in this matter

4  for Defendants ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, AMCO

5  INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE COMPANY. I was

6  also co-counsel for AMCO in the matter entitled <u>Avocado Crest v. Allied Mutual Insurance</u>

7  <u>Company, et.al.,</u> San Diego County Superior Court Case No. GIC 857918. I have personal

8  knowledge of the following facts, and would competently testify to their truthfulness if called as

9  a witness in this matter.

10        2.    I have reviewed AMCO's claim file pertaining to this matter and portions

11  of AMCO's coverage counsel's file regarding the claim at issue and would competently testify

12  to the following if called as a witness in this matter.

13        3.    Attached as Exhibit "A" to this declaration is a true and correct copy of

14  the Second Amended Complaint from the case entitled, <u>Avocado Crest Condominiums, LLC, et</u>

15  <u>al. v. Allied Mutual Insurance et. al.,</u> (GIC 857918), filed in the San Diego County Superior

16  Court.

17        4.    Attached as Exhibit "B" to this declaration is a true and correct copy of

18  the letter from Andrea Ray to Bob Johnson of AMCO dated January 12, 2006, without

19  enclosures.

20        5.    Attached as Exhibit "C" to this declaration is a true and correct copy of

21  the letter from Robyn Spagnulo to Scott A. Johnson of Miller Johnson Law dated March 9,

22  2006.

23        6.    Attached as Exhibit "D" to this declaration is a true and correct copy of

24  the letter from C. Brant Noziska to Scott Johnson dated May 7, 2007.

25        7.    Attached as Exhibit "E" to this declaration is a true and correct copy of

26  the letter from Scott A. Johnson to Neal H. Rockwood dated May 21, 2007.

27        8.    Attached as Exhibit "F" to this declaration is a true and correct copy of

28  the case entitled, <u>Farrugia v. Allstate Insurance Company</u>, 2007 U.S. Dist. LEXIS 22628 (N.D.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

1    Cal. 2007).

2        9.    Attached as Exhibit "G" to this declaration is a true and correct copy of

3    the case entitled, <u>Gunn v. Wild</u>, 2002 U.S. Dist. LEXIS 3628 (N.D. Cal. 2002).

4        10.    Attached as Exhibit "H" to this declaration is a true and correct copy of

5    the case entitled, <u>Miskuski v. Crescent Heights of America, Inc.</u>, 2007 U.S. Dist. LEXIS 37223

6    (S.D. Cal. 2007).

7        I declare under penalty of perjury, under the laws of the State of California, that the

8    foregoing is true and correct and that this declaration was executed this 15th day of February,

9    2008 at San Francisco, California.

10

11                                        Karen L. Uno

12

13

14    DOCS\S5240-336\545486.V1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

3

DECLARATION OF KAREN L. UNO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE

# EXHIBIT A

**ROCKWOOD & NOZISKA, L.L.P.**
NEAL H. ROCKWOOD, ESQ. SB# 106197
C. BRANT NOZISKA, ESQ. SB#106117
5060 North Harbor Drive, Suite 255
San Diego, California 92106
Phone: (619) 224-7778 Fax (619) 224-7779

Attorneys for Plaintiffs

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| AVOCADO CREST CONDOMINIUMS, LLC, a California Limited Liability Company; RALPH J. GIANNELLA, an individual; CONSTRUCTION MEDIATION ONLY INC., a California Corporation; WILLIAM G. AYYAD, an individual; and WILLIAM G. AYYAD, INC., a California Corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALLIED MUTUAL INSURANCE COMPANY, an Iowa Corporation; SEQUOIA INSURANCE COMPANY, a California Corporation; AMCO INSURANCE COMPANY, an Iowa Corporation; MICHAEL EHRENFELD COMPANY- INSURANCE AGENTS AND BROKERS, a California Corporation (DOE 1); KETTERING.ROSE INSURANCE AGENTS & BROKERS, dba KETTERING ROSE INSURANCE AGENTS AND BROKERS, a California Corporation (DOE 2); ROBYN KETTERING, an individual (DOE 3); and DOES 4 through 100, inclusive,<br><br>    Defendants. | CASE NO. GIC 857918<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY**<br><br>**JURY REQUESTED**<br><br>**[UNLIMITED CIVIL]**<br><br>Judge: RONALD S. PRAGER<br>Dept: 71 |

AVOCADO CREST CONDOMINIUMS, LLC, a California Limited Liability Company; RALPH J. GIANNELLA, an individual; CONSTRUCTION MEDIATION ONLY INC., a California Corporation; WILLIAM G. AYYAD, an individual; and WILLIAM G. AYYAD, INC., a California Corporation, ("Plaintiffs") hereby allege as follows:

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

**IDENTIFICATION OF PARTIES**

1.      Plaintiff, AVOCADO CREST CONDOMINIUMS, LLC, its members, officers, directors, employees, and partners, hereinafter "AVOCADO CREST," is and at all times herein mentioned, was a limited liability company operating and existing under the laws of the State of California.

2.      Plaintiff, CONSTRUCTION MEDIATION ONLY, INC., hereinafter "CMO INC.," is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California and a member of AVOCADO CREST.

3.      Plaintiff, RALPH J. GIANELLA, hereinafter "GIANNELLA," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California and was an officer of CMO INC.

4.      Plaintiff, WILLIAM G. AYYAD, hereinafter "AYYAD," is, and at all times herein mentioned, was an individual residing in the County of San Diego, State of California and was an officer of WILLIAM G. AYYAD, INC.

5.      Plaintiff, WILLIAM G. AYYAD, INC., hereinafter "AYYAD INC.," is, and at all times herein mentioned, was a corporation operating and existing under the laws of the State of California and a member of AVOCADO CREST.

6.      Plaintiffs allege on information and belief that at all times herein mentioned Defendant ALLIED MUTUAL INSURANCE COMPANY of Iowa was and is a corporation doing business within the State of California, County of San Diego.  Plaintiffs further allege on information and belief that ALLIED MUTUAL INSURANCE COMPANY of Iowa, is, and at all times mentioned herein, was duly organized and existing under the laws of the State of Iowa.

7.      Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendant AMCO INSURANCE COMPANY, a wholly owned subsidiary of Defendant ALLIED MUTUAL INSURANCE COMPANY, was and is a corporation doing business within the State of California, County of San Diego.  Plaintiffs further allege on information and belief that AMCO INSURANCE COMPANY is, and at all times mentioned herein, was duly organized and existing under the laws of the State of Iowa.  Hereinafter ALLIED MUTUAL

-2-

ROCKWOOD & NOZASKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1  INSURANCE COMPANY and AMCO INSURANCE COMPANY will be collectively referred

2  to as "AMCO."

3         8.      Throughout the issuance of the AMCO/Allied Insurance Policies and the claims

4  adjustment period, Defendant ALLIED MUTUAL INSURANCE COMPANY was the

5  insurance carrier under the AMCO/Allied Policies.  Defendant ALLIED MUTUAL

6  INSURANCE COMPANY conducted the claims adjustment and made the decision to deny

7  coverage.  Defendant ALLIED MUTUAL INSURANCE COMPANY managed, controlled, and

8  ratified all conduct of Defendant AMCO INSURANCE COMPANY.

9         9.      Plaintiffs allege on information and belief that at all times herein mentioned

10  Defendant SEQUOIA INSURANCE COMPANY, hereinafter "SEQUOIA," was and is a

11  corporation doing business within the State of California, County of San Diego.  Plaintiffs

12  further allege on information and belief that SEQUOIA is, and at all times mentioned herein,

13  was duly organized and existing under the laws of the State of California.

14       10.      Plaintiffs hereby name MICHAEL EHRENFELD COMPANY-INSURANCE

15  AGENTS AND BROKERS as DOE 1.  Plaintiffs are informed and believe and based thereon

16  allege that at all times herein mentioned MICHAEL EHRENFELD COMPANY-INSURANCE

17  AGENTS AND BROKERS was a corporation organized and existing under the laws of the state

18  of California and operating as a business at 2655 Camino Del Rio North, San Diego, California.

19       11.      Plaintiffs hereby name KETTERING.ROSE INSURANCE AGENTS &

20  BROKERS, dba KETTERING ROSE INSURANCE AGENTS AND BROKERS as DOE 2.

21  Plaintiffs are informed and believe and based thereon allege that at all times herein mentioned

22  KETTERING ROSE INSURANCE AGENTS & BROKERS was a Corporation organized and

23  existing under the laws of the State of California.

24       12.      Plaintiffs hereby name ROBYN KETTERING as DOE 3, hereinafter referred to

25  as "KETTERING."  KETTERING has been the agent for Plaintiffs initially as an employee of

26  MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND BROKERS and

27  subsequently as a principal of KETTERING ROSE INSURANCE AGENTS & BROKERS.

28  During the time she was employed at MICHAEL EHRENFELD COMPANY-INSURANCE

1  AGENTS AND BROKERS she committed acts of negligence and misrepresentation as more

2  fully set forth herein. Plaintiffs allege that all of her actions were within the course and scope of

3  her employment at MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND

4  BROKERS and later at KETTERING ROSE INSURANCE AGENTS & BROKERS.

5      13.    Plaintiffs are informed and believe and based thereon allege that at all times

6  herein mentioned MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND

7  BROKERS is, and at all times herein mentioned was, an appointed agent of AMCO

8  INSURANCE COMPANY and as such all acts alleged herein were within the course and scope

9  of said agency and imputed to AMCO INSURANCE COMPANY.

10     14.    Plaintiffs are presently unaware of the true names and capacities of those

11  defendants sued herein as Does 4 through 100 inclusive. Plaintiffs will amend this complaint to

12  state their true names and capacities when they are ascertained. Plaintiffs are informed and

13  believe, and thereon allege, that each of the fictitiously-named defendants are responsible in

14  some manner for the occurrences alleged herein, and that Plaintiffs' damages were proximately

15  caused by such defendants.

16     15.    Plaintiffs are informed and believe, and thereon allege, that AMCO and

17  SEQUOIA (collectively "Insurer Defendants") and each of them, including the fictitious

18  defendants named as Does herein, were the agents and/or employees of each of the remaining

19  defendants and in doing the things herein mentioned were acting within the scope of such

20  agency and/or employment.

21     16.    Plaintiffs are informed and believe that venue is properly within the County of

22  San Diego and the Insurer Defendants and Broker Defendants are subject to personal

23  jurisdiction in this County at the time the action is commenced. The insured property in

24  question is located at 868 East Alvarado Street, Fallbrook, California, commonly referred to as

25  "The Oaks Condominiums." Such property consists of forty-eight residential condominiums

26  and related common areas.

27     17.    Plaintiffs request a jury in this matter.

28  ///

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-4-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

## JURISDICTION & VENUE

18.    The causes of action in this complaint arise out of agreements entered into in the County of San Diego, and some or all of the Defendants have their principal place of business in the County of San Diego.  Accordingly, venue is proper in San Diego County Superior Court pursuant to Code of Civil Procedure §§ 393 and 395.5.

## GENERAL ALLEGATIONS

19.    Plaintiffs incorporate by reference Paragraphs 1 - 18 of this Complaint and repeat those Paragraphs as though fully set forth herein.

20.    Plaintiff AVOCADO CREST purchased The Oaks Condominiums in or about July or August 2001, which at that time were rental units referred to collectively as The Oaks Condominiums.  Plaintiffs are informed and believe, and thereon allege that The Oaks Condominiums, which were originally constructed in 1978 as an apartment complex, were converted to condominiums in or about 1982; however, the units continued to be rented as apartments.  After AVOCADO CREST purchased The Oaks Condominiums, AVOCADO CREST performed some renovations to some of the units.  Beginning in or about April 2002, Plaintiff AVOCADO CREST sold units at The Oaks Condominiums.  Escrows for all of the condominiums closed between April 10, 2002 and the end of October 2002.

*Avocado Crest's Brokers and/or Agents*

21.    MICHAEL EHRENFELD COMPANY-INSURANCE AGENTS AND BROKERS, KETTERING ROSE INSURANCE AGENTS & BROKERS and ROBYN KETTERING, (hereinafter referred to as the "Broker Defendants") have been Plaintiffs' insurance brokers for sometime.  Each year, Broker Defendants designed and administered a comprehensive "insurance program" for Plaintiffs' insurance needs.

22.    In 2000, Broker Defendants secured a Commercial General Liability ("CGL") package policy for Plaintiffs in effect from December 1, 2000 to December 1, 2001 (SEQUOIA issued Insurance Policy No. CMP 114137-1) hereinafter referred to as the "Sequoia Policy."

