ORIGINAL

ROCKWOOD & NOZISKA, L.L.P.
NEAL H. ROCKWOOD, ESQ. SB# 106197
C. BRANT NOZISKA, ESQ. SB#106117
CHARLES L. FANNING IV, ESQ. SB#248704
5060 North Harbor Drive, Suite 255
San Diego, California 92106
Phone: (619) 224-7778 Fax (619) 224-7779

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| 1800 SOUTH MAPLE STREET, LLC, a California Limited Liability Company; RALPH J. GIANNELLA, an individual; GIANNELLA PROPERTIES, INC., a California Corporation; WILLIAM G. AYYAD, an individual; WILLIAM G. AYYAD, INC., a California Corporation; and PREMIER COMMUNITIES, LLC, a California Limited Liability Company. <br><br> Plaintiffs, <br><br> v. <br><br> ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, an Iowa Corporation; AMCO INSURANCE COMPANY, an Iowa Corporation; NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation, and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. 07-CV-2030 <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER PERMITTING LEAVE TO FILE AMENDED COMPLAINT** <br><br> Date: February 29, 2008 <br> Time: 1:30 P.M. <br> Courtroom: Honorable Judge Jeffrey T. Miller <br><br> Filed: September 10, 2007 <br> Trial: TBD |

///

///

CASE NO. 07-CV-2030

# I

# INTRODUCTION

Plaintiffs hereby file their Reply to AMCO'S opposition to Plaintiffs' motion for an order permitting the filing of an amended complaint. In its opposition, AMCO has done a superb job in over-simplifying the facts of this case, completely glossing over its past and present failures to fulfill its contractual and fiduciary duties to Plaintiff insureds. Indeed, the frustration, uncertainty, and damage to Plaintiffs caused by AMCO's conduct over the past several years has been appalling. It is through this lens the Court should consider Plaintiffs' good faith motive in amending their complaint, for Plaintiffs continue to uncover new deceptive conduct on the part of AMCO which consistently alters the litigation between the parties, dating back to the ACC Lawsuit. What has transpired since the removal of this suit to federal court is no exception.

MICHAEL EHRENFELD COMPANY, whom Plaintiffs are attempting to add in the current lawsuit, was not included in the original complaint filed in September 2007 due in part to AMCO's admission of coverage in the ACC Lawsuit. Given this admission, the similarity of the two cases, and an eagerness to avoid expanding the present litigation, Plaintiffs chose not to name MICHAEL EHRENFELD COMPANY as a defendant in their original complaint. However, after defendants removed this case to federal court in late October 2007, Plaintiffs learned more information about AMCO's pattern of practice of denying coverage to circumvent its contractual obligations. During the November 2007 deposition of former insurance-defense attorney David Veljovich in the ACC Lawsuit, who was co-counsel for the claimants in the underlying suit, the witness revealed that AMCO's modus operandi in handling claims was to delay issuing coverage determinations to avoid its obligations to its insureds.[1] These delays continued long after AMCO's co-defendants issued their positions on coverage.[2]

Having learned this information, in addition to having received another confirmation from AMCO effectively denying coverage in January 2008, Plaintiffs undertook to amend their

---

[1] See Ex. D to Plaintiffs' original motion.
[2] Id.

complaint to add MICHAEL EHRENFELD COMPANY as a defendant to account for any gaps in insurance coverage. This is the exact course of action taken by Plaintiffs in the ACC Lawsuit upon their learning that an admission of coverage would not be forthcoming. Importantly, there was no diversity issue in that case, as one of the named defendants was a California resident, thereby precluding removal of the case to federal court.

Based on these events, it is clear that Plaintiffs' primary motivation in amending the complaint is their belief that AMCO will continue to deny coverage according to its pattern of practice, which was recently discovered by Plaintiffs. Plaintiffs' hope that AMCO would finally admit coverage, as it did in the ACC Lawsuit, was not abandoned until after removal occurred.

