# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

_____ )
                                  )
AVOCADO CREST CONDOMINIUMS, LLC, a )
California Limited Liability Company;)
RALPH J. GIANNELLA, an individual;  )
CONSTRUCTION MEDIATION ONLY INC.,   )
a California Corporation;           )
WILLIAM G. AYYAD, an individual;    )
and WILLIAM G. AYYAD, INC., a       )
California Corporation,             )
                                  )
          Plaintiffs,             )
                                  )
     vs.                          ) Case No:GIC857918
                                  )
ALLIED MUTUAL INSURANCE COMPANY, an )
Iowa Corporation; SEQUOIA INSURANCE )
COMPANY, a California Corporation;  )
AMCO INSURANCE COMPANY, an Iowa     )
Corporation; MICHAEL EHRENFELD      )
COMPANY - INSURANCE AGENTS AND      )
BROKERS, a California               )
Corporation (DOE 1); KETTERING.ROSE )
INSURANCE AGENTS & BROKERS,         )
dba KETTERING ROSE INSURANCE AGENTS )
AND BROKERS, a California           )
Corporation (DOE 2); ROBYN KETTERING,)
an individual (DOE 3);             )
and DOES 4 through 100, inclusive,  )
                                  )
          Defendants.             )
_____ )

VIDEOTAPED DEPOSITION OF DAVID EVERETT

Volume 2 - Pages 245 through 394

San Diego, California

May 30, 2007

REPORTED BY CLAIRE A. WANNER, CSR NO. 12965

PETERSON REPORTING VIDEO & LITIGATION SERVICES

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2               IN AND FOR THE COUNTY OF SAN DIEGO

3

4    _____ )
     AVOCADO CREST CONDOMINIUMS, LLC, a   )
5    California Limited Liability Company;)
     RALPH J. GIANNELLA, an individual;   )
6    CONSTRUCTION MEDIATION ONLY INC.,    )
     a California Corporation;            )
7    WILLIAM G. AYYAD, an individual;     )
     and WILLIAM G. AYYAD, INC., a        )
8    California Corporation,              )
                                          )
9                   Plaintiffs,           )
                                          )
10                  vs.                   )Case No:GIC857918
                                          )
11   ALLIED MUTUAL INSURANCE COMPANY, an  )
     Iowa Corporation; SEQUOIA INSURANCE  )
12   COMPANY, a California Corporation;   )
     AMCO INSURANCE COMPANY, an Iowa      )
13   Corporation; MICHAEL EHRENFELD       )
     COMPANY - INSURANCE AGENTS AND       )
14   BROKERS, a California                )
     Corporation (DOE 1); KETTERING.ROSE  )
15   INSURANCE AGENTS & BROKERS,          )
     dba KETTERING ROSE INSURANCE AGENTS  )
16   AND BROKERS, a California            )
     Corporation (DOE 2); ROBYN KETTERING,)
17   an individual (DOE 3);               )
     and DOES 4 through 100, inclusive,   )
18                                        )
                    Defendants.           )
19   _____ )

20

21          VIDEOTAPED DEPOSITION OF DAVID EVERETT,

22   commencing at the hour of 9:30 a.m. on Wednesday,

23   May 30, 2007, at 530 B Street, Suite 350, San Diego,

24   California, before Claire A. Wanner, Certified

25   Shorthand Reporter in and for the State of California.

```
 1    APPEARANCES:

 2

 3    For the Plaintiff:

 4    Rockwood & Noziska, LLP
      BY:  NEAL H. ROCKWOOD, ESQ.
 5    5060 North Harbor Drive, Suite 255
      San Diego, California  92106
 6    (619) 224-7778

 7        -- and --

 8    Rockwood & Noziska, LLP
      BY:  C. BRANT NOZISKA, ESQ.
 9    5060 North Harbor Drive, Suite 255
      San Diego, California  92106
10    (619) 224-7778

11

12    For the Defendant:

13    Miller Johnson Law
      BY:  JON B. MILLER, ESQ.
14    The Marston Building
      427 C Street, Suite 410
15    San Diego, California  92101
      (619) 232-0086
16

17

18    Also present:  Javen Heard, Videographer

19

20

21

22

23

24

25
```

1    well.  You actually have a written set of guidelines

2    for these policies; is that correct?

3        A    That's correct.

4            MR. ROCKWOOD:  And I think we've asked for

5    those before -- Jon, can you make a note of that?  And

6    I'd be happy to give you a protective order on that if

7    you need one.