///

-5-

23.    On or about August 14, 2001, by and through Broker Defendants, the Sequoia Policy was amended to include Plaintiff AVOCADO CREST as an insured and The Oaks Condominiums as an insured property. Attached as Exhibit "A" is a copy of the Sequoia Policy and its terms are incorporated herein by this reference. Under the terms of the Sequoia Policy, SEQUOIA undertook to and did insure Plaintiffs against, among other things, Commercial General Liability pursuant to Policy Form CG 0001 (11/88).

### The Sequoia Insurance Policy

24.    Under the terms of the Sequoia Policy, SEQUOIA undertook to and did agree 1) to "pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies"; 2) that SEQUOIA would have "the right and duty to defend any "suit" seeking those damages"; and 3) that SEQUOIA may, at its discretion, "investigate any "occurrence" and settle any claim or "suit" that may result." (See Exhibit "A" at CG 00011188 at page 1 of 12.)

### The First AMCO/Allied Insurance Policy

25.    Upon expiration of the Sequoia Policy, by and through Broker Defendants, Plaintiffs were issued by AMCO, Insurance Policy No. ACP 7801001164, hereinafter referred to as the "First AMCO/Allied Policy," for the policy period December 1, 2001 to December 1, 2002. The First AMCO/Allied Policy insured AVOCADO CREST among other insureds. Attached as Exhibit "B" is a copy of the First AMCO/Allied Policy and its terms are incorporated herein by this reference. Said policy was issued by and through Broker Defendants who were appointed agents of AMCO.

### The Second AMCO/Allied Insurance Policy

26.    On or about April 4, 2002, by and through Broker Defendants, another policy was issued insuring AVOCADO CREST separately, AMCO Insurance Policy No. ACP 7801073037, hereinafter referred to as the "Second AMCO/Allied Policy," for the policy period April 4, 2002 to April 4, 2003. Attached as Exhibit "C" is a copy of the Second AMCO/Allied Policy and its terms are incorporated herein by this reference. Said policy was issued by and through Broker Defendants who were appointed agents of AMCO.

-6-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

27.    Under the terms of the First and Second AMCO/Allied Policies (collectively, the "AMCO/Allied Policies"), AMCO undertook to and did agree 1) to "pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies"; 2) that AMCO would have "the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy"; and 3) that AMCO may, at its sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

28.    At all times mentioned herein Plaintiffs have performed all the terms and conditions of the SEQUOIA and AMCO/Allied Policies (collectively, the "Policies") to be performed on their part.

29.    Under the Policies, AVOCADO CREST is an insured. The remaining Plaintiffs are also insured by virtue of their positions as members, officers and/or employees of AVOCADO CREST and/or its members.

30.    Tenants and Homeowners at The Oaks Condominiums reported occurrences and made claims regarding their units to Plaintiffs at various times, which were duly and timely tendered to the insurers under the Policies.

31.    On or about September 16, 2003, a Notice of Commencement of Legal Proceedings pursuant to former Civil Code section 1375 ("Calderon Notice") was sent to AVOCADO CREST by attorneys representing The Oaks Management Corporation claiming property damage and bodily injury as a result of certain defects at The Oaks Condominiums.

32.    Plaintiffs timely tendered the Calderon Notice to AMCO and SEQUOIA under the Policies.

33.    On or about February 2, 2004, SEQUOIA, without full and proper investigation of the claim, denied coverage and refused to defend Plaintiffs with respect to the Calderon Notice and subsequent mediation.

34.    Without the participation of Insurer Defendants, Plaintiffs were unable to settle the claims through the Calderon mediation.

///

-7-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

35.    On or about March 16, 2004, The Oaks Management Corporation and individual homeowners commenced action against Plaintiffs herein in the San Diego Superior Court entitled *The Oaks Management Corporation v. Avocado Crest Condominiums, LLC,* case number GIC 827085, hereinafter referred to as the "Third Party Action." Plaintiffs in the Third Party Action sought damages based upon negligence, negligence per se, fraud, civil conspiracy to defraud, breach of contract, breach of the Conditions, Covenants and Restrictions, fraudulent conveyance, breach of fiduciary duty, alter ego, and breach of implied warranty arising out of the renovations and sale of units at The Oaks Condominiums.

36.    Plaintiffs timely tendered a copy of the summons and complaint in the Third Party Action to AMCO and SEQUOIA with the request that the Insurer Defendants, as required by the Policies, undertake the defense of this action.

37.    Notwithstanding Plaintiffs' request, on or about November 18, 2004, SEQUOIA, without full and proper investigation of the claim, for the second time denied all liability under its policy and refused to undertake the defense of the Third Party Action against Plaintiffs.

38.    Notwithstanding Plaintiffs' request, on or about April 16, 2004, AMCO, without full and proper investigation of the claim, denied all liability under the AMCO/Allied policies and refused to undertake the defense of the Third Party Action.

39.    On or about November 15, 2004, Plaintiffs made another demand of AMCO to undertake the defense of the Third Party Action as required by the Second AMCO/Allied Policy.

40.    On or about November 22, 2004, AMCO confirmed that it would not defend Plaintiffs in the Third Party Action.

41.    Plaintiffs persisted in advising AMCO and SEQUOIA that they had a duty to defend Plaintiffs to no avail. In the meantime, Plaintiffs were faced with a multi-million dollar lawsuit, which they had to defend. Plaintiffs retained counsel to defend themselves in the Third Party Action, and continued attempts to convince Insurer Defendants to defend.

42.    Finally, on or about January 7, 2005, AMCO conceded that it had a duty to defend Plaintiffs in the Third Party Action pursuant to the First AMCO/Allied Policy under a

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-8-

1    reservation of rights. AMCO maintained that it did not owe a duty to defend pursuant to the

2    Second AMCO/Allied Policy.

3        43.    On or about March 21, 2005, SEQUOIA withdrew its prior declination of

4    defense, and accepted Plaintiffs' tender of the Third Party Action pursuant to an express

5    reservation of rights.

6        44.    Until such time as AMCO and SEQUOIA agreed to defend Plaintiffs in the Third

7    Party Action, Plaintiffs were each required to retain separate and multiple law firms to advise

8    Plaintiffs of the separate defenses, claims, and interests relating to the Third Party Action.

9        45.    Plaintiffs were obligated to mount a vigorous defense against the multi-million

10   dollar Third Party Action. As a proximate result of Insurer Defendants' refusal as herein

11   alleged, Plaintiffs were compelled to engage defense counsel for the Third Party Action and to

12   incur attorneys' fees, costs and expenses therefore in the sum of $1,235,212.08.

13       46.    On or about February 18, 2005, Plaintiffs served AMCO with a demand for

14   reimbursement for investigation and defense costs associated with the Third Party Action in the

15   amount of $1,235,212.08 as required pursuant to the Policies. On or about April 19, 2005,

16   Plaintiffs served SEQUOIA with a demand for reimbursement for investigation and defense

17   costs associated with the Third Party Action in the amount of $1,235,212.08. This amount

18   included attorney's fees, litigation costs, mediation expenses, expert/consultant fees and costs

19   incurred to investigate and mitigate alleged damages. Excluded from that amount were costs

20   associated with counsel's efforts to secure insurance coverage for Plaintiffs. All relevant

21   documentation for those costs and fees were forwarded to AMCO and SEQUOIA.

22       47.    Insurer Defendants delayed in making a decision whether to reimburse Plaintiffs.

23   After a number of months of review and audit conducted by said Defendants, Insurer

24   Defendants agreed to pay only a fraction of Plaintiffs' out-of-pocket costs. Insurer Defendants

25   agreed to pay approximately two-hundred and eighty-five thousand dollars ($285,000).

26       48.    Payment of the two-hundred and eighty-five thousand dollars ($285,000) was

27   predicated upon a purported audit performed by and on behalf of Insurer Defendants, hereinafter

28   referred to as the "Purported Audit." The Purported Audit was not conducted by a qualified

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-9-

1  independent firm.  Rather, it was prepared on behalf of Insurer Defendants specifically by a

2  vendor to the insurance industry, Church & Company.  Moreover, the Purported Audit by its

3  very terms recommended further investigation, which has not been performed to Plaintiffs'

4  knowledge.  As such, Insurer Defendants did not discharge their full duty of investigation and

5  claims adjustment, did not give equal consideration to the interests of their insured as to their

6  own interests, and did not resolve uncertainty of the reasonableness of the fees incurred in favor

7  of their insureds as required by California law.

8        49.     By waiting more than a year before engaging counsel to defend Plaintiffs, Insurer

9  Defendants have waived any and all rights to contest the amount of the attorneys' fees incurred

10  by Plaintiffs and are estopped from contesting the amount submitted by Plaintiffs.

11

12                          **FIRST CAUSE OF ACTION**

13        **(Breach of Contract As Against Insurer Defendants and DOES 4 - 75)**

14        50.     Plaintiffs incorporate by reference Paragraphs 1 - 49 of this Complaint and repeat

15  those Paragraphs as though fully set forth herein.

16        51.     Plaintiffs have performed each and every covenant and/or condition of the

17  insurance Policies to be performed by them, or have been excused from so performing as a

18  result of Defendants' breach of contract.

19        52.     Plaintiffs are informed and believe and thereon allege that Insurer Defendants,

20  and each of them, breached their obligations under the Policies in the following manner:

21              a.     By failing to conduct a full and complete investigation into the facts and

22        circumstances of the claims asserted against Plaintiffs in the Third Party Action;

23              b.     By failing and refusing to defend Plaintiffs, and each of them, from the

24        claims asserted in the Third Party Action;

25              c.     By failing and refusing to indemnify Plaintiffs, and each of them, from

26        the claims asserted in the Third Party Action;

27  ///

28  ///

<div style="text-align:left; font-size:smaller;">ROCKWOOD & NOZISKA, LLP<br>5060 North Harbor Drive, Suite 255<br>San Diego, California 92106<br>(619) 224-7778 FAX (619) 224-7779</div>

-10-

d.    By failing to promptly and fully reimburse Plaintiffs for defense costs, fees and expenses incurred in defending against claims asserted in the Third Party Action;

e.    By failing to conduct a fair, independent audit of the costs and fees incurred by Plaintiffs in defending against claims asserted in the Third Party Action;

f.    By failing to adjust the claim giving equal consideration to the insureds' interest as to their own; and

g.    By doing each of the acts or omissions as otherwise alleged above.

53.    Plaintiffs are informed and believe and thereon allege that Insurer Defendants, and each of them, failed and refused to conduct an investigation into the facts and circumstances of the claims asserted against Plaintiffs in the Third Party Action. As a result of the breaches of contract by said Defendants, or any of them, to conduct any investigation into the facts and circumstances of the claims asserted against Plaintiffs, Plaintiffs have been damaged, injured, and prejudiced. Plaintiffs were required to retain counsel and defend themselves against the claims asserted against them.

54.    As a direct and proximate result of the breach by Insurer Defendants of their obligations under the Policies, Plaintiffs have been damaged as follows:

a.    Plaintiffs were required to retain attorneys to defend themselves from the claims asserted in the Third Party Action all in an amount to be proved at time of trial; and

b.    The expenditure of monies for attorneys fees caused Plaintiffs to lose business opportunities to which the monies paid to attorneys could have been applied.

## SECOND CAUSE OF ACTION

### (Breach of The Implied Covenant of Good Faith & Fair Dealing Against Insurer Defendant's and DOES 4-75)

55.    Plaintiffs incorporate by reference Paragraphs 1 - 54 of this Complaint and repeat those Paragraphs as though fully set forth herein.

-11-

SECOND AMENDED COMPLAINT FOR: BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

56. Implied in Plaintiffs' Policies is a covenant by Insurer Defendants, and each of them, to act in good faith and deal fairly with Plaintiffs, and to do nothing to impair or interfere with the rights and benefits of Plaintiffs under the Policies.

57. Plaintiffs are informed and believe and thereon allege that Insurer Defendants, and each of them, breached the implied covenant of good faith and fair dealing arising out of the Policies in the following respects:

a. Insurer Defendants, and each of them, unreasonably and without proper cause, failed and refused to conduct a competent and timely investigation into the facts which gave rise to the claims asserted in the Third Party Action;

b. Insurer Defendants, and each of them, unreasonably refused to defend, and without cause, denied coverage to Plaintiffs in the Third Party Action;

c. Insurer Defendants, and each of them, unreasonably refused to pay for the defense of the Third Party Action;

d. Insurer Defendants, and each of them, unreasonably refused to promptly reimburse Plaintiffs for defense costs incurred by Plaintiffs in their own defense of the Third Party Action after said Defendants acknowledged their duty to defend and accepted Plaintiffs' tender of the defense;

e. Insurer Defendants, and each of them, unreasonably failed to conduct a fair, independent audit of the costs and fees incurred by Plaintiffs in defending against claims asserted in the Third Party Action; and

f. Insurer Defendants, and each of them, unreasonably failed to adjust the claim giving equal consideration to the insureds' interest as to their own.

g. AMCO has wrongfully denied coverage under the Second AMCO/Allied Policy by failing to conduct a reasonable investigation and failing to give equal consideration to their insureds' interest as they gave to their own in refusing to defend and indemnify Plaintiffs' against the alleged claims in the Third Party Action.