## II.

### Joinder is Required to Obtain Complete Relief and Protect Plaintiffs' Interests

There are two scenarios of liability in this case, bad faith on the part of AMCO and its agents or professional negligence on the part of AMCO agent MICHAEL EHRENFELD COMPANY in securing coverage. Importantly, these two theories of liability are interconnected, as they hinge on common issues of fact (e.g. communications regarding the underwriting and adjusting of the claim) and possibly involve a conspiracy to deny coverage between AMCO and its appointed agent MICHAEL EHRENFELD COMPANY.

With respect to bad faith, AMCO underwriter David Everett testified at deposition in the ACC Lawsuit that he believed he was hoodwinked by AMCO agent Robyn Kettering (then an employee of MICHAEL EHRENFELD COMPANY) in insuring Plaintiffs for completed operations coverage under AMCO Policy No. ACP BPH CPAA GLAO 7801001164 (the "1164 Policy") and AMCO Policy No. ACP BPH 7801073037 (the "3037 Policy"), which were at issue in the ACC Lawsuit.[3] (Ex. A at 301:24-304:7.) AMCO said it had no appetite for insuring developers/renovators.

The policy at issue in this case, AMCO Policy No. ACP BPH 7801069841 (hereinafter "9841 Policy"), was issued on April 4, 2002, the same day that AMCO issued the 3037 Policy

---

[3] Everett testified at deposition, "it was my understanding from...Ms. Kettering's original presentation...that while the insured used to be involved in developing – flipping properties, he had discontinued those operations and was now buying and holding."

for the ACC project. However, in its denial letter, dated March 3, 2006, AMCO asserted that Plaintiffs were not entitled to completed operations coverage under the 9841 policy.[4] This purported lack of completed operations coverage is peculiar given the 3037 and 9841 policies were issued to Plaintiffs at the same time, but only the 3037 Policy included the appropriate coverage for Plaintiffs.

There can only be two explanations. The first is that AMCO, finally realizing the rookie underwriter's mistake in including completed operations coverage in the 3037 Policy, later conspired with MICHAEL EHRENFELD COMPANY, an AMCO agent, in deliberately denying completed operations coverage to the relevant entity in the 9841 Policy insuring the 1800 South Maple project. The alternative scenario is that AMCO agent MICHAEL EHRENFELD COMPANY was negligent in failing to procure adequate coverage for Plaintiffs.

Thus, in order to ensure complete relief in the event of gaps in coverage and to avoid inconsistent rulings in federal and state court, joinder should be permitted to allow for just adjudication of all the claims. This would also provide efficient resolution of the claims given the overlapping factual issues regarding the various causes of actions, particularly the communications between AMCO underwriting and MICHAEL EHRENFELD COMPANY.

### III.

### Farrugia v. All-State is Easily Distinguishable from the Present Case

In its opposition, AMCO relies heavily on Farrugia v. Allstate Insurance Company, 2007 WL 781782 (N.D. Cal. 2007.) While some of the facts of the case are similar, there are important differences. First, the plaintiff in Farrugia did not seek to add the insurer's agent as a defendant to allege professional negligence and negligent misrepresentation, nor was the agent even included in the prayer for relief in the proposed amended complaint. Id. at 2. As such, it was obvious in Farrugia that the insurer's agent was not necessary for just adjudication of the claim and that his inclusion was merely to defeat the court's diversity jurisdiction.

Second, and perhaps more importantly, the court's decision makes clear that the Farrugia plaintiff made no attempt whatsoever to show why the 1447(e) factors weighed in his

---

[4] See Ex. I to Plaintiffs' original motion.

favor. Id. Specifically, the Farrugia court pointed out that the plaintiff did not respond to the contention that he sought to add the new defendant only to destroy diversity jurisdiction, made no attempt to show why joinder was necessary for full recovery, and made no attempt to explain why he waited as long as he did before adding the agent as a defendant. Id. Based on the Farrugia plaintiff's utter failure to address these issues, even the moving Plaintiffs would concur with the conclusion of the Farrugia court.