8    BY MR. ROCKWOOD:

9        Q    In those guidelines did they differentiate --

10   tell me what are the guidelines for, first of all.

11       A    The guidelines are to -- to aid the

12   underwriters in making risk assessment and

13   determinations as well as helping us to avoid

14   potentially undesirable situations.

15       Q    And is there discussion in the guidelines

16   specifically with respect to construction defects?

17       A    Yes, there is.

18       Q    What in general are the guidelines on that?

19       A    That we would prefer to avoid construction

20   defect claims.

21       Q    Okay.  And are there guidelines relative to

22   mold issues?

23       A    I don't -- I don't recall.

24       Q    Did you ever have discussions with Robyn

25   Kettering when she was asking you to -- to write

1    this 1164 policy about the guidelines that you had

2    in-house?

3         A    I think we had some discussion on guidelines,

4    but I believe it was related more to, well, this --

5    this location is going to have to go on a CPAA because

6    of the age, that -- that type of discussion.

7         Q    Okay.

8         A    Again, it was my understanding from Mrs. --

9    Ms. Kettering's original presentation of the account

10   that the risk was a -- a -- he would buy, repair, and

11   hold properties and --

12        Q    You know --

13        A    And -- may I finish my statement?

14        Q    Yes.

15        A    And that while the insured used to be involved

16   in developing or -- or flipping properties, he had

17   discontinued those operations and was now buying and

18   holding.

19        Q    I know you spoke about this in your last

20   deposition as well.

21             Do you know if that presentation was in

22   writing anywhere?  Did she have just a verbal

23   discussion with you about that, or did she put it in

24   writing?

25        A    I believe it was on the first page of the

1    application that was submitted to me.

2        Q    Okay.  You mean the application that was never

3    signed or is it the application --

4        A    The original application for the policy that

5    became 1164.

6        Q    Okay.  We can go back to that.  That's in one

7    of the other binders back there.

8            Let's jump back now to this loss control

9    report that you got in May and your concerns.  After

10   you reviewed that report, what did you do next in terms

11   of communicating with Robyn Kettering?

12       A    I requested Ms. -- I -- I just -- you know, I

13   advised Ms. Kettering about the loss control concerns.

14   I requested her to move coverage to -- you know, to

15   send it, you know, because I was outside of my 60-day

16   window --

17       Q    Right.

18       A    -- when I have justification to --

19       Q    Resend the policy?

20       A    I can -- well, I can either -- I -- I could

21   have sent 30 days' notification of, you know, fails to

22   meet underwriting criteria, you have 30 days to replace

23   the coverage.  I was with -- I was outside of that

24   60-day window.  And at that point my options for --

25   for -- really, the only reason I can get rid of a

1    policy at that point is for -- is for, you know,

2    misrepresentation.  And, you know, when I'm looking at

3    it, I'm looking back at the material, it's like my

4    interpretation was I was had, was it misrepresent- --

5    but was it misrepresented in a -- in a -- was it

6    misrepresented in a way that if I'm deposed in this

7    situation --

8        Q    Right.

9        A    -- would I -- you know, what would I say?

10       Q    Right.

11       A    And I did not feel comfortable based on the

12   facts at hand, so I requested Ms. Kettering to replace

13   coverage.

14       Q    Okay.  I'll show you a two-page document

15   because now we're going to jump back in time.  We'll

16   come back to that May time frame.  It's not overly

17   superly relevant to me right now, but these are.

18           I'll show you a two-page document addressed to

19   yourself from Michael Ehrenfeld Company, Robyn

20   Kettering, dated October 4, '01, Bates-stamped KET 0022

21   and '23.

22           If you could take a look at that and we'll

23   mark that next as Exhibit 162.

24                   (Exhibit 162 was marked.)

25

1    BY MR. ROCKWOOD:

2        Q    All right.  Did you receive this document?  Do

3    you recall?

4        A    I did.

5        Q    And I know we didn't get it out of the file

6    that was produced.  We got it from Kettering.  I

7    didn't -- hadn't seen it in here.  So that's the only

8    reason I asked that question.

9            The second paragraph down it says, "The

10   properties have all been updated either prior to the

11   insured purchasing them or after the insured closed

12   escrow on them.  The date of updating is listed on the

13   underwriting report."

14           What is being referenced there as the

15   underwriting report?

16       A    I am not sure.  However, if we go back to

17   Exhibit 152 --

18       Q    That had all the information on the properties

19   on it?

20       A    Yes.

21       Q    Do you think that's what's being referenced

22   here?