58. Plaintiffs are informed and believe, and thereon allege, that Insurer Defendants have breached their duty of good faith and fair dealing owed to Plaintiffs by other acts or

-12-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

1    omissions of which Plaintiffs are presently unaware.  Plaintiffs will seek leave of court to amend

2    this complaint at such time as they discover the other acts or omissions of Insurer Defendants

3    constituting such breach.

4         59.    The denial of benefits claimed by Plaintiffs under the Policies was done by

5    Insurer Defendants without reasonable cause.  Insurer Defendants knew that a duty to defend

6    was owed to Plaintiffs, yet refused to provide such a defense.  As a direct and proximate result

7    of the unreasonable conduct of Insurer Defendants, and each of them, Plaintiffs have been

8    required to retain attorneys to obtain benefits due to them under the Policies.  As a direct and

9    proximate result of the tortious conduct of the Insurer Defendants and each of them, Plaintiffs

10   were damaged and injured.  Plaintiffs are therefore entitled to recover:

11         a.    Reasonable attorney fees incurred by Plaintiffs in obtaining policy

12   benefits in an amount to be proved at time of trial;

13         b.    Reasonable attorney fees, expert fees, investigative fees, and costs

14   incurred by Plaintiffs in defending the Third Party Action;

15         c.    Compensation for lost opportunities; and

16         d.    Out of pocket payments by Plaintiffs, assuming any, to settle claims made

17   against them in the Third Party Action.

18        60.    The refusal of Insurer Defendants and each of them to carry out their obligations

19   under the insurance policy to investigate, defend, indemnify and to promptly communicate their

20   coverage position to Plaintiffs, and the acts of their agents were all done willfully and

21   maliciously and in conscious disregard of the rights of Plaintiffs to receive the benefits due them

22   under the Policies.  These acts were done with the knowledge and approval and ratification of

23   Insurer Defendants and each of them.  These acts continued even after Plaintiffs protested to

24   Insurer Defendants and Plaintiffs were powerless to obtain from Insurer Defendants compliance

25   with their obligations.  Plaintiffs are therefore entitled to recover punitive damages.

26   ///

27   ///

28   ///

ROCKWOOD & NOZASKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-13-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

## THIRD CAUSE OF ACTION

### (Estoppel As Against The Insurer Defendants and DOES 4 - 75)

61.    Plaintiffs incorporate by reference Paragraphs 1 – 60 of this Complaint and repeat those Paragraphs as though fully set forth herein.

62.    Insurer Defendants had full knowledge that the Third Party Action had commenced against Plaintiffs. Plaintiffs timely tendered a copy of the summons and complaint in the Third Party Action to Insurer Defendants with the request that Insurer Defendants undertake the defense of this action. Insurer Defendants subsequently acknowledged the receipt of the tender of defense.

63.    Insurer Defendants wrongfully denied all liability under the Policies and refused to undertake the defense of the Third Party Action against Plaintiffs.

64.    Insurer Defendants intended and had reason to foresee that Plaintiffs would rely upon Insurer Defendants wrongful denial of defense. Plaintiffs had a right to believe that after Insurer Defendants denied tender, Plaintiffs would be required to engage their own counsel and defend the Third Party Action.

65.    Insurer Defendants later conceded they had a duty to defend Plaintiffs in the Third Party Action pursuant to the Policies, and withdrew their prior declination of coverage.

66.    Plaintiffs were ignorant of the true state of facts in that Plaintiffs were told that no coverage existed under Policies when in fact the duty to defend and indemnify did exist under the Policies.

67.    Plaintiffs reasonably relied on Insurer Defendants' denial of coverage to their detriment, and were compelled to engage counsel on their own. In doing so, Plaintiffs were injured and incurred substantial costs, fees, and expenses that should have been covered under the Policies

68.    By virtue of the conduct described above and otherwise, Insurer Defendants must be estopped from contesting the fact that they owed Plaintiffs a duty to defend Plaintiffs in the Third Party Action.

///

-14-

69.     By virtue of the conduct described above and otherwise, Insurer Defendants must be estopped from contesting the attorneys' fees and costs incurred by Plaintiffs in defense of the Third Party Action.

70.     By virtue of the conduct described above and otherwise, Insurer Defendants have waived their right to contest attorneys' fees and costs incurred by the Plaintiffs in defense of the Third Party Action.

## FOURTH CAUSE OF ACTION

### (Professional Negligence As Against Broker Defendants and DOES 76-100)

71.     Plaintiffs incorporate by reference Paragraphs 1 -70 of this Complaint and repeat those Paragraphs as though fully set forth herein.

72.     As Plaintiffs' insurance brokers, Broker Defendants held themselves out as experts in the area of insurance and risk management and were responsible for procuring all necessary insurance for Plaintiffs.  Because of the long-term business relationship with Plaintiffs, Broker Defendants knew and understood Plaintiffs' business and undertook to secure appropriate insurance coverage.

73.     Broker Defendants owed Plaintiffs a duty of care in procuring its insurance policies and insuring that those policies provided the insurance requested and/or needed and required, and to advise Plaintiffs of the adequacy of their insurance, as well as their insurance needs; that those insurance policies were sufficient to protect Plaintiffs' interests as requested and/or needed; and that the policies issued to Plaintiffs were appropriate and adequate for their operations.

74.     Broker Defendants represented to Plaintiffs and others that they were experienced at designing comprehensive insurance programs.  Based thereon, Plaintiffs relied on those representations by allowing said Defendants to design for them their own comprehensive insurance program during which time Broker Defendants were fully aware of the business in which Plaintiffs were engaged.  Plaintiffs placed their trust in Broker Defendants ///

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-15-

1  and fully relied on their expertise to recommend and secure appropriate and adequate insurance

2  coverage.

3    75.    Although Plaintiffs contend that they are insured and coverage is afforded under

4  the insurance policies for the claims alleged in the Third Party Action, in the event there is

5  either a gap and/or insufficient coverage, Plaintiffs allege that said lack of coverage is the

6  proximate result of Broker Defendants' negligence as follows:

7        a.    By failing and/or negligently completing and submitting the insurance

8  applications for the primary and excess policies on behalf of Plaintiffs;

9        b.    By failing to obtain for Plaintiffs the proper scope and amount of

10  coverage;

11        c.    By making misrepresentations regarding the policy limits of the First

12  AMCO/Allied Policy and on information and belief failing to disclose the true policy

13  limits;

14        d.    By failing to procure excess coverage contrary to the business practices

15  and wishes of Plaintiffs;

16        e.    By failing to list the property location on subsequent primary and excess

17  policies affording coverage to Plaintiffs;

18        f.    By continuing to insist at all times that Broker Defendants had procured

19  adequate, accurate and appropriate insurance policies and endorsements for Plaintiffs;

20        g.    By completing and submitting an erroneous application for insurance as

21  to the Second AMCO/Allied Policy without review or signature by Plaintiffs causing

22  denial of coverage based on same; and

23        h.    By failing to disclose or advise Plaintiffs that there was a change in the

24  Second AMCO/Allied Policy form, which purports to limit or take away coverage.

25        i.    By continuing to insist there was no need for excess insurance.

26    76.    As a proximate result of Broker Defendants' breach of their duties, Plaintiffs

27  have been damaged to the extent that the appropriate insurance coverage would have covered

28  the amount of unreimbursed defense costs, fees and indemnity arising out of the underlying

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-16-

1   Third Party Action.  Plaintiffs have been further damaged by incurring fees and costs as a result

2   of being forced to file this action based on the negligent acts and omissions of Broker

3   Defendants.

4       77.    As a direct and proximate result of Broker Defendants' negligence, Plaintiffs

5   have been damaged in an amount according to proof at time of trial.s

6                        **FIFTH CAUSE OF ACTION**

7   **(Negligent Misrepresentation As Against Broker Defendants and Does 76-100)**

8       78.    Plaintiffs incorporate by reference Paragraphs 1 - 77 of this Complaint and repeat

9   those Paragraphs as though fully set forth herein.

10      79.    Broker Defendants owed Plaintiffs a duty of care in procuring its insurance

11  policies and insuring that those policies provided the insurance requested and/or needed and

12  required, and to advise Plaintiffs of the adequacy of their insurance, as well as their insurance

13  needs; that those insurance policies were sufficient to protect Plaintiffs' interests as requested

14  and/or needed; and that the policies issued to Plaintiffs were appropriate for their operations.

15      80.    Broker Defendants represented to Plaintiffs and others that they were

16  experienced at designing comprehensive insurance programs.  Based thereon, Plaintiffs relied

17  on those representations by allowing said Defendants to design for them their own

18  comprehensive insurance program during which time Broker Defendants were fully aware of

19  the business in which Plaintiffs were engaged.

20      81.    Although Plaintiffs contend that they are insured and coverage is afforded under

21  the insurance policies for the claims alleged in the Third Party Action, in the event there is

22  either a gap and/or insufficient insurance coverage Plaintiffs allege that said lack of insurance

23  coverage is the proximate result of Broker Defendants' negligent misrepresentations as follows:

24          a.    By making misrepresentations regarding the policy limits of the First

25      AMCO/Allied Policy and on information and belief failing to disclose the true policy

26      limits;

27          b.    By continuing to insist at all times that Broker Defendants had procured

28      adequate, accurate and appropriate insurance policies and endorsements for Plaintiffs;

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-17-

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

c.     By failing to disclose or advise Plaintiffs that there was a change in the

Second AMCO/Allied Policy form, which purports to limit or takes away coverage; and

d.     By completing and submitting an erroneous application for insurance as

to the Second AMCO/Allied Policy without review or signature by Plaintiffs causing

denial of coverage based on same.

e.     By continuing to insist there was no need for excess insurance.

82.     Plaintiffs justifiably relied on the representations made by Broker Defendants

regarding the scope and amount of insurance coverage procured by Broker Defendants and

based on their representations that they were competent brokers to obtain the correct type and

amount of coverage to protect Plaintiffs' interests.

83.     According AMCO and SEQUOIA, representations made by Broker Defendants

were false.  Additionally, AMCO contends that the application for the Second AMCO/Allied

Policy was predicated on misrepresentation of fact.

84.     Plaintiffs justifiably relied on these representations made by Broker Defendants

regarding the scope and amount of coverage procured by said Defendants for Plaintiffs.

85.     Relying on these representations has damaged Plaintiffs in an amount according

to proof at time of trial.

86.     Broker Defendants' negligent procurement; failure to procure; and, design of

comprehensive insurance program has damaged Plaintiffs according to proof.

## SIXTH CAUSE OF ACTION

**(Breach of Fiduciary Duty As Against Broker Defendants and Does 76-100)**

87.     Plaintiffs incorporate paragraphs 1 through 86 as if set forth herein.

88.     Plaintiffs are informed and believe and thereon allege, at all times herein

mentioned, agents, representatives, and employees of Broker Defendants, were employed as

Plaintiffs' insurance broker and/or agent.

-18-

89.    Plaintiffs are informed and believe and thereon allege, Broker Defendants were charged with a fiduciary duty to exercise due care and undivided loyalty for the interests of Plaintiffs.

90.    Said duties required the brokers and agents, representatives, and employees, of the Broker Defendants, who served as the insurance brokers of Plaintiffs, to make decisions solely for the benefit of Plaintiffs.

91.    Said duties required, *inter alia*, that the agents, employees, and representative of the Broker Defendants act with honesty, good faith, and good management in exercising their duties as Plaintiffs' insurance broker and/or agent.  Moreover, the agents, employees, and representatives of said Defendants owed a duty to make reasonable inquiry and to properly investigate the appropriate insurance coverage for Plaintiffs, with such care and diligence as an ordinarily prudent person in a like position would use under similar circumstances.

92.    Broker Defendants, as broker and/or agent of Plaintiffs, breached their fiduciary duties by virtue of the following:

    a.    By failing and/or negligently completing and submitting the insurance applications for the primary and excess policies;

    b.    By failing to obtain the proper scope and amount of coverage;

    c.    By making misrepresentations regarding the policy limits of the First AMCO/Allied Policy and on information and belief failing to disclose the true policy limits;

    d.    By failing to procure excess coverage contrary to the business practices and wishes of the insureds;

    e.    By failing to list the property location on subsequent primary and excess policies affording coverage to Plaintiffs;

    f.    By continuing to insist at all times Broker Defendants had procured adequate, accurate and appropriate insurance coverage limits and endorsements;

    g.    By completing and submitting an erroneous application for insurance as to the Second AMCO/Allied Policy without review or signature by Plaintiffs causing

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-19-

1    denial of coverage based on same.