However, this is not the case here, as <u>Plaintiffs have explained in great detail why most of the 1447(e) factors weigh heavily in their favor</u>. Unlike in Farrugia, Plaintiffs have justifiably added a new defendant, new causes action, and included said defendant in their prayer for relief to account for any possible gaps in insurance coverage under the 9841 Policy. Moreover, this motion was brought due to events that have transpired since removal of the case.

### IV.

### Nearly All Factors Required Under a 1447(e) Analysis Weigh Heavily In Plaintiffs' Favor

Plaintiffs performed a detailed analysis of the factors under 28 U.S.C § 1447(e) as laid out in Clinco v. Roberts, 41 F. Supp. 2d 1080 (C.D. Cal. 1999), in their original motion. See also Palestini v. General Dynamics Corp., 193 F.R.D. 654, 658 (S.D. Cal. 2000). Plaintiffs have shown that most of the factors weigh heavily in their favor, thus entitling them to amend their complaint. Having already discussed these factors in their original motion, Plaintiffs will address below only the contentions made by AMCO in its opposition.

#### A. New Information Since Removal Prompted the Motion to Amend

Contrary to what AMCO alleges in its opposition, Plaintiffs did not have all the information they needed to determine whether it was appropriate to add MICHAEL EHRENFELD COMPANY as a defendant in the original complaint. There were numerous issues weighing against such a move, not the least of which was AMCO's admission of coverage in the ACC Lawsuit by none other than AMCO claims director Carl Panico in late November 2007.[5] (Ex. B at 208:24-209:2.) Given the similarities between the 9841 Policy and

---

[5] At deposition, when asked if he "believe[s] that the company has acknowledged coverage under the BPH portion under the 1164 policy through its payment of indemnity," Panico responded, "Yes."

1164 Policy (at issue in the ACC Lawsuit), as well as similar claims and parties in both cases, it made sense that a similar admission by AMCO in the present lawsuit would be forthcoming.

Moreover, there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. <u>Brown v. Superior Court</u>, 34 Cal. 2d 559, 564. The covenant obligates the insurer, among other things, to undertake the insured's defense in good faith if there exists a potential for coverage under the policy of the claim asserted in an action filed against the insured. <u>Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.</u>, 78 Cal. App. 4th 847, 881 (2000). Importantly, the insurer may unilaterally condition its proffer of a defense upon its reservation of a right later to seek reimbursement of costs advanced to defend claims that are not, and never were, potentially covered by the relevant policy. <u>Scottsdale Ins. Co. v. MV Transp.</u>, 36 Cal. 4th 643, 656 (citing <u>Buss v. Sup. Court</u> 16 Cal.4th 35, 61, fn. 27 (1997))

Hence, at the time, it was reasonable for Plaintiffs to believe, especially in light of the ACC admission, that AMCO would reimburse Plaintiffs for defense costs in the underlying suit while maintaining a reservation of rights in the event there was no duty to indemnify. Thus, Plaintiffs made a reasonable decision not to add MICHAEL EHRENFELD COMPANY as a defendant, and they should not now be penalized for trying to avoid being overly-litigious and doing what was then in the best interests of their clients.

Moreover, the November 2007 deposition testimony by David Veljovich in the ACC Lawsuit, a former insurance defense attorney who has represented AMCO co-defendants in prior cases, revealed that AMCO's pattern of practice in claims handling is to continually delay making coverage determinations to avoid its contractual and fiduciary obligations as an insurer. This testimony raised a red flag for Plaintiffs, prompting them to consider adding MICHAEL EHRENFELD COMPANY as a defendant in the event there is inadequate coverage.