23       A    That -- again, I'm going back five years, so

24   I'm not completely positive, but --

25       Q    There isn't anything in your file that's

# EXHIBIT B

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

CENTRAL DIVISION

AVOCADO CREST CONDOMINIUMS, LLC,    )
a California limited liability      )
company; RALPH J. GIANELLA, an      )
individual; CONSTRUCTION MEDIATION  )
ONLY, INC., a California            )
corporation; WILLIAM G. AYYAD, an   )
individual; WILLIAM G. AYYAD, INC., )
a California corporation,           )
                                    )
              Plaintiffs,           )
                                    )
      VS.                           )    NO. GIC 857918
                                    )
ALLIED MUTUAL INSURANCE COMPANY, an )
Iowa corporation; SEQUOIA INSURANCE )
COMPANY, a California corporation;  )
AMCO INSURANCE COMPANY, an Iowa     )
corporation; MICHAEL EHRENFELD      )
COMPANY - INSURANCE AGENTS AND      )
BROKERS, a California corporation   )
(Doe 1); KETTERING ROSE INSURANCE   )
AGENTS & BROKERS, d/b/a KETTERING   )
ROSE INSURANCE AGENTS AND BROKERS,  )
a California corporation (Doe 2);   )
ROBYN KETTERING, an individual      )
(Doe 3); and DOES 4 through 100,    )
inclusive,                          )
                                    )
              Defendants.           )
_____ )

(SEE NEXT PAGE FOR COMPLETE CAPTION)

Deposition of CARL PANICO

Taken on Thursday, November 29, 2007

Reported by: KATHLEEN SIRI, CSR No. 9726

1       A       That would be with the claims

2   professional.

3       MR. MILLER:  Calls for speculation.

4   BY MR. NOZISKA:

5       Q       With who?

6       A       I would say that would be with the claims

7   professional.

8       Q       Dave Easton?

9       A       If he was handling the file at the time

10  that decision was made, yes.

11      Q       All right.

12              But you would expect that there would have

13  been a notification to the insured of a finding of a

14  lack of coverage under the GLAO policy; true?

15      A       If a claim is submitted under the GLAO

16  policy.

17      Q       It was never submitted under the GLAO

18  policy?

19      A       Okay.  Then if we learned of another

20  policy that might afford coverage for the claim that

21  was presented to us at that point in time, we should

22  acknowledge the policy and the applicability of the

23  coverage.

24      Q       Okay.  And do you believe that the company

25  has acknowledged coverage under the BPH portion under

1    the 1164 policy through its payment of the indemnity?

2         A      Yes.

3         Q      And do you know of any dispute as regards

4    to the obligation of the company to afford coverage

5    under the BPH policy under the 1164 number at this

6    time?

7         A      No.

8         Q      Do you know one way or the other whether

9    there's any dispute as to whether coverage is owed

10   under the GLAO policy?

11        A      Do you know of coverage of any kind as

12   being disputed under the GLAO policy?

13        Q      Right.

14        A      No.

15        Q      Okay.  Do you know whether coverage has

16   been afforded under the GLAO policy?

17        A      I believe we already talked about

18   defending under that policy, but I can't tell you if

19   there's been an acknowledgment of indemnity owed under

20   that policy.  I don't recall.

21        Q      Do you think if there was a coverage

22   determination under the GLAO policy, it might be in

23   this new claims file that's being set up or should it

24   have been made under the claims file that was set up

25   for the GLAO policy?

```
 1        A       Again, speculating on what documentation
 2   would take place, I would think something that takes
 3   place in the handling of the GLAO policy should be
 4   documented within the claim file set up for the GLAO
 5   policy.
 6        Q       Okay. So if a finding was made that the
 7   GLAO policy does not apply to this claim for whatever
 8   reason, then that finding should be documented in the
 9   GLAO claims file?
10        A       Yes.
11        Q       I take it then, if it was not, then that
12   would be another mistake on the part of the company?
13        A       You know, if something is omitted without
14   cause, I guess you could call it a mistake, certainly.
15        Q       Now, when this claim was initially
16   tendered under the 3037 policy, there were two claims
17   opened up, one under the first party coverage under the
18   policy, first party property coverage, and then a
19   second claim under the liability portion of the policy.
20                And the first party claim essentially
21   looks like it was abandoned.  The claim was just
22   tendered to the company under the 3037 policy
23   generally, not under the first party or third party,
24   but just under the policy number.
25                Do you think that the company should have
```