2          h.    By failing to disclose or advise Plaintiffs that there was a change in the

3    Second AMCO/Allied Policy form, which purports to limit or take away coverage.

4          i.    By continuing to insist there was no need for excess insurance.

5    93.    Broker Defendants' breach of fiduciary duties damaged Plaintiffs in an amount

6    according to proof at time of trial.

7          **WHEREFORE**, Plaintiffs and their members pray for judgment against Defendants,

8    and each of them, as follows:

9    **FIRST CAUSE OF ACTION (Breach of Contract):**

10   1.    For special damages in an amount to be proven at the time of trial;

11   2.    For interest at a maximum legal rate;

12   3.    For interest, attorneys fees and costs of suit herein incurred; and

13   4.    For such other and further relief as this Court deems just and proper.

14   **SECOND CAUSE OF ACTION (Breach of The Implied Covenant of Good Faith &**

15   **Fair Dealing):**

16   1.    For special damages in an amount to be proven at the time of trial;

17   2.    For punitive damages in an amount to punish and deter defendants' wrongful

18   conduct;

19   3.    For interest at a maximum legal rate;

20   4.    For attorneys fees and costs of suit herein incurred in obtaining policy benefits;

21   and

22   5.    For such other and further relief as this Court deems just and proper.

23   **THIRD CAUSE OF ACTION (Estoppel):**

24   1.    For such relief as the court may deem just and proper.

25   **FOURTH CAUSE OF ACTION (Professional Negligence):**

26   1.    For special damages in an amount to be proven at the time of trial;

27   2.    For interest at a maximum legal rate;

28   3.    For interest, attorneys fees and costs of suit herein incurred; and

*ROCKWOOD & NOZISKA, LLP*
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

-20-

SECOND AMENDED COMPLAINT FOR: BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING; ESTOPPEL; PROFESSIONAL NEGLIGENCE; NEGLIGENT
MISREPRESENTATION; AND, BREACH OF FIDUCIARY DUTY

1    4.    For such other and further relief as this Court deems just and proper.

2    **FIFTH CAUSE OF ACTION (Negligent Misrepresentation):**

3    1.    For special damages in an amount to be proven at the time of trial;

4    2.    For interest at a maximum legal rate;

5    3.    For interest, attorneys fees and costs of suit herein incurred; and

6    4.    For such other and further relief as this Court deems just and proper.

7    **SIXTH CAUSE OF ACTION (Breach of Fiduciary Duty):**

8    1.    For special damages in an amount to be proven at the time of trial;

9    2.    For interest at a maximum legal rate;

10    3.    For interest, attorneys fees and costs of suit herein incurred; and

11    4.    For such other and further relief as this Court deems just and proper.

13    Dated: July 19, 2006                    ROCKWOOD & NOZISKA, LLP

                                        By: _____
                                            NEAL H. ROCKWOOD, ESQ.
                                            C. BRANT NOZISKA, ESQ.
                                            Attorneys for Plaintiffs

*ROCKWOOD & NOZISKA, LLP*
*5060 North Harbor Drive, Suite 255*
*San Diego, California 92106*
*(619) 224-7778 FAX (619) 224-7779*

-21-

# EXHIBIT B

UNITED DEVELOPMENT GROUP
INC.

January 12, 2006

Bob Johnson
ALLIED INSURANCE                    **VIA FACSIMILE AND U.S. MAIL**
7777 Alvarado Road Suite 202
La Mesa, CA 91944

Re:   Hidden Glen Maintenance Corp. v. 1800 South Maple Street
      *San Diego Superior Court Case No. GIC 852647*

Mr. Johnson:

Enclosed are the following documents for your review per our telephone conversation this morning:

- Complaint for Damages (Excluding Exhibit A, the CC&R's for Hidden Glen, that have already been sent to your office)
- Signed Notice and Acknowledgement of Receipts for William Ayyad and William G. Ayyad Inc.
- Notice of Ruling on Ex Parte Application to Stay Proceeding
- Correspondence from Plaintiff's attorneys containing invoices for repairs for a possible partial settlement of this matter

Should you have any questions or need anything further, please feel free to contact me.

Very Truly Yours,

**UNITED DEVELOPMENT GROUP, INC.**

Andrea Ray
Assistant to General Counsel

Enclosures

/ar

9252 Chesapeake Drive, Suite 100 • San Diego, CA 92123 • Phone: (858) 244-0900 • Fax: (858) 244-0911

# EXHIBIT C



UNITED DEVELOPMENT GROUP
INC.

March 9, 2006

Scott A. Johnson, Esq.                                      **VIA FACSIMILE AND U.S. MAIL**
MILLER LAW FIRM
The Marston Building
427 C Street, Suite 410
San Diego, CA 92101

      Re:   Hidden Glen Maintenance Corp. v. 1800 South Maple Street
               *San Diego Superior Court Case No. GIC 852647*

Dear Mr. Johnson:

We have received your letter dated March 3, 2006. Currently, we are reviewing our files for additional information per your request. Should you have any questions or need anything further, please feel free to contact us.

Very Truly Yours,

**UNITED DEVELOPMENT GROUP, INC.**

*Robyn Spagnuolo*

Robyn Spagnuolo
Assistant to General Counsel

/rs

**MJLAW 0473**

9252 Chesapeake Drive, Suite 100 • San Diego, CA 92123 • Phone: (858) 244-0900 • Fax: (858) 244-0911

# EXHIBIT D



# Rockwood & Noziska LLP
ATTORNEYS AT LAW

5060 North Harbor Drive, Suite 255
San Diego, CA 92106

Phone: 619.224.7778
Fax:    619.224.7779
E-mail: info@rockwood-noziska.com

Writers' Email
rockwood@rockwood-noziska.com
noziska@rockwood-noziska.com

May 7, 2007

Scott Johnson, Esq.
Miller and Johnson
The Marston Building
427 C Street, Suite 410
San Diego, CA 92101

Re:    Hidden Glen v. 1800 South Maple Street, LLC
       Our File No.: 1031.01

Dear Mr. Johnson:

Please be advised our office has been retained to represent Allied/AMCO's (hereinafter "AMCO") insureds with respect to the abovementioned matter, specifically with respect to AMCO's wrongful denial of our clients' claim for defense and indemnification of an action arising out of their involvement with the property located at 1800 South Maple Street, Escondido, California. For your reference, AMCO assigned the following claim number: 841.52141. Although your coverage analysis and subsequent denial were apparently performed by evaluating policy number ACP BPH 7801069841, and in light of past experiences with AMCO's claims practices, we are nonetheless hereby requesting you accept this letter as a tender of the above claim under any policy issued by AMCO which may have provided your insureds with coverage. We therefore request you investigate with your client the existence or nonexistence of any other relevant AMCO policies.

Furthermore, we have reviewed your letter of denial dated March 3, 2006 as well as AMCO's letter of denial dated November 10, 2005. Our initial concern is AMCO's speed with which it dispatches its insureds' interests in denying claims without the benefit of even suggesting the probability of a defense. Of more particular concern is your willingness to carry AMCO's torch and perpetuate a pattern of practice of accusing our clients of fraud in the application when it was AMCO's own appointed agent who secured the coverage. We suggest you review Insurance Code Section 1731 if you have any questions.

Considering the position AMCO put our clients in, our clients had no alternative but to protect themselves and cut their losses early. As you know, in another case in which our clients requested defense and indemnification from AMCO, AMCO delayed for over one year causing our clients to incur over one million dollars in defense costs alone. Moreover, at the time

**MJLAW 0467**

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

A Partnership    Professional Corporations

Scott Johnson, Esq.
Re:    Hidden Glen v. 1800 South Maple Street, LLC
May 7, 2007
Page 2

settlement of that matter was ultimately placed on the record, our clients were forced to commit $2,000,000.00 of their own money to assure settlement. That being said, our clients were left with no alternative in this matter, after being left high and dry, but to cut their losses early and settle without the assistance of AMCO.

The settlements and expenses for this matter are summarized as follows:

| | |
|---|---|
| Phase I Settlement | $73,187.11 |
| Phase II Settlement | $839,890.52 |
| Phase II Settlement Contingency Payment | $25,360.00 |
| Phase II Supplemental Settlement | $193,904.82 |
| *Pending* (not yet paid) Phase III Settlement | $345,661.12 |
| Expenses and Fees[1] | $37,435.30 |
| Attorney's Fees[2] | $13,890.00 |
| TOTAL | $1,529,328.87 |

Demand is hereby made that AMCO reopen this claim and reimburse its insureds. The current demand is $1,529,328.87 reimbursement for monies paid for settlement *in addition to* reimbursement of all expenses paid and attorney's fees for defense of the underlying third party action. Absent any good faith attempt to resolve this matter we will be left with no alternative but to proceed with litigation.

Thank you in advance for your professional courtesy and cooperation.

Very truly yours,

NEAL H. ROCKWOOD          C. BRANT NOZISKA

NHR/CBN/clf/cka

---

[1] Expenses and fees are still under review. This total does not reflect all expenses and fees incurred.
[2] A preliminary review of some of the defense fees from 2006-2007 total $13,890.00. The remaining defense fees are still being calculated so a full amount is not yet available.

Johnson 05.07.07

# EXHIBIT E

MILLER·JOHNSON·LAW

Scott A. Johnson
Eric M. Leenerts
Jon B. Miller

The Marston Building
427 C Street, Suite 410
San Diego, California 92101

Telephone
619·232·0086
Facsimile
619·232·0089

May 21, 2007

Neal H. Rockwood, Esq.
C. Brant Noziska, Esq.
ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, CA  92106

> RE:  Hidden Glen Maintenance Corp. v. 1800 South Maple Street, LLC, et al.
>       San Diego Superior Court Case No. GIC852647
>       Policy No. ACP BPH 7801069841
>       Claim No. 84L52141

Dear Messrs. Rockwood and Noziska:

I have received and read your letter of May 7, 2007, regarding the request for coverage of the above-referenced litigation. Please excuse my delay in responding; I had been busy with other matters, and wanted to make sure that I could give your letter careful consideration.

A.    The Request For Information

Initially, it should be noted that my letter of March 3, 2006, did not state that AMCO had unequivocally denied its insureds' request for coverage. Rather, the letter requested specific information regarding the relationships between AMCO's named insureds and the defendants in the Hidden Glen action, and said that the request for coverage would be considered denied if no responsive information was provided.

The defendants named in the Hidden Glen complaint were Ralph and Keith Gianella (both individually and as co-trustees of a revocable trust), William Ayyad, William Ayyad, Inc., 1800 South Maple Street, LLC, Premier Communities, LLC, Dan Tomasi and Mark Holmes Construction. The named insureds under AMCO policy no. ACP BPH 7801069841 are "ACDW Properties/Gianella Properties" and "4-Way Farms." Accordingly, none of the named insureds were named defendants in the litigation.[1] "South Maple Street LLC" is named as an additional insured on two endorsements, and may be the same entity as defendant "1800 South Maple Street, LLC," but the endorsements only cover liability as a "mortgagee, assignee or receiver," or as a manager or lessor of the property, and the complaint did not appear to make any allegations against any defendants acting in such a capacity.

---

[1] Your letter of May 7, 2007, does nothing to clear up the relationship between AMCO's insureds and the named defendants. In fact, you state that you represent "Allied/Amco's insureds," and you refer to your "clients" having to pay a settlement, but you nowhere identify who those "insureds" or "clients" are.

MJLAW 0453

Messrs. Rockwood and Noziska
Page 2 of 3
May 21, 2007

Obviously, it could be assumed that there were connections between some of the named insureds and the named defendants -- e.g., Giannella Properties presumably involved Ralph and/or Keith Giannella, and Ralph Giannella and William Ayyad are involved with ACDW Properties. However, the mere existence of relationships as shareholders, owners, partners or employees does not create insurance coverage. Consequently, AMCO wanted information regarding the relationships, or some explanation of why it was believed that entities and/or individuals who were not named insureds were nonetheless entitled to coverage under the AMCO policy, so that careful consideration could be given to possible alternative grounds for coverage. Since both AMCO and I had independently concluded that the complaint did not allege any covered claims against the named or identified insureds, the refusal to respond to my request for information left us with no reason to believe that any of the defendants were entitled to insurance coverage.[2]

B.    The Insureds Have Not Been Accused Of Fraud

Neither AMCO's letter of November 10, 2005, nor my letter of March 3, 2006, accused your clients of "fraud." The letter of November 10 (which, contrary to your characterization, did not state that coverage had been denied), made no mention of the subject. My letter discussed the fact that the complaint's allegations, if true, indicated that material information had not been disclosed on the application for insurance, and that if subsequently "warranted by the facts," AMCO might seek rescission of the policy. This was only a reservation of rights; no claim was made that your clients engaged in fraud, or that they were directly responsible for any misrepresentation or nondisclosure on the application.