<u>Plaintiffs also explained at the Early Neutral Evaluation that it would give defendants another opportunity to admit coverage so that a motion to amend naming MICHAEL EHRENFELD COMPANY as a defendant could be avoided.</u> Plaintiffs proceeded to do just that in their letter dated Jan. 15, 2008, but in its response that same day, AMCO continued its

pattern of practice of effectively denying coverage by postponing a coverage determination until Plaintiffs gave them information <u>already</u> in AMCO's possession, a sly attempt to place the burden on Plaintiffs to prove coverage.[6] At that point, Plaintiffs felt it was absolutely necessary to add MICHAEL EHRENFELD COMPANY to the complaint to protect their interests.

Finally, AMCO has opened up a can of worms for itself in its charge that Plaintiffs have failed to explain its motive for amending their complaint in the ACC Lawsuit. Indeed, it was **<u>AMCO's attempted fraud</u>** upon Plaintiffs which precipitated the amended complaint (adding MICHAEL EHRENFELD COMPANY as a defendant) in the ACC Lawsuit. Accordingly, Plaintiffs amended their complaint adding, inter alia, MICHAEL EHRENFELD COMPANY as a defendant in the ACC Lawsuit when AMCO unsuccessfully tried to misrepresent the policy limits of the 1164 Policy as being 1 million per occurrence/ 2 million aggregate (as opposed to the correct 2 million/4 million limits). The amendment was necessary to account for gaps in coverage. When AMCO finally conceded that the 1164 policy had the higher policy limits, Plaintiffs dropped the broker defendants from the suit. Importantly, there was no issue of diversity jurisdiction in that case, as it was never removed to federal court.

As in the ACC Lawsuit, the new circumstances explained here have prompted Plaintiffs to amend their complaint in similar fashion. The proposed amendment includes a new defendant, two new causes of action, and a prayer for relief against said defendant.

### B. <u>There was no Unnecessary Delay in Bringing the Motion to Amend</u>

There was no delay on the part of Plaintiffs in bringing this motion, for Plaintiffs promptly moved to amend when new facts giving rise to the motion came to light. It was not until November 2007, a month after the case was removed, that Plaintiffs deposed Veljovich, who testified as to AMCO's sordid pattern of practice in delaying coverage determinations.

Moreover, Plaintiffs would have brought this motion to amend sooner had the Early Neutral Evaluation taken place when it was originally set for early December 2007. However, <u>at the request of AMCO counsel</u>, the ENE was postponed a month and Plaintiffs had to wait until such time to raise the issue of AMCO admitting coverage before the Court (so as to avoid

---

[6] <u>See</u> Exhibits B & C to Plaintiffs' original motion.

1  a motion to amend). Days after the ENE was held, Plaintiffs sought an admission of coverage
2  from AMCO one last time. They received no such confirmation. As such, the motion is timely.

### C. <u>Failure to Join Michael Ehrenfeld Company Raises the Possibility of Incomplete Relief, Inconsistent Judgments, and Redundant Litigation</u>

"Federal Rule of Civil Procedure 19 requires joinder of persons whose absence would preclude the <u>grant of complete relief</u>, or <u>whose absence would impede their ability to protect their interests</u> or <u>would subject any of the parties to the danger of inconsistent obligations</u>." <u>Boon v. All-State Insurance</u>, 229 F. Supp. 2d at 1022 (emphasis added); Fed. R. Civ. P. 19(a).[7] However, "although courts consider whether a party would meet [the Rule 19] standard for a necessary party, **amendment under § 1447(e) is a less restrictive standard than for joinder under [Rule 19]**." <u>Id</u>. (emphasis added). The standard is met when failure to join will lead to <u>separate and redundant actions</u>." <u>Id</u>.