C.    AMCO Is Aware Of No Other Policies Covering Your Clients

The Hidden Glen litigation was originally tendered to AMCO under policy no. 7801069841, and the coverage analysis was performed under that policy. However, AMCO has checked to determine whether the defendants in that litigation might be insured, or whether the South Maple Street property is a "described premises," under any other policy. No such policy has been located.

D.    No Potential For Coverage Has Been Shown

It is significant that your letter nowhere attempts to address any of the specific reasons, discussed in detail in my letter of March 3, 2006, for my conclusion that coverage did not exist based on the facts known to AMCO. I still cannot see where the complaint in Hidden Glen alleges any potentially covered claim for "bodily injury" or "personal and advertising injury." And, it still seems clear that coverage of any claim for "property damage" would be completely precluded by the exclusions for "[p]roperty you own, rent, or occupy" and "premises you sell," and by the other exclusions discussed in my previous letter.

---

[2] I did receive a letter dated March 9, 2006, from Robyn Spagnuolo, Assistant to General Counsel of United Development Group, stating that "we are reviewing our files for additional information per your request." However, no further communications were received.

Messrs. Rockwood and Noziska
Page 3 of 3
May 21, 2007

    Consequently, it remains my opinion, and AMCO concurs, that there was no duty under the insurance policy to cover the claims in the Hidden Glen litigation.  However, I have no desire to render an opinion which erroneously denies coverage to an insured, and AMCO is not seeking to avoid any legitimate contractual obligations.  If you are aware of another policy issued by AMCO or its affiliated companies which may cover some or all of your clients, or if you believe that there are mistaken assumptions of fact or conclusions of law in my coverage analysis, please let me know as soon as possible.  Also, and despite the long period of time which its request has been ignored, AMCO is still willing to consider any information you could provide regarding the relationships between the named insureds and the named defendants which might indicate a potential for insured status.

                              Very truly yours,

                              MILLER JOHNSON LAW


                              Scott A. Johnson, Esq.

SAJ/gp

# EXHIBIT F

LEXSEE 2007 U.S. DIST. LEXIS 22628

CHARLES FARRUGIA, Plaintiff, v. ALLSTATE INSURANCE COMPANY, and
DOES 1-50, inclusive, Defendants.

No. C 07-00212 WHA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

*2007 U.S. Dist. LEXIS 22628*

March 8, 2007, Decided
March 8, 2007, Filed

**COUNSEL:** [*1] For Charles Farrugia, Plaintiff: John N. Frye, LEAD ATTORNEY, Law Offices of John N. Frye, San Mateo, CA.

For Allstate Insurance Company. Defendant: Cynthia L. Mellema, LEAD ATTORNEY, Sonnenschein Nath & Rosenthal. San Francisco, CA; Kimberly Erin De Hope, LEAD ATTORNEY, Sonnenschein Nath & Rosenthal LLP, San Francisco, CA.

**JUDGES:** WILLIAM ALSUP, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** WILLIAM ALSUP

**OPINION**

**ORDER DENYING MOTION TO AMEND COMPLAINT, DENYING MOTION TO REMAND TO STATE COURT, AND CONTINUING CASE MANAGEMENT CONFERENCE**

**INTRODUCTION**

In this insurance-contract action, plaintiff Charles Farrugia seeks to amend his complaint and remand the case to state court. For the below-stated reasons, plaintiff's motion for leave to amend and remand to state court is **DENIED**.

**STATEMENT**

In this action, plaintiff contends that in 2001 and 2006 he was injured in two accidents involving uninsured drivers. Plaintiff alleges that after each accident he submitted claims to defendant Allstate Insurance Co. On the first claim, plaintiff contends that Allstate falsely told plaintiff that uninsured benefits were not available to him because he did not obtain the vehicle license number [*2] of the uninsured driver. On the second claim, plaintiff contends that Allstate wrongfully told him that his policy did not include uninsured motorist coverage. The complaint included claims based on breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation (Compl. PP 5-8).

This action was originally filed in San Francisco Superior Court on November 27, 2006. Defendant Allstate removed the case to federal court on January 11, 2007. In the notice of removal. defendant's sole asserted basis for jurisdiction was the parties' diversity of citizenship. Plaintiff is a resident of California and defendant is incorporated in and has its principal place of business in Illinois.

Plaintiff now seeks leave to amend his complaint to name as a defendant Steve Mahoney, an Allstate agent. The proposed amended complaint alleges that an individual from Mahoney's office was the person who made the misrepresentations to plaintiff. The proposed pleading also alleges that Mahoney does business in the City and County of San Francisco. Based on the proposed addition of Mahoney, plaintiff also seeks to remand the action to state court.

**ANALYSIS**

With respect [*3] to non-indispensable parties, the Ninth Circuit has stated: "Once removal has occurred, the district court has two options in dealing with an attempt to join a non-diverse party. *28 U.S.C. § 1447(e)* provides that '[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.'" *Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001)* (quoting *Newcombe v. Adolf Coors Co.,*

2007 U.S. Dist. LEXIS 22628, *

*157 F.3d 686, 691 (9th Cir. 1998)).* "The language of *§ 1447(e)* is couched in permissive terms and it clearly gives the district court the discretion to deny joinder." *Newcombe, 157 F.3d at 691.* Factors that a district court may consider in the exercise of its discretion include: the statute of limitations, the timeliness of the motion to amend, whether the plaintiff seeks to join a party solely to destroy diversity, the apparent validity of the claim, and the prejudice to the plaintiff. *See* William W Schwarzer et al., California Practice Guide: Federal Civil Procedure Before [*4]    Trial 2:1078 (2005) (citing cases). ˙

> * Generally, if the plaintiff seeks to add a necessary, nondiverse defendant, remand is appropriate. *See Yniques v. Cabral, 985 F.2d 1031, 1035 (9th Cir. 1993).* Here, plaintiff does not contend that Mahoney is a necessary defendant.

According to defendant, there are three reasons that counsel against granting plaintiff leave to amend and remanding to state court. *First,* defendant contends that plaintiff cannot state a valid claim for relief against Mahoney. *Second,* defendant alleges that without joining Mahoney, plaintiff will be able to obtain complete relief from defendant. *Third,* defendant contends that plaintiff seeks to join Mahoney only for the purpose of destroying diversity jurisdiction.

With the exception of defendant's first reason -- that plaintiff cannot state a claim for relief against Mahoney -- the factors tilt toward denying the addition of Mahoney. Plaintiff's reply brief does not respond to the contention that plaintiff seeks [*5] to add Mahoney only to destroy diversity jurisdiction. It has been noted that such fraudulent joinder may be a "dispositive factor" that the Court may consider "in deciding whether a plaintiff may join a nondiverse defendant." *Mayes v. Rapoport, 198 F.3d 457, 463 (4th Cir. 1999); Desert Empire Bank v. Ins. Co. of No. Am., 623 F.2d 1371, 1376-77 (9th Cir. 1980)* ("[W]e conclude that a trial court should look with particular care at such motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court. In such cases, a plaintiff may well be inclined to add a new defendant only to have his action remanded to the state forum, the one that he had originally chosen as best suited to his purposes.") (citation omitted). Nor does plaintiff contend that joinder of Mahoney is necessary to obtain a full recovery. Plaintiff's request for money damages "could be fully satisfied by [defendant Allstate]." *Newcombe, 157 F.3d at 691.* Indeed, the proposed amended complaint does not include Mahoney in the prayer for relief. Moreover, plaintiff does not explain [*6] why he waited until January 2007 -- two months after the action was initially filed in state court -- to add

Mahoney as a defendant. For these reasons, plaintiff's motion for leave to amend must be denied.

Notwithstanding this ruling, it is worth discussing whether plaintiff could maintain a claim against Mahoney. Both parties spend a significant portion of their briefs discussing this issue. This order holds that plaintiff could state a claim against Mahoney under California law. Nothing in this order prevents plaintiff from pursuing such a claim against Mahoney in state court.

Defendant contends that plaintiff cannot state claims against Mahoney for misrepresentation, breach of contract, or bad faith. As defendants point out, California courts have recognized the general principle that an agent or employee of an insurance company is not liable to an insured while acting in the scope of the agency or employment. *See Lippert v. Bailey, 241 Cal. App. 2d 376, 382, 50 Cal. Rptr. 478 (1966).* Defendants contend that this principle alone demonstrates the futility of adding Mahoney, an individual Allstate agent, as a defendant.

The principle recognized in *Lippert* in 1966 was only a [*7] general one. Since *Lippert,* California courts have recognized three exceptions to the general rule. An agent may assume a greater duty -- and incur personal liability -- towards the insured by: (1) entering into "an express agreement to ensure adequate coverage"; (2) "a holding out by the agent to assume a greater duty toward an insured"; and (3) "misrepresenting the policy's terms or extent of coverage." *Paper Savers, Inc. v. Nacsa, 51 Cal. App. 4th 1090, 1097, 59 Cal. Rptr. 2d 547 (1996); see also Clement v. Smith, 16 Cal. App. 4th 39, 45, 19 Cal. Rptr. 2d 676 (1993)* ("Absent some notice or warning, an insured should be able to rely on an agent's representations of coverage without independently verifying the accuracy of those representations by examining the relevant policy provisions."). This has been referred to as a "special duty" exception to the general rule. As plaintiff points out, numerous judges within this district, including the undersigned, have recognized that California does not have a *per se* bar against finding individual insurance agents liable. *See, e.g., Kaighn v. Nat'l Life of Vt., No. C 02-24984 CRB, 2003 U.S. Dist. LEXIS 959, at *3-*4 (N.D. Cal. [*8] 2003)* (remanding action to state court and holding that "the *Lippert* rule does not preclude suit against an insurance agent who misrepresents the nature or scope of coverage or holds himself out as having special expertise in the type of insurance sought by the insured"); *Sun v. Equitable Life Assurance Soc'y, No. C 01-01553 WHA, 2001 U.S. Dist. LEXIS 9481, 2001 WL 764486, at *2-*3 (N.D. Cal. 2001)* (recognizing that "an agent may assume a greater duty and be held personally liable for merely negligently misrepresenting the scope of coverage under a policy"). The above-cited caselaw also disproves defendants' contention that the

*only* exception to the *Lippert* rule is where an agent acts as a "dual agent" on behalf of both the insurer and the insured. *See Quiroz v. Valley Forge Ins. Co., No. C 05-2025 SBA, 2005 U.S. Dist. LEXIS 43316, 2005 WL 1806366, at \*5 (N.D.Cal. July 28, 2005)* (citing *Macey v. Allstate Property and Casualty Ins. Co., 220 F. Supp. 2d 1116, 1120 (N.D. Cal. 2002))* ("California courts have recognized two separate 'lines of exception' to the general *Lippert* rule: (1) the dual agency exception, and (2) the 'special duty' exception.").

In the proposed amended complaint here, plaintiff [*9] alleges that Mahoney's office "falsely told Plaintiff that uninsured motorist benefits were not available to him" and "wrongfully told Plaintiff that his policy did not include uninsured motorist coverage." Plaintiff contends that he relied on the misrepresentations and was induced not to pursue his uninsured motorist benefits (Prop. Am. Compl. PP 7, 20-21). This is sufficient to demonstrate that Mahoney "misrepresented the terms of the policy to the insured." *Paper Savers, Inc., 51 Cal. App. 4th at 1098.* Plaintiff thus appears to have a plausible theory of liability against Mahoney for misrepresentation of the policy's terms. The proposed amendment is therefore not futile. *See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)* ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") (internal citations omitted).

The decisions on which defendant relies are unpersuasive. Those decisions are federal court decisions that relied on *Lippert* -- but without discussion of any of the subsequent authority that held individual [*10] agents liable to insured plaintiffs. *See Sun, 2001 U.S. Dist. LEXIS 9481, 2001 WL 764486, at \*4* (distinguishing decisions that had "correctly quote[d] *Lippert*" but noting that in those cases "the plaintiff's complaint clearly alleged that the defendant insurance agent was an employee of the insurance company and acted within the scope of his employment"). For example, in *Duffy v. Allstate Insurance Co., Case No. SA CV 97-231-GLT(ANX), 1997 U.S. Dist. LEXIS 18023, at \*1 (C.D. Cal. Feb. 17, 2007)*, the district court relied on *Lippert* and denied a motion for leave to amend where the plaintiffs admitted that the "'entire controversy' [arose] from acts within the scope of [the individual agent's] agency." In *Mercado v. Allstate Ins. Co., 340 F.3d 824, 826 (9th Cir. 2003).* the Ninth Circuit only briefly discussed the general rule and the "dual agent" exception but not the "special duty" exception. Other decisions cited by defendants can also be distinguished for their failure to discuss the "special duty" exception to the general rule. *See Icasiano v. Allstate Ins. CO., 103 F.Supp. 2d 1187, 1190 (N.D. Cal. 2002); Moreno v. Allstate Ins. Co., No. CIV-S02-1426 DFL JFM, 2002 U.S. Dist. LEXIS 22073, 2002 WL 31133203, [*11] at \*2 (C.D. Cal. Sept. 10, 2002).* This order relies on the well-settled principle that a plaintiff can, for pleading purposes, maintain a claim against an individual insurance agent so long as the plaintiff alleges that the agent acted under one of the three exceptions recognized in *Paper Savers. See Smith v. New England Mut. Life Ins. Co., No. C 98-3083 SI, 1998 U.S. Dist. LEXIS 17572, 1998 WL 775124, at \*2 (N.D. Cal. Nov. 2, 1998)* ("Because *Lippert* is silent regarding liability for an agent's fraudulent actions and the instant case includes allegations of intentional misrepresentation. *Lippert* may not be authority for determining agent nonliability with respect to fraud claims.").