To obtain complete relief, Plaintiffs must be able to add AMCO agent MICHAEL EHRENFELD COMPANY as a defendant and a cause of action for professional negligence. Should the Court conclude that no coverage exists under the 9841 Policy, Plaintiffs will be left with a gap in coverage and will be forced to relitigate many of the same issues in state court, which will involve similar witnesses (including AMCO personnel and AMCO agents) and recollections of events giving rise to the underwriting of the 9841 Policy. Moreover, relitigating the underwriting of the 9841 Policy in a separate action against MICHAEL EHRENFELD COMPANY could lead to inconsistent rulings. Should a state court determine that MICHAEL EHRENFELD COMPANY was not liable for professional negligence and negligent representation (after a federal court deems there is no coverage), Plaintiffs would be left with no remedy. By necessity, this is a case of bad faith/conspiracy on the part of the AMCO or professional negligence on the part of AMCO'S agent.

---

[7] "Necessary" refers to a party who should be joined if feasible, while "indispensable" refers to a party's whose participation is so important to the case's resolution, that if not joined, the suit must be dismissed. <u>See</u> Schwarzer, Tashima & Wagstaffe, <u>Fed Civ. Proc. Before Trial</u> (The Rutter Group 2007) 7:55. However, FRCP 19 has eliminated the historical distinction between the two terms, simply calling for joinder "of parties needed for just adjudication." <u>Id</u>. at 7:58.1.

Finally, AMCO relies on Palestini v. General Dynamics Corporation, 193 F.R.D. 654 (S.D. Cal. 2000) in support of its argument that redundant actions will not result if joinder is denied in the present case. (AMCO Opp. p. 11-12.) Deeming the new defendants "necessary parties," the Palestini court permitted an amendment adding non-diverse parties and remanded the case to state court. Palestini, 193 F.R.D. at 658-659. The court noted that separate and redundant actions would result because the theories against the originally named defendants and the proposed defendants shared the similar issue of causation. Id. AMCO, in turn, argues that causation is not a shared issue with respect to Plaintiffs theories of recovery against both AMCO and MICHAEL EHRENFELD COMPANY, and therefore, joinder should be denied.

However, AMCO's reading of Palestini is extremely narrow, for the court makes no mention that the common issue giving rise to separate and redundant actions must be causation. In this case, there are numerous factual issues that pertain to the various causes of actions against the insurer and broker defendants, including the communications between AMCO agent MICHAEL EHRENFELD COMPANY and AMCO regarding the underwriting of the claim, the nature of the relationship between these two entities in light of the former's dual loyalty to insurer and insured, and any communications or events evidencing a conspiracy by the two to deny coverage to Plaintiffs. Furthermore, there is no doubt MICHAEL EHRENFELD COMPANY has an interest in this controversy. Finally, joinder of MICHAEL EHRENFELD COMPANY would serve the interests cited by the Palestini court, namely, "to decide and finally determine the entire controversy" and doing complete justice "by adjusting all the rights of those involved." Id. For all of these reasons, MICHAEL EHRENFELD COMPANY is at the very least, a necessary party required for the just adjudication of Plaintiffs' claims.

### D. Authorities Cited by Plaintiffs Support Their Contention that Joinder is Necessary for Just Adjudication

The cases cited by Plaintiffs in their original motion support their contention that joinder is necessary for just adjudication of their claims. Regarding Boon v. Allstate Ins. Co., 229 F. Supp. 2d 1016, Plaintiffs concede their error in stating that the insurer's agent was being joined as a new defendant. The Boon plaintiffs were adding a cause of action for professional

negligence against the defendant agent in their proposed amended complaint. Id. at 1019. However, the court's explicit language still cannot be ignored, for when the court discussed the plaintiffs' claims against the insurer and the insurer's agent, it stated, **"[t]he claims for breach of contract, bad faith, professional negligence, and failure to pay judgments all relate to the relationship of the insured and the insurer."** Id. Furthermore, in denying the joinder of the non-agent defendant (i.e. plaintiffs' husband), the court added, "requiring [plaintiff] to pursue a claim against her husband in state court would not prevent the **just adjudication of the plaintiffs' claims against [the insurer] and its agent in federal court.**" Id. (emphasis added).