## CONCLUSION

This order holds that plaintiff could state a claim against Mahoney. It is conceivable -- if not likely -- that if Mahoney had been named as a defendant in the original state action, the Court would remand the instant action. But plaintiff's request to amend after a proper removal gives this Court the discretion to allow such amendment. Accordingly, for the above-stated reasons, plaintiff's motion for leave to amend is **DENIED**. Because diversity of citizenship exists between plaintiff and defendant, [*12] the motion for remand is also **DENIED**.

At oral argument, plaintiff's counsel requested a one-week continuance of the case management conference. That request is **GRANTED**. The initial case management conference will be held on **APRIL 26, 2007**, at **11:00 A.M.** The joint case management statement is due by **APRIL 19, 2007**.

**IT IS SO ORDERED.**

Dated: March 8, 2007.

WILLIAM ALSUP

UNITED STATES DISTRICT JUDGE

# EXHIBIT G

LEXSEE 2002 U.S. DIST. LEXIS 3628

**CALVIN F GUNN, Plaintiff, v HANS PETER WILD, CASUN INVEST AG and DOES ONE through TEN, inclusive, Defendants. HANS PETER WILD and CASUN INVEST AG, Counter-Claimants, v CALVIN F GUNN and KAREN GUNN, Counter-Defendants.**

**No C-01-4320 VRW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2002 U.S. Dist. LEXIS 3628*

**February 26, 2002, Filed**

**DISPOSITION:** [*1] Plaintiff's motion for leave to file an amended complaint and remand GRANTED. Defendants' motion to strike DENIED. Matter REMANDED to state court.

**COUNSEL:** For Calvin F. Gunn, Plaintiff: Charles J. Smith, Smith Bentley & Hartnett, Redwood City, CA.

For Calvin F. Gunn, Plaintiff: Ivo M. Labar, Kerr & Wagstaffe LLP, San Francisco, CA.

For Hans Peter Wild, Casun Invest A.G., Defendants: Hilton S. Williams, John P. Phillips, Paul Hastings Janofsky & Walker, LLP, San Francisco, CA.

For Hans Peter Wild, Casun Invest A.G., Defendants: Karla J. Kraft, Paul Hastings Janofsky & Walker, LLP, Peter M. Stone, Paul Hasting Janofsky & Walker, LLP, Costa Mesa, CA.

For Karen Gunn, Counter-defendant: Charles J. Smith, Smith Bentley & Hartnett, Redwood City, CA.

**JUDGES:** VAUGHN R WALKER, United States District Judge.

**OPINION BY:** VAUGHN R WALKER

**OPINION**

ORDER

Plaintiff moves for leave to amend his complaint to join a non-diverse defendant and for the action to be remanded to state court. Doc # 16. For the reasons set forth below, plaintiff's motion (Doc # 16) is GRANTED. The court finds this matter appropriate for disposition without oral argument. See Civ LR 7-1(b). [*2] The hearing scheduled for February 14, 2002, is VACATED.

I

Plaintiff filed suit in the Superior Court of the State of California for the County of San Mateo on October 19, 2001. Compl (Doc # 1, Exh A). Defendants removed to this court on November 19, 2001, based on alleged diversity of citizenship. Doc # 1. Defendants filed a counterclaim on November 28, 2001. Doc # 9. All claims and counterclaims are state law claims.

On January 3, 2002, plaintiff filed the present motion, seeking leave to file amended complaint joining a non-diverse party and, accordingly, remand to state court, pursuant to *28 USC § 1447(e)*. Doc # 16. The parties stipulated to continue this motion on January 15, 2002, while the court considered defendants' ex parte application for a temporary restraining order (TRO). Doc # 20. The court denied defendants' application for a TRO on January 25, 2002. Doc # 32.

The claims and counterclaims in this matter are a product of a bitter personal and business dispute between plaintiff, his daughter and defendant Wild. From the record before the court, it appears that by 1992 plaintiff was suffering severe financial difficulties. Plaintiff attributes [*3] his debt to problems stemming from his investment in Lloyd's of London. See Compl (Doc # 1, Exh A) at 3. Defendants attribute plaintiff's debt to his lavish lifestyle. See Def Opp Br (Doc # 27) at 4.

Wild and plaintiff's daughter, Lezlie [1], have a close personal relationship. Plaintiff alleges that in response to his financial difficulties, as a "family" gesture, Wild offered to enter into an agreement with plaintiff to resolve plaintiff's debt. Plaintiff asserts that Wild offered to set

up a holding company, which became defendant Casun Invest. Plaintiff alleges that plaintiff and Wild agreed that plaintiff was to convey title of his home, the "Woodside home," to Casun Invest, to secure an advance by Wild to plaintiff for $ 1,600,000. The purpose of this plan, alleges plaintiff, was to secure the ability of plaintiff and his family to continue to live in the Woodside home, while alleviating plaintiff's debt. Although this was not mentioned in the deed conveying legal title, plaintiff contends that Wild promised that plaintiff could reside in the Woodside home for plaintiff's lifetime and that plaintiff could reacquire title at any time for $ 1,600,000.

> 1  The parties do not agree on how to refer to plaintiff's daughter. In his brief, plaintiff refers to her as "Lezlie Simpson" and alleges that she is married to Ronald Simpson, although plaintiff also alleges that she represents that she is married to Wild and sometimes calls herself "Lezlie Wild." Defendants, however, refer to Lezlie as "Lezlie Gunn." Rather than weighing in on one side or the other, the court will refer to plaintiff's daughter as "Lezlie" or "plaintiff's daughter."

[*4]  Plaintiff's complaint alleges that defendants breached their promise that plaintiff could continue to reside in the Woodside home, with an option to repurchase. Plaintiff seeks declaratory relief, specific performance of the alleged oral agreement for life estate and damages for conspiracy to commit fraud and deceit and abuse of elderly person.

Wild claims that plaintiff's debt was the result of plaintiff's tendency to live beyond his means. In order to help plaintiff avoid bankruptcy, Wild claims that he bought the Woodside home for $ 1,600,000, which was considerably more than the present value of the home. Wild contends that plaintiff continued to suffer financial reverses into the late 1990s and, as a result, Wild allowed plaintiff to do legal work for Wild's companies. Wild claims that plaintiff and his wife then conspired to get more money from Wild, by falsifying the claims in plaintiff's complaint. As a result of this alleged conspiracy, defendants filed their counterclaims alleging a variety of state law claims including breach of fiduciary duty relating to plaintiff's legal work for Wild.

Plaintiff's complaint discussed the participation of his daughter, Lezlie, in the [*5] actions in dispute and referred to her repeatedly as the agent of Wild. See, e g, Compl (Doc # 1, Exh A) at P 15. Plaintiff now contends, however, that "recent investigation" has revealed that Lezlie was involved in the conspiracy to "wrestle [plaintiff's] Woodside home from him." Pl Br (Doc # 16) at 1. Plaintiff states that this new information, which indicates Lezlie's active participation in the alleged conspiracy,

has overcome his initial reluctance to assert claims against his daughter and that he now wishes to join her as a defendant. Besides joining her in all existing claims, plaintiff also wishes to bring a claim solely against Lezlie, alleging defamation and libel as a result of a letter Lezlie wrote to plaintiff, which plaintiff contends was also shown to Wild. See proposed first amended complaint (FAC) (Doc # 16, Exh # 2) at PP 50-53. As plaintiff and Lezlie are both residents of California, plaintiff contends that the matter must be remanded to state court.

II

A

Consistent with the vigorously contested nature of the proceedings to date, each party has filed evidentiary objections to the other party's declarations. On January 24, 2002, defendants filed evidentiary [*6] objections to plaintiff's declaration. Doc # 28. Soon after, plaintiff filed evidentiary objections to defendants' declarations. Doc # 36. Defendants then filed evidentiary objections to plaintiff's reply declaration. Doc # 40.

On February 11, 2002, three days before the hearing on plaintiff's motion, defendants also filed a separate motion to strike plaintiff's reply declaration. Doc # 37. In this motion, defendants make a variety of allegations, including that in his reply declaration plaintiff disclosed defendants' confidential information, learned as a result of plaintiff's legal representation of defendants, without authorization. Defendants, however, do not identify the substance of this allegedly unauthorized disclosure. Defendants also assert that plaintiff's reply declaration contains various factual and legal inaccuracies.

Defendants' motion to strike is noticed for hearing on February 14, 2002, the same day as the hearing on plaintiff's motion. Defendants, however, provide no authority for their attempt to notice a motion for hearing on three days time, nor is the court aware of any such authority. Moreover, defendants' evidentiary objections, filed on the same day as [*7] the motion to strike, cover the same territory as the motion. As a result of this procedural defect, the court DENIES defendants' motion to strike. Doc # 37.

Both of defendants' evidentiary objections (Doc # 28 and # 40) identify numerous allegedly conclusory and irrelevant statements made by plaintiff in his declaration (Doc # 17) and reply declaration (Doc # 35). Defendants are undoubtedly correct that plaintiff's declarations are replete with conclusory, indeed sometimes inflammatory, statements and irrelevant allegations. Defendants' objections, therefore, are duly noted. The court does not find it necessary, however, to analyze defendants' objections individually, because the court's ruling on plaintiff's substantive motion does not rely upon plaintiff's statements

2002 U.S. Dist. LEXIS 3628, *

in his declarations. Moreover, many of the disputes raised by defendants' evidentiary objections go to the factual issues underlying plaintiff's complaint, such as the extent of plaintiff's legal representation of defendants, and the court sees no reason to attempt to resolve these disputes here.

Not to be left out, plaintiff has also filed cursory evidentiary objections to defendants' declarations. Doc # 36. In his [*8] objections, plaintiff merely states, with negligible variation, that the statements in Wild's declaration are "conclusory and lack[] foundation" and that paragraph one of Ponder's declaration "rests on hearsay and its subject matter is not relevant." See id at 1. Again, the court notes plaintiff's objections, but, because of their lack of both specificity and relevance to the court's determination, declines to analyze them individually. Resolution of the substantive issues before the court simply does not require addressing these matters.

B

Plaintiff's substantive motion is governed by *28 USC § 1447(e)*, which provides:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

"Under *§ 1447*, whether to permit joinder of a party that will destroy diversity jurisdiction remains in the sound discretion of the Court." *Palestini v General Dynamics Corp, 193 F.R.D. 654, 658 (SD Cal 2000)*, citing *Newcombe v Adolf Coors Co, 157 F.3d 686, 691 (9th Cir 1998)*; *Clinco v Roberts, 41 F. Supp. 2d 1080, 1082 (CD Cal 1999)*. [*9] In the Ninth Circuit, district courts, in the exercise of their broad discretion, may consider any of a wide range of factors in considering whether to permit amendment to join non-diverse defendants, including whether: (1) the party to be joined is necessary for just adjudication; (2) plaintiff would be barred by a statute of limitations from bringing claims against the new defendant in state court; (3) there has been unexplained delay in seeking joinder; (4) plaintiff's purpose in seeking joinder is dilatory; (5) the claims against the new defendant appear valid; and (6) denial of joinder will prejudice plaintiff. See, e g, *IBC Aviation Servs v Compania Mexicana De Aviacion, 125 F. Supp. 2d 1008, 1011 (ND Cal 2000)*; *Righetti v Shell Oil Co, 711 F. Supp. 531, 535 (1989)*.

Relying heavily on *Yniques v Cabral, 985 F.2d 1031 (9th Cir 1993)*, defendants assert that, when considering whether to permit an amendment that would destroy diversity, the court is required to analyze the case under both *§ 1447(e) and* FRCP 19, which concerns joinder of necessary parties. Because Lezlie is not a necessary or indispensable party under FRCP 19, defendants [*10] assert, the court should deny plaintiff's motion. This is, however, both a misstatement of the law and the holding of the *Yniques* court. In *Yniques*, the district court dismissed a removed action sua sponte and without a hearing after plaintiff joined a non-diverse defendant. The court subsequently declined to reconsider its order. The Ninth Circuit reversed, holding that, pursuant to *§ 1447(e)*, a district court could not both allow joinder and dismiss a removed action.

The *Yniques* court, however, explicitly rejected defendants' assertion that the district court was required to undertake a FRCP 19 analysis, holding instead that Congress intended "district courts to have a choice" between the options available under *§ 1447(e)* and FRCP 19. *Id at 1036*. Besides the options available under *§ 1447(e)*, allowing joinder and remanding the action or denying joinder, the *Yniques* court held that a district court could, pursuant to FRCP 19, determine that the party seeking to be joined was indispensable to the action but nevertheless refuse joinder, perhaps because the motion was untimely, and dismiss the action.

Defendants' reliance on *Yniques* is unavailing. [*11] A court considering joinder of a non-diverse party after removal is not required to undergo FRCP 19 analysis. *Section 1447* was intended to broaden the options available to a district court, by "taking advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal." HR Rep No 889, 100th Cong, 2d Sess 73-74, reprinted in 1988 US Code Cong & Admin News 6033, quoted in *Righetti, 711 F. Supp. at 535*.

Although courts considering whether to allow joinder of a non-diverse party under *§ 1447(e)* frequently discuss the FRCP 19 standard, such courts only "disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief." *IBC Aviation Servs, 125 F. Supp. 2d at 1012*. Clearly, the actions of plaintiff's daughter are not tangentially related to the actions in dispute. Lezlie, in fact, is alleged to be a full, active participant in the alleged conspiracy at the basis of plaintiff's claims.

Defendants also contend that plaintiff has failed adequately to explain the reasons for his delay [*12] in naming his daughter as a defendant. Plaintiff's motion is brought at an early stage of this litigation. Discovery has not commenced, nor has the first case management con-

2002 U.S. Dist. LEXIS 3628, *

ference occurred. Moreover, plaintiff has explained that, although aware that Lezlie was a participant in defendants' actions, plaintiff was unaware of her culpability until recently. Particularly in light of Congress' intention in enacting § 1447(e) to "undermine the doctrine employed by some courts that amendments that destroyed diversity were to be viewed with suspicion," the court sees no reason to inquire further into plaintiff's expressed initial reluctance to name his daughter as a defendant. IBC Aviation, 125 F. Supp. 2d at 1012, quoting Trotman v United Parcel Service, 1996 U.S. Dist. LEXIS 10388, *1 (ND Cal 1996).

Defendants also seek to impugn plaintiff's motive, asserting that plaintiff's motive is to "drag two foreign nationals * * * to the state court in the area where he was born and raised * * * ." Def Opp Br (Doc # 27) at 18. In other words, defendants suggest that plaintiff added Lezlie as a defendant in order solely to defeat diversity jurisdiction. There is divergence [*13] within the Ninth Circuit whether an intention to defeat diversity jurisdiction is a dilatory motive. Clearly, § 1447(e) makes the possibility that plaintiff adds a defendant in order to defeat diversity less of a concern. "Suspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants." IBC Aviation, 125 F. Supp. 2d at 1012. As a result, when considering motive, courts often consider whether plaintiff is attempting unreasonably to delay proceedings. See Righetti, 711 F. Supp. at 534.

Moreover, courts that consider diversity destroying amendments improper invariably rely on Desert Empire Bank v Ins Co of N America, 623 F.2d 1371 (9th Cir 1980), which was decided well before the enactment of § 1447(e) and is, therefore, of extremely limited pertinence. See, e g, Clinco, 41 F. Supp. 2d at 1083. As a result, the court finds Desert Empire Bank unpersuasive. To the extent that the intention to destroy diversity counts as an improper motive under § 1447(e), however, the court finds that defendants have not produced evidence [*14] demonstrating this intention. Defendants assert that plaintiff was aware of Lezlie's actions at the time of filing his original complaint and deduce that the attempt to include her now must, therefore, be dilatory. Yet although plaintiff's complaint did discuss Lezlie's actions, it did not assign her active participation in the conspiracy at issue, but relegated her to the role of agent for Wild's actions. Plaintiff's proposed FAC asserts that Lezlie, aside from being Wild's agent, was an active par-

ticipant in designing and carrying out the alleged conspiracy.

Since defendants possess no "substantive right" to remove an action, "the 'right' of removal is merely an expectancy contingent on plaintiff['s] failure to add nondiverse defendants * * * ." Righetti v. Shell Oil Company, 711 F. Supp. 531, 534 n3. As a result, "denying the amendment would require plaintiff to choose between redundant litigation arising out of the same facts and involving the same legal issues or foregoing [his] potential claims against" Lezlie. IBC Aviation v. Compania Mexicana de Aviacion, 125 F. Supp. 2d at 1013. On the other hand, "allowing amendment will not prejudice defendants as discovery has not yet begun." Id. Plaintiff's [*15] motion is timely and his delay in naming Lezlie as a defendant has been explained. Moreover, although plaintiff may not ultimately prevail against any defendant, plaintiff's claims against Lezlie appear to be as viable as those against the original defendants. As a result, the court determines that, pursuant to § 1447(e), joinder and remand are appropriate.

As in Righetti:

> This approach is consistent with Congress' concern for the administration of justice by reducing the number of diversity-of-citizenship cases to be handled in federal court and the express purpose of section 1447(e), as well as the liberal policy favoring amendment under [FRCP] 15.

Righetti, 711 F. Supp. at 535, citing Foman v Davis, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).

III

In sum, for the foregoing reasons, plaintiff's motion for leave to file an amended complaint and remand (Doc # 16) is GRANTED. Defendants' motion to strike (Doc # 37) is DENIED. The court ORDERS this matter to be REMANDED to San Mateo superior court. The clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER

United States [*16] District Judge

**EXHIBIT H**

LEXSEE 2007 U.S. DIST. LEXIS 37223

**LAURIE MISKUSKI, Plaintiff, v. CRESCENT HEIGHTS OF AMERICA, INC., a corporation, SONNY KAHN, an individual, BRIAN DUCHMAN, an individual, KATHY CURTIS, an individual, and DOES 1 through 100, inclusive, Defendants.**

**CASE NO. 06cv2739 BTM(LSP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 37223*

**May 21, 2007, Decided
May 21, 2007, Filed**

**COUNSEL:** [*1] For Laurie Miskuski, Plaintiff: Lauren Mayo-Abrams, LEAD ATTORNEY, Law Offices of Lauren Abrams, Beverly Hills, CA, US.

For Crescent Heights of America, Inc., a corporation, Sonny Kahn, Brian Duchman, Kathy Curtis, an individual, Defendants: Anne M Brafford, Michael J Haskell, LEAD ATTORNEYS, Morgan Lewis and Bockius, Irvine, CA, US.

**JUDGES:** Hon. Barry Ted Moskowitz, United States District Judge.

**OPINION BY:** Barry Ted Moskowitz

**OPINION**

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; AND DENYING MOTION FOR REMAND**

Defendants Sonny Kahn, Brian Duchman, and Kathy Curtis ("Defendants") have filed a Motion for Judgment on the Pleadings on the second and fifth causes of action. Plaintiff has filed a Motion for Leave to File a First Amended Complaint and a Motion for Remand. For the reasons discussed below, Defendants' Motion for Judgment on the Pleadings is **GRANTED,** Plaintiff's Motion for Leave to File a First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART,** and Plaintiff's Motion for Remand is **DENIED.**

**I. FACTUAL ALLEGATIONS**

The following facts are taken from [*2] Plaintiff's Complaint. The Court makes no finding as to the truth of the allegations.

Plaintiff Laurie Miskuski began working for Defendant Crescent Heights of America, Inc. ("Crescent Heights") in 1998 and quickly worked her way up the ranks to the position of Project Manager. (Complaint, P 11.) In the Fall of 2005, Plaintiff's doctor informed her that he had found a tumor in one of her ovaries and that further tests needed to be performed. (Id. at P 15.) In late December, after test results came back, Plaintiff's doctors scheduled immediate surgery and advised Plaintiff that she would need four to six weeks of leave to recover from the surgery. (Id. at P 17.) In addition, Plaintiff's doctors informed her that the CT scan revealed a second tumor in her leg, which could be indicative of bone cancer. (Id. at P 18.)

Plaintiff informed Defendant Brian Duchman, a supervisor, of her medical condition and her need to take leave. (Id. at P 19.) Duchman repeatedly assured Plaintiff that she was extremely valuable to the company, that her job would be safe, and that there would be no changes to her job status as a result of her condition. (Id. at P 20.) Plaintiff also [*3] met with Human Resources Representative Vital Osegueda [1] about her need to take medical leave. (Id. at P 21.) Plaintiff asked Osegueda whether she needed to take vacation time in order to ensure that she would be compensated for her medical leave. (Id.) Osegueda assured Plaintiff that she did not need to use personal leave and that she would be paid. (Id.) Plaintiff filled out CFRA-related paperwork at his request. (Id.)

Plaintiff underwent surgery on January 5, 2006, and took leave until February 6, 2006. (Id. at P 22.) When Plaintiff returned to work, she found that her office had

been completely rearranged and that her desk had been cleaned out. (Id. at P 23.) Duchman told Plaintiff that she had been permanently replaced, that she was no longer involved in the operations end of Crescent Heights, and that she would be assigned other duties to be determined at a later time. (Id. at P 25.) Duchman told Plaintiff that whether she had future employment with the company depended on her attitude. (Id. at P 26.) Duchman refused to answer any questions regarding her future level of compensation but did inform her that she would not receive her expected compensation [*4] on the Verano project. (Id.)

> 1    The Complaint incorrectly spells his name "Oswega." The proposed First Amended Complaint corrects the spelling.

The next morning, Plaintiff packed up her office belongings and met with Duchman, who purposefully humiliated Plaintiff by walking her through every department where she had previously served as a manager and pointing to empty desks while loudly stating, "Oh, there's a spare desk. Maybe you could sit here." (Id. at P 29.) Eventually, Plaintiff was placed in a small bedroom in a condominium development which was completely isolated from the sales and operations building. (Id.)

Plaintiff was never provided new business cards for her new position, was not allowed to attend meetings, and received no phone calls. Only after repeated requests was she given a partial job description. (Id. at P 34.) The bullet points that were supposed to detail her duties were left blank. (Id.)

On or about February 10, 2006, Plaintiff wrote an e-mail to Osegueda, complaining [*5] of CFRA discrimination. (Id. at P 36.) The following week, Kathy Curtis, Director of Human Resources, flew out to San Diego to meet with Plaintiff. (Id. at P 37.) Instead of addressing Plaintiff's discrimination complaint, Curtis gave Plaintiff a "one year review." The review was extremely negative and was based on entirely subjective criteria. (Id.) Curtis also informed Plaintiff that her compensation on the in-process Nobel development was being cut from a .25 override to a .1 override - a difference amounting to approximately $ 200,000. (Id. at P 38.)

Plaintiff also learned that she had not been paid for her CFRA leave, despite prior assurances that she would be. (Id. at P 39.) Plaintiff sent a second e-mail to human resources questioning the changes to her compensation and requesting an explanation. (Id. at P 40.) The following week, Duchman met with Plaintiff and demanded to know whether she intended to sue the company. (Id. at P 41.) Duchman told Plaintiff that he could "fix" the situation if she would send e-mails rescinding her complaints and sign a release.

Shortly thereafter, Duchman informed Plaintiff that her compensation was not going to be [*6] changed and that an offer letter was forthcoming, but conditioned the offer letter on Plaintiff sending Curtis an e-mail explaining how happy and excited she was about the new position. (Id. at P 45.) Plaintiff did not send the requested e-mail and never received the offer letter. (Id. at P 46.)

During this time period, a paycheck error occurred, depriving many employees of payment on seven closings. (Id. at P 47.) When the error was caught, all affected employees except Plaintiff received their proper compensation within days. (Id.)

At the end of February 2006, Plaintiff saw her doctor, who immediately placed her on one week of medical leave due to stress. (Id. at P 48.) While she was on leave, a rumor began circulating at the office that Plaintiff had engaged in sexual relations with Duchman in order to obtain her position. (Id. at P 49.)

On or about March 3, 2006, Plaintiff attempted to return to work. (Id. at P 50.) However, the atmosphere continued to be hostile and harassing. (Id.) After a few days, Plaintiff's mental status deteriorated and her physician recommended that she take extended stress leave to recuperate. (Id.)

## II. PROCEDURAL [*7] HISTORY

On July 28, 2006, Plaintiff filed her Complaint in Los Angeles Superior Court. The Complaint names as defendants Crescent Heights, Sonny Kahn, Brian Duchman, and Kathy Curtis. The Complaint asserts causes of action for (1) interference with protected leave under the California Family Rights Act; (2) retaliation in violation of the California Family Rights Act; (3) disability discrimination; (4) wrongful termination in violation of public policy; and (5) intentional infliction of emotional distress.

On September 15, 2006, Crescent Heights filed a motion to transfer venue to San Diego County. The motion was granted, and the case was transferred to San Diego Superior Court.

On September 15, 2006, Crescent Heights removed the action to this Court. The basis of removal was diversity jurisdiction.

## III. DISCUSSION

### A. Plaintiff's Motion to Amend and Motion to Remand

Plaintiff seeks to amend her complaint by adding as a defendant human resource representative Vital Osegueda and by adding a sixth cause of action for retaliation (based on protected complaints of disability discrimination) in violation of California's Fair Employment

and Housing Act ("FEHA") [*8] (*Cal. Gov't Code § 12940*) and a seventh cause of action for harassment in violation of FEHA. Plaintiff also moves to remand this action on the ground that if the Court allows Plaintiff to join Osegueda as a defendant, diversity jurisdiction will be destroyed. Although the Court will allow Plaintiff to amend her complaint by adding the additional FEHA causes of actions, the Court will not permit the joinder of Osegueda and will not remand the action.

Under *28 U.S.C. § 1447(e)*, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." District courts in this Circuit consider various factors in determining whether to permit joinder under *section 1447(e)*, including the following: (1) whether the party sought to be joined is needed for just adjudication and would be joined under *Fed. R. Civ. P. 19(a)*; (2) whether the statute of limitations would bar the filing of a new action against the new defendant if the court denied joinder; (3) whether there [*9] has been unexplained delay in seeking the joinder; (4) whether the joinder is solely for the purpose of defeating federal jurisdiction; and (5) whether the claim against the new party seems valid. *IBC Aviation Services, Inc. v. Compania Mexicana de Aviacion, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000); Clinco v. Roberts, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999).*

No argument can be made that Osegueda is a necessary party under *Fed. R. Civ. P. 19(a)*. However, the fact that Osegueda does not meet the restrictive requirements of *Fed. R. Civ. P. 19(a)* does not control the Court's analysis under *section 1447(e)*. See *Righetti v. Shell Oil Co., 711 F. Supp. 531, 535 (N.D. Cal. 1989)* (explaining that Congress gave the courts broad discretion to allow joinder under *section 1447(e)* and that such discretion is inconsistent with the more restrictive approach under *Rule 19*).

Plaintiff would not be prejudiced if the Court denied joinder because Plaintiff could file a separate action against Osegueda in state court. The DFEH issued Plaintiff's Right to Sue Notice on [*10] January 11, 2007. Therefore, Plaintiff has until January 11, 2008 to file a lawsuit against Osegueda. See *Cal. Gov't Code § 12965(b)*.

It appears that the only reason Plaintiff seeks to join Osegueda is to destroy diversity jurisdiction. Plaintiff knew of Osegueda and his involvement in the events underlying Plaintiff's claims at the time Plaintiff filed her original complaint on July 28, 2006. The original complaint actually identified Osegueda by name. However, Plaintiff did not file a DFEH charge against Osegueda until January 9, 2007, several months after this action

was removed. Plaintiff's explanation that she inadvertently failed to pursue claims against Osegueda is unpersuasive.

Some courts have held that the plaintiff's motive for adding a non-diverse defendant should not be considered in determining whether to allow joinder under *section 1447(e)*. See *Righetti, 711 F. Supp. at 535*. Even if the Court does not consider Plaintiff's motive, the Court finds that joinder would not be appropriate given the lack of prejudice to Plaintiff and the questionable validity of her claims against Osegueda.

According to the proposed First Amended [*11] Complaint ("PFAC"), Plaintiff talked to Osegueda before taking her medical leave. Osegueda assured her that she did not need to take personal leave in order to be paid for her medical leave. (PFAC, P 22.) Plaintiff filled out CFRA-related paperwork at his request. (Id.) On February 10, 2006, Plaintiff sent an e-mail to Osegueda complaining of CFRA discrimination and/or discrimination on the basis of her medical condition/disability. (Id. at P 37.) Shortly thereafter, Plaintiff sent a second e-mail to Osegueda questioning the changes to her compensation and requesting an explanation. (Id. at P 41.) Later, Osegueda intimated to Plaintiff that the "company stance" was that what was happening to her was unrelated to her medical leave and that she would have to take care of the issue herself. (Id.)

Although the PFAC includes a general allegation that "Plaintiff is informed and believes and on that basis alleges that Vital Osegueda . . . was a human resources representative with Defendant Employer *with control over the terms and conditions of Plaintiff's employment*" (emphasis added), there are no facts alleged in support thereof. Plaintiff does not allege that Osegueda [*12] actually participated in making decisions regarding Plaintiff's position, compensation, or other terms of employment. Osegueda was the human resources point person who answered questions regarding CFRA leave, received Plaintiff's discrimination complaints, and related the "company stance" regarding Plaintiff's discrimination claims. Plaintiff does not allege any facts indicating that Osegueda was anything more than a rank-and-file human resources employee. It was Kathy Curtis, *Director of Human Resources,* who responded to Plaintiff's complaints of discrimination by conducting a performance review and informing Plaintiff that her compensation on the Nobel development was being reduced. Indeed, according to the Declaration of Kathy Curtis submitted by Defendants, Osegueda has no supervisory authority over any employee and has no authority to make any employment-related decisions about Plaintiff or anyone else.

Accordingly, the Court has doubts about the merits of Plaintiff's claims against Osegueda and will not allow Plaintiff to destroy diversity by joining him as a defendant. Plaintiff's motion to amend the complaint is **DENIED** to the extent that Plaintiff seeks to join Osegueda [*13] but is **GRANTED** to the extent Plaintiff wishes to add claims for retaliation and harassment under FEHA. In addition, Plaintiff's motion to remand is **DENIED**.

### B. Motion for Judgment on the Pleadings

Defendants move for judgment on the pleadings with respect to the second cause of action for retaliation in violation of the California Family Rights Act ("CFRA") and the fifth cause of action for intentional infliction of emotional distress ("IIED"). As discussed below, the Court finds that Defendants are entitled to judgment as a matter of law on the CFRA retaliation action. The Court also dismisses the IIED cause of action but will allow Plaintiff to seek leave to amend if discovery uncovers any evidence supporting such a claim.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *Fed. R. Civ. P. 12(c)*. Judgment on the pleadings is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co, Inc., 896 F.2d 1542, 1550 (9th Cir. 1989)*. [*14] All allegations of fact by the party opposing the motion are accepted as true, and construed in the light most favorable to that party. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989)*.

### 1. Retaliation for Exercise of CFRA Rights

Plaintiff's CFRA retaliation claim against Defendants fails because only employers can be held liable for retaliation under the CFRA. The CFRA provides:

> It shall be an unlawful employment practice for an employer to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of any of the following:
>
> (1) An individual's exercise of the right to family care and medical leave provided by subdivision (a).

*Cal. Gov't Code § 12945.2(l)*.

The CFRA defines an "Employer" as "Any person who directly employs 50 or more persons to perform services for a wage or salary." *Cal. Gov't Code § 12945.2(c)(2)(A)*. Under the plain meaning of the statute, individual supervisors cannot be sued for retaliation under the CFRA. Cf. *Reno v. Baird, 18 Cal. 4th 640, 76 Cal. Rptr. 2d 499, 957 P.2d 1333 (1998)* [*15] (holding that individual supervisors could not be sued for discrimination under the FEHA, which prohibited "an employer" from engaging in discrimination).

Plaintiff points out that a regulation promulgated by the FEHC indicates that individual supervisors can be held liable for retaliation under the CFRA. The regulation provides, in pertinent part, "[I]t shall be an unlawful employment practice for any person to discharge, fine, suspend, expel, punish, refuse to hire, or otherwise discriminate against any individual . . . because that individual has . . . exercised his or her right to CFRA leave . . . ." *Cal. Code Regs. Tit. 2, § 7297.7*.

Courts "assign great weight to the interpretations an administrative agency like the FEHC gives to the statutes under which it operates, although ultimately statutory interpretation is a question of law the courts must resolve." *Reno, 18 Cal. 4th at 660*. The FEHC regulation cannot counteract the clear language of the statute, which limits liability for retaliation under the CFRA to employers.

Plaintiff argues that individual supervisors may be held liable under *Cal. Gov't Code § 12940(h)*, which makes [*16] it unlawful "[f]or any employer . . . *or person* to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Emphasis added.) Plaintiff contends that "this part" refers to Part 2.8 of the Government Code, which includes *section 12945.2*.

However, even assuming *section 12940(h)* is referring to "Part 2.8," at the time *section 12940(h)* was enacted, Part 2.8 did not include *section 12945.2*. *Section 12945.2* did not come into existence until a decade after *section 12940* and Part 2.8 were added by Stats. 1980 C. 992, § 4. *Section 12945.2* includes its own provision regarding retaliation for an employee's exercise of the right to family care and medical leave. If retaliation for the exercise of CFRA rights is governed by *section 12940(h)*, the language in *section 12945.2(l)* is redundant in part (because *12940(h)* would also prohibit an employer from retaliating) and contradictory in part (be-

cause *12940(h)* does not limit liability for retaliation to the employer).

It is a principle of statutory construction [*17] that "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates." *People v. Tanner, 24 Cal. 3d 514, 521, 156 Cal. Rptr. 450, 596 P.2d 328 (1979).* Another principle of statutory construction is that every part of a statute serves a purpose and that nothing is superfluous. *In re J.W., 29 Cal. 4th 200, 209, 126 Cal. Rptr. 2d 897, 57 P.3d 363 (2002).* Respecting these principles, the Court determines that Plaintiff's CFRA retaliation claim is governed by *section 12945.2(l)*, which does not provide for individual supervisor liability. Therefore, judgment on the pleadings is granted in favor of Defendants on this claim.

2. IIED

The factual allegations of the Complaint do not support a claim of IIED against any of the individual defendants.

An essential element of an IIED claim is outrageous conduct beyond the bounds of human decency. *Cole v. Fair Oaks Fire Protection Dist., 43 Cal. 3d 148, 155, 233 Cal. Rptr. 308, 729 P.2d 743 (1987).* "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even [*18] if improper motivation is alleged." *Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 80, 53 Cal. Rptr. 2d 741 (1996).*

The allegations regarding Kathy Curtis relate to personnel management activity, including a negative performance review and Curtis' involvement in compensation issues. There are no factual allegations regarding non-personnel management activity by Curtis. Therefore, Plaintiff has not made out a claim of IIED against Curtis

There are no specific factual allegations regarding Sonny Kahn. Accordingly, Plaintiff's IIED claim against Khan fails as well.

As for Brian Duchman, Plaintiff claims that he went beyond his managerial functions when he embarrassed her by walking her through the office, loudly stating, "Oh, there's a spare desk. Maybe you could sit here."

Although this alleged behavior was rude and somewhat humiliating, it was not so extreme that it exceeded all bounds of decency.

In her papers, Plaintiff claims that "Defendants started a humiliating rumor that Plaintiff had engaged in sexual relations to obtain her position." However, the Complaint does not identify Defendants as the source of the rumor. The Complaint merely states, "While she was on leave, a [*19] humiliating rumor about Plaintiff began circulating the office, namely that she had engaged in sexual relations with Defendant Duchman in order to obtain her position." (Complaint, P 49.) The Court cannot imply that it was Defendants, as opposed to other Crescent Heights employees, who started the rumor.

Due to the absence of factual allegations supporting an IIED claim against Defendants, the Court **DISMISSES** the IIED claim **WITHOUT PREJUDICE.** If Plaintiff discovers evidence that any of the Defendants in fact started the rumor, Plaintiff may seek leave to amend her complaint to reassert the IIED claim.

**IV. CONCLUSION**

For the reasons discussed above, Plaintiff's Motion for Leave to File First Amended Complaint [14] is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff may not join Vital Osegueda as a defendant but may add causes of action for disability discrimination and harassment under FEHA. Plaintiff's Motion for Remand [13] is **DENIED.** Defendants' Motion for Judgment on the Pleadings [12] is **GRANTED.** Judgment shall be entered in favor of Kahn, Duchman, and Curtis on the second cause of action for retaliation in violation of the California [*20] Family Rights Act. Plaintiff's IIED claim is **DISMISSED WITHOUT PREJUDICE.** Plaintiff may seek leave to reassert the IIED claim upon discovery of facts supporting such a claim. Plaintiff shall file her First Amended Complaint within 20 days of the filing of this order.

**IT IS SO ORDERED.**

DATED: May 21, 2007

Hon. Barry Ted Moskowitz

United States District Judge

C:\Documents and Settings\412\Local Settings\Temporary Internet Files\Content.IE5\EDRY48Q1\2007_U_S__Dist__LEXIS_37223[1].doc