In addition, Plaintiffs' reliance on Desert Empire Bank v. Ins. Co. of North America, 623 F. 2d 1371 (9th Cir. 1980), is completely justified as the case is still considered good law. The case cited by AMCO to discredit Desert Empire, Gun v. Wild, 2002 U.S. Dist. LEXUS 3628 (N.D. Cal. 2002), is an **unreported case** (federal rules only permit the citation of unreported cases decided after 1/1/07).[8] While Desert Empire was decided before section 1447(e) was enacted, one of the principles espoused in Desert Empire, namely, that a district court that allowed joinder of a non-diverse party to a removed case should remand the case to state court, was actually codified by section 1447(e). Yniques v. Cabral, 985 F. 2d 1031, 1034 (9th Cir. 1993), disapproved on other grounds, 197 F.3d 1253 (9th Cir. 1999).

Moreover, the factors used in Desert Empire to analyze the diversity destroying amendment under permissive joinder provisions are essentially the same as in Clinco and Palestini. These similar factors include: resulting prejudice to the parties, the delay of the moving party seeking to amend the complaint, the motive for seeking the amendment, the closeness of the relationship between the new and old parties, and the effect of the amendment on the court's jurisdiction. Desert Empire, 623 F. 2d at 1375. Most importantly, in Desert Empire, the Ninth Circuit held that a District Court correctly permitted the plaintiff insured to amend its pleadings post-removal to add a non-diverse insurance agent as a party where the insured's claims against the defendant insurance company and insurance agent arose out of the same series of occurrences and raised common questions of law and fact. Id. at 1374. Such is

---

[8] See Schwarzer, Tashima & Wagstaffe, Fed Civ. Proc. Before Trial 12:64 (citing FED. R. APP. P 32.1).

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

the case here, as proving bad faith, professional negligence, and conspiracy on the part of AMCO and its agents will require in-depth inquiry into the underwriting process and the communications and relationship between AMCO and MICHAEL EHRENFELD COMPANY with respect to Plaintiffs' insurance policies and claims. Indeed, the common questions of law and fact are numerous, such that joinder of MICHAEL EHRENFELD COMPANY is necessary to prevent repetitive litigation and inconsistent outcomes to the prejudice of Plaintiffs.

Finally, Plaintiffs stand by their reference to Ingersoll v. Pearl Insurance Company. 153 F. Supp. 558, 560 (N.D. Cal. 1957). This case remains good law and was cited by Plaintiffs because it explains that when claims against an agent are so interwoven with claims against an insurer, a complete adjudication of rights of parties cannot be had without the presence of the former. Id. at 560. While the facts are not identical, this notion is entirely relevant to an analysis under 1447(e), as Plaintiffs have argued that denial of joinder could preclude the granting of complete relief, impede their ability to protect their interests, result in repetitive litigation, and lead to inconsistent rulings to the prejudice of Plaintiffs.

## V.

## CONCLUSION

Based on the foregoing, joinder of MICHAEL EHRENFELD COMPANY, with causes of action for professional negligence and negligent misrepresentation, is appropriate in this case, as nearly all the factors under a 1447(e) analysis weigh heavily in Plaintiffs' favor. As such, Plaintiffs respectfully request that the Court grant their motion for leave to amend their complaint.

Dated: February 22, 2008

ROCKWOOD & NOZISKA, LLP

By: _____
NEAL H. ROCKWOOD, ESQ.
C. BRANT NOZISKA, ESQ.
CHARLES L. FANNING, IV, ESQ.
Attorneys for Plaintiffs

ROCKWOOD & NOZISKA, LLP
5060 North Harbor Drive, Suite 255
San Diego, California 92106
(619) 224-7778 FAX (619) 224-7779

10                                    CASE NO. 07-CV-2030
PